Alycia A. Degen, SBN 211350
adegen@sidley.com
Sean A. Commons, SBN 217603
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Fax: (213) 896-6600

Attorneys for Plaintiffs
[*Additional Counsel Listed Below*]

Rhett P. Martin, D.C. Bar No. 999272
rhett.martin@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-7538
Fax: (202) 616-8470

Attorney for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTA RAMOS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KIRSTJEN NIELSEN, *et al.*,<br><br>Defendants. | Case No. 3:18-cv-1554-EMC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:    May 17, 2018<br>Time:    1:30 p.m.<br>Judge:   Hon. Edward M. Chen<br>Dept.:   Courtroom 5, 17th Floor<br><br>Complaint Filed:   March 12, 2018<br>Trial Date:    None set |

1     *Additional Counsel for Plaintiffs*

2     Ahilan T. Arulanantham, SBN 237841
aarulanantham@aclusocal.org
3     ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
4     Los Angeles, CA 90017
Telephone: (213) 977-5211
5     Fax: (213) 977-5297

6     William S. Freeman, SBN 82002
wfreeman@aclunc.org
7     ACLU FOUNDATION
OF NORTHERN CALIFORNIA
8     39 Drumm Street
San Francisco, California 94111
9     Telephone: (415) 621-2493
Fax: (415) 863-7832
10

11     Emilou MacLean, SBN 319071
emi@ndlon.org
12     Jessica Karp Bansal, SBN 277347
jbansal@ndlon.org
13     NATIONAL DAY LABORER
ORGANIZING NETWORK
14     674 S. La Fayette Park Place
Los Angeles, CA  90057
15     Telephone: (213) 380-2214
Fax: (213) 380-2787
16

17     Nicole M. Ryan, SBN 175980
nicole.ryan@sidley.com
    Ryan M. Sandrock, SBN 251781
18     rsandrock@sidley.com
SIDLEY AUSTIN LLP
19     555 California Street, Suite 2000
San Francisco, CA 94104
20     Telephone: (415) 772-1200
Fax: (415) 772-7400
21

22     Amanda R. Farfel, SBN 288126
afarfel@sidley.com
    Andrew B. Talai, SBN 300053
23     atalai@sidley.com
Marisol Ramirez, SBN 307069
24     marisol.ramirez@sidley.com
SIDLEY AUSTIN LLP
25     555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
26     Telephone: (213) 896-6000
Fax: (213) 896-6600
27

28

1    Pursuant to Civil Local Rule 16-9 and the Standing Order for All Judges of the Northern

2    District of California, the parties submit this Joint Case Management Statement.

3    **1.    Jurisdiction and Service**

4    <u>Plaintiffs' Position</u>:  This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

5    Venue is proper under 28 U.S.C. § 1391(e)(1) because at least one plaintiff resides in this judicial

6    district and each defendant is an agency of the United States or an officer of the United States sued

7    in his or her official capacity. Defendants were served with process on March 21, 2018.

8    <u>Defendants' Position</u>: This Court does not have jurisdiction over any of Plaintiffs' claims,

9    whether arising under the Constitution or the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

10   Congress has expressly provided that "[t]here is no judicial review of any determination of the

11   [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign

12   state" for TPS relief.  8 U.S.C. § 1254a(b)(5)(A); *see also* 5 U.S.C. § 701(a)(1) (precluding review

13   under the APA "to the extent" that other "statutes preclude judicial review").

14   **2.    Facts**

15   <u>Plaintiffs' Position</u>:  This case concerns a humanitarian relief program called Temporary

16   Protected Status ("TPS"), enacted by Congress to provide lawful immigration status to eligible

17   foreign nationals who cannot safely return to war-torn or disaster-stricken countries. Over 400,000

18   individuals from ten different countries currently have TPS. Many of them have lived and worked

19   in this country for decades. More than 270,000 natural-born U.S. citizen children have parents who

20   are TPS holders. While these children have an unconditional right to remain in the United States,

21   their parents' immigration status is now at risk.

