CHAD A. READLER
Acting Assistant Attorney General
Civil Division
JOHN R. TYLER
Assistant Branch Director
RHETT P. MARTIN
Trial Attorney
DC Bar No. 999272
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: (202) 305-7538
Fax: (202) 616-8460
Rhett.martin@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRISTA RAMOS*, et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>KIRSTJEN NIELSEN, *et al.*,<br><br>Defendants. | Case No. 3:18-cv-01554-EMC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**Judge:  Honorable Edward M. Chen<br>Hearing:  June 22, 2018, 10:30 a.m.<br>Place:  San Francisco U.S. Courthouse, Courtroom 5, 17th Floor** |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – No. 3:18-cv-1554

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.   Congress Plainly and Expressly Excludes Review of TPS
Determinations Pursuant to 8 U.S.C. § 1254a(b)(5)(A), Thereby
Denying This Court Subject-Matter Jurisdiction over Plaintiffs'
Claims. ................................................................................................................ 1

II.  U.S. Citizen Plaintiffs' Novel Substantive Due Process Claim Is
Irreconcilable with a Long Line of Precedent and Is Utterly Unworkable. ..................... 6

III. Noncitizen Plaintiffs' Equal Protection Theory Fails Because Plaintiffs
Have Not Alleged Facts from Which the Court Could Infer "Clear Evidence"
of "Outrageous" Discrimination. ..................................................................... 7

IV.  Noncitizen Plaintiffs' Due Process Theory Fails Because The Inevitable
Termination of a Temporary Relief Program Did Not Deprive Plaintiffs
of a Liberty or Property Interest .................................................................... 10

V.   Noncitizen Plaintiffs' APA Arbitrary-and-Capricious Theory Fails Because
The Secretaries' Exercise of Judgment in Balancing the Facts and
Circumstances Surrounding Each TPS Determination Does Not Amount
to a "New Rule." ............................................................................................ 12

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Am. Wild Horse Pres. Campaign v. Perdue,*

    873 F.3d 914 (D.C. Cir. 2017) .................................................................................................. 14

*Avenue 6E Invs., LLC v. City of Yuma,*

    818 F.3d 493 (9th Cir. 2016) ..................................................................................................... 8

*Back v. Hastings on Hudson Union Free Sch. Dist.,*

    365 F.3d 107 (2d Cir. 2004) ....................................................................................................... 9

*Batalla Vidal v. Nielsen,*

    291 F. Supp. 3d 260 (E.D.N.Y. 2018) ....................................................................................... 8

*Batalla Vidal v. Nielsen,*

    No. 16-cv-4756, 2018 WL 333515 (E.D.N.Y. Jan. 8, 2018) ..................................................... 8

*Bd. of Regents of State Colleges v. Roth,*

    408 U.S. 564 (1972) ................................................................................................................. 11

*Bustamante v. Mukasey,*

    531 F.3d 1059 (9th Cir. 2008) ................................................................................................... 6

*Cal. Pub. Util. Comm'n v. Fed. Energy Regulatory Comm'n,*

    879 F.3d 966 (9th Cir. 2018) ................................................................................................... 14

*Cardenas v. United States,*

    826 F.3d 1164 (9th Cir. 2016) ............................................................................................... 6, 7

*Cuozzo Speed Technologies, LLC v. Lee,*

    136 S. Ct. 2131 (2016) ............................................................................................................... 4

*Elgin v. Dep't of Treasury,*

    567 U.S. 1 (2012) ....................................................................................................................... 5

*Encino Motorcars, LLC v. Navarro,*

    136 S. Ct. 2117 (2016) ............................................................................................................. 14

*Gebhardt v. Nielsen,*

    879 F.3d 980 (9th Cir. 2018) ..................................................................................................... 7

*Hadayat v. Gonzales,*
  458 F.3d 659 (7th Cir. 2006) ........................................................................... 8

*Huntington Hosp. v. Thompson,*
  319 F.3d 74 (2d Cir. 2003) ............................................................................. 14

*Immigrant Assistance Project of the L.A. Cty. Fed'n of Labor (AFL-CIO) v. INS,*
  306 F.3d 842 (9th Cir. 2002) ........................................................................... 3

*INS v. St. Cyr,*
  533 U.S. 289 (2001) ......................................................................................... 3

*Johnson v. Robinson,*
  415 U.S. 361 (1974) ......................................................................................... 4

*Kandamar v. Gonzales,*
  464 F.3d 65 (1st Cir. 2006) ............................................................................. 8

*Kwai Fun Wong v. United States,*
  373 F.3d 952 (9th Cir. 2004) ..................................................................... 8, 11

*McNary v. Haitian Refugee Center, Inc.,*
  498 U.S. 479 (1991) ......................................................................................... 2

*Meachum v. Fano,*
  427 U.S. 215 (1976) ....................................................................................... 11

*Motor Vehicle Mfgs. Ass'n v. State Farm Mutual Auto. Ins. Co.,*
  463 U.S. 29 (1983) ......................................................................................... 14

*Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.,*
  477 F.3d 668 (9th Cir. 2007) ......................................................................... 14

*Patchak v. Zinke,*
  138 S. Ct. 897 (2018) ....................................................................................... 5

*Poland v. Chertoff,*
  494 F.3d 1174 (9th Cir. 2007) ......................................................................... 8

*Proyecto San Pablo v. INS,*
  189 F.3d 1130 (9th Cir. 1999) ......................................................................... 3

