

SIDLEY AUSTIN LLP
555 WEST FIFTH STREET
LOS ANGELES, CA 90013
+1 213 896 6000
+1 213 896 6600 FAX

ADEGEN@SIDLEY.COM
+1 213 896 6682

AMERICA  •  ASIA PACIFIC  •  EUROPE

June 15, 2018

**Filed Electronically Via CM/ECF**

The Honorable Edward M. Chen
U.S. District Court, Northern District of California
Phillip Burton Federal Building and U.S. Courthouse
450 Golden Gate Avenue, Courtroom 5 – 17th Floor
San Francisco, California 94102

Re:   _Crista Ramos, et al. v. Kirstjen Nielsen, et al._, Case No. 3:18-cv-01554-EMC

Dear Judge Chen:

This joint letter brief about discovery is submitted pursuant to the Court's May 17, 2018 Order. (Dkt. 17.) The parties have conferred several times about what should be the next steps in this litigation if this Court denies Defendants' motion to dismiss in full or in part, but have not been able to reach agreement.

## I.   Plaintiffs' Position

The parties dispute three issues, none of which directly present the question of whether Defendants' proposed production of documents satisfies Federal Rule of Civil Procedure 26. Contrary to the Court's explicit instructions, Defendants have refused to meaningfully meet and confer, delayed identifying responsive documents, refused to state specifically what privileges they intend to assert in response to which discovery requests, and apparently delayed preparing even readily-available materials for production if this Court denies their motion to dismiss. Therefore, this letter brief does not concern the sufficiency of Defendants' proposed production, but instead: (1) whether discovery must be limited to the administrative record; (2) if not, whether Defendants have complied with this Court's May 17 order; and (3) the time period within which Defendants must produce documents responsive to Plaintiffs' requests. As explained below, discovery cannot be limited to the administrative record given that Plaintiffs have pled separate constitutional claims. And Defendants have not complied with this Court's May 17 order. Therefore, Plaintiffs respectfully request Defendants be ordered to produce documents within 4-10 days of the June 22 hearing, as Defendants already have had far more than 30 days since Plaintiffs served the discovery, since the Rule 26(f) conference, and since the Court directed them "to start assembling those documents." (May 17 Tr. 35:7-12.)

On April 26, 2018, Plaintiffs provided Defendants with limited discovery requests specifically related to an intended motion for a preliminary injunction concerning the terminations of Temporary Protected Status ("TPS") for El Salvador, Haiti, Nicaragua, and

Sidley Austin (CA) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

June 15, 2018
Page 2

Sudan.[1] With the motion, Plaintiffs will seek to prevent further irreparable harm to hundreds of thousands of TPS holders expected to lose the legal status they have held for years or decades, and to hundreds of thousands of U.S. citizen children who face family separation or forced exile, due to Defendants' actions. In a Case Management Conference ("CMC") on May 17, 2018, the Court compelled the Parties to engage in a meaningful "meet and confer" to "tee up" the "discovery disputes so they may be heard" on June 22, including about "relevancy argument[s]," the "burden" associated with production, the "sensitivity of the documents," and "how many documents" have been gathered. (May 17 Tr. 36:2-10, 37:24-25, 38:1-2.) Following the hearing, the Court directed Defendants to "begin assembling the administrative record to avoid delay if production is required after the motion to dismiss hearing." (Dkt. 17.) Given the exigent circumstances, the Court understood the need to "get a running start and not have to then spend time debating on what should be produced, what shouldn't be produced, [and] give the government notice that they ought to start assembling those documents sooner." (May 17 Tr. 35:7-12.) The Court expected the parties to work together to "accommodate everything" in time to address discovery at the June 22 hearing. (*Id.*)

