UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTA RAMOS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>KIRSTJEN NIELSEN, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-01554-EMC<br><br>**ABBREVIATED ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 20 |

After careful consideration of the parties' submissions and arguments at the hearing, the Court issues this abbreviated disposition **DENYING** Defendants' motion to dismiss. A reasoned opinion setting forth the Court's analysis will be issued separately in the near future.

A.　　Jurisdictional Bar

The Court has subject matter jurisdiction to hear this case. The Temporary Protected Status ("TPS") statute provides that "[t]here is no judicial review of any *determination* of the Attorney General with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). That jurisdictional bar does not apply to Plaintiffs' claims. There is a strong presumption that agency actions and constitutional claims are reviewable in federal court absent clear and convincing evidence of Congressional intent to the contrary. *See*, *e.g.*, *Webster v. Doe*, 486 U.S. 592, 603 (1988); *KOLA, Inc. v. U.S.*, 882 F.2d 361, 363 (9th Cir. 1989). Properly construed, the word "determination" in Section 1254a refers to an individual designation, termination, or extension of a designation with respect to a particular country, not to Defendants' adoption of general policies or practices employed in making such determinations. *See*, *e.g.*, *McNary v. Haitain Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991) ("[T]he reference to 'a determination' describes a single act rather

than a group of decisions or a practice or procedure employed in making decisions."); *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 55 (1993) (statute barring judicial review of "a determination" does not "preclude[] [an] action challenging the legality of a regulation"); *see also Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1138 (9th Cir. 1999). Plaintiffs challenge Defendants' adoption of a new rule employed in the evaluation of whether to extend or terminate a TPS designation. They do not challenge the substantive factual determinations to terminate TPS status of the four countries. Plaintiffs' challenge is not to a "determination" within the scope of Section 1254a. Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is **DENIED**.[1]

B. Claims on the Merits

**Administrative Procedure Act Claim (Fourth Count):** Plaintiffs allege that Defendants departed from prior agency practice by changing whether (or the extent to which) subsequent events are considered when evaluating whether to terminate or extend TPS status. The Administrative Procedure Act requires an agency to provide a "reasoned explanation" for departures from prior agency practice or policies. *See*, *e.g.*, *Federal Commc'ns Comm'n v. Fox Televisions Stations, Inc.*, 556 U.S. 502, 515-16 (2009); *Cal. Public Utilities Comm'n v. Fed. Energy Reg. Comm'n*, 879 F.3d 966, 977 (9th Cir. 2018) (a longstanding policy may be "evinced in a series of . . . decisions and statements"). Defendants have not provided such an explanation as they deny any change has occurred. Plaintiffs plausibly allege that a change has occurred and thus state a claim of non-compliance with the APA. The Court **DENIES** Defendants' motion to dismiss.

**Equal Protection Claim (Second Count):** Plaintiffs allege that both: (1) the decision to terminate TPS for Haiti, Nicaragua, El Salvador, and Sudan, and (2) Defendants' alleged change in rule, were motivated by racial animus. Government action motivated by racial animus is subject to strict scrutiny and courts may look beyond a facially-neutral policy to consider, *e.g.*,

---

[1] Defendants' challenge to jurisdiction is legal, not fact-based: Defendants contend that even if there was a change in the Department's interpretation and application of TPS criteria, jurisdiction would be barred as a matter of law under § 1254a(b)(5)(A).

