Alycia A. Degen (SBN 211350)
adegen@sidley.com
Sean A. Commons (SBN 217603)
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6010
Facsimile: +1 213 896 6600

Ahilan T. Arulanantham (SBN 237841)
aarulanantham@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: +1 213 977 5211
Fax: +1 213 977 5297

Jessica Karp Bansal (SBN 277347)
jbansal@ndlon.org
Emilou MacLean (SBN 319071)
emi@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
674 S. La Fayette Park Place
Los Angeles, CA  90057
Telephone: +1 213 380 2214
Fax: +1 213 380 2787

Attorneys for Plaintiffs
[*Additional Counsel Listed on Next Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CRISTA RAMOS, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>KIRSTJEN NIELSEN, *et al.*,<br><br>    Defendants. | Case No.  3:18-cv-1554-EMC<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING EQUAL PROTECTION CLAIMS**<br><br>Date:   June 22, 2018<br>Time:   10:30 a.m.<br>Place:  Courtroom 5, 17th Floor<br><br>Complaint Filed:   March 12, 2018<br>Trial Date:              None set |

*Additional Counsel for Plaintiffs*

William S. Freeman (SBN 82002)
wfreeman@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: +1 415 621 2493
Fax: +1 415 863 7832

Mark E. Haddad (SBN 205945)
markhadd@usc.edu
Part-time Lecturer in Law
USC Gould School of Law*
University of Southern California
699 Exposition Blvd.
Los Angeles, CA 90089
Telephone: +1 213 675-5957

Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
Ryan M. Sandrock (SBN 251781)
rsandrock@sidley.com
SIDLEY AUSTIN LLP
555 California Street
Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1219
Facsimile: +1 415 772 7400

Amanda Farfel (SBN 288126)
afarfel@sidley.com
Andrew B. Talai (SBN 300053)
atalai@sidley.com
Marisol Ramirez (SBN 307069)
marisol.ramirez@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6640
Facsimile: +1 213 896 6600

*\* Institution listed for identification purposes only*

**TABLE OF CONTENTS**

I.     INTRODUCTION ...............................................................................................................1

II.    THIS COURT SHOULD NOT RECONSIDER ITS HOLDING THAT HEIGHTENED REVIEW APPLIES TO PLAINTIFFS' EQUAL PROTECTION CLAIMS..................................................................................................2

III.   EVEN IF *TRUMP* REQUIRES THIS COURT TO APPLY A DEFERENTIAL STANDARD OF REVIEW HERE, DEFENDANTS' MOTION TO DISMISS SHOULD STILL BE DENIED ........................................................6

IV.    CONCLUSION...................................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
    365 F.3d 107 (2d Cir. 2004) .................................................................................................. 8

*Batalla Vidal v. Nielsen*,
    291 F. Supp. 3d 260 (E.D.N.Y. 2018) ................................................................................... 8

*Bridges v. Wixon*,
    326 U.S. 135 (1945) .............................................................................................................. 4

*Bustamante v. Mukasey*,
    531 F.3d 1059 (9th Cir. 2008) .............................................................................................. 3

*Cardenas v. United States*,
    826 F.3d 1164 (9th Cir. 2016) .............................................................................................. 3

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) .............................................................................................................. 6

*Dep't of Navy v. Egan*,
    484 U.S. 518 (1988) .............................................................................................................. 4

*Fiallo v. Bell*,
    430 U.S. 787 (1977) .............................................................................................................. 2

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) .................................................................................................................. 4

*Kerry v. Din*,
    135 S. Ct. 2128 (2015) ...................................................................................................... 2, 3

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) .......................................................................................................... 2, 3

*Korematsu v. United States*,
    323 U.S. 214 (1944) .............................................................................................................. 6

*Kwai Fun Wong v. United States*,
    373 F.3d 952 (9th Cir. 2004) ................................................................................................ 3

*Landon v. Plasencia*,
    459 U.S. 21 (1982) ................................................................................................................ 3

