CHAD A. READLER
Acting Assistant Attorney General
Civil Division
JOHN R. TYLER
Assistant Branch Director.
RHETT P. MARTIN
Trial Attorney
DC Bar No. 999272
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: (202) 305-7538
Fax: (202) 616-8460
Rhett.martin@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTA RAMOS, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br><br>KIRSTJEN NIELSEN, *et al.*,<br><br>        Defendants. | Case No. 3:18-cv-01554-EMC<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING EQUAL PROTECTION CLAIM** |

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING EQUAL PROTECTION CLAIM –

No. 3:18-cv-1554

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Pursuant to this Court's June 26, 2018 Order regarding supplemental briefing, Defendants submit the following brief regarding the impact of *Trump v. Hawaii*, 585 U.S. ___, No. 17-965, 2018 WL 3116337 (U.S. June 26, 2018), on the Court's "holding with respect to Plaintiffs' equal protection claims that (1) the decision to terminate TPS for Haiti, Nicaragua, El Salvador, and Sudan, and (2) Defendants' alleged change in rule were motivated by racial animus." June 26, 2018 Order at 1 (ECF No. 36). For the reasons explained below, Defendants respectfully contend that, in light of *Trump v. Hawaii*, the Court's application of the strict scrutiny analysis set forth in *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977), was in error. The Supreme Court's decision in *Trump v. Hawaii* demonstrates that a highly deferential rational-basis standard applies to Plaintiffs' equal-protection claim. Plaintiffs have not set forth allegations sufficient to show a violation of that standard, and their equal-protection claim should therefore be dismissed with prejudice.

**ARGUMENT**

**I.  The Supreme Court's Decision in *Trump v. Hawaii* Makes Clear that Rational Basis Applies to Plaintiffs' Equal Protection Claim**

The Supreme Court's decision in *Trump v. Hawaii* makes clear that, at most, rational basis would be the applicable standard of review given the deference owed to the political branches in this area. *See Hawaii*, 2018 WL 3116337, at *20 ("Because decisions [in the admission and exclusion of foreign nationals] may implicate 'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances,' such judgments 'are frequently of a character more appropriate to either the Legislature or the Executive.'" (citation omitted)); *see also generally id*. at *22-25 (rejecting constitutional challenge after applying rational basis). The Supreme Court further noted in *Hawaii* that the degree of scrutiny depends on the context and how much deference, statutorily and constitutionally, is owed to the Executive in a certain area, *see id*. at *10-11. There can be no doubt that substantial deference would apply to TPS determinations, to the extent judicial review is even available, given the categorical judicial review preclusion provision in the statute.

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING EQUAL PROTECTION CLAIM – No. 3:18-cv-1554 - 1

Accordingly, Defendants respectfully submit that the multifactor balancing test of *Village of Arlington Heights*—a case in which plaintiff challenged a zoning classification—is inapplicable here.

As in *Trump v. Hawaii*, "[a]t the heart of plaintiffs' case is a series of statements by the President and his advisers casting doubt on the official objective of the" TPS terminations. *Hawaii*, 2018 WL 3116337, at 18. In *Hawaii*, those statements were made in the context of a Presidential Proclamation. *Id.* at 19 (explaining that the issue is "the significance of those statements in reviewing a Presidential directive, neutral on its face, addressing a matter within the core of executive responsibility. In doing so, we must consider not only the statements of a particular President, but also the authority of the Presidency itself."). The Supreme Court nevertheless declined to apply anything more than rational-basis review. That analysis should apply with even greater force here, where Plaintiffs have not alleged that the TPS decisionmakers themselves harbored any discriminatory animus but have instead set forth an attenuated "cat's paw" theory, whereby the Secretaries supposedly acted at the behest of the White House and were thus a conduit for purported animus.

