

SIDLEY AUSTIN LLP
555 WEST FIFTH STREET
LOS ANGELES, CA 90013
+1 213 896 6000
+1 213 896 6600 FAX

AMERICA • ASIA PACIFIC • EUROPE

ADEGEN@SIDLEY.COM
+1 213 896 6682

July 17, 2018

**Filed Electronically Via CM/ECF**

The Honorable Edward M. Chen
U.S. District Court, Northern District of California
Phillip Burton Federal Building and U.S. Courthouse
450 Golden Gate Avenue, Courtroom 5 – 17th Floor
San Francisco, California 94102

      Re:    <u>*Crista Ramos, et al. v. Kirstjen Nielsen, et al.*</u>, Case No. 3:18-cv-01554-EMC

Dear Judge Chen:

      This joint letter concerns discovery addressed in this Court's June 25, 2018 Order (Dkt. 34 ("the Order")). The parties have conferred several times, but are unable to resolve their disagreements. Plaintiffs request a telephonic conference at the Court's convenience.

**I.**      <u>**Plaintiffs' Position**</u>

      Defendants refuse to (1) comply with the Court's Order to produce the "whole" administrative record, (2) provide timely and adequate response to discovery, including discovery requests identified in the Order, and (3) provide compliant privilege logs.[1]

      ***1. The administrative record remains incomplete.*** "[T]o avoid delay," the Court ordered Defendants to "begin assembling the administrative record" in May. (Dkt. 17.) When Plaintiffs learned Defendants construe the record as limited to "formal recommendations and assessments" (Dkt. 28 at 6), Plaintiffs promptly alerted the Court. The Court ruled the administrative record "must 'include[] everything that was before the agency pertaining to the merits of its decision.' It must also include materials 'indirectly considered,' *i.e.*, those materials relied on by subordinates who directly advised the ultimate decision-maker." (Dkt. 34 at 5 (internal citations omitted)).

      Defendants have produced roughly 5 documents for Sudan, 13 for El Salvador, 16 for Nicaragua, and 23 for Haiti. These cannot possibly be complete. *First*, they contain only two emails and 12 letters. *Sierra Club v. Zinke*, 2018 WL 3126401, at *3 (N.D. Cal. June 26, 2018) ("This district has repeatedly required … emails … to be added to the administrative record."). *Second*, they omit materials considered by senior officials and subordinates. Plaintiffs know from

---

[1] Plaintiffs have made every effort to respond to Defendants' concerns expressed throughout the meet and confer process, including narrowing and focusing requests, proposing search terms, and encouraging ongoing discussions to clarify issues and move forward expeditiously. Plaintiffs regret the tone of Defendants' remarks below, but, assuming the Court is not interested in such dialogue, will not respond further absent request of the Court.

discovery, for example, that Acting Secretary Duke *alone* considered "over a 100 pages [sic] of documentation and perspective" during *one week* before deciding to terminate TPS for Nicaragua and punt on another country. (Ex. 1 [DHS-RFPD-00000004].) The Nicaragua administrative record totals only about 112 unique pages. Defendants point to the privilege log as filling the gap, but Acting Secretary Duke was not the only person at DHS to consider materials bearing on TPS designations. The continued delay in producing complete administrative records threatens to irreparably prejudice Plaintiffs' case, especially given the pace with which Defendants have responded to discovery. Defendants have had since May 17 to gather these records. Plaintiffs ask the Court to order complete administrative records produced within seven (7) days, consistent with Plaintiffs' previous explicit requests. (Dkt. 28 at 3.)[2]

***2. Defendants have failed to timely and adequately respond, including to requests specifically identified by this Court.*** The Order states: "Defendants shall respond to Plaintiffs' Interrogatory No. 1 and RFP Nos. 1, 4, 6, and 7 [by July 6]." (Dkt. 34 at 5; *see also* Ex. 2.) Defendants now object and plan to produce small batches of responsive materials on a rolling basis with no fixed date of completion. Interrogatory 1 and RFP 1 seek "all memoranda, directives, guidance, position papers, or statements of policy regarding the factors DHS considers when deciding to extend or terminate TPS—regardless of when they were created. In other words, this would include any such documents created since 1990, unless they were abrogated as an official matter before November 8, 2016." (Dkt. 31-1 n.1). Yet Defendants fail to identify a single memorandum or guidance about TPS created before November 8, 2016; the earliest is dated May 19, 2017. (*See* Ex. 3.) Defendants' response to RFP No. 1 is also unduly limited because their search terms were country specific, thereby excluding generic policy documents.

