U.S. Department of Justice
Civil Division, Federal Programs Branch

20 Massachusetts Ave., N.W., Room 6108
Washington, DC 20530

---

Kevin Snell
Trial Attorney

Tel.: (202) 305-0924
Fax: (202) 616-8460
Kevin.Snell@usdoj.gov

August 6, 2018

**Filed Electronically Via CM/ECF**

The Honorable Sallie Kim
United States District Court,
Northern District of California
Philip Burton Federal Building and U.S. Courthouse
450 Golden Gate Avenue, Courtroom A — 15th Floor
San Francisco, California 94102

Re: *Christa Ramos, et al. v. Kirstjen Nielsen, et al.*, Case No. 3:18-cv-01554-EMC

Dear Judge Kim:

This Court's August 2, 2018 Order, directed Defendants explain the search protocol used to date, and for Plaintiffs' to provide a list of the additional seven custodians that they request Defendants search. Dkt. 53. Before explaining the search protocol, Defendants respectfully restate their position that they are in the best position to identify the appropriate custodians and search terms. *See In re EpiPen*, No. 17-md-2785, 2018 WL 1440923 at *1 (D. Kan. Mar. 15, 2018) (stating that "the party responding to discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case" (citing *Enslin v. Coca-Cola Co.*, No. 2:14-CV-6475, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) ("Asking a court to compel a party to search the ESI of additional custodians is similar to asking a court to compel to undertake additional efforts to search for paper documents. In either case, the requesting party is second-guessing the responding party's representation that it conducted a reasonable inquiry for responsive information….")). Assuming that Plaintiffs' list of custodians is the same as the one they previously requested of Defendants, the material collected from those custodians will be either duplicative of the relevant material already collected because Plaintiffs' requested custodians corresponded with the custodians Defendants already identified, or the material will be too tangential to the matters at issue in this action.

Turning to the search protocol used here, Defendants employed a thorough, multi-step, and broad search process. Even before this lawsuit was filed, Defendants began an initial document collection process after learning of a separate lawsuit challenging the TPS determinations of the former Acting Secretary of the Department of Homeland Security ("DHS"). Upon receiving Plaintiffs' proposed early discovery requests, and in anticipation of a May 17, 2018, hearing with Judge Chen, the agency expanded its process for collecting documents. In total, Agency Counsel at DHS has conferred with DHS's leadership office to determine the identities of those individuals who provided direct input to former Acting Secretary Duke and Secretary Nielsen regarding the TPS determinations at issue in this action,

to ask them what materials former Acting Secretary Duke and Secretary Nielsen considered in making their determination, and to request information as to where relevant documents would be stored.  Also, to determine which individuals provided indirect input to the Secretaries, Agency Counsel spoke to the individuals identified by the leadership office and ascertained what materials they considered in fashioning their recommendations, and where relevant documents would be stored.  Agency Counsel then collected the paper files from those who had them or had staff pull documents from shared drives.

Armed with the results of this investigation, information technology ("IT") personnel ran search terms against the identified custodians' email accounts, and specified electronic records.  For DHS custodians, IT staff searched using the terms "Temporary Protected Status" or "TPS," in addition to the name of a country that has had its TPS designation terminated during this Administration—"Haiti" or "Nicaragua" or "Sudan" or "El Salvador" or "Honduras" or "Nepal."  The DHS custodians searched were:  Briana Petyo, Gene Hamilton, James Nealon, Elaine Duke, John Kelly, Joseph Maher, Dimple Shah, Christina McDonald, Nader Baroukh, David Glawe, Miles Taylor, Kate Nichols (Alford), Elizabeth Neumann, Chad Wolf, Eric Jones, Tracy Short, and Kirstjen Nielsen.  Reflecting the agency's thorough and flexible search, DHS determined during its ongoing review process that it should also search for Claire Grady's records, and so the agency went back and pulled her records as well.

U.S. Citizenship and Immigration Services ("USCIS") used a similar process for its identified custodians: Francis Cissna, James McCament, Kathy Nuebel Kovarik, and Craig Symons.  But after it became clear that the search terms used by DHS were overly broad, USCIS added additional search terms to the search string such that records needed to contain one of the following terms: "terminate" or "termination" or "designate" or "designation" or "redesignate" or "redesigation" or "extend" or "extension."

For both DHS and USCIS searches, the agencies carefully selected those search terms reasonably calculated to yield a reliable universe of responsive materials without returning substantially overbroad or duplicative material that would needlessly slow the agencies' review.  And the date range for both searches was from November 8, 2016 to May 3, 2018, which was reasonable given that the lawsuit challenges the current Administration's TPS decisions and is tethered to the dates in Plaintiffs' pleadings and first set of discovery requests.

In addition, when the agency was aware that certain documents were located in a specific location, it went directly there to collect the documents.  For example, DHS Executive Secretariat maintains the final package of documents that goes to the Secretaries for TPS decisions, and so Agency Counsel went there to collect those documents.

Once documents were collected, they were transferred to the U.S. Department of Justice, Civil Division, Federal Programs Branch Computer Lab ("Lab"), where they were processed and de-duplicated and the relevant remainder uploaded for document review in a system called Relativity.  The lab created a document repository in Relativity for these documents.  Defendants used the Relativity system to conduct responsiveness and privilege review when appropriate.  This was an efficient method by which to compile the administrative records.  This is the same method that the Agency used to review documents responsive to Plaintiffs'

First Set of Requests for Productions ("RFPs") 1, 4, 6, and 7.

Targeted searches within the collection were run in Relativity to identify documents where the RFPs allowed. But because Defendants were already reviewing the entire collection, and some RFPs were so vague and broad, such as RFP Number One, it was determined to be appropriate to review all of the documents collected as part of the general search to determine responsiveness.

At first, the general search yielded approximately 117,000 documents. Once those documents were uploaded into specialized document processing software, the Lab was able to identify approximately 35,000 documents that required review from the initial collection after running an initial de-duplication process. The reviewers, however, continued to come across duplicate documents and email chains, and so the Lab attempted to remove (1) near-duplicates and (2) threaded email chains so as to have only the most inclusive email remain in the revised data set. After removing a large sub-universe of documents that were determined to be non-responsive to Plaintiffs' first set of document requests on DHS, Defendants now have approximately 10,000 more documents to complete for review to ensure a thorough response to RFPs 1, 4, 6 and 7 of Plaintiffs First Set of RFPs. Additionally, in light of Plaintiffs' subsequent discovery requests, Defendants continue to identify, collect, and process additional documents for review.

As Defendants have consistently done throughout this process, they will continually review their search criteria as the parties progress through discovery, and to the extent possible and to ensure a thorough search, will additionally collect responsive documents from discrete locations.

   /s/ Kevin Snell
KEVIN SNELL
U.S. Department of Justice, Civil Division