22   When deciding whether to extend or terminate a country's TPS designation, previous

23   administrations have consistently accounted for intervening country conditions—for example,

24   subsequent natural disasters or economic instability. In contrast, Defendants adopted a new rule that

25   ignores current country conditions. Defendants inquire only whether the particular "originating"

26   conditions that triggered a TPS designation or extension have abated (*e.g.*, devastation from a

27   particular hurricane), regardless of whether substantially similar or identical problems exist due to

28   subsequent events (*e.g.*, later hurricanes). In doing so, Defendants deviated from decades of

1

decision-making practices without any formal announcement or explanation. And beginning in October 2017, Defendants implemented this new rule by terminating TPS designations for El Salvador, Haiti, Nicaragua, and Sudan.

Plaintiffs are nine individual TPS holders and five representative U.S. citizen children impacted by the decisions to terminate TPS designations for these countries in violation of the Administrative Procedure Act ("APA"), the Fifth Amendment's Due Process Clause, and the Fifth Amendment's implicit equal protection guarantee. Defendants' termination of the TPS designations for these countries was motivated by intentional race-, ethnicity- or national-origin-based discrimination. As a result of Defendants' adoption of their new rule, the named Plaintiff TPS holders, like approximately 200,000 other individual TPS holders, will lose their status and face a risk of deportation. In addition, the U.S. citizen children and a putative class of approximately 200,000 other U.S.-born children of TPS holders face an impossible choice: leave their country, and the only home they have ever known, or grow up without one or both parents.

Defendants' Position: Acting Secretary Duke terminated the TPS for Sudan, Nicaragua, and Haiti, and Secretary Nielsen terminated TPS for El Salvador, "after consultation with appropriate agencies of the Government" and determining that these countries no longer met the statutory criteria for TPS designation. 8 U.S.C. § 1254a(b)(3)(A). In doing so, they exercised their statutorily-entrusted discretion to assess the myriad of foreign-policy and humanitarian factors that pertain to immigration and lie uniquely within the Executive Branch's competence. As explained above, these determinations are not suitable for scrutiny by the judiciary.

In any event, the explanations both Secretaries provided in the *Federal Register* notices announcing these terminations amply support their decisions. Sudan's internecine violence and food insecurity had abated. *See Termination of the Designation of Sudan for Temporary Protected Status*, 82 Fed. Reg. 47228-02 (Oct. 11, 2017). Almost two decades of foreign aid and recovery efforts had significantly restored Nicaragua's infrastructure and economy after Hurricane Mitch in 1998. *Termination of the Designation of Nicaragua for Temporary Protected Status*, 82 Fed. Reg. 59636-01 (Dec. 15, 2017). And, both Haiti and El Salvador had sufficiently recovered from the earthquakes that precipitated their TPS designations. *Termination of the Designation of Haiti for*

*Temporary Protected Status*, 83 Fed. Reg. 2648-01, 2650 (Jan. 18, 2018); *Termination of the Designation of El Salvador for Temporary Protected Status*, 83 Fed. Reg. 2654-01 (Jan. 18, 2018). Each announcement explained the considerations that informed the Secretaries' decision in a similar manner to past termination decisions by other Administrations. And there is no evidence of, nor have Plaintiffs alleged, any discriminatory animus on the part of Secretaries Duke or Nielsen, who made the decisions challenged here.

Plaintiffs contend that Defendants "adopted a new rule" not to consider circumstances intervening since the initial TPS designations. As Plaintiffs concede, however, they cannot point to any previous rule they claim to have been abrogated. Compl. ¶ 75 ("[N]o relevant statute or regulation has changed[.]"). In any event, the *Federal Register* notices amply demonstrate that the Secretaries considered the conditions in these countries at the time the termination decisions were made. Finally, Defendants believe that it is possible that some of the Plaintiffs, or parents of some of the Plaintiffs, may be able to adjust their status and remain here legally with work authorization (see Defendants' Position on Class Action below).

**3.    Legal Issues**

<u>Plaintiffs' Position</u>:  The legal and equitable issues for determination include:

A.    Whether Defendants' actions violate the constitutional rights of U.S. citizen children because it forces them to choose between their fundamental rights to familial association with their TPS holding parents and their absolute right to live in the United States. *See* U.S. Const. amend. V; *Nguyen v. INS*, 533 U.S. 53, 67 (2001); *Reno v. Flores*, 507 U.S. 292, 301–02 (1993); *Bd. of Dirs. v. Rotary Club*, 481 U.S. 537, 545 (1987); *Moore v. City of East Cleveland*, 431 U.S. 494, 499 (1977); *United States v. Jackson*, 390 U.S. 570 (1968); *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922).