*Reno v. American-Arab Anti-Discrimination Comm.* ("*AADC*"),
   525 U.S. 471 (1999).............................................................................7

*Reno v. Catholic Social Services, Inc.*,
   509 U.S. 43 (1993)..........................................................................2, 3

*Rohit v. Holder*,
   670 F.3d 1085 (9th Cir. 2012) .......................................................5-6

*Traynor v. Turnage*,
   485 U.S. 535 (1988)..........................................................................4

*United States v. Tucor Int'l, Inc.*,
   189 F.3d 834 (9th Cir. 1999) ...........................................................1

*Webster v. Doe*,
   486 U.S. 592 (1988).....................................................................4, 5

**STATUTES**

5 U.S.C. § 701 ...................................................................................13

8 U.S.C. § 1182 .................................................................................11

8 U.S.C. § 1252 ...................................................................................4

8 U.S.C. § 1254a .........................................................................*passim*

8 U.S.C. § 1255a ..................................................................................3

28 U.S.C. § 1292 .................................................................................8

Immigration Act of 1990,
   Pub. L. No. 101-649, 104 Stat. 4978 ..............................................4

Omnibus Consolidated Appropriations Act, 1997,
   Pub. L. No. 104-208, 110 Stat. 3009 (1996).....................................4

**REGULATIONS**

*Termination of the Province of Kosovo in the Republic of Serbia in the State of the
   Federal Republic of Yugoslavia (Serbia-Montenegro) Under the Temporary Protected
   Status Program,*
   65 Fed. Reg. 33,356-01 (May 23, 2000)...........................................13

*Extension of the Designation of Nicaragua Under the Temporary Protected Status Program*,

66 Fed. Reg. 23,271-01 (May 8, 2001) ................................................................. 11

*Termination of Designation of Angola Under the Temporary Protected Status Program*,

68 Fed. Reg. 3896-01 (Jan. 27, 2003) .................................................................. 13

*Termination of the Designation of Montserrat Under the Temporary Protected*

*Status Program*,

69 Fed. Reg. 40,642-01 (July 6, 2004) ........................................................... 12, 13

*Termination of the Designation of Burundi for Temporary Protected Status*,

72 Fed. Reg. 61,172-02 (Oct. 29, 2007) ................................................................ 12

*Extension of the Designation of Nicaragua for Temporary Protected Status*,

75 Fed. Reg. 24,737-01 (May 5, 2010) ................................................................. 13

*Extension of the Designation of El Salvador for Temporary Protected Status*,

77 Fed. Reg. 1710-02 (Jan. 11, 2012) .................................................................. 11

*Extension and Redesignation of Sudan for Temporary Protected Status*,

78 Fed. Reg. 1872-01 (Jan. 9, 2013) .................................................................... 11

*Extension of the Designation of Haiti for Temporary Protected Status*,

79 Fed. Reg. 11,808-01 (Mar. 3, 2014) ................................................................ 11

*Extension of the Designation of Sudan for Temporary Protected Status*,

79 Fed. Reg. 52,027-01 (Sept. 2, 2014) ................................................................ 13

*Extension of the Designation of Haiti for Temporary Protected Status*,

80 Fed. Reg. 51,582 (Aug. 25, 2015) .................................................................... 13

*Extension of the Designation of El Salvador for Temporary Protected Status*,

81 Fed. Reg. 44,645-03 (July 8, 2016) .................................................................. 13

*Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition*

*Before Termination of Guinea's Designation for Temporary Protected Status*,

81 Fed. Reg. 66,064 (Sept. 26, 2016) .................................................................... 12

*Extension of South Sudan for Temporary Protected Status*,

82 Fed. Reg. 44,205-01 (Sept. 21, 2017) ................................................................ 9

*Extension of the Designation of Honduras for Temporary Protected Status*,

   82 Fed. Reg. 59,630-02 (Dec. 15, 2017).........................................................................9

*Extension of the Designation of Syria for Temporary Protected Status*,

   83 Fed. Reg. 9329-02 (March 5, 2018)..........................................................................9

**OTHER AUTHORITIES**

H.R. Rep. No. 101-245 (1989)............................................................................................5

DHS, Statement by Secretary Johnson Concerning His Directive to Resume

Regular Removals to Haiti (Sept. 22, 2016),

   https://www.dhs.gov/news/2016/09/22/statement-secretary-johnson-concerning-his-directive-

   resume-regular-removals-haiti..................................................................................9

**INTRODUCTION**

To avoid dismissal of this action, Plaintiffs now try to reframe their allegations to suggest that they "do not challenge any 'determination' to terminate [Temporary Protected Status ("TPS")]." Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n) at 11, ECF No. 23; *see also id.* at 12 ("Because Plaintiffs do not challenge any particular decision to terminate TPS for any particular country, they have not challenged a 'determination'[.]"). Yet, the relief they seek contradicts this assertion. *See* Compl., at 35, ECF No. 1 (asking the Court to "[d]eclare that Defendants' termination of the TPS designations for El Salvador, Nicaragua, Haiti, and Sudan, was unconstitutional under the Due Process Clause of the Fifth Amendment and unlawful under the Administrative Procedure Act[.]"). To be clear, Plaintiffs do not seek an order requiring the Secretary of Homeland Security to reconsider the TPS terminations in light of the standard they allege prior administrations applied. They ask this Court to rescind the terminations of TPS for Sudan, Nicaragua, Haiti, and El Salvador. This fatally undermines their attempts both to evade the bar on judicial review in 8 U.S.C. § 1254a(b)(5)(A) and to meet the pleading standard of Rule 12(b)(6) by reframing their suit as a challenge to the Secretaries' interpretation of the TPS provisions of the Immigration and Nationality Act ("INA"). For the reasons explained below, Plaintiffs suit should be dismissed.