1.      Discovery cannot be limited to the administrative record. Doing so would permit Defendants to disregard Plaintiffs' discrete requests relevant to their due process and equal protection claims. If Plaintiffs could have pursued constitutional claims alone, it cannot be that adding an APA claim somehow foreclosed all discovery on the constitutional claims. *See Webster v. Doe*, 486 U.S. 592, 604 (1988) (recognizing "discovery process" available to plaintiff who alleged APA claims to support related constitutional claims). Courts repeatedly have recognized that common sense rule. *E.g.*, *Nat'l Med. Enters., Inc. v. Shalala*, 826 F. Supp. 558, 565 (D.D.C. 1993) (holding "a court may make an independent assessment of the facts … which were not before the agency" for a constitutional claim); *Vietnam Veterans of Am. v. CIA*, No. 09-cv-0037 CW (JSC), 2011 WL 4635139, at *5 (N.D. Cal. Oct. 5, 2011) (holding "objection to discovery under the APA [wa]s misplaced" in light of constitutional claim); *Grill v. Quinn*, No. CIV S-10-0757 GEB GGH PS, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012) (holding "direct constitutional challenge is reviewed independent of the APA" and thus court can "look beyond the administrative record"). Were Defendants' view correct, then the plaintiffs in *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 496 (1991), would have been limited to the administrative record, as that case also involved a due process challenge to the unlawful conduct of an agency. But *McNary* held that plaintiffs could not be limited to the administrative record because such a limitation would not allow adequate factual development of the claim at issue.

The Court also should reject Defendants' conception of what constitutes the record. Defendants have described the record as consisting of perhaps no more than 50-200 *pages* of documents per country. That view defies reality and the law. The administrative record "is not necessarily those documents that the agency has compiled and submitted as the administrative record," but rather "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. Dep't of Labor*, 885 F.2d 551, 555–56 (9th Cir. 1989) (internal quotation marks omitted). It includes documents that "literally pass[ed] before the eyes of the final agency decision maker," as well as documents considered and relied on by subordinates who provided recommendations.

---

[1] Defendants first received the discovery on April 26, 2018, a second time on May 3, and a third time on May 4. The parties held a Rule 26(f) conference on May 8 to prepare the initial CMC statement.

June 15, 2018
Page 3

*People of State of Cal. ex rel. Lockyer v. Dep't of Agric.*, No. C05-3508, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006) (internal citations and quotations omitted).

       Defendants' crabbed view cannot be correct. The administrative record must include, for the four countries at issue, such materials as (1) emails, letters, memoranda, notes, media items, opinions, and other materials directly or indirectly considered by the Secretary about TPS designations; (2) communications between the Secretary and advisors, subordinates, or other government officials regarding TPS designations; and (3) communications with other departments that provided the Secretary with information considered for the TPS determinations. *E.g.*, *Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, No. C 17-05211WHA, Dkt. 79 (N.D. Cal. Oct. 17, 2017). The Government suggests the Supreme Court questioned the breadth of the discovery permitted in *Regents*, but tellingly does not contrast the requests in that case with the targeted requests here, and ignores the post-remand order by the district court compelling broader disclosures than those sought here. *Id.*, Dkt. 266 (N.D. Cal. March 3, 2018).

       2.    Defendants disregarded this Court's May 17 order. During each meet and confer, Defendants either refused or were unprepared to discuss what, if any, responsive materials exist for each request. Defendants have refused to identify the names of record custodians or the search terms employed to gather what they have described as a pool of roughly 35,000 potentially responsive documents. Defendants intend to assert privilege, but have not disclosed how or to what extent, much less described the contents of purportedly privileged documents.[2] *See Waymo LLC v. Uber Techs., Inc.*, 319 F.R.D. 284, 288 (N.D. Cal. 2017) (privilege log must "list the materials withheld … and … specify certain time-honored particulars as to each"). Despite the Court's explicit instruction, Defendants' position is that Plaintiffs are not entitled to any discovery—and that Defendants are thus not "gathering" documents but only doing a preliminary, internal investigation into Plaintiffs' discovery requests. Defendants' refusal to state with specificity their position on each discovery request is particularly troubling given the amount of time they have now had to respond and the Court's clear instructions on this issue.

       3.    Assuming the Court denies the motion to dismiss, Defendants should promptly produce documents and responses to the discovery requests—and certainly within 4-10 days. Defendants were directed to gather, organize, and review documents more than a month ago. If there are no more than 35,000 potentially responsive documents, they never needed even 30 days to complete that work. *In the Matter of Search Warrants Executed on April 9, 2018*, No. 1:18-mj-03161-KMW-1, Minute Entry (S.D.N.Y. May 30, 2018) (adopting Government's position that defendant must complete review of two million documents in two weeks); Andy Greenberg, *Yes, Donald Trump, the FBI Can Vet 650,000 Emails in Eight Days*, Wired (Nov. 6, 2016), https://bit.ly/2eNgmbG (describing "automated search and filtering tools" that enable the Government to "review hundreds of thousands of emails in a week"); *see also, e.g.*, *Hernandez v. Sessions*, No. EDCV 16-620-JGB (KKx), Dkt. 129 (C.D. Cal. Dec. 1, 2017) (ordering Government to produce, within 14 days, responses to written discovery and produce more than one hundred thousand pages of records relating to class members).