1  "[t]he specific sequence of events leading up [to] the challenged decision," "[d]epartures from the
2  normal procedural sequence," "and "statements by members of the decisionmaking body." *See*
3  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977).  Although the
4  Secretary of Homeland Security is the decisionmaker designated by statute, Plaintiffs have
5  plausibly pled that President Trump made statements which a reasonable observer could construe
6  as evidence of racial bias animus against non-white immigrants, and that he thereafter influenced
7  and tainted DHS's decision-making process with regard to TPS.  *Cf. Poland v. Chertoff*, 494 F.3d
8  1174 (9th Cir. 2007) (in employment discrimination case, subordinate's animus may be imputed to
9  the decisionmaker when the subordinate influenced or was involved in the decisionmaking
10 process).  The prohibition on racial animus under the Due Process clause's Equal Protection
11 guarantee applies to executive action in the immigration context.  *See Kwai Fun Wong v. U.S.*, 373
12 F.3d 952, 974-75 (9th Cir. 2004) ("We cannot countenance that the Constitution would permit
13 immigration officials to engage in such behavior as rounding up all immigration parolees of a
14 particular race solely because of a consideration such as skin color.  Although Congress has
15 plenary power to create immigration law, and the judicial branch must defer to executive and
16 legislative branch decisionmaking in that area, that power is subject to important limitations.").
17 As to the claim that the scope of judicial review is very narrow where the challenge is to selective
18 prosecution under *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ("*AADC*"),
19 *AADC* only applies to challenges to decisions whether to criminally prosecute or deport an alien.
20 Defendants' termination of TPS "do[es] not implicate the Attorney General's . . . discretion to
21 choose to deport one person rather than another among those who are illegally in the country."
22 *See Kwai Fun Wong*, 373 U.S. at 970.
23      The Court recognizes that the law in this area is developing and decisions from the
24 Supreme Court and Courts of Appeals could alter the equal protection analysis.  The Court may
25 order supplemental briefing or entertain a motion for reconsideration if appropriate.  Defendants'
26 motion to dismiss is provisionally **DENIED**.
27      **Due Process Claims of U.S. Citizen Children and TPS-Holders (First and Third**
28 **Counts):**  Plaintiffs have a liberty interest protected by the Fifth Amendment not to be removed

3

from the United States, not to be separated from their families, and not to be forced to make a choice between the two. *See Bridges v. Wixon*, 326 U.S. 135, 155 (1945) (observing that deportation "visits a great hardship on the individual and deprives him of the right to stay and live in this land of freedom"); *Ching v. Mayorkas*, 725 F.3d 1149, 1157 (9th Cir. 2013) ("The right to live with and not be separated from one's immediate family is a right that ranks high among the interests of the individual and that cannot be taken away without procedural due process." (quotation omitted)); *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008) (recognizing protected liberty interest in "[f]reedom of personal choice in matters of marriage and family life is, of course, one of the liberties protected by the Due Process Clause"). However, Plaintiffs have not cited any case in which the government's countervailing interest in enforcing immigration laws in a lawful and otherwise constitutional manner has been overcome by individual liberty interests in a substantive due process challenge. *See, e.g., Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018). Although it is questionable whether Plaintiffs can establish such a broad Due Process claim, to the extent Plaintiffs state a claim that the Department's actions in this case violate Equal Protection and/or the APA, they have commensurately stated Due Process claims; the government has no justifiable interest in unlawful law enforcement. *Cf. Smith v. City of Fontana*, 818 F.2d 1411, 1419-20 (9th Cir. 1987) (state had "no legitimate interest in interfering with [protected] liberty interest [in familial relations] through the use of excessive force by police officers"), *overruled on other grounds*, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999); *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (noting that "a bare . . . desire to harm a politically unpopular group [is] not [a] legitimate state interest" (citation and quotation omitted)).

For these reasons, Defendants' motion to dismiss is **DENIED**.

C.  Production of Administrative Records and Discovery

As stated on the record, Defendants shall produce the administrative records for the TPS termination of Sudan and Nicaragua within 10 days, and for El Salvador and Haiti one week later.

The administrative record is not limited to "formal recommendations." Rather, the "'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position."

*Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation and quotation omitted, emphasis in original). It must "include[] everything that was before the agency pertaining to the merits of its decision." *Portland Audobon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). It must also include materials "indirectly considered," *i.e.*, those materials relied on by subordinates who directly advised the ultimate decision-maker. *See In re United States*, 875 F.3d 1200, 1207-8 (9th Cir. 2017), *reversed on other grounds*, 138 S.Ct. 443 (2017).

Deliberative material that was relied upon directly or indirectly is presumptively part of the administrative record. If Defendants invoke the deliberative process privilege, they must produce a detailed privilege log identifying the excluded material and the basis for privilege with the administrative record. The parties should note that this privilege is qualified, not absolute, and that any assertion thereof will be subject to review accordingly. *See Desert Survivors v. U.S. Dept. of the Interior*, 231 F.Supp.3d 368, 380-86 (N.D. Cal. 2017).

Finally, as discussed on the record, Defendants shall respond to Plaintiffs' Interrogatory No. 1 and Requests for Production Nos. 1, 4, 6, and 7 within 14 days of the hearing date. The parties shall meet-and-confer with respect to Plaintiffs' remaining discovery requests, including the scope of a Rule 30(b)(6) deposition.

This order disposes of Docket Nos. 20 and 28.

**IT IS SO ORDERED**.

Dated: June 25, 2018

_____
EDWARD M. CHEN
United States District Judge