*Lopez-Valenzuela v. Arpaio*,
    770 F.3d 772 (9th Cir. 2014) ................................................................................................ 4

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) .................................................................................................................. 4

*Nadarajah v. Gonzales*,
    443 F.3d 1069 (9th Cir. 2006) ................................................................................................. 3

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) .................................................................................................................. 5

*Oshodi v. Holder*,
    729 F.3d 883 (9th Cir. 2013) ................................................................................................... 4

*Poland v. Chertoff*,
    494 F.3d 1174 (9th Cir. 2007) ................................................................................................. 8

*Rajah v. Mukasey*,
    544 F.3d 427 (2d Cir. 2008) .................................................................................................... 3

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ............................................................................................................ 1, 3

*Sanchez v. Sessions*,
    870 F.3d 901 (9th Cir. 2017) ................................................................................................... 4

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018) ............................................................................................................. 4

*Trump v. Hawaii*,
    No. 17-965, 2018 WL 3116337 (U.S. June 26, 2018) ..................................................... *passim*

*U.S. Dep't of Agric. v. Moreno*,
    413 U.S. 528 (1973) .................................................................................................................. 6

*Vasquez v. Empress Ambulance Serv., Inc.*,
    835 F.3d 267 (2d Cir. 2016) .................................................................................................... 8

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ......................................................................................................... 1, 3, 6

*Yamataya v. Fisher*,
    189 U.S. 86 (1903) .................................................................................................................... 4

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) .................................................................................................................. 5

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ............................................................................................................ 3, 4

**Statutes**

8 U.S.C. 1182(f) .......... 5

8 U.S.C. 1254a .......... 5

**Other Authorities**

5B C. Wright & A. Miller, Federal Practice and Procedure § 1356 (3d ed. 2004) .......... 7

Adam B. Cox & Cristina M. Rodríguez, *The President and Immigration Law Redux*, 125 YALE L.J. 104 (2015) .......... 5

## I. INTRODUCTION

This Court has asked whether it should reconsider its holding on Plaintiffs' equal protection claims in light of the Supreme Court's decision in *Trump v. Hawaii*, No. 17-965, 2018 WL 3116337 (U.S. June 26, 2018). Dkt. 36. It should not.

In denying Defendants' motion to dismiss the equal protections claims, this Court held: (1) heightened scrutiny applies to Plaintiffs' claims pursuant to *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977); (2) the more limited standard of review from *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) ("*AADC*"), governs only in selective enforcement cases and therefore does not apply to this case; and (3) Plaintiffs have stated an equal protection claim on the basis that racial animus toward non-white, non-European immigrants was a motivating factor in the Temporary Protected Status ("TPS") terminations for Haiti, Nicaragua, El Salvador, and Sudan, as well as in Defendants' adoption of a new rule for TPS terminations. Dkt. 34 at 2-3.

Each of these rulings remains correct after *Trump*. The Supreme Court applied deferential review to an establishment clause claim in that case, but its context is wholly distinguishable from the TPS decision-making process here in at least three ways. *Trump* applied deferential review to the *President's* promulgation of a "*national security directive* regulating *the entry of aliens abroad*." *Trump*, 2018 WL 3116337, at *20 (emphasis added). By contrast, this case concerns an exercise of authority delegated by Congress to the Secretary of the Department of Homeland Security ("DHS")—*not* the President—regarding policy *outside* the national security context, that will result in the *deportation* of non-citizens lawfully present in the United States. Nothing in *Trump* warrants a weaker standard of review for the equal protection claims here. *See* Section II, *infra*.

Moreover, even if deferential review applied, Plaintiffs' claim would still survive the motion to dismiss stage because *Trump* makes clear that executive action animated by racial animus does not withstand any standard of review. *Trump*, 2018 WL 3116337, at *22-25. Plaintiffs' allegations of animus based on race and national origin state a plausible equal protection claim under even the most deferential standard. *See* Section III, *infra*.