Under the rational-basis standard set forth in *Hawaii* and the cases on which it relied, Plaintiffs' claims must fail. First, the Supreme Court drew this principle of rational basis review from a series of cases in this area setting forth such a deferential standard of review. *See id.* at *20 (finding the Supreme Court has "reaffirmed and applied its deferential standard of review across different contexts and constitutional claims" in this realm); *id.* ("Given the authority of the political branches over admission, we held that 'when the Executive exercises this [delegated] power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification' against the asserted constitutional interests of U.S. citizens." (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)); *id.* (discussing *Kerry v. Din*, 135 S. Ct. 2128 (2015), and *Fiallo v. Bell*, 430 U.S. 787, (1977)). "The upshot of [the Supreme Court] cases in this context is clear: 'Any rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing

1    world conditions should be adopted only with the greatest caution[.]'" *Id*. at *21 (quoting

2    *Mathews v. Diaz*, 426 U.S. 67, 81–82 (1976)).

3           The Supreme Court further made clear that "we cannot substitute our own assessment for

4    the Executive's predictive judgments on such matters, all of which 'are delicate, complex, and

5    involve large elements of prophecy.'" *Id*. at *23 (quoting *Chi. & S. Air Lines, Inc. v. Waterman*

6    *S.S. Corp.*, 333 U.S. 103, 111 (1948)); *see also Regan v. Wald*, 468 U.S. 222, 242–43 (1984)

7    (declining invitation to conduct an "independent foreign policy analysis"), *reh'g denied*, 469

8    U.S. 912 (1984). "[T]he Executive's evaluation of the underlying facts is entitled to appropriate

9    weight, particularly in the context of litigation involving 'sensitive and weighty interests of

10   national security and foreign affairs.'" *Hawaii*, 2018 WL 3116337, at *23 (quoting *Holder v.*

11   *Humanitarian Law Project*, 561 U.S. 1, 33–34 (2010)).

12          This standard comports with the "clear evidence" of "outrageous" discrimination

13   standard set forth in *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525

14   U.S. 471, 488-91 (1999), which Defendants have proposed as an appropriate framework for

15   assessing Plaintiffs' animus claims. While *AADC* itself involved a group of aliens who alleged

16   that they had been targeted for deportation because of their membership in a political group, the

17   NSEERS cases cited in Defendants' Motion to Dismiss correctly recognize that the reasoning of

18   *AADC* applies equally to decisions that occur in the context of broader, programmatic policies

19   based on country-level facts and circumstances. *See Kandamar v. Gonzales*, 464 F.3d 65, 73-74

20   (1st Cir. 2006) ("Petitioner argues in conclusory fashion that the classification based on national

21   origin [required pursuant to NSEERS] violates equal protection principles. Every court to

22   address the issue has rejected a challenge to NSEERS registration on equal protection grounds. . .

23   . To be sure, Moroccan nationals were required to register with DHS while a person in the same

24   situation but not from one of the NSEERS countries would not have been placed in removal

25   proceedings. However, a claim of selective enforcement based on national origin is virtually

26   precluded by [*AADC*] . . . ." (citations omitted)); *Hadayat v. Gonzales*, 458 F.3d 659, 665 (7th

27   Cir. 2006) ("Although [*AADC*] leaves open a narrow exception for the 'rare case in which the

28   alleged basis of discrimination is . . . outrageous . . .' Hadayat's conclusory comments regarding

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING EQUAL PROTECTION CLAIM –
No. 3:18-cv-1554 - 3

the allegedly discriminatory effect of NSEERS do not come close to meeting this high burden."

(citation omitted)); *see also Malik v. Gonzales*, 213 F. App'x 173, 174-75 (4th Cir. 2007) (per

curiam) (rejecting plaintiffs' contention that his prosecution by DHS "resulted from his

registration pursuant to" NSEERS "and that a decision to prosecute based on alienage, ethnicity,

or religion violates his constitutional rights"). The NSEERS cases are similar to the case at bar,

except that here Plaintiffs challenge policy decisions before they take effect (and thus before

Plaintiffs are at risk of removal), whereas the NSEERS cases involved challenges in the removal

context. But that is a distinction without a difference with respect to the standard of review to be

applied to this case. *See Hawaii*, 2018 WL 3116337, at *20 ("Lower courts have similarly

applied *Mandel* to broad executive action." (citing the Second Circuit's NSEERS case, *Rajah v.*

*Mukasey*, 544 F.3d 427 433, 438-439 (2d Cir. 2008))).