In addition, despite multiple meet and confers, Defendants refuse to respond to requests properly served but not specifically referenced in the Order. The parties held a Rule 26(f) conference on May 8, making Defendants' objections and responses to all of these requests due no later than June 7. Defendants now invent excuses for failing to timely object or provide complete responses by denying a Rule 26(f) conference occurred and claiming that, by postponing initial disclosures, Plaintiffs postponed all discovery. The record disproves these excuses. Plaintiffs have pressed for discovery since day one, and the parties filed a Rule 16 report "[p]ursuant to Local Rule 16-9 and the Standing Order for All Judges of the Northern District" (Dkt. 16), which require discussion of every topic under Rule 26(f) *and more*. So does this Court's Standing Order. Plaintiffs did not provide initial disclosures only because the parties agreed to do so at a later date that they have not yet set. (Dkt. 16 at 7).

Defendants' scant production to date also demonstrates a lack of good faith. Defendants have produced just 6 documents for USCIS and roughly 235 for DHS. Even now, it is impossible to determine what has been withheld and why. To start, Defendants have not produced documents in the manner kept or by request (Fed. R. Civ. P. 34(b)(2)(E)(i)). Rather than "affirmatively state … the full extent to which [Defendants] will produce materials," as required

---

[2] The record must include, for each country, such materials as (1) emails, letters, memoranda, notes, media items, opinions, and other TPS materials directly or indirectly considered by the Secretary; (2) communications between the Secretary and advisors, subordinates, or other government officials regarding TPS; and (3) communications with other departments that provided the Secretary with information considered for TPS determinations. *E.g.*, *Regents of the Univ. of Cal. v. DHS*, No. C 17-05211WHA, Dkt. 79 (N.D. Cal. Oct. 17, 2017).

July 17, 2018
Page 3

by § 2(a) of this Court's standing order, each response is "'[s]ubject to' and/or 'without waiving'" boilerplate objections (Ex. 4), which is "confusing and misleading." *Fay Ave. Prop., LLC v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 12570974, at *2 (S.D. Cal. July 1, 2014); *see also Herrera v. AllianceOne Receivable Mgmt., Inc.*, 2016 WL 1182751, at *3 (S.D. Cal. Mar. 28, 2016) (holding such objections "are improper"). Defendants also improperly redacted and withheld portions of responsive documents on grounds other than privilege, stripping them of context and meaning.[3] Defendants even redacted the names of individuals who participated in TPS decisions (Ex. 5 [DHS-RFPD-00000372]), and the titles of documents such individuals considered (Ex. 6 [USCIS-RFPD-00000037]).

While the Court previously declined to find waiver, Defendants' conduct, untimely objections, evasive answers, invented excuses, and complete failure to respond warrant finding waiver. Fed. R. Civ. P. 34(b)(2)(A), 37(a)(4), 37(b)(2)(C); *Herrera*, 2016 WL 1182751, at *3 (holding "[c]onditional responses … ultimately have the effect of waiving the objections"). Given the exigent circumstances, Defendants should be ordered to complete their review and production for: (1) RFP Nos. 1, 4, 6, and 7 from among roughly 35,000 potentially responsive documents by a date certain, *which currently stands at perhaps less than 1% complete*;[4] and (2) RFP Nos. 2-3, 5, and 8 within seven (7) days. Otherwise, Defendants will deprive Plaintiffs of meaningful discovery for the preliminary injunction motion.