B.    Whether Defendants' actions violate the implicit equal protection guarantee of the Due Process Clause because they were motivated by intentional discrimination based on race, ethnicity, or national origin. *See* U.S. Const. amend. V; *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

C.    Whether Defendants' actions violate the Due Process Clause of the Fifth

3

Amendment because they constituted an arbitrary government invasion of personal liberty. *See* U.S. Const. amend. V; *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 584 (1972).

D.     Whether Defendants' new rule fails to meet the minimum standards of rational explanation and judgment required by the APA. *See* 5 U.S.C. § 706(2)(A); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).

Defendants' Position:

A.     This Court has no jurisdiction to hear these claims. Congress has explicitly barred TPS determinations from judicial review. *See* 8 U.S.C. § 1254a(b)(5)(A); H.R. Rep. No. 101-245, at 14 ("Moreover, *none* of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review." (emphasis added)); 5 U.S.C. § 701(a)(1), (a)(2). Defendants recognize that the Supreme Court in *Webster v. Doe* stated that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear[,]" 486 U.S. 592, 603 (1988), but Defendants maintain that Congress has clearly stated its intent here. Moreover, individuals who lose TPS protection may ultimately have an avenue to bring their constitutional claims. *See* 8 U.S.C. § 1252(a)(2)(D) (no provision of the INA "which limits or eliminates judicial review[] shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals" in the removal context). Thus, for an alien currently registered for TPS who does not otherwise have lawful status and is later ordered removed, this provision would allow the alien to assert a constitutional claim to the immigration court.  *Cf. Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012) ("*Webster*'s standard does not apply where Congress simply channels judicial review of a constitutional claim to a particular court.").

B.     There is no right of a child to live with a non-citizen family member illegally present in this country. *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018); *Morales-Izquierdo v. Department of Homeland Security*, 600 F.3d 1076, 1091 (9th Cir. 2010). As Defendants will show in their upcoming motion to dismiss, none of Plaintiffs' cases stand for their stated proposition.

C.     Plaintiffs have failed to allege that either Secretary Duke or Nielsen personally

1  harbored discriminatory intent in issuing these TPS terminations. Plaintiffs' theory appears to be

2  that because the Secretaries did not expressly address some events they believe to be relevant, the

3  Secretaries must have had a hidden, discriminatory motive. These allegations fall short of the "clear

4  evidence" of "outrageous" discrimination required to make out an equal-protection claim in the

5  immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 488–91 (1999).

6       D.     Plaintiffs' Due-Process claim alleging "arbitrary government invasion of personal

7  liberty" is, if reviewable at all, subject to "rational basis" review. Plaintiffs concede this. Compl. ¶

8  115. Their allegations that the Secretaries acted arbitrarily in terminating TPS must fail in light of

9  the detailed and considered explanations the Secretaries gave in the *Federal Register* notices.

10      E.     Plaintiffs' APA claim is barred as a matter of law, *see* 5 U.S.C. § 701(a)(1), and, in

11  any event, the challenged decisions would easily meet the minimum standards of rational

12  explanation and judgment required by the APA.

13  **4.     Motions**

14      Plaintiffs' Position:  TPS will expire for Sudan and Nicaragua on November 2, 2018, and

15  January 5, 2019, respectively, well before a trial on the merits of this action could be completed in

16  the ordinary course. Plaintiffs therefore anticipate filing a motion for a preliminary injunction to

17  enjoin implementation or enforcement of the decisions to terminate TPS, in order to protect families

18  already suffering irreparable harm because they are forced to plan for the consequences of

19  Defendants' actions. In support of this motion, Plaintiffs are requesting early, limited discovery,

20  and the parties have submitted a joint letter brief to the Court on this request. The parties will meet

21  and confer regarding a briefing schedule for the preliminary injunction motion, which will be

22  affected by this Court's discovery orders.