**ARGUMENT**

**I. Congress Plainly and Expressly Excludes Review of TPS Determinations Pursuant to 8 U.S.C. § 1254a(b)(5)(A), Thereby Denying This Court Subject-Matter Jurisdiction over Plaintiffs' Claims.**

The TPS provision of the INA unambiguously provides that there is "no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. § 1254a(b)(5)(A). Congress included no proviso or exception to that bar. The statutory language requires the Court to dismiss all claims for lack of subject-matter jurisdiction. *See United States v. Tucor Int'l, Inc.*, 189 F.3d 834, 836 (9th Cir. 1999) ("Where a statute is unambiguous, its plain meaning controls if it does not lead to absurd or impracticable consequences." (citation omitted)).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – No. 3:18-cv-1554 - 1

1    Plaintiffs attempt to avoid the straightforward application of this provision by

2    characterizing their challenge as to a purported "new rule" allegedly applied by the Secretaries in

3    making their TPS determinations rather than to the determinations themselves. Plaintiffs' "new

4    rule" theory fails on its merits, as discussed below. But even if Plaintiffs could show that the

5    Secretaries exercise their discretion differently than did Secretaries in past Administrations, that

6    would simply be another theory for challenging TPS decisions with which Plaintiffs disagree.

7    That, after all, is exactly what Plaintiffs are doing here: challenging TPS decisions. Their

8    operative complaint makes this clear: they ask the Court to declare that the termination of TPS

9    for El Salvador, Nicaragua, Haiti, and Sudan "was unconstitutional . . . and unlawful," and they

10   further ask the Court to "restrain all Defendants . . . from implementing or enforcing the

11   decisions to terminate the TPS designations" for these countries." Compl. at 35. Congress was

12   not required in § 1254a(b)(5)(A) to anticipate all artful pleadings and legal arguments that future

13   parties might advance; it is enough that what Plaintiffs ask this Court to do is to review and

14   enjoin "determination[s] of [DHS Secretaries] with respect  to the . . . . termination of a [TPS]

15   designation . . ." *Id.*

16   Plaintiffs rely on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), and *Reno*

17   *v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993), Pls.' Opp'n at 11, but both cases are readily

18   distinguishable. *McNary* addressed whether a provision of the Immigration Reform and Control

19   Act of 1986 ("Reform Act"), which channeled judicial review of determinations concerning

20   special agricultural worker ("SAW") status to removal proceedings, barred the district court from

21   considering plaintiffs' challenge to an alleged "pattern or practice of due process violations by

22   the Immigration and Naturalization Service (INS) in its administration of the SAW program."

23   498 U.S. at 483. The Court held that district court jurisdiction could lie over such an action, as

24   the channeling provision applied to review of individual denials rather than "collateral challenges

25   to unconstitutional practice and policies." *Id.* at 492. The Court observed that plaintiffs did "not

26   seek a substantive declaration that they [were] entitled to SAW status"; even if they prevailed on

27   the merits, they would "only be entitled to have their case files reopened and their applications

28   reconsidered in light of . . . newly prescribed INS procedures." *Id.* at 495. As concerns the

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – No. 3:18-cv-1554 - 2

present case, however, the relief awarded in *McNary*—a reconsideration of SAW applications in light of new procedures—demonstrates why the holding in that case is inapplicable to Plaintiffs' claims here, which seek total rescission of the Secretaries' TPS terminations.

*Catholic Social Services* also addressed the Reform Act, and specifically whether the district court had jurisdiction to hear challenges to regulations promulgated pursuant to that Act. While remanding for a further inquiry into ripeness, the Court rejected the INS's argument that a provision withholding "judicial review" of "a determination respecting an application for adjustment of status under this section," 8 U.S.C. § 1255a(f)(1), "precludes district court jurisdiction over an action challenging the legality of a regulation without referring to or relying on the denial of any individual application," 509 U.S. at 56.

In this case, unlike in *McNary* and *Catholic Social Services*, Plaintiffs are challenging discrete TPS determinations, and they are seeking declaratory and injunctive relief that would undo those determinations. This litigation does not, therefore, involve some collateral challenge to DHS's policies and procedures, nor does it concern the legality of DHS regulations. It rather involves the country-based determinations that lie at the core of both the Secretary's TPS authority and Section 1254a(b)(5)(A)'s limitation on judicial review.[1]

Plaintiffs next contend that § 1254a(b)(5)(A) "cannot bar Plaintiffs' claims because they are not brought 'under this subsection.'" Pls.' Opp'n at 12. The idea, apparently, is that because Plaintiffs bring constitutional and Administrative Procedure Act ("APA") arbitrary-and-capricious claims rather than INA claims, Section 1254a(b)(5)(A)'s limitation on judicial review should not apply to them. Plaintiffs, however, have misread the statute.