---

[2] Defendants have not provided a privilege log or discovery responses with sufficient information for this Court to determine whether any privilege actually bars production of certain discrete categories of records. Plaintiffs do not concede Defendants can meet that burden.

June 15, 2018
Page 4

       The types of documents at issue are discrete and unlikely to be protected by the deliberative privilege because most are post-deliberative. Defendants can readily identify (1) policy and guidance concerning what factors to consider in TPS determinations (Rog 1, RFP 1); (2) U.S. diplomatic cables regarding TPS determinations and implementation of the final decisions to terminate (RFPs 2, 3); (3) DHS communications with third parties (RFP 4); (4) documents used to prepare the Secretary for respective testimony (RFPs 6, 7); and (5) draft press releases (RFP 8). (Dkt. 14-1.) Any purported "heavy burden" to gather such materials at this point is entirely due to Defendants' foot-dragging, as they have had more than 60 days' notice of the discovery—ample time to prepare complete responses. Indeed, Defendants have been on notice since at least November 2017 that TPS records would be sought. *See NAACP v. U.S. Dep't of Homeland Sec. et al.*, No. 18-cv-00239-MJG (D. Md. June 7, 2018) (FOIA requests).

       In addition, Defendants already have taken more time to respond than is permitted under the rules. The parties held a Rule 26(f) conference on May 8, making Defendants' objections and responses due no later than June 7. Fed. R. Civ. P. 26(d)(2) Adv. Comm. note to 2015 amendment ("requests are considered to be served at the first Rule 26(f) conference"). Defendants served no objections and provided no privilege log. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (holding privilege log generally due with discovery responses—*i.e.*, within 30 days of service). At this point, the Court could find all objections waived and order complete responses. Fed. R. Civ. P. 34(b)(2)(C); *Gailey v. Solace Fin., LLC*, No. 13-cv-00598-EJD (HRL), 2014 WL 12609307, at *1 (N.D. Cal. Feb. 14, 2014) (finding failure to timely respond waived objections to interrogatories and document requests). But at a minimum, it is appropriate to compel Defendants to produce promptly, especially given the relatively small volume of materials and the significance of the issues. As for privilege, if the Court does not treat Defendants' failure to timely object as a waiver, Defendants should produce their privilege log within 14 days of the hearing, and the Court could review *in camera* 15-25 representative samples selected by Plaintiffs. This procedure will quickly confirm whether Defendants have withheld materials not fairly encompassed by a cognizable privilege.

       Finally, Defendants' proposed schedule would needlessly prolong discovery and, in the process, deprive Plaintiffs of an opportunity to effectively use discovery to support a preliminary injunction. Taking one example, Defendants claim to need at least two months to produce the administrative record—and only the administrative record—for four countries, even though Defendants believe it consists of perhaps just 800 pages. There is no possible justification for such a proposal. That would never be permitted in other litigation, and this is not a run-of-the-mill lawsuit. This case raises exigent claims impacting *hundreds of thousands* of U.S. citizen children, *hundreds of thousands* of TPS holders who have resided legally in the U.S. for years or decades, and innumerable families. And, again, Plaintiffs ask for limited, targeted discovery to support an imminent motion for preliminary injunction. Plaintiffs therefore respectfully request Defendants be ordered to begin producing documents within 4 days of the June 22 hearing, complete the production within 10 days, and provide a privilege log within 14 days.