1

PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING EQUAL PROTECTION CLAIMS
CASE NO. 3:18-cv-1554-EMC

## II. THIS COURT SHOULD NOT RECONSIDER ITS HOLDING THAT HEIGHTENED REVIEW APPLIES TO PLAINTIFFS' EQUAL PROTECTION CLAIMS.

*Trump* does not affect this Court's holding that heightened review applies to Plaintiffs' equal protection claims. The Supreme Court applied a deferential standard of review in *Trump* because it was evaluating "a national security directive regulating the entry of aliens abroad"—a situation it distinguished from assessment of a "conventional" constitutional claim. *Trump*, 2018 WL 3116337, at *20. The Court also applied a deferential standard because the action at issue was "a Presidential directive"—a Presidential Proclamation—derived from "the authority of the Presidency itself." *Id.* at *19. Each of these characteristics of the action at issue in *Trump*—that it concerned the *admission* of noncitizens abroad; in the name of *national security*; issued by the *President* himself—justified greater deference from the judiciary than is appropriate in this case, where none of those elements are present.

*First*, the Presidential Proclamation in *Trump* concerned "foreign nationals seeking admission" from outside the United States. *Id.* at *20; *see also id.* at *21 n.5 (explaining that "a circumscribed inquiry applies to any constitutional claim concerning the *entry* of foreign nationals") (emphasis added). In contrast, this case concerns the revocation of TPS for individuals who have been in the United States lawfully for at least five years and in some cases over *twenty years*. Dkt. 23 at 1. *Trump*'s application of the "facially legitimate and bona fide" standard of review comports with that distinction. The Supreme Court has only ever applied that standard in cases involving challenges to the government's authority to determine whether to *admit* individuals living abroad. *See, e.g.*, *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). Defendants may cite *Trump*'s statement that the Court has applied *Mandel*'s facially legitimate and bona fide standard "across different contexts," *Trump*, 2018 WL 3116337, at *20, but the Supreme Court cases *Trump* cited, while diverse in other respects, all involved challenges to the government's power to regulate *admission*. *See id.* at *18, *20 (citing *Mandel*, 408 U.S. at 762 (First Amendment suit sought "to compel the Attorney General to allow Mandel's admission"); *Kerry v. Din*, 135 S. Ct. 2128, 2141 (2015) (Kennedy, J., concurring) (due process challenge to visa denial); *Fiallo v. Bell*, 430 U.S. 787, 791 (1977) (gender-based equal protection challenge to eligibility criteria for immigrant visas)). The only case not

involving admission that *Trump* cited was the Second Circuit's decision in *Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008), which involved a selective enforcement claim to which the Court has previously applied an even more deferential standard of review. *See also* Dkt. 34 at 3 (treating *AADC*, 525 U.S. 471, as a selective enforcement challenge). This case, in contrast, is about the revocation of lawful status for those already within the United States—not admission. And, as this Court has already explained, this case does not involve selective enforcement. *Id.*

That courts apply a lower standard of review in cases involving individuals seeking admission from abroad is settled law; the "distinction between [those seeking admission and those who have already entered] runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). Individuals seeking admission have few rights with respect to their applications for admission. *See, e.g.*, *Kwai Fun Wong v. United States*, 373 F.3d 952, 971 (9th Cir. 2004). However, once an immigrant "gains admission . . . and begins to develop the ties that go with permanent residence," his or her "constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). *See also* Dkt. 23 at 26 & n.20 (distinguishing challenges to denials of admission for those located abroad from Plaintiffs' equal protection challenge). In keeping with these principles, the Ninth Circuit has also previously applied the "facially legitimate and bona fide" standard to claims challenging the government's admissions decisions, *see Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008); *Cardenas v. United States*, 826 F.3d 1164, 1170-72 (9th Cir. 2016).[1]

Thus, nothing in *Trump* speaks to the standard of review appropriate for challenges to the government's attempt to strip the lawful status of people like Plaintiffs who have lived in the United States lawfully for years. For such individuals, ordinary constitutional protections—including the heightened standard of review for equal-protection claims alleging racial and national origin discrimination—continue to apply. *See Arlington Heights*, 429 U.S. at 266. To hold otherwise would