       Applying these cases, and assuming that it could "look behind the face of the

Proclamation to the extent of applying rational basis review," the Supreme Court in *Hawaii*

articulated the appropriate standard for analyzing animus claims in the context of foreign affairs

and the admission and exclusion of foreign nationals. *Id.* at *21. "[T]he standard of review

considers whether the . . . policy is plausibly related to the Government's stated objective[.]" *Id.*

at *20. (citation omitted). "As a result, we may consider plaintiffs' extrinsic evidence, but will

uphold the policy so long as it can reasonably be understood to result from a justification

independent of unconstitutional grounds." *Id*. Under this standard, a law will run afoul of the

Constitution only when it "lack[s] any purpose other than a 'bare . . . desire to harm a politically

unpopular group." *Id*. at *22 (quoting *Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973)); *see*

*also id*. (discussing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985), and

*Romer v. Evans*, 517 U.S. 620 (1996)).

       The Supreme Court found that the "Proclamation [did] not fit this pattern." *Id*. "It cannot

be said that it is impossible to 'discern a relationship to legitimate state interests' or that the

policy is 'inexplicable by anything but animus.'" *Id*. "But because there is persuasive evidence

that the entry suspension has a legitimate grounding in national security concerns, quite apart

from any religious hostility, we must accept that independent justification." *Id*.

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING EQUAL PROTECTION CLAIM –
No. 3:18-cv-1554 - 4

1   Plaintiffs may attempt to distinguish *Trump v. Hawaii* from the instant case, but any such

2   attempt should fail. In particular, nothing in the *Hawaii* decision would limit its reasoning to

3   claims of religious animus in the Establishment Clause context, as opposed to racial animus in

4   the equal protection context. Second, the decision is not limited to a ban on entry into this

5   country. By its reasoning, *Hawaii* applies broadly to any allegations of animus challenging the

6   legitimacy of the Executive's actions in the realm of foreign affairs and the admission and

7   exclusion of foreign nationals. *See Hawaii*, 2018 WL 3116337, at *20 (finding the Supreme

8   Court has "reaffirmed and applied its deferential standard of review across different contexts and

9   constitutional claims" in this realm).

10   In light of these principles, Plaintiffs' animus claim here must fail. Like the Proclamation

11   at issue in *Hawaii*, the TPS terminations for the four countries here were "expressly premised on

12   legitimate purposes." *Id*. at *22. "The text says nothing about [race]." *Id*. The TPS terminations,

13   like the Proclamation, reflect the results of an inter-agency "review process undertaken by

14   multiple Cabinet officials and their agencies." *Id*. And, the TPS terminations "were justified by

15   the distinct conditions in each country." *Id*.[1] If the Proclamation in *Trump v. Hawaii* did not fail

16   rational basis, the TPS terminations here surely cannot either. Plaintiffs have not come close to

17   carrying their burden at the pleading stage, and so the Court should dismiss their equal protection

18   claim with prejudice. *See Hawaii*, 2018 WL 3116337, at *22 ("It cannot be said that it is

19   impossible to 'discern a relationship to legitimate state interests' or that the policy is

20   'inexplicable by anything but animus.' Indeed, the dissent can only attempt to argue otherwise by

21   refusing to apply anything resembling rational basis review.").

**CONCLUSION**

23   For the reasons stated above and in Defendants' opening brief, this Court should dismiss

24   with prejudice Plaintiffs' equal protection claim.

---

[1] Defendants have previously laid out in detail Acting-Secretary Duke's and Secretary Nielsen's findings with respect to the country conditions in Sudan, Nicaragua, Haiti, and El Salvador, and refer the Court to those prior discussions. *See* Defs.' Mot. to Dismiss at 34–35 (ECF No. 20); Defs.' Reply ISO Mot. to Dismiss at 9 (ECF No. 26).

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING EQUAL PROTECTION CLAIM –
No. 3:18-cv-1554 - 5

Dated: July 2, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

JOHN R. TYLER
Assistant Branch Director

/s/  *Rhett P. Martin*
RHETT P. MARTIN
Trial Attorney
DC Bar No. 999272
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: (202) 305-7538
Fax: (202) 616-8460
Rhett.martin@usdoj.gov

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING EQUAL PROTECTION CLAIM –
No. 3:18-cv-1554 - 6