***3. Defendants' privilege logs suffer from multiple deficiencies.*** Defendants invoke the deliberative process privilege without producing "a *detailed* privilege log identifying the excluded material and the *basis* for privilege with the administrative record." (Dkt. 34 at 5 (emphasis added). Defendants have merely prepared "an index of documents [with] just basic information and a brief description," which "is inadequate" as a matter of law. *Cal. Native Plant Soc'y v. EPA*, 251 F.R.D. 408, 413 (N.D. Cal. 2008). They provide conclusory assertions such as "[d]eliberations regarding the formulation of the policy at issue[,]" and "[d]eliberations regarding meeting agenda for TPS decision[.]" (*E.g.*, Exs. 7, 8.) Such "[c]onclusory statements ... do not suffice." *Cal. Native Plant Soc'y*, 251 F.R.D. at 413; *see also First Resort, Inc. v. Herrera*, 2014 WL 589054, at *5 (N.D. Cal. Feb. 14, 2014). The logs also fail to identify "all persons or entities ... to have received or sent the document" and "all persons or entities known to have been furnished the document or informed of its substance." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015).

In addition, based on the meager descriptions in the privilege logs, many documents produced could not have played a role in policy formulation to warrant shielding as deliberative. This includes a copy of a federal register notice with underlining (*e.g.*, Ex. 9 at [AR-HAITI-00000132]), drafts of federal register notices (*e.g.*, Ex. 8 at [AR-EL_SALVADOR-00000071]),

---

[3] *E.g.*, *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2017 WL 3624262, at *4 (D.N.J. Apr. 26, 2017) ("Nothing in [Rule 34] either expressly or impliedly authorizes a party to unilaterally redact documents. If anything, the Rule contemplates that a party cannot do so."); *Toyo Tires & Rubber Co., Ltd v. CIA Wheel Grp.*, 2016 WL 6246384, at *1-2 (C.D. Cal. Feb. 23, 2016) (concluding "CIA may not redact otherwise responsive documents").
[4] Defendants unilaterally selected custodians and search terms to identify 35,000 unique electronic documents and gathered an unknown number of paper documents potentially response to RFP Nos. 1, 4, 6, and 7. From among those, they have produced less than 420 unique documents, counting the administrative record. Plaintiffs believe the search protocol is deficient, but seek relief in the meantime as Defendants do not plan to timely complete production of even their self-selected universe of materials.

July 17, 2018
Page 4

and responses to the press (*e.g.*, Ex. 10 at [DHS_RFPD_00000001-9]). Similarly, Defendants rely on the law enforcement privilege, but make no "substantial threshold showing" to support the privilege or even offer an affidavit from a "responsible official with personal knowledge." *USA v. Ellis*, 2017 WL 1164172, at *3 (N.D. Cal. Mar. 29, 2017). Review of just one of the documents purportedly subject to the privilege confirms that the privilege could not apply. (Ex. 11 [AR-HAITI-00000171].) Any purported concern can be addressed by treating the documents as subject to a protective order. *Ibrahim v. DHS*, 2013 WL 1703367, at *5 (N.D. Cal. Apr. 19, 2013). Finally, Defendants have redacted or withheld as privileged such information as the title of memoranda, the names of recipients, the names of authors, and other non-privileged facts, data, and statistics. (*E.g.*, Ex. 12 [AR-SUDAN-21-26].)

Defendants' deficient and defective logs make it impossible to determine whether any basis exists for withholding or redacting a document. Any purported privilege is waived due to non-compliance with the Order, ongoing delays, and the manifest defects in the logs. At a minimum, this Court should order Defendants to (1) "supplement their privilege logs with more detailed information as to how the documents fit into the deliberative process" and, (2) where appropriate, submit affidavits from senior staff to substantiate these assertions. *Cal. Native Plant Soc'y*, 251 F.R.D. at 414. Plaintiffs also ask the Court to exercise its discretion to perform an *in camera* review of a sample of the administrative records and Defendants' discovery responses to confirm whether Defendants have appropriately applied the relevant privileges. *Id.* at 413 (*in camera* review is appropriate to consider the applicability of the deliberative process privilege" where the agency has failed "to prove, by other means, that the privilege applies").