23      Defendants' Position: Defendants will file a motion to dismiss under Rules 12(b)(1) and

24  12(b)(6) no later than May 21st. Defendants will argue both that this Court lacks subject-matter

25  jurisdiction and that Plaintiffs have failed to state any claim on which relief can be granted.

26      Defendants oppose Plaintiffs' motion for early discovery prior to resolution of Defendants'

27  anticipated motion to dismiss. Where a party moves to dismiss on jurisdictional grounds, a stay of

28  discovery is particularly appropriate. *See In re United States*, 138 S. Ct. 443, 445 (2017) (granting

writ of mandamus and directing district court to rule on Government's threshold arguments for dismissal before requiring completion of administrative record because "those arguments, if accepted, likely would eliminate the need for the District Court to examine a complete administrative record"); *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 675 (S.D. Cal. 2001) (noting courts "have routinely stayed discovery on the merits altogether while challenges to jurisdiction are pending"); 8A Charles Allan Wright et al., Federal Practice and Procedure § 2040 (3d ed. 2010).  This is because the "first and fundamental" question for any court is whether it has jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see also Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 778-79 (2000) ("Questions of jurisdiction, of course, should be given priority—since if there is no jurisdiction there is no authority to sit in judgment of anything else.") *see also Johnson v. Monsanto Co*., No. 16-00075 JMS-RLP, 2016 WL 2753445, at *1 (D. Haw. Apr. 20, 2016) (citing, e.g., *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (affirming district court's grant of protective order staying discovery pending resolution of motion to dismiss filed pursuant to Rule 12(b)(6)). In addition, even if this case were to proceed, it would be governed by the Administrative Procedures Act.  *See Chiayu Chang v. United States Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017).  Accordingly, discovery would still be inappropriate because this case would have to be decided based upon the administrative record as submitted by Defendant DHS.  See *id.*

**5.     Amendment of Pleadings**

Plaintiffs' Position:  Plaintiffs are presently investigating whether to amend their complaint within the time allotted in Federal Rule of Civil Procedure 15(a)(1)(B) to, among other things, include additional named plaintiffs who have been harmed by the recent terminations of TPS for Nepal (on April 26, 2018) and Honduras (on May 4, 2018).

Defendants' Position: Defendants maintain that any amendment of the pleadings would be futile because all challenges to TPS determinations are barred.

**6.     Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and will meet and confer regarding protocols for preserving evidence.

**7.    Disclosures**

The parties have not yet exchanged initial disclosures. The parties will meet and confer regarding initial disclosures and propose a reasonable timeline for exchange.

**8.    Discovery**

On May 2, 2018, the parties filed a joint letter brief concerning Plaintiffs' request to take early discovery to support a forthcoming preliminary injunction motion. Fed. R. Civ. P. 26(d)(1). Plaintiffs also served the following discovery requests on Defendants: a single interrogatory, two requests for admission, twelve requests for production, and a single Rule 30(b)(6) deposition.

The parties will also continue to meet and confer regarding additional discovery after the initial Case Management Conference on May 17, 2018.

**9.    Class Actions**

Plaintiffs' Position:  Representative Individual Minor Plaintiffs Crista Ramos, Benjamin Zepeda, Juan Eduardo Ayala Flores, Hnaida Cenemat, and Rilya Salary intend to seek certification of the following nationwide class: the U.S. citizen children, from ages five to eighteen, of all TPS holders from El Salvador, Haiti, Nicaragua, and Sudan. The parties will meet and confer regarding the briefing schedule for any class certification motion. Plaintiffs may add Honduran and/or Nepali plaintiffs by amending the complaint. If so, they will likely seek to add the American children of TPS holders from those two countries to the putative class.