---

[1] Plaintiffs' remaining citations, *see* Pls.' Opp'n at 12, are irrelevant as they all relate to collateral challenges as well.  *See INS v. St. Cyr*, 533 U.S. 289 (2001) (Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and Antiterrorism and Effective Death Penalty Act of 1996 did not deprive federal courts of habeas jurisdiction over claim by alien subject to removal); *Immigrant Assistance Project of the L.A. Cty. Fed'n of Labor (AFL-CIO) v. INS*, 306 F.3d 842 (9th Cir. 2002) (provision in Reform Act did not prevent class action challenging procedures by which aliens were required to prove eligibility for adjustment of status); *Proyecto San Pablo v. INS*, 189 F.3d 1130, 1138 (9th Cir. 1999) (provision in Reform Act did not bar plaintiffs from challenging "procedures by which . . . legalization program is administered" and, specifically, their ability to access prior deportation records in a timely fashion).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – No. 3:18-cv-1554 - 3

Section 1254a(b)(5)(A) does not bar review of *claims* brought "under this subsection," but rather bars review of *TPS determinations* made "under this subsection." That is true whether a plaintiff is challenging a TPS termination or a plaintiff is challenging a TPS designation. The TPS determinations challenged here were plainly made "under" Section 1254a(b), and are therefore unreviewable. In this respect, the jurisdictional bar here is much broader than the provision at issue in *Johnson v. Robinson*, 415 U.S. 361 (1974), and *Traynor v. Turnage*, 485 U.S. 535 (1988), which insulated from judicial review "decisions of the Administrator [of Veterans' Affairs] on any question of law or fact *under any law administered by the Veterans' Administration providing benefits for veterans*" (emphasis added).[2]

As a fallback, Plaintiffs argue that even if § 1254a(b)(A) bars their APA arbitrary-and-capricious claim (as it plainly does), it cannot bar their constitutional claims. Pls.' Opp'n at 13, 15. For authority, Plaintiffs turn to 8 U.S.C. § 1252(b)(9), a separate provision in the INA that references constitutional provisions. Plaintiffs suggest that if Congress meant to include constitutional claims within the ambit of § 1254a(b)(5)(A), it would have done so explicitly. But § 1254a(b)(5)(A) does not purport to apply to some subset of claims: by its terms, it reaches *all claims* challenging TPS determinations. It should come as no surprise that different provisions of the INA, enacted at different times by different congresses, may use different language to convey similar intent. *Compare* Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, § 306, 110 Stat. 3009 (1996) (adding language that now appears in § 1252(b)(9)), *with* Immigration Act of 1990, Pub. L. No. 101-649, § 302, 104 Stat. 4978 (creating TPS). Congress's intent to preclude constitutional and other claims through § 1254a(b)(5)(A) is far clearer than its intent in the provision of the National Security Act of 1947 at issue in *Webster v. Doe*, which obliquely described the Director of Central Intelligence's "discretion" in employment-related

---

[2] In addition to *Johnson* and *Traynor*, Plaintiffs cite the more recently decided *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016). Pls.' Opp'n at 12. That is an odd choice:  in *Cuozzo*, the Supreme Court found that a provision concerning judicial review of the Patent Office's decision whether to institute *inter partes* review *blocked* review of the plaintiff's claim.  The Court expressly *did not* decide "the precise effect of [the statute] on appeal[] that implicate constitutional questions, that depend on other less closely related statutes, or that present other questions of interpretation that reach, in terms of scope and impact, well beyond" the inter partes review statute. *Id.* at 2141.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – No. 3:18-cv-1554 - 4

matters but said nothing about judicial review. 486 U.S. 592, 603 (1988). This point is further confirmed by the legislative history. H.R. Rep. No. 101-245, at 14 ("Moreover, *none* of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review." (emphasis added)).

Plaintiffs complain that the potential avenue for review of their constitutional claims through future removal proceedings is "hardly reassuring" to current TPS recipients.  Pls.' Opp'n at 14.  That may be so, but the solution to their concern lies in Congress, not this Court. If Plaintiffs believe that the TPS statute as drafted is not working the way they think it should, Plaintiffs should petition Congress to amend the statute. Congress created TPS inclusive of its limitations on judicial review, and Congress can modify the statute as it deems appropriate. But the Court cannot disregard the clear constraints that Congress built into the statutory framework, even if the Court is sympathetic to Plaintiffs' fears. Nor should the Court be quick to disregard Congress's effort to channel constitutional and other claims into particular, limited fora, a technique that the Supreme Court has blessed. *Cf. Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) (rejecting plaintiff's reliance on *Webster v. Doe* where Civil Service Reform Act of 1978 channeled claims, *including* constitutional claims, arising from adverse employment actions to the Merit Systems Protection Board and the Federal Circuit).

Finally, to the extent the Court finds that some putative plaintiffs (such as those who may leave the country voluntarily to avoid immigration enforcement proceedings) might not have a viable mechanism to litigate their constitutional challenge, the Supreme Court has never held that Congress is forbidden from closing off judicial review to particular classes of claimants or claims. *See Patchak v. Zinke*, 138 S. Ct. 897, 907 (2018) (plurality opinion) ("Congress generally does not infringe the judicial power when it strips jurisdiction because, with limited exceptions, a congressional grant of jurisdiction is a *prerequisite* to the exercise of judicial power.").[3]

---

[3] Plaintiffs argue in the alternative that the Court should exercise jurisdiction over the substantive due process claim brought by U.S. citizen children, as the relief the children seek "does not require reversal of the TPS decisions, but instead only some form of temporary status for parents until their children reach adulthood." Pls.' Opp'n at 15.  Plaintiffs cite no authority for the astounding proposition that this Court could create a new immigration status from whole cloth, never mind Congress's "plenary power over immigration," *Rohit v. Holder*, 670 F.3d

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.  U.S. Citizen Plaintiffs' Novel Substantive Due Process Claim Is Irreconcilable with a Long Line of Precedent and Is Utterly Unworkable.