June 15, 2018
Page 5

## II.     **Defendants' Position**

Defendants maintain that this Court lacks jurisdiction, or alternatively that this action should be dismissed for failure to state a claim, and that the Court should stay any further factual development, including the certification of the administrative record, unless and until it denies Defendants' motion to dismiss. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see also Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 778-79 (2000) ("Questions of jurisdiction, of course, should be given priority—since if there is no jurisdiction there is no authority to sit in judgment of anything else."); *see also Johnson v. Monsanto Co.*, No. 16-00075 JMS-RLP, 2016 WL 2753445, at *1 (D. Haw. Apr. 20, 2016) (citing, e.g., *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (affirming district court's grant of protective order staying discovery pending resolution of motion to dismiss filed pursuant to Rule 12(b)(6))). Where a party moves to dismiss on jurisdictional grounds, as is true here, a stay of discovery is particularly appropriate. *See In re United States*, 138 S. Ct. 443, 445 (2017) (granting writ of certiorari and directing district court to rule on Government's threshold arguments for dismissal before requiring completion of administrative record because "those arguments, if accepted, likely would eliminate the need for the District Court to examine a complete administrative record").

Defendants, however, also understand and have complied with this Court's instructions on May 17, 2018 "to begin assembling the administrative record to avoid delay if production is required" and to consider whether the "production schedule should be prioritized for certain countries or categories of documents." *See* ECF No. 17. Plaintiffs apparently interpret the Court's remarks at the hearing, as reflected in the transcript, as requiring Defendants to immediately begin efforts to respond to discovery.  As discussed below, Defendants have deployed significant resources to address Plaintiffs' discovery, but have prioritized assembly of materials for the administrative record, as the Court directed in its minute entry. At the very least, Defendants dispute Plaintiffs' argument that Defendants are not entitled to the 30 days provided under the Federal Rules to respond to discovery. Plaintiffs' premature service of discovery before Defendants' motion to dismiss, which raised serious jurisdictional questions, should not undercut the time prescribed by the Federal Rules. To the extent there is any rush, it is of Plaintiffs' own doing; they waited six months after the announcement of the termination of Sudan to bring this suit and approximately four months after the announcement of Nicaragua and Haiti. Without Plaintiffs' delay, the question of this Court's jurisdiction could have been fully submitted several months ago.

In this submission, Defendants address their compliance efforts as well as Plaintiffs' arguments that this Court should deviate from the ordinary course and order discovery prior to the production of any administrative record.

"When reviewing an agency decision, 'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). This rule applies equally to cases involving constitutional claims as to those involving only statutory claims. *See Chiayu Chang v. U.S. Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (collecting cases from several jurisdictions). Defendants' argument is therefore not that adding an APA arbitrary-and-capricious claim forecloses discovery that would otherwise be available.  Rather, Defendants'

June 15, 2018
Page 6

contention is that the APA provides the exclusive means for asserting claims for declaratory and injunctive relief from grievances caused by agency action with respect to regulatory measures of the sort at issue here, regardless of whether those claims assert statutory violations, constitutional violations, or both. *See* 5 U.S.C. 706(2)(B) (directing courts to "hold unlawful and set aside agency action[s]" that are found to be "contrary to constitutional right, power, privilege, or immunity"). Judicial review—if it is to proceed at all—is therefore governed by the APA's judicial review provisions and based on the administrative record. *See* 5 U.S.C. 706.[1]  Allowing discovery whenever plaintiffs allege that administrative action violated the Constitution would "incentivize every unsuccessful party to agency action to allege . . . constitutional violations in order to trade in the APA's restrictive procedures for the . . . ones of the Federal Rules of Civil Procedure." *Chiayu Chang*, 254 F. Supp. at 162 (quotation omitted). Supplementation of the administrative record should only be permitted upon a "strong showing of bad faith or improper behavior." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).[2]

Since this Court's hearing on May 17, 2018, Defendants have been reviewing the agency's records to determine the proper scope of the administrative record and what should be included for each of the four decisions at issue in this litigation.  In considering the administrative record, Defendants have taken into account the statutory mandate that the Secretary of Homeland Security is to conduct a periodic review of previously designated countries with "consultation with appropriate agencies of the Government" of the "conditions in the foreign state." *See* 8 U.S.C.A. § 1254a(b)(3). Although recommendations by other government agencies or agency components would ordinarily be excluded from the administrative record as deliberative, Defendants will include in the record formal recommendations and assessments of country conditions by other government agencies (e.g., Department of State) or components within the Department of Homeland Security (e.g., USCIS) to the extent those materials are not otherwise classified or law-enforcement sensitive or attorney-client privileged. Defendants, however, will continue to exclude informal deliberations, as they are plainly entitled to do. *See San Luis Obispo Mothers for Peace* v. *U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 28, 44-45 (D.C. Cir. 1986) (en banc) (plurality opinion) ("[C]ases where a court is warranted in examining the deliberative proceedings of the agency . . . must be the rare exception."), *cert. denied*, 479 U.S. 923 (1986); *see id.* at 45-46 (Mikva, J., concurring in the result); *see also Desert Survivors v. US Dep't of the Interior*, 231 F. Supp. 3d 368, 386 (N.D. Cal. 2017) ("The Court rejects Plaintiffs' argument that as a general matter, the deliberative processes privilege cannot be invoked in cases involving challenges to agency action under Section 706(2) of the APA.").  Likewise, deliberations with the White House will be excluded from the record; disclosure of such deliberations would raise serious separation-of-powers concerns. *Cf. Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381–82 (2004).