---

[1] Lower courts including the Ninth Circuit have also applied the "facially legitimate and bona fide" test to cases involving arriving non-citizens seeking release on parole. *See, e.g.*, *Nadarajah v. Gonzales*, 443 F.3d 1069, 1082-83 (9th Cir. 2006). In those cases, the individuals were physically present in the United States, but they had been stopped at ports of entry and generally did not have significant prior contact with the United States. Thus, as in *Mandel* and *Din*, the parole cases implicate the government's power to control who comes into the United States, rather than the power to expel those already lawfully here, which is at issue in this case. The Ninth Circuit, like the Supreme Court, has never applied the "facially legitimate and bona fide" test to any case involving the expulsion of lawfully present non-citizens.

ignore repeated decisions of the Supreme Court and the Ninth Circuit that refuse to employ a lower standard of review in cases involving individuals already within the United States. *E.g.*, *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (plurality op.) (applying the statutory vagueness prohibition that "is an 'essential' of due process" to a ground for deportation in the Immigration and Nationality Act); *id.* at 1231 (Gorsuch, J., concurring in the judgment) (finding the constitutional notice standard, for due process purposes, indistinguishable "when [the Government] seeks to deport a lawfully resident alien" from any other civil context for "a citizen"); *Zadvydas*, 533 U.S. at 690-91 (applying ordinary Fifth Amendment due process standards governing civil detention to noncitizens' claims); *Bridges v. Wixon*, 326 U.S. 135, 154-56 (1945) (applying normal due process principles to hold that admission of improper evidence violated due process in deportation proceeding); *Yamataya v. Fisher*, 189 U.S. 86, 99-101 (1903) (holding that individual facing deportation after being arrested within the United States was entitled to notice and a hearing, and rejecting application of more deferential due process standards applicable to persons who had not entered the United States); *Sanchez v. Sessions*, 870 F.3d 901, 909-10 (9th Cir. 2017) (applying ordinary Fourth Amendment analysis in holding that a seizure violated the rights of a noncitizen subject to removal); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780-86, 792 (9th Cir. 2014) (en banc) (applying heightened scrutiny to categorical denial of bail to undocumented immigrants and holding that such denial violates substantive due process); *Oshodi v. Holder*, 729 F.3d 883, 889-91 (9th Cir. 2013) (en banc) (applying ordinary procedural due process analysis under *Mathews v. Eldridge*, 424 U.S. 319 (1976), to a removal-hearing issue).

      *Second*, *Trump* also placed great emphasis on the President's national-security justification for the Proclamation. A long line of cases affords deference to judgments in national security contexts, whether or not in the immigration realm. *E.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33 (2010) (according deference to "evaluation of the facts by the Executive" in national security context); *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988) (deferring to "the authority of the Executive" in challenge to denied security clearance).

      No comparable interest is involved here. None of the termination notices here assert that there is any national interest, let alone a national security interest, for ending TPS. Nor could they.

TPS designations are granted based on a conclusion that conditions in the country prevent the country's nationals from returning safely, and the Secretary must extend TPS where the statutory conditions (which say nothing about national security) continue to be met.

*Third*, *Trump* additionally stresses that the Proclamation at issue was both an action by the President himself—not a lower member of the executive branch—and an exercise of presidential power expressly conferred by Congress on the President. *Trump*, 2018 WL 3116337, at *9-10 (citing 8 U.S.C. 1182(f) (granting "the President" authority to suspend the entry of certain nationals).

This distinction is also doctrinally significant, as the Supreme Court has long recognized that the courts owe deference to the President personally, as his authority is recognized in the Constitution. *See, e.g.*, *Nixon v. Fitzgerald*, 457 U.S. 731, 749-50 (1982) (describing the President's "unique position in the constitutional scheme"). Moreover, courts afford the President the utmost deference when a President acts pursuant to congressionally-delegated authority. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635-36 (1952) (Jackson, J., concurring) (explaining that presidential authority is greatest in actions "pursuant to an express or implied" congressional authorization). As *Trump* held, 8 U.S.C 1182(f), the provision under which the Proclamation was enacted, "exudes deference to the President" by providing a "comprehensive delegation" of Congressional authority to suspend the entry of "class[es]" of non-citizens. *Trump*, 2018 WL 3116337, at *9-10.