II.     **Defendants' Position**

At the outset, Defendants respond to Plaintiffs' counsel's allegations of bad faith. The comity between the parties' counsel has broken down. Defendants take no issue with Plaintiffs in this case in any respect but respectfully submit that Plaintiffs' counsel have continually acted in bad faith, as a number of assertions they make in this letter show. For example, they claim that Defendants' responses and objections were untimely despite the fact that the Court rejected this argument at the June 22 hearing and then ordered Defendants to produce "records and responses to Interrogatory No. 1, RFP Nos. 1, 4, 6 and 7, within 14 days." 6/25/2018 Minute Entry (Dkt. No 35). During a call between the parties last Thursday, July 12, Defendants explained why they thought the deadlines for responding to these discovery requests had been clearly set by the Court and asked to work with Plaintiffs on a proposed scheduling order that would obviate any future misunderstandings. Plaintiffs' counsel responded by saying that they merits of Defendants' position was irrelevant to them because they saw no downside to raising this issue with the Court; from their perspective, if they lost, they would be in the same position, but if they won, Defendants' counsel would be in "a world of hurt," or words to that effect. Put simply, rather than work with Defendants, Plaintiffs prefer to consume the parties' and this Court's time and resources relitigating issues that have already been raised by the parties and decided by the Court.

Similarly, while Plaintiffs' counsel complain about Defendants' responses to Interrogatory No. 1, they do not quote the actual interrogatory itself but instead a footnote they inserted in their June 21 Supplemental Brief that dramatically alters the temporal scope of Interrogatory No. 1. *Compare* Interrogatory No. 1 "(Identify by title, date of creation, and author

July 17, 2018
Page 5

all memoranda, directives, guidance, position papers, or statements of policy or practice *received, prepared, or considered by DHS since November 8, 2016*, about what factors to consider when deciding whether to extend or terminate Temporary Protected Status designations—whether formally or informally adopted, and whether the materials received or considered were created prior or subsequent to November 8, 2016." (emphasis added)), *with* Dkt. No. 31-1 n.1 ("all memoranda, directives, guidance, position papers, or statements of policy regarding the factors DHS considers when deciding to extend or terminate TPS—regardless of when they were created. In other words, this would include any such documents created since 1990, unless they were abrogated as an official matter before November 8, 2016.").

Defendants have been working around the clock to respond to Plaintiffs' ever-increasing volume of discovery requests and to comply with the Court's orders. Agency counsel have been working weekends and through the night with no sleep to review and produce the documents Plaintiffs identified as being necessary for their preliminary injunction motion. Yet, at every turn Plaintiffs have demanded more and repeatedly threatened to go to the Court. Plaintiffs' counsel have repeatedly given Defendants unrealistic timelines to respond to their demands (e.g., taking from Friday afternoon to Monday afternoon to input their edits to this letter and then demanding Defendants provide their edits by 11:00 AM the next day or otherwise Plaintiffs would go to Court without Defendants). These onerous demands have consumed Defendants' time and impeded our orderly response to Plaintiffs' discovery requests.

Much of the disagreement between the parties stems from the fact that this case is proceeding simultaneously along the two tracks of record review and discovery. For instance, Plaintiffs interpret the conversation the parties had on May 8 as a Rule 26(f) conference that triggered Defendants' 30-day deadlines for responding to their discovery requests. Defendants maintained during that conversation, and at the May 17 hearing, that this was a record review case not subject to discovery or the requirements of Rule 26. Although the Court rejected Defendants' argument at the June 22 hearing, there is no basis on which Plaintiffs can argue that the Court's order had retroactive effect, whereby Defendants' 30-day deadlines for responding to discovery purportedly date back to May 7. Plaintiffs, in other words, cannot now say that Defendants' discovery responses and objections are untimely. Indeed, the parties agreed to postpone the exchange of Rule 26(a)(1) disclosures, which Defendants reasonably understood to mean that both parties recognized that their Rule 26 obligations had not begun, and would not begin, until the Court resolved whether this case would proceed under record review or to discovery.