Defendants' Position: Defendants intend to oppose any motion for class certification.  Defendants note, however, that there are several problems with a class action identifiable at the outset.  First, each country designation, and any following termination, relies on a different set of facts unique to the conditions within that country.  For example, a minor whose parent is a TPS holder based on the designation of Nicaragua would not be able to adequately represent the interests, or even necessarily share a common interest, with those impacted by the termination of Sudan's designation.  In addition, the decision-maker for these terminations is not even the same; Elaine Duke was the Acting Secretary who terminated the TPS designation for Haiti, Nicaragua, and Sudan, while the current Secretary Kristjen Nielsen terminated the designations for El Salvador, Honduras, and Nepal. Further, Plaintiffs have the additional problem that the loss of

1   TPS for two nationals of the same country can be impacted in very different ways. Any alien,

2   including those with TPS, may apply for adjustment of status if eligible.  Pursuant to 8 U.S.C. §

3   1254a(f)(4), certain aliens in TPS may even be considered as being in, and maintaining, lawful

4   status as a nonimmigrant. Although there is a circuit spilt on precisely how TPS might impact

5   adjustment of status, this nevertheless creates individualized questions concerning whether a

6   particular alien should be subject to removal after losing his or her TPS designation. *Ramirez v.*

7   *Brown*, 852 F.3d 954 (9th Cir. 2017) (providing that TPS satisfies the requirement that one must

8   have been lawfully admitted before one is eligible for adjustment of status); *Flores v. U.S.*

9   *Citizenship & Immigration Servs.*, 718 F.3d 548, 551–53 (6th Cir. 2013) (same); *but see Serrano v.*

10  *U.S. Attorney Gen.*, 655 F.3d 1260, 1265 (11th Cir. 2011) (per curiam).

11          Defendants also believe that class certification would be improper here because of the

12  number of related cases currently pending in other jurisdictions and the fact that certification here

13  under FRCP 23(b)(2) would be mandatory as to the entire class. *Wal-Mart Stores, Inc., v. Dukes*,

14  564 U.S. 338, 361-62 (2011) (under 23(b)(2), "the relief sought must perforce affect the entire class at

15  once");  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[A] federal court when asked to certify a

16  nationwide class should take care to ensure that … certification of such a class would not

17  improperly interfere with the litigation of similar issues in other judicial districts."). Defendants

18  would address these issues, as well as any other matters that arise, in due course upon review of any

19  motion Plaintiffs file seeking class certification.

20  **10.    Related Cases**

21          The parties are aware of the following cases that allege similar causes of action against

22  Defendants regarding the recent TPS terminations: *NAACP v. U.S. Dep't of Homeland Sec. et al.*,

23  No. 18-cv-00239-MJG (D. Md.) (complaint filed Jan. 24, 2018); *Centro Presente et al. v. Donald*

24  *J. Trump et al.*, No. 18-cv-10340 (D. Mass.) (complaint filed Feb. 22, 2018); *Saget et al. v. Donald*

25  *Trump et al.*, No. 18-cv-01599-WFK-ST (E.D.N.Y.) (complaint filed Mar. 15, 2018); *Casa De*

26  *Maryland, Inc. et al. v. Donald J. Trump et al.*, No. 8:18-cv-00845-GJH (D. Md.) (complaint filed

27  Mar. 23, 2018).

28

**11.     Relief**

Plaintiffs' Position:  Plaintiffs seek declaratory and injunctive relief. Plaintiffs further seek an award of attorneys' fees and costs, as well as any other additional relief that the Court may deem proper.

Defendants' Position: Defendants seek dismissal of this action.

**12.     Settlement and ADR**

The parties have not yet engaged in any settlement discussions and believe it is premature to specify an ADR plan for this litigation given the early stage of the proceedings and the parties' meet and confer efforts.

**13.     Consent to Magistrate Judge for All Purposes**

Plaintiffs' Position:  Plaintiffs decline to consent to a magistrate judge for all purposes.

Defendants' Position: Defendants decline to consent as well.

**14.     Other References**

At this time, the parties do not believe this case is suitable for reference to binding arbitration or a special master. Nor is this case suitable for the Judicial Panel on Multidistrict Litigation.

**15.     Narrowing of Issues**

The parties will continue to discuss the possibility of narrowing the issues beyond the motions described above.

**16.     Expedited Trial Procedure**

The parties do not believe that this case should be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

**17.     Scheduling**

The parties suggest that it is premature to set a schedule for all pretrial proceedings at this time and instead suggest scheduling the preliminary injunction proceedings in the first instance. If the Court wishes to proceed with a pretrial schedule at this time, the parties request a further opportunity to meet and confer, after which they will submit their proposal(s) to the Court.