Plaintiffs' assert that their substantive due process claim "does not require reversal of the TPS decisions, but instead only some form of temporary status for parents until their children reach adulthood." Pls.' Opp'n at 15. This, as argued above, is a novel approach to get around the fact that Congress has barred judicial review of TPS decisions. But, more to the point, Plaintiffs are asking this Court to create a new immigration status that allows TPS beneficiaries to remain in this country until their children reach the age of majority. No authority would support such a proposition and this alone shows the fallacy of Plaintiffs' "family integrity" claim.

Plaintiffs' "family integrity" due process argument attempts to distinguish a long line of cases rejecting, without exception, this type of claim on the basis that "Defendants identify no interest applicable to *these* parents, all of whom have *lawfully resided* here for decades *without significant history*, and none of whom have done anything, let alone a criminal act, to prompt the Government's policy change." Pls.' Opp'n at 30. This argument puts the cart before the horse. TPS is the precondition for their right to remain unless a non-citizen parent is eligible for adjustment of status or some other basis for legal residence. Thus, their lawful residence is *because of* TPS. It would turn the TPS framework on its head to require the Government to explain a TPS termination for any reason other than the statutorily-defined criteria.

Furthermore, the cases Plaintiffs' cite do not support their claim. In particular, both *Bustamante v. Mukasey*, 531 F.3d 1059 (9th Cir. 2008) and *Cardenas v. United States*, 826 F.3d 1164 (9th Cir. 2016) rejected challenges to the denials of visa applications brought by citizen spouses of foreign nationals. In both cases, the Ninth Circuit found the denials were based on "facially legitimate and bona fide" reasons. *Bustamante*, 531 F.3d at 1060 ("when a U.S. citizen's constitutional rights are alleged to have been violated by the denial of a visa to a foreigner, we undertake a highly constrained review solely to determine whether the consular

1085, 1087 (9th Cir. 2012).  That baseless proposition cannot be a hook for subject-matter jurisdiction here.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of [a] federal claim is proper . . . when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'").

official acted on the basis of a facially legitimate and bona fide reason."); *Cardenas*, 826 F.3d at

1172. These cases merely stand for the proposition that visa applicants with U.S. relatives have a

right to a visa adjudication based on "facially legitimate and bona fide" grounds. That is quite

distinct from a child's alleged right for a parent to remain in the United States even if the

statutory conditions for a TPS designation are no longer satisfied.

Plaintiffs additionally argue that their "forced choice" theory distinguishes the numerous

cases cited by Defendants that hold that "the generic right to live with family is far removed

from the specific right to reside in the United States with non-citizen family members."

*Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018); *see also* Defs.' Mot. to Dismiss ("Defs.'

MTD") at 27–29, ECF No. 20. But, if this theory were true, every child who is a United States

citizen could challenge the deportation of a non-citizen relative on substantive due process

grounds—at least until the child reached the age of majority. Despite Plaintiffs' attempts to get

around this simple fact, every case of which Defendants are aware has rejected such an

argument. *See* Defs.' MTD at 27–31.

### III. Noncitizen Plaintiffs' Equal Protection Theory Fails Because Plaintiffs Have Not Alleged Facts from Which the Court Could Infer "Clear Evidence" of "Outrageous" Discrimination.

Plaintiffs contend that, accepting their factual allegations as true, they have "satisfied the

*Arlington Heights* standard" for purposes of establishing that the challenged TPS decisions were

tainted by discriminatory animus. Pls.' Opp'n at 18-19. Defendants disagree that Plaintiffs have

satisfied *Arlington Heights*, but it does not matter in the end, because that standard is

inapplicable in this context. Even accepting the strained proposition that the Secretaries' country-

based determinations are tantamount to classifications between groups of persons so as to trigger

equal protection (notwithstanding Plaintiffs' failure to identify any similarly situated group that

has been treated more favorably), the correct standard for assessing allegations of animus in this

immigration context is the standard articulated by the Supreme Court in *Reno v. American-Arab*

*Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471 (1999). *AADC* reasons that, even assuming

a selective-enforcement challenge against immigration officials could be cognizable, such a

challenge would require "clear evidence" of "outrageous" discrimination, *id.* at 489, 491. Courts

have extended the logic of *AADC* to enforcement actions that occur in the context of broader, programmatic policies related to country specifics. *See Kandamar v. Gonzales*, 464 F.3d 65, 73-74 (1st Cir. 2006) ("Petitioner argues in conclusory fashion that the classification based on national origin [required pursuant to NSEERS] violates equal protection principles.  Every court to address the issue has rejected a challenge to NSEERS registration on equal protection grounds. . . . To be sure, Moroccan nationals were required to register with DHS while a person in the same situation but not from one of the NSEERS countries would not have been placed in removal proceedings.  However, a claim of selective enforcement based on national origin is virtually precluded by [*AADC*] . . . ."); *Hadayat v. Gonzales*, 458 F.3d 659, 665 (7th Cir. 2006) ("Although [*AADC*] leaves open a narrow exception for the 'rare case in which the alleged basis of discrimination is . . . outrageous . . .' Hadayat's conclusory comments regarding the allegedly discriminatory effect of NSEERS do not come close to meeting this high burden."). Plaintiffs do not meaningfully distinguish *Kandamar* and *Hadayat*.  Instead, they declare that "claims of intentional discrimination by the government on the basis of race . . . are always subject to strict scrutiny." Pls.' Opp'n at 27. But for authority, Plaintiffs rely primarily on cases involving affirmative action—far afield from the immigration context.  (For that matter, *Arlington Heights* itself has nothing to do with immigration policy.)[4]