---

[1]     Plaintiffs' reliance on *McNary v. Haitian Refugee Center, Inc.*, is misplaced. It concerned a question of jurisdiction, not a review of the merits. 498 U.S. 479, 490 (1991) ("Our grant of certiorari is therefore limited to the jurisdictional question."). In doing so, it did not address what would be the appropriate record to resolve the merits, but instead discussed whether a particular administrative record pertained to the claims in that case. *Id.* at 492–93.

[2]     Notwithstanding *Overton Park*, the Ninth Circuit has suggested supplementation of the record may be permitted in some additional circumstances. See, *e.g.*, *Lands Council v. Powell*, 395 F.3d 1019, 1029-30 (9th Cir. 2005).  Regardless of whether that is correct, this Court cannot determine whether those circumstances are present without reviewing the certified administrative record and determining whether it is adequate.

June 15, 2018
Page 7

Plaintiffs' reliance on the order to complete the record in *Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, No. 3:17-cv-05211 (N.D. Cal. Oct 17, 2017) (Dkt. No. 79), is misplaced. In vacating that order, the Supreme Court expressly noted that "Government makes serious arguments that at least portions of the District Court's order are overly broad." *In re United States*, 138 S. Ct. at 445. That order should not therefore guide the Court's decisions with respect to the scope of the administrative record here. Plaintiffs attempt cite to a subsequent order in that case to support their requests here, but that ignores that in this case there has not been a decision on the motion to dismiss, which could render a number of their requests obsolete even if the motion is only granted in part.

In compliance with the Court's prior Order, and to prepare for the possibility that the Court might order production of the administrative records, Defendants have been identifying and compiling the administrative record for each of the four decisions being challenged.[3]  Accordingly, Defendants estimate that they will be in a position to produce the record for Sudan two weeks after any order by this Court requiring production of the record and then to produce a record for each other decision at issue at two-week intervals.  Defendants plan to produce the records in the order of the upcoming terminations. Prioritization makes sense for several reasons. First, each decision is different and in some cases involved different decision-makers (i.e, former Acting Secretary Duke for Sudan, Nicaragua, and Haiti; and Secretary Nielsen for El Salvador).  Next, producing all of the material at once will only delay the initial production and would make it difficult to meet the Court's proposed schedule for preliminary injunction briefing.  The terminations for Haiti and El Salvador will not even take effect for over a year.  Although Plaintiffs claim that irreparable harm is ongoing based on the anticipated termination, that theory suggests that the temporary nature of TPS itself creates irreparable harm.  In other words, under the Plaintiffs' theory, even a designation or extension of TPS would create irreparable harm because every designation or extension is only for a limited time, thereby giving rise to uncertainty about further extensions in every instance; the statute allows for designations to be as short as six months and no longer than 18 months. *See* 8 U.S.C.A. § 1254a(b)(2). Further, Plaintiffs' theory of irreparable harm is undermined by their own delay in waiting for more than six months after the announcement of the termination of TPS for Sudan before bringing suit. Accordingly, Defendants respectfully ask that they be allowed to prioritize first Sudan and then Nicaragua before proceeding with Haiti and El Salvador, should the Court order the production of the administrative records.