In contrast, Defendants have repeatedly stressed that the TPS decisions were *not* made by the President, but instead by a Cabinet official. *See* Dkt. 20 at 4-6 (citing 8 U.S.C. 1254a(b)), 36. Moreover, the TPS statute is designed to *curtail* Executive discretion, not to authorize it. Section 1254a creates a program with formal criteria and regular processes to "systematize[] the process of admitting noncitizens fleeing disaster." Adam B. Cox & Cristina M. Rodríguez, *The President and Immigration Law Redux*, 125 YALE L.J. 104, 118 (2015). It acts as a *limitation* on the executive branch's former *ad hoc* exercises of authority to permit foreign nationals to enter and remain here. *See id.* at 117-18 (describing the history and purpose of the TPS statute as the regulation and codification of prior discretionary exercises of presidential authority). Thus, this Court owes no special deference to Presidential decision-making in the TPS context.

In sum, "[t]he upshot of" *Trump*, and the cases on which it relies, is that "[a]ny rule of constitutional law that would inhibit the flexibility *of the President* to respond to changing world conditions should be adopted with the greatest caution, and our inquiry into *matters of entry* and *national security* is highly constrained." *Trump*, 2018 WL 3116337, at *21 (internal quotation marks omitted) (emphases added). Where none of those three elements are present, the deferential review employed in *Trump* is not warranted.[2] Instead, the heightened standard of review applicable to claims of intentional race discrimination continues to apply.

### III. EVEN IF *TRUMP* REQUIRES THIS COURT TO APPLY A DEFERENTIAL STANDARD OF REVIEW HERE, DEFENDANTS' MOTION TO DISMISS SHOULD STILL BE DENIED.

Even were this Court to conclude, notwithstanding the fundamental differences between this case and *Trump*, that *Trump*'s deferential standard of review applies here, Plaintiffs still have stated plausible equal protection claims. *See* Dkt. 23 at 26-27. First, in *Trump* itself, the Court distinguished "a facially neutral policy denying certain foreign nationals the privilege of admission" at issue in *Trump* as having "nothing to do" with an order, such as the one at issue in *Korematsu v. United States*, 323 U.S. 214 (1944), that involved the "forcible relocation of U.S. citizens to concentration camps, solely and explicitly on the basis of race." *Trump*, 2018 WL 3116337, at *24. The unanimous overruling of *Korematsu*'s credulous acceptance of a national security rationale as "gravely wrong the day it was decided," *id.*, thus makes clear that the courts can and must reject executive action animated by racial bias.

Second, Plaintiffs have alleged sufficient facts to state a plausible claim even under the deferential standard described in *Trump*. *See, e.g.*, *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973) ("[A] bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest."); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 448-49 (1985) ("[M]ere negative attitudes, or fear . . . are not permissible bases for [a statutory classification]."). The Complaint alleges that the TPS terminations are part of the Administration's

---

[2] Of course, applying the *Arlington Heights* standard in a context involving allegations of racial and national origin discrimination would not inhibit the flexibility of the DHS Secretary in responding to changing country conditions. Rather, the DHS Secretary continues to have flexibility, so long as the Secretary is not motivated by racial animus.

larger anti-immigrant agenda that has focused on ejecting non-white, non-European people from the United States, including individuals from predominantly Black and Latin American countries. Complaint [Dkt. 1] ¶¶ 9, 66. In addition, Plaintiffs have pled that the President and others in his administration have repeatedly made statements expressing anti-immigrant, racist sentiment, including statements directly connected to the TPS terminations, which infected DHS's decisions to terminate TPS for the countries at issue. *Id.* ¶¶ 66-70. These allegations suffice to state a plausible claim that the TPS terminations can be explained only by animus. *Trump*, 2018 WL 3116337, at *22.