Defendants have interpreted this Court's May 7, 2018 Minute Entry differently than Plaintiffs. Contrary to Plaintiffs' suggestions that this Minute Entry ordered a Rule 26(f) conference, this Court ordered that a "Join Case Management statement . . . be filed by the end of the day 5/10/2018." Because Defendants viewed this case as exempted from Rule 26(f) because it was an administrative record review case, Defendants maintain that no 26(f) conference has occurred. *See* Dkt. No. 16 (Joint Case Management Statement in which Defendants state their view that this is a record review case). Although, consistent with the Court's direction, Defendants began preparations to respond to discovery if so ordered, Defendants have not understood discovery to have begun until this Court's June 22 hearing.  Moreover, Plaintiffs raised their claim that Defendants should have responded earlier to their discovery requests at the June 22 hearing, and the Court did not rule then that Defendants were untimely, but instead

July 17, 2018
Page 6

ordered Defendants to respond on July 6, 2018 to the interrogatory and four requests for production Plaintiffs identified as being necessary for their preliminary injunction motion.

In any event, as explained more fully below, Defendants are in compliance with the Court's orders regarding the production of the administrative record and the responses to the discovery requests Plaintiffs identified as being necessary for their preliminary injunction motion. To obviate further confusion, Defendants requested that the parties confer to develop a scheduling proposal that they could submit to this Court. Plaintiffs rejected that request, but Defendants maintain that the parties should conduct a scheduling conference and request a Rule 16 scheduling order that will eliminate further confusion and avoid the unnecessary expense of this Court's and the parties' time and resources. Given that Plaintiffs have already served three sets of document requests on DHS (nearly 50 requests in total) and two on the United States (approximately 25 requests in total), the need to bring structure to discovery in this case has become more apparent.

As a final opening note, Defendants' own good faith in this case is illustrated by what they have produced thus far in discovery. Although a recommendation about how to proceed for a major upcoming policy decision is within the core of the deliberative process privilege, federal agencies throughout the Government have instead waived this privilege with respect to many documents. *See* 6/15/2018 Joint Discovery Letter at 6 (Dkt. No. 28) (explaining the scope of Defendants' voluntary waiver of deliberative process privilege in this case). The Government has waived the privilege for the formal recommendation from USCIS. The Government has waived the privilege for the formal recommendation from the Secretary of State and the accompanying assessment. The Government has waived the privilege for an email recommendation from the Southern Command within the Department of Defense. The Government has waived the privilege for a formal recommendation from DHS's foreign policy advisor. Rather than engaging with these materials, Plaintiffs' counsel appear bent on discovering what "world of hurt" they can get away with imposing on Defendants in this case. Their conduct is disappointing and distressing.

*1. Defendants have produced the whole administrative record.* Plaintiffs are incorrect that Defendants have not produced the whole administrative record. DHS's position is that TPS designation, extension, and termination decisions are not subject to any review—APA review or otherwise—due to the statutory bar to review in the INA. Defendants maintained the documents provided to the Secretaries for consideration of the TPS determinations. However, because the agency does not consider TPS decisions subject to judicial review, this is the first time it has had to compile an administrative record for TPS determinations.

Defendants, however, have produced everything they are currently aware of that Secretaries Duke and Nielsen relied upon in making their TPS decisions as expeditiously as possible, as well as "those materials relied on by subordinates who directly advised the ultimate decision-maker." (Dkt. No. 28, p. 5). To confirm this latter piece of the administrative record, Defendants have conducted interviews with the subordinates who advised the Secretaries on the TPS decisions for the four countries at issue here, and they explained that they relied on those documents produced or placed on the privilege logs. If Defendants find any other materials that

July 17, 2018
Page 7

were considered and not produced or listed on the privilege log, they will supplement the record accordingly.[5]

In any event, Plaintiffs' unfounded arguments about the scope of the administrative record have been rendered academic by the fact that, by order of the Court, Plaintiffs are allowed to take discovery. This case, in other words, cannot now be regarded as a record review case. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006) ("When reviewing an agency decision, 'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) ("This rule "ensures that the reviewing court affords sufficient deference to the agency's action" because "[w]hen a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency." (citation and quotations omitted)).