9

**18.     Trial**

Plaintiffs have not requested a jury trial. The parties will meet and confer regarding the expected length of trial as the case progresses.

**19.     Disclosure of Non-Party Interested Entities or Persons**

The parties are unaware of any persons, firms, partnerships, corporations, or other entities that have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**20.     Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.     Other Matters**

The parties hereby agree to service by electronic means as set forth in Fed. R. Civ. P. 5(b)(2)(E), using the email(s) on the attached service list, which may be supplemented or changed by written notice.

Dated: May 10, 2018

SIDLEY AUSTIN LLP

By:     /s/ *Alycia A. Degen*
        Alycia A. Degen
        *Attorney for Plaintiffs*

Dated: May 10, 2018

U.S. DEPARTMENT OF JUSTICE

By:     /s/ *Rhett Martin*
        Rhett Martin
        *Attorney for Defendants*

10

1

### Attestation Pursuant to Civil Local Rule 5-1(i)(3)

2       Pursuant to Local Rule 5-1(i)(3), regarding signatures, Alycia A. Degen hereby attests that

3 concurrence in the filing of this document has been obtained from counsel for Defendants.

4

5 Dated: May 10, 2018                By: <u>/s/ *Alycia A. Degen*</u>

6                                       Alycia A. Degen
                                      SIDLEY AUSTIN LLP

7                                       555 West Fifth Street, Suite 4000
                                      Los Angeles, California 90013

8                                       (213) 896-6682
                                      adegen@sidley.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>SERVICE LIST</u>

2

3

Ahilan Thevanesan Arulanantham
ACLU OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Email: aarulanantham@aclusocal.org
*Counsel for Plaintiffs*

4

5

6

7

8

9

10

William S. Freeman
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm St.
San Francisco, CA 94111
Email: wfreeman@aclunc.org
*Counsel for Plaintiffs*

Emilou MacLean
NATIONAL DAY LABORER
ORGANIZING NETWORK
674 S La Fayette Park Place
Los Angeles, CA 90057
Email: emi@ndlon.org
*Counsel for Plaintiffs*

11

12

13

14

15

16

17

18

Jessica Karp Bansal
NATIONAL DAY LABORER
ORGANIZING NETWORK
674 S La Fayette Park Place
Los Angeles, CA 90057
Email: jbansal@ndlon.org
*Counsel for Plaintiffs*

19

20

21

22

Alycia Ann Degen
SIDLEY AUSTIN LLP
555 W. Fifth Street, Suite 4000
Los Angeles, CA 90013-1010
Email: adegen@sidley.com
*Counsel for Plaintiffs*

23

24

25

26

Nicole Marie Ryan
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Email: nicole.ryan@sidley.com
*Counsel for Plaintiffs*

27

28

1
2
3
4

Sean Ashley Commons
SIDLEY AUSTIN LLP
555 W. Fifth Street, Suite 4000
Los Angeles, CA 90013
Email: scommons@sidley.com
*Counsel for Plaintiffs*

5
6
7
8

Ryan M. Sandrock
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Email: rsandrock@sidley.com
*Counsel for Plaintiffs*

9
10
11
12

Amanda Robin Farfel
SIDLEY AUSTIN LLP
555 W. Fifth Street, Suite 4000
Los Angeles, CA 90013
Email: afarfel@sidley.com
*Counsel for Plaintiffs*

13
14
15
16

Andrew Brian Talai
SIDLEY AUSTIN LLP
555 W. 5th Street, Suite 4000
Los Angeles, CA 90013
Email: atalai@sidley.com
*Counsel for Plaintiffs*

17
18
19
20

Marisol Ramirez
SIDLEY AUSTIN LLP
555 W. Fifth Street, Suite 4000
Los Angeles, CA 90013
Email: marisol.ramirez@sidley.com
*Counsel for Plaintiffs*

21
22
23
24
25

Rhett Martin
U.S. Department of Justice
Federal Programs Branch
20 Massachusetts
Washington, DC 20529
Email: rhett.martin@usdoj.gov
*Counsel for Defendants*

26
27
28

JOINT CASE MANAGEMENT STATEMENT – CASE NO. 3:18-cv-1554-EMC