---

[4] *Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004), which predated *Kandamar* and *Hadayat*, is distinguishable, as it involved a run-of-the-mill *Bivens* action against INS officials who allegedly denied the plaintiff "various immigration benefits because of her membership in a protected class." *Id.* at 970.  The plaintiff did not challenge the exercise of prosecutorial discretion, nor did she challenge a broad, programmatic policy executed in furtherance of immigration enforcement, like NSEERS or the TPS decisions here.

In resisting application of the *AADC* standard, Plaintiffs also cite *Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260 (E.D.N.Y. 2018), which addressed the Administration's decision to rescind Deferred Action for Childhood Arrivals ("DACA"). The Government respectfully disagrees with the district court's analysis in *Batalla Vidal*, which is certainly not controlling in this Court. Furthermore, the district court granted the Government's request for interlocutory review of its decision on its motion to dismiss and is awaiting the Second Circuit's ruling on its application under 28 U.S.C. § 1292(b). *See Batalla Vidal v. Nielsen*, 2018 WL 333515, at *1 (E.D.N.Y. Jan. 8, 2018).

Plaintiffs' other citations are too factually remote from the immigration context to be instructive.  *See Avenue 6E Invs., LLC v. City of Yuma*, 818 F.3d 493 (9th Cir. 2016) (zoning discrimination), *cert. denied*, 137 S. Ct. 295 (2016); *Poland v. Chertoff*, 494 F.3d 1174 (9th Cir.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – No. 3:18-cv-1554 - 8

As to the merits, Plaintiffs have not adequately alleged that the Secretaries' decisions were based on race or national origin. As an initial matter, Plaintiffs' attempt to show the inherent arbitrariness of the decision does not withstand further review. For example, with regard to the decision on Haiti, Acting Secretary Duke's recognition of improving country conditions is consistent with the findings the previous year by then-Secretary Jeh Johnson that Haiti had sufficiently improved to resume regular removals. *See* DHS, Statement by Secretary Johnson Concerning His Directive to Resume Regular Removals to Haiti (Sept. 22, 2016), https://www.dhs.gov/news/2016/09/22/statement-secretary-johnson-concerning-his-directive-resume-regular-removals-haiti (hereinafter Sec'y Johnson Statement).

Likewise, as explained in the Federal Register notices, Secretaries Duke and Nielsen provided coherent rationales for their decisions.  They found that Sudan's violence had abated, Nicaragua's economy and infrastructure had improved, Haiti had recovered from its 2010 earthquake, and El Salvador had demonstrated the ability to accept the return of its nationals. *See* Dfs.' MTD at 34–5.

Plaintiffs' reliance on a cat's paw theory of indirect discrimination is similarly unavailing. Again, Plaintiffs do not identify any animus on behalf of Secretaries Duke and Nielsen, the statutorily designated decisionmakers. But, in any event, the evidence Plaintiffs put forth undermines their theory. Of course something of this nature would involve the White House but that does not mean that Secretaries Duke and Nielsen did not independently consider the evidence before them in making their decisions. For example, Plaintiffs' attempt to show pressure on Acting Secretary Duke to terminate Honduras, but Acting Secretary Duke did not terminate TPS for Honduras. *Extension of the Designation of Honduras for Temporary Protected Status*, 82 Fed. Reg. 59,630-02 (Dec. 15, 2017). Similarly, she extended it for South Sudan. *See Extension of South Sudan for Temporary Protected Status*, 82 Fed. Reg. 44,205-01, 44,206 (Sept. 21, 2017). And, Secretary Nielsen extend TPS for Syria. *Extension of the Designation of Syria for Temporary Protected Status*, 83 Fed. Reg. 9329-02 (March 5, 2018).

---

2007) (employment discrimination); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004) (employment discrimination).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – No. 3:18-cv-1554 - 9

1

In the end, Plaintiffs' attempt to bring this case—a case involving the programmatic

2

administration of an immigration statute—under the rubric of *Arlington Heights* fails. The

3

Government was only required to give a legitimate, facially bona fide reason for termination of

4

TPS for the countries challenged here. It did so. Furthermore, without any plausible allegations

5

that the Secretaries made these decisions based on personal animus, Plaintiffs' equal-protection

6

claim must likewise fail.

7
8

**IV. Noncitizen Plaintiffs' Due Process Theory Fails Because The Inevitable Termination of a Temporary Relief Program Did Not Deprive Plaintiffs of a Liberty or Property Interest.**

9

Plaintiffs' "arbitrary action" due process claim should be dismissed. There is no merit to

10

Plaintiffs' remarkable claim that a TPS designation somehow confers a constitutionally protected

11

liberty or property interest of the sort required to support a due process claim. And, even if TPS

12

did confer such a right (which it most certainly does not), the Secretaries' TPS terminations here

13

were imminently reasonable.