Although this Court should first order production of the administrative record before considering questions of possible discovery, *see Overton Park, Inc. v. Volpe*, 401 U.S. at 420, Defendants have, nevertheless, considered Plaintiffs' discovery requests in light of this Court's instructions. Defendants have conducted several meet-and-confers with Plaintiffs in addition to expending significant resources in identifying material potentially related to the subject matters of this litigation. Pursuant to that effort, Defendants have identified potentially relevant custodians at both the Department of Homeland Security Headquarters and at USCIS.  DHS has collected over 125,000 documents.  After conducting an initial de-duplication of those materials, Defendants have limited the universe to approximately 35,000 documents.  Of the 35,000 documents, approximately 6,000 documents are potentially related to Sudan, 6,000 documents related to Nicaragua, 12,000 documents related to Haiti, and 11,000 documents related to El Salvador. (Some documents

---

[3] Perhaps there has been some miscommunication, but Defendants have not said that the administrative record would be limited to a "decision packet" of 50-200 pages.

June 15, 2018
Page 8

include references to more than one country, so there is some overlap.)  This volume further illustrates the burden it would take to respond to discovery requests, including reviewing for privilege and responsiveness. Plaintiffs should proceed in the normal course, as required by *Overton Park*, and if Plaintiffs have a good-faith basis to assert that the certified administrative record compiled by Defendants is inadequate, they may seek appropriate relief by motion thereafter. But such a motion should only be after Defendants have had the opportunity to produce the administrative records for this case.

As for Plaintiffs' particular requests, despite Defendants' position that a number of the requests on their face are overly broad, unduly burdensome, and disproportionate to the needs of the case, Defendants have nevertheless started the process of identifying documents potentially responsive to the requests. To date, Defendants have expended significant resources in identifying and pulling records from approximately 20 custodians which, as noted above, amounts to approximately 35,000 documents. Defendants have also invested time and effort in assessing Plaintiffs' discovery requests. Additionally, and without waiving any privileges or arguments as to the relevancy, burden, or breadth of the requests, or any other arguments, Defendants are seeking to identify whether they possess in a discrete location, for example, categories of records responsive to Special Interrogatory No. 1, and the Requests for Production. This exercise has confirmed the burden, breadth, and irrelevance of a number of the requests, some of which seek even post-decisional document drafts. *See, e.g.*, RFP No. 8 (requesting "documents and communications related to *drafts* of DHS's press releases or internal memoranda that announced, explained, or implemented the TPS termination decisions, including any memoranda or guidance about how to respond to questions from media or TPS holders) (emphasis added). Defendants have also ascertained that they would need to expend significant further resources to respond to Plaintiffs' discovery requests, such as RFP No. 4 (seeking Communications since November 8, 2016, between or on behalf of, on the one hand, the secretary, deputy secretary, director, deputy director, commissioner, deputy commissioner, chief of staff, or director of legislative affairs (as to all such positions, whether acting or appointed) of DHS, U.S. Immigration & Customs Enforcement, USCIS, U.S. Customs & Border Protection, and the U.S. Department of State, and, on the other hand, any member of Congress (or their staff), international bodies, or nongovernmental organizations regarding whether to extend or terminate the TPS designations for El Salvador, Haiti, Nicaragua, and/or Sudan). That process would include identifying several more custodians from various components within DHS and DHS Headquarters, and conducting further electronic searches. As for privilege considerations, as noted, Defendants will produce formal recommendations and assessments from other Government agencies and sub-agencies within DHS that are included among DHS's files.  For other forms of deliberations, however, if discovery were to proceed, Defendants would assert privilege and would continue to protect materials that are otherwise privileged such as attorney-client, deliberative-process, classified, or law-enforcement sensitive.

*     *     *

June 15, 2018
Page 9


                                        Respectfully submitted,


/s/ Alycia A. Degen                     /s/ Rhett Martin
_____                 _____
Alycia A. Degen                         Rhett Martin
Sidley Austin LLP                       U.S. Department of Justice, Civil Division
adegen@sidley.com                       Rhett.Martin@usdoj.gov
*Attorney for Plaintiffs*               *Attorney for Defendants*

June 15, 2018
Page 10

## Attestation Pursuant to Civil Local Rule 5-1(i)(3)

I, Alycia A. Degen, attest that concurrence in the filing of this joint letter regarding disputed discovery matters has been obtained from the other signatory, Rhett Martin. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 15th Day of June, 2018, in Los Angeles, California.


*/s/ Alycia A. Degen*
Alycia A. Degen
Sidley Austin LLP