*Trump* does not alter this Court's analysis of Plaintiffs' allegations of racial animus. *Trump* involved an appeal of a preliminary injunction, and therefore required review of the evidentiary record to determine whether the plaintiffs were likely to succeed on the merits. *Trump*, 2018 WL 3116337, at *10-11 (discussing findings and other factual considerations), *22-24 (addressing various factual findings surrounding the Proclamation). By contrast, this case is at the motion to dismiss phase, when Plaintiffs' well-pleaded factual allegations must be taken as true. This is not a time for "resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B C. Wright & A. Miller, Federal Practice and Procedure § 1356, p. 354 (3d ed. 2004); *see also* Dkt. 23 at 4-5. Therefore, this Court should not reconsider its holding denying dismissal of Plaintiffs equal protection claim even if *Trump*'s lower level of scrutiny were applicable.

Defendants may argue that *Trump*'s ultimate holding proves that presidential statements are not entitled to significant weight, but *Trump* did not disclaim reliance on the President's statements. It considered them, and therefore supports Plaintiffs' claim that statements made by the President remain relevant. *Trump*, 2018 WL 3116337, at *18-20. Although *Trump* concluded that the President's statements were not dispositive, the Court recognized that it must evaluate "the significance of those statements in reviewing a Presidential directive." *Id.* at *19 (noting also that the Court "must consider not only the statements of a particular President, but also the authority of the Presidency itself" in determining the proper standard of review for the particular circumstance). Furthermore, the allegations of racial animus in this case are based on different statements than the anti-Muslim statements considered in *Trump*.

Most important, the Court did not find President Trump's anti-Muslim statements to be dispositive in large part because it concluded based on the evidentiary record that the Proclamation was independently supported by a detailed, worldwide agency review and consistent with prior, similar decisions to exclude classes of non-citizens from entry on national security grounds. *Id.* at *19, *22-24. No such determination has been or could be made in this case. *Trump* requires this Court to consider relevant statements made by the President that "strike at fundamental standards of respect and tolerance, in violation of our constitutional tradition." *Id.* at *19. This Court cannot undertake such consideration until the parties have presented evidence in support of their positions.

Finally, nothing in *Trump* undermines liability for discrimination under the cat's paw theory. *See* Dkt. 23 at 22-24 (citing, *inter alia*, *Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260, 277-79 (E.D.N.Y. 2018); *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272-73 (2d Cir. 2016); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 126 & n.18 (2d Cir. 2004); *Poland v. Chertoff*, 494 F.3d 1174, 1182-84 (9th Cir. 2007) (concluding the influence or involvement of a biased individual in the decision-making process can impute the bias of that individual to the ultimate decision-maker)).[3]

## IV. CONCLUSION

For these reasons, the Court should not reconsider its order denying Defendants' Motion to Dismiss.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] The Court's order requesting supplemental briefing stated that the discovery order remains in effect. It does not ask the Parties to address whether the scope of discovery has changed, and for that reason Plaintiffs' brief does not address that question. If the Court is inclined to alter its discovery rulings, Plaintiffs would respectfully request the opportunity to address that issue as well.

| | |
|---|---|
| Date: July 2, 2018 | Respectfully submitted, |
| | SIDLEY AUSTIN LLP |
| | By: <u>s/Alycia A. Degen</u> |
| |    Alycia A. Degen |
| |    Sean A. Commons |
| |    Nicole M. Ryan |
| |    Ryan M. Sandrock |
| |    Amanda Farfel |
| |    Andrew B. Talai |
| |    Marisol Ramirez |
| | ACLU FOUNDATION OF SOUTHERN CALIFORNIA |
| |    Ahilan T. Arulanantham |
| | ACLU FOUNDATION OF NORTHERN CALIFORNIA |
| |    William S. Freeman |
| | NATIONAL DAY LABORER ORGANIZING NETWORK |
| |    Jessica Karp Bansal |
| |    Emilou MacLean |
| | *Attorneys for Plaintiffs* |