Accordingly, and in satisfaction of the Court's Order of June 25, 2018 allowing discovery to go forward (Dkt. 34), Defendants on July 6, 2018 responded to Plaintiffs' Interrogatory No. 1 and reviewed and produced significant numbers of documents, totaling approximately 2,000 pages (including those listed on the privilege log), in response to the Plaintiffs' four requests for documents under Fed. R. Civ. P. 34, which Plaintiffs identified as being necessary for their preliminary injunction motion.[6] In accordance with Rule 34, Defendants are continuing to search for and review any other documents that might be responsive, but Defendants believe that they have located the majority of documents responsive to those four requests.[7]

To be clear, Defendants maintain that, to the extent Plaintiffs are allowed to proceed in this case, their claims should be adjudicated based on the administrative record in accordance with the APA. In an APA record review case, any alleged inadequacies in the record would need to be addressed by Plaintiffs in a motion to supplement the record in accordance with *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971). However, because fact development in this case has not been limited to the administrative record but has instead proceeded to discovery, litigating the adequacy of the record would be a waste of judicial resources, especially in light of the extensive discovery already being conducted in this case.

---

[5] Plaintiffs cite a document in which Acting Secretary Duke says that she considered more than 100 pages of documentation relating to the termination of TPS for Nicaragua, and then complain that the administrative record "only totals about [66] unique pages." Contrary to Plaintiffs' position, this document confirms that Defendants have compiled the complete administrative record. Approximately 30 documents were withheld from the administrative record for Nicaragua because they were privileged. These, combined with the documents that were produced, puts the total well over 100 pages.

[6] Although there is some overlap between the administrative record and the documents produced in discovery, Defendants have located approximately 1,500 pages of documents responsive to these discovery requests (including the materials listed on the privilege log).

[7] To the extent that Plaintiffs now seek documents considered since November 8, 2016 relating to TPS determinations for countries other than those at issue here, Defendants maintain that such documents are disproportionate to the needs of this case. At the very least, Plaintiffs should review the materials that were produced to determine the necessity of seeking documents beyond those involving the TPS decisions for the four countries that are the subject of this litigation.

July 17, 2018
Page 8

  *2. Defendants have timely responded to all discovery requests.* Plaintiffs make a number of incorrect assertions regarding the timeliness of Defendants' response to their discovery requests. First, there is no basis on which Plaintiffs can legitimately assert that Defendants' objections to Interrogatory No. 1 and Plaintiffs' record requests are untimely. In both its June 25th Order and June 25th Minute Entry, the Court ordered Defendants to respond to Plaintiffs' Interrogatory No. 1 and RFP Nos. 1, 4, 6, and 7 by July 6th. *See* 6/25/2018 Abbreviated Order Denying Defendants' Motion to Dismiss, at 5 (Dkt. No. 34) ("[A]s discussed on the record, Defendants shall respond to Plaintiffs' Interrogatory No. 1 and Requests for Production Nos. 1, 4, 6, and 7 within 14 days of the hearing date. The parties shall meet-and-confer with respect to Plaintiffs remaining discovery requests, including the scope of a Rule 30(b)(6) deposition."); 6/25/2018 Minute Entry (Dkt No. 35) (produce "records and responses to Interrogatory No. 1, RFP Nos. 1, 4, 6 and 7, within 14 days."). These orders clearly established the time for Defendants to serve their responses and objections to Interrogatory No. 1 and the four record requests, and Plaintiffs accordingly are incorrect in their assertion that the responses and objections served on July 6 were untimely.