14

Plaintiffs' theory is that, once designated, the Secretary of Homeland Security has no

15

discretion to terminate a TPS designation. Pls.' Opp'n at 3 (TPS statute creates "a mandatory

16

duty"); *id.* at 28 ("[T]he statute gives Plaintiff TPS holders a legitimate claim of entitlement to,

17

and expectation that, once a country is designated for TPS, it will retain such designation where

18

conditions so warrant."). This theory belies Plaintiffs' representations elsewhere that they are not

19

challenging "any particular TPS termination decision—*i.e.*, any 'determination'—but rather the

20

underlying rule adopted by the Trump Administration for its recent decisions." Pls.' Opp'n at 10.

21

As Plaintiffs' due process claim makes clear, they are asking this Court to make its own

22

independent assessment of whether "conditions so warrant" continued TPS designations for the

23

countries at issue here—an assessment that Congress entrusted to the Secretary of Homeland

24

Security, in consultation with other interested U.S. Government agencies.

25

In any event, Plaintiffs simply mischaracterize the statute in arguing that it imposes an

26

entirely non-discretionary obligation, devoid of any exercise of judgment on the part of the

27

Secretary, of the type that would create a legally cognizable liberty or property interest. The

28

statute requires the Secretary of Homeland Security to conduct a periodic review to "determine

whether the conditions for such designation under this subsection continue to be met." 8

U.S.C.A. § 1254a(b)(3)(A). That analysis necessarily entails an assessment of the variety of the

foreign policy and humanitarian considerations that lie uniquely within the competence of the

Executive. This analysis, by its very nature, requires an exercise of discretionary judgment

concerning relevant conditions in a foreign country, the sort of which courts have long held to be

immune from judicial second-guessing. *See Kwai Fun Wong v. United States*, 373 F.3d 952,

967–68 (9th Cir. 2004) ("We can discern no substantive liberty or property interest, however, in

temporary parole status" under 8 U.S.C. § 1182(d)(5)(A) because "the statute makes clear that

whether and for how long temporary parole is granted are matters entirely within the discretion

of the Attorney General."); *see also Meachum v. Fano*, 427 U.S. 215, 228 (1976) (holding that a

prisoner's interest in not being transferred to another prison facility is "too emphemeral and

insubstantial to trigger procedural due process protections as long as prison officials have

discretion to transfer him"); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)

(explaining that to possess a property interest in a government benefit, an individual must

possess "a legitimate claim of entitlement to it").

Indeed, Plaintiffs omit the fact that the statute makes the *termination* of TPS mandatory if

the Secretary finds that the conditions no longer meet the statutory criteria. *See* 8 U.S.C. §

1254a(b)(3)(B) ("If the [Secretary] determines . . . that a foreign state . . . no longer continues to

meet the conditions for designation . . , the [Secretary] *shall terminate* the designation by

publishing notice in the Federal Register[.]" (emphasis added)). They likewise omit the fact that

the *Federal Register* notices regarding TPS routinely emphasized the temporary nature of the

benefit and advised that it would not be indefinite. *See, e.g.*, *Extension of the Designation of

Haiti for Temporary Protected Status*, 79 Fed. Reg. 11,808-01, 11,808 (Mar. 3, 2014) ("There

continues to be a substantial, but temporary, disruption of living conditions in Haiti[.]");

*Extension of the Designation of Nicaragua Under the Temporary Protected Status Program*, 66

Fed. Reg. 23271-01, 23,272 (May 8, 2001) (extending TPS for Nicaragua after "[b]alancing the

need for additional time for recovery efforts with the temporal nature of the TPS benefit");

*Extension and Redesignation of Sudan for Temporary Protected Status*, 78 Fed. Reg. 1872-01,

1872 (Jan. 9, 2013) ("There continues to be . . . temporary disruption of living conditions in Sudan[.]"); *Extension of the Designation of El Salvador for Temporary Protected Status*, 77 Fed. Reg. 1710-02, 1712 (Jan. 11, 2012) (same). For these reasons, Plaintiffs' argument that TPS gives rise to a liberty or property interest cognizable under the Due Process Clause fails.

Furthermore, even if TPS did give rise to such liberty or property interests (which it does not), the Secretaries' decisions with respect to these countries cannot be characterized as arbitrary. As explained in the Government's Motion to Dismiss, each termination was based on the Secretaries' determinations that Sudan, Nicaragua, Haiti, and El Salvador no longer met the statutory criteria for TPS. *See* Defs.' MTD at 34-5. The explanations given in the *Federal Register* notices comport with the various explanations given by prior administrations when terminating TPS. *See, e.g.*, *Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Guinea's Designation for Temporary Protected Status*, 81 Fed. Reg. 66,064-01, 66,065-66 (Sept. 26, 2016); *Termination of the Designation of Burundi for Temporary Protected Status*, 72 Fed. Reg. 61172-02, 61,173 (Oct. 29, 2007); *Termination of the Designation of Montserrat Under the Temporary Protected Status Program*, 69 Fed. Reg. 40,642-01 (Jul. 6, 2004). Plaintiffs disagree with the Secretaries' conclusions and allege, without support, that the Secretaries employed a different interpretation of the TPS statute in reaching them. But, it is not enough to simply assert such a claim. They are required to allege facts to support it. And those facts are contradicted by the *Federal Register* notices terminating TPS in every Administration since its enactment in 1990. For these reasons, Plaintiffs have failed adequately to allege a claim that the Secretaries' terminations of TPS for these countries violated the Due Process Clause.