  Relatedly, Plaintiffs incorrectly contend that the conversation the parties had on May 8, 2018 constituted a Rule 26(f) conference sufficient to trigger the 30-day timeline for Defendants' responses and objections. Defendants' clearly stated position during that conversation, and the position they took at the May 17 hearing, was that this is a record review case not subject to the requirements of Rule 26. *See* Rules 26(a)(1)(B) and 26(f) (making expressly clear that "an action for review on an administrative record" is among the category of cases that are exempt from the requirements of Rule 26(f) and the corresponding requirements of Rule 16). The Court, however, did not rule on that issue until the June 22 hearing, and for that reason, Defendants appropriately understood the 30-day timeframe to respond to Plaintiffs' discovery requests to have begun on June 22.[8]

  Moreover, the parties did not discuss a number of items during the May 8 conversation that a Rule 26(f) conference requires. They did not "develop a proposed discovery plan," or decide "when discovery should be completed, and whether discovery should be conducted in phases or limited to or focused on particular issues," or have a discussion about "the forms in which [electronically stored information] should be produced." *See* Rule 26(f)(2)-(3).[9] To rectify this situation, Defendants proposed on July 9, 2018 that the parties conduct "a Rule 26(f) conference, perhaps later th[at] week, to try to agree on the scheduling, or not, and prepare a proposed scheduling order for the court. That way, the parties can set forth their various views on these matters and we can get some clarity from the court." Ex. 13. Plaintiffs rejected this request. Ex. 14.

  Indeed, Plaintiffs claimed at the June 22 hearing that Defendants should have responded to and objected to their discovery requests earlier. *See* 6/22/2018 Hearing Tr. at 87. The Court

---

[8] Because the deadline for responding will fall on a Sunday (July 22), Defendants calculate the deadline for responding to be Monday, July 23.

[9] Indeed, in their email of July 10, 2018 (Ex. 14), Plaintiffs complain that "Defendants also have failed to produce documents with load files containing metadata in accordance with commonly accepted electronic discovery practices." However, Plaintiffs' discovery requests do not contain instructions on how such information should be produced, and Plaintiffs also ignore the fact that the parties did not resolve this issue during their May 8 conversation.

July 17, 2018
Page 9

did not rule on Plaintiffs' assertion, but instead ordered Defendants to provide "responses to 1, 4, 6, and 7[.]" *Id*. at 99. For these reasons, Defendants can see no basis to support Plaintiffs' interpretation of the discovery deadlines at issue here, and Plaintiffs' refusal to have a scheduling conference on this issue, to use Plaintiffs' language, "demonstrate[s] a lack of good faith."

Finally, Defendants object to Plaintiffs' request that they should complete review and production of *all* production requests within seven (7) days. Perhaps most fundamentally, Plaintiffs waited approximately six months to bring this suit after the decision to terminate TPS for Sudan was announced. Only Plaintiffs could control the timing of this case, and they should not now be allowed to impose impossible discovery deadlines on Defendants. Regarding record request nos. 2-3, 5, and 8, the Court specifically ordered that "[t]he parties shall meet-and-confer with respect to Plaintiffs' remaining discovery requests[.]" 6/25/2018 Order at 5 (ECF No. 24). The parties have not resolved how to proceed on these requests, and now Plaintiffs want review and production of all documents responsive to these requests—notwithstanding the fact that they did not identify these requests as necessary for their preliminary injunction motion at the June 22 hearing. As stated above, Defendants maintain that July 23 is the deadline for the responses and objections to these other requests for production.

Defendants, moreover, cannot complete their review of the approximately 35,000 documents determined to be potentially responsive by that date. Defendants currently have 18 reviewers dedicating part of their time to reviewing these documents. These reviewers have been pulled from their day to day agency responsibilities, such as providing legal advice to agency decision makers on DHS and USCIS litigation, operations, and policies, in order for the Defendants to meet the Plaintiffs' requests in as timely a manner as possible. Notwithstanding these substantial efforts, it would be impossible to complete the review within the timeframe demanded by Plaintiffs. To be clear, the current discovery that Plaintiffs seeks is in relation to their anticipated motion for a preliminary injunction. In response to that discovery, Defendants have answered Interrogatory No. 1, have completed their production of the administrative record, and have substantially responded to the four record requests Plaintiffs identified as being necessary for their preliminary injunction motion. Plaintiffs' request that responses to these record requests be completed within one week is not possible and is needless in any event in light of the representations they have made to this Court about what they need for a preliminary injunction motion.[10]

*3. Defendants' privilege logs are sufficient.* Plaintiffs make a general attack on the adequacy of Defendants' privilege logs without identifying any particular deficiencies. Defendants have communicated that they are willing to work with Plaintiffs to address any particular deficiencies identified by Plaintiffs, but Defendants object to Plaintiffs' blanket assertions about the adequacy of the privilege logs. Moreover, Defendants have produced a number of privileged documents concerning the TPS decision-making process in effort to be as forthcoming as possible, such as the State Department assessments and email memoranda from the Department of Defense.