**V.  Noncitizen Plaintiffs' APA Arbitrary-and-Capricious Theory Fails Because The Secretaries' Exercise of Judgment in Balancing the Facts and Circumstances Surrounding Each TPS Determination Does Not Amount to a "New Rule."**

Plaintiffs' APA arbitrary-and-capricious claim rests on the allegation that "Defendants established a new rule that departed from long-standing policy and practice by refusing to consider intervening natural disasters, conflicts, and other serious social and economic problems when deciding to terminate TPS for El Salvador, Haiti, Nicaragua, and Sudan." Pls.' Opp'n at

16. To reiterate, this claim is clearly prohibited by Section 1254a(b)(5)(A). *See also* 5 U.S.C. § 701(a)(1).

Moreover, as explained in the Government's Motion to Dismiss, the prior *Federal Register* notices regarding TPS terminations do not demonstrate that such a prior rule existed. Prior Administrations have terminated TPS despite ongoing humanitarian crises. *See, e.g.*, *Termination of Designation of Angola Under the Temporary Protected Status Program*, 68 Fed. Reg. 3896-01, 3896 (Jan. 27, 2003); *Termination of the Province of Kosovo in the Republic of Serbia in the State of the Federal Republic of Yugoslavia (Serbia-Montenegro) Under the Temporary Protected Status Program*, 65 Fed. Reg. 33,356-01, 33,356 (May 23, 2000). Prior Administrations have repeatedly linked TPS extensions to the failure to recover from the crises that led to the original designation. *Extension of the Designation of El Salvador for Temporary Protected Status*, 81 Fed. Reg. 44,645-03 (July 8, 2016); *Extension of the Designation of Haiti for Temporary Protected Status*, 80 Fed. Reg. 51,582-01 (Aug. 25, 2015); *Extension of the Designation of Sudan for Temporary Protected Status*, 79 Fed. Reg. 52,027-01 (Sept. 2, 2014); *Extension of the Designation of Nicaragua for Temporary Protected Status*, 75 Fed. Reg. 24737-01 (May 5, 2010).[5]

Plaintiffs do not address these examples in any meaningful way, but merely assert that "at this stage, Plaintiffs' allegations control" and that "[t]hey plausibly allege facts reflecting a new rule." Pls.' Opp'n at 16. However, this is not a factual dispute. Plaintiffs at this stage in the litigation have the obligation to plead facts demonstrating the existence of a consistent policy applied by previous Administrations regarding the TPS statute that has allegedly been departed from in the current Administration. This they have not done and they cannot therefore justify the discovery they seek into the internal decision-making processes of DHS in an effort to find something that might support their claim that DHS adopted a new interpretation of the TPS provisions in the INA. Plaintiffs' failure to allege the facts that might support their "new rule"

---

[5] On at least one occasion, a prior Administration terminated TPS because intervening catastrophes threatened to convert a *temporary* program into a permanent immigration status. *Termination of the Designation of Montserrat Under the Temporary Protected Status Program*, 69 Fed. Reg. 40,642-01 (Jul. 6, 2004).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – No. 3:18-cv-1554 - 13

theory should be fatal—not only to their APA arbitrary-and-capricious claim, but to all of their claims.

A comparison with the cases Plaintiffs cite demonstrates the lack of a discernible past policy or practice here. Each of these cases involved an insufficiently explained departure from an express, articulated, and demonstrable policy. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2123 (2016) (challenge to agency "issuing a final rule that took the opposite position from the proposed rule"); *Cal. Pub. Util. Comm'n v. FERC*, 879 F.3d 966, 974 (9th Cir. 2018) (involving challenge to Federal Energy Regulatory Commission's interpretation of its own regulations); *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 927 (D.C. Cir. 2017) (departure from "the formal and published 1991 Forest Plan along with at least two decades of official Wild Horse Inventory Reports and the management activities they document together demonstrat[ing] that for twenty years the Service officially treated portions of the Middle Section as part of a single, contiguous Devil's Garden Wild Horse Territory); *Huntington Hosp. v. Thompson*, 319 F.3d 74, 79-80 (2d Cir. 2003) (challenge to "inconsistent interpretation  of the same statute reflected in two separate regulations"). No such prior policy can be discerned here in the *Federal Register* notices designating, extending, or terminating TPS. Without this essential predicate, Plaintiffs have failed to state a claim.

In sum, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 687 (9th Cir. 2007). Of course, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Motor Vehicle Mfgs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). That is what the Secretaries did here. Thus, even if Section 1254a(b)(5)(A) did not apply to Plaintiffs' claim, which it does, the Secretaries adequately explained the bases for the terminations of TPS. This, combined with Plaintiffs' failure adequately to allege a prior rule from the Secretaries departed, is fatal to their APA arbitrary-and-capricious claim.

**CONCLUSION**

For the reasons stated above and in Defendants' opening brief, this Court should dismiss this action with prejudice.

Dated: June 11, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

JOHN R. TYLER
Assistant Branch Director

/s/  *Rhett P. Martin*
RHETT P. MARTIN
Trial Attorney
DC Bar No. 999272
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: (202) 305-7538
Fax: (202) 616-8460
Rhett.martin@usdoj.gov