---

[10] Regarding the documents responsive to RFP Nos. 1, 4, 6, and 7, Defendants reiterate that they have produced what they believe to be the majority of the documents responsive to those requests. Defendants cannot be certain that all such documents have been located, however, until they complete their review of the 35,000 potentially responsive documents they have located thus far.

      Additionally, Defendants have provided updated logs for the administrative records for Sudan and Nicaragua that adequately describe the documents and the nature of the privilege asserted. These, as well as the privilege logs provided for the four discovery requests and the administrative records for Haiti and El Salvador, are more than adequate to allow Plaintiffs (and this Court) to determine the basis of the privilege. *See, e.g.*, Ex. 15 (USCIS_RFPD-00000001: "DHS Secretary seeking legal advice regarding the interpretation of 'armed conflict' for purposes of TPS"); Ex. 16 (DHS_RFPD_00000281: "Internal options memo about upcoming TPS decisions"); Ex. 17 (AR-HAITI-00000026: "Nov. 13, 2017 Haiti TPS Strategy Meeting concerning deliberations of upcoming Haiti TPS decision"); Ex. 18 (AR-EL SALVADOR-00000003: "Deliberations regarding call with foreign government official regarding TPS").

      Plaintiffs are further mistaken regarding the Defendants' assertion of privilege for sensitive law enforcement information. This privilege is "designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement," *see Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998) *aff'd* 203 F.3d 53, 1999 WL 1021921 (D.C. Cir. 1999) (unpublished), and "serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations," *see id*. at 177. The documents over which Defendants asserted the law enforcement privilege implicate the core purposes for the privilege as they concern sensitive sources of law enforcement information and assessments regarding the impact of law enforcement activities.[11]

      Plaintiffs' other complaints about the material withheld on the basis of privilege are likewise without foundation. For example, Plaintiffs complain about withholding "drafts of Federal Register notices," but protecting deliberations about what to include in a federal register notice is core deliberative process of which the disclosure of these sorts would impair the open flow of communication within the government. *See Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F.Supp.2d 515, 549 (S.D.N.Y. 2010) ("Internal deliberation on a final agency rule clearly falls within the traditional scope of the deliberative process privilege." (citing several cases)).

      Again, Defendants are willing to meet and confer with Plaintiffs about any particular assertion of privilege. Defendants are also willing to discuss the entry of a protective order with Plaintiffs that could address some of their concerns about the material redacted as law enforcement sensitive and the redactions of some individual names from the documents. However, Plaintiffs' general attack on the sufficiency of Defendants' privilege logs is baseless.

\*     \*     \*

---

[11] Plaintiffs complain that Defendants have not attached a declaration to support the assertion of the LES privilege. However, the purpose of a privilege log is to initiate a good faith meet-and-confer to decide what is in dispute before proceeding with motion practice before the Court which would require a signed declaration.

Respectfully submitted,

*/s/ Alycia A. Degen* | */s/ Rhett Martin*
Alycia A. Degen | Rhett Martin
Sidley Austin LLP | U.S. Department of Justice, Civil Division
adegen@sidley.com | Rhett.Martin@usdoj.gov
*Attorney for Plaintiffs* | *Attorney for Defendants*

## Attestation Pursuant to Civil Local Rule 5-1(i)(3)

I, Alycia A. Degen, attest that concurrence in the filing of this joint letter regarding disputed discovery matters has been obtained from the other signatory, Rhett Martin. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 17th Day of July, 2018, in Los Angeles, California.

*/s/ Alycia A. Degen*
Alycia A. Degen
Sidley Austin LLP