1  Alycia A. Degen (SBN 211350)
   adegen@sidley.com
2  Sean A. Commons (SBN 217603)
   scommons@sidley.com
3  SIDLEY AUSTIN LLP
   555 West Fifth Street
4  Los Angeles, CA 90013
   Telephone: +1 213 896 6010
5  Facsimile: +1 213 896 6600

6  Ahilan T. Arulanantham (SBN 237841)
   aarulanantham@aclusocal.org
7  ACLU FOUNDATION
   OF SOUTHERN CALIFORNIA
8  1313 West 8th Street
   Los Angeles, CA 90017
9  Telephone: +1 213 977 5211
   Fax: +1 213 977 5297
10
   Jessica Karp Bansal (SBN 277347)
11 jbansal@ndlon.org
   Emilou MacLean (SBN 319071)
12 emi@ndlon.org
   NATIONAL DAY LABORER
13 ORGANIZING NETWORK
   674 S. La Fayette Park Place
14 Los Angeles, CA 90057
   Telephone: +1 213 380 2214
15 Fax: +1 213 380 2787

16 Attorneys for the Plaintiffs
   [*Additional Attorneys Listed on the Next Page*]
17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CRISTA RAMOS, *et al.*,<br><br>        Plaintiff,<br><br>    vs.<br><br>KIRSTJEN NIELSEN, *et al.*,<br><br>        Defendant. | Case No. 3:18-cv-1554-EMC<br><br>**DECLARATION OF ELSY YOLANDA FLORES DE AYALA IN SUPPORT OF THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: September 25, 2018<br>Time: 10:30 a.m.<br>Judge: Hon. Edward M. Chen<br>Dept.: Court 5, 17th Floor<br><br>Complaint Filed: March 12, 2018<br>Date of Trial: None set |

*Additional Attorneys of the Plaintiffs*

William S. Freeman (SBN 82002)
wfreeman@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: +1 415 621 2493
Fax: +1 415 863 7832

Mark E. Haddad (SBN 205945)
markhadd@usc.edu
Part-time Lecturer in Law
USC Gould School of Law*
University of Southern California
699 Exposition Boulevard
Los Angeles, CA 90089-0071
Telephone: +1 213 675 5957

Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
Ryan M. Sandrock (SBN 251781)
rsandrock@sidley.com
SIDLEY AUSTIN LLP
555 California Street
Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1219
Facsimile: +1 415 772 7400

Amanda Farfel (SBN 288126)
afarfel@sidley.com
Andrew B. Talai (SBN 300053)
atalai@sidley.com
Marisol Ramirez (SBN 307069)
marisol.ramirez@sidley.com
Mohindra Rupram (SBN 319478)
mrupram@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Katelyn N. Rowe (SBN 318386)
krowe@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595 9598
Facsimile: +1 310 595 9501

| | |
|---|---|
| 1 | Jessica Fishfeld (*Pro Hac Vice*) |
| 2 | jfishfeld@sidley.com<br>SIDLEY AUSTIN LLP |
| 3 | One South Dearborn<br>Chicago, IL 60603 |
| 4 | Telephone: +1 312 853 2031<br>Facsimile: +1 312 853 7036 |
| 5 | * *Institution listed only for identification purposes* |

# DECLARATION OF ELSY YOLANDA FLORES DE AYALA

1. I have personal knowledge of the facts set forth in this declaration. If called upon to testify as a witness, I could do so and would testify to these facts.

2. My husband and I applied for Temporary Protected Status (TPS) for ourselves and our baby daughter shortly after El Salvador was designated for TPS, and we have held TPS since 2001. On January 8, 2018, the US government announced that TPS for El Salvador would formally end on September 9, 2019.

3. I am submitting this declaration to describe the harm my family and I have suffered since the announcement of the termination of TPS for El Salvador and the harm my family and I would suffer if TPS is ultimately terminated.

## **Background**

4. I was born in El Salvador in 1979. I am 39 years old and am the mother of three children. My family and I live in Washington, D.C.

5. My family and four oldest brothers fled El Salvador during that nation's brutal civil war, most of whom emigrated to the United States during the 1980s.

6. As I was very young at that time, my parents believed it would not be safe for me to escape with them. That is why my sister, my youngest brother and I remained in El Salvador with my mother and grandmother during the war.

7. All my family is now in the United States. My father and four of my older brothers are now U.S. citizens. My mother and one of my brothers are lawful permanent residents.

8. In El Salvador I married Juan Amilcar Ayala Rovira and together we had a baby girl, María José Ayala Flores, in July 1998.

9. I have only returned to El Salvador once over the last 18 years. In 2009 my family and I briefly returned to El Salvador to visit my mother-in-law. We traveled under conditional advance parole authorizing our journey.

**Impact of Temporary Protected Status**

10. I was 21 years old when I obtained TPS. Every 12 or 18 months since the designation of TPS for El Salvador, in order to maintain our legal status, we have submitted new documents, paid a fee of hundreds of dollars and have demonstrated that we have not committed any crime.

11. During the last 18 years we have relied on TPS and came to expect that our legal status would continue. We believed this situation would remain until such time as conditions in El Salvador improved. The situation in El Salvador continues to be difficult and the U.S. decisions were very regular and responsive to the conditions that seemed to exist in El Salvador. This made me feel more comfortable building a life with my family here.

12. My husband and I have brought up our three children in the United States. Our two youngest children were born in the United States and are U.S. citizens. My son Juan is 13 years old and is beginning his final year of middle school; he is also a plaintiff in this case. Joanna is 17 years old and is beginning her final year of high school. She wants to be a doctor or an engineer. María, my eldest daughter, who is a TPS holder and a plaintiff in this case, is now 20 years old and in college.

13. Since 2004, I have worked as a professional nanny with several families. My husband works as a maintenance technician and has worked with the same company for the last 16 years.

14. Due to the regularity with which the U.S. government renewed TPS every renewal period, I never believed it would be truly possible for it to be canceled so suddenly, not least since I understand that conditions in El Salvador have not improved over the last year or in recent years.

**Impact of the Decision to Terminate TPS**

15. My family and I have been overwhelmed by the decision of the U.S. Government to terminate TPS for El Salvador. I have lived in the United States for half my life, and my daughter who has TPS has lived here practically all her life. My two youngest children are U.S. citizens and have only been in El Salvador briefly one time when they were very young.

16. My husband and I rely on TPS to work legally in the United States and live together with our children. It worries us that we could not work or stay together as a family if my husband,

my eldest daughter and I lose our status. We rely on our stable income to pay the rent, buy food and look after ourselves and our children.

17. My sister, who is a U.S. citizen, was recently diagnosed with cancer and has been staying in our house so my husband and I can look after her while she undergoes extensive treatment. We are worried about how she will receive care and support if TPS is canceled and we no longer have stable incomes or have to return to El Salvador.

18. We became very depressed when we learned that TPS for El Salvador would end. Our routines have changed due to the government's decision. For example, my husband and I enjoy traveling with our children each summer. This summer we have mostly stayed at home due both to TPS and to my responsibilities to care for my sister. Due to the announcement of the termination of TPS, we have been afraid of spending too much money and have been too worried about our future to make plans. My husband and I have also been working more than we used to—and we spend less time with our children—as we need to save money to address the uncertainties.

19. There are no good options for us if we lose TPS. It worries me that it will not be safe for me and my family to move to El Salvador. My son Juan does not speak Spanish fluently and my children and I have no real knowledge of El Salvador. My children will suffer if we move to El Salvador; their lives and education are here. I worry in particular about my son Juan because I know there is large-scale forced recruitment of boys and teens by the gangs.

20. If my husband and I are forced to return to El Salvador, my daughter Joanna has already told me she will start college, get a job and look after her younger brother. She would be just 18 at that time, and it would be disruptive to her future and would deprive our son Juan of the opportunity to grow up in a stable environment with his parents. At the time TPS expires, Juan will be entering high school.

21. I fear we would also lose money if we were forced to return to El Salvador. My husband has worked for the same company for 16 years and has saved some money for retirement. I think it would be difficult or impossible for him to claim all the money he has earned and saved.

22. We have spent money trying to find out whether there are legal solutions for our

immigration problems, including an attorney to investigate my case and that of my husband and my daughter.

### Impact of the Termination of TPS on my Daughter with TPS

23. My daughter María, who has held TPS since she was a baby, is currently studying math at Montgomery College in Maryland. She loves working with kids and hopes to become a math teacher. However, due to the government's decision to terminate TPS she does not know whether she will be able to finish her studies. She will only have completed her third year at college at the time TPS for El Salvador is scheduled to expire.

24. María got very depressed when she discovered the government planned to terminate TPS for El Salvador. She called her younger sister in tears, inconsolable, in the middle of the school day. It was very difficult for her to get out of bed and focus on schoolwork. She has told me she now feels uncertain about her whole future. She has told me it is incomprehensible to her that in a year's time she could lose the legal right to live in the country she has lived in legally for practically her entire life.

### Impact of TPS Termination on Our U.S. Citizen Children

25. Until recently we had not even discussed TPS with our son Juan because we did not want to distract him from his studies and I wanted him to have a sense of security and stability. When we heard that TPS would be ending, we knew we had to discuss this with the entire family. It is still very difficult for my son Juan to understand.

26. My daughter Joanna feels alone and isolated at school; no one around her knew what TPS was and she did not know how to support her older sister and her parents. My children are now discussing TPS and our future all the time when they should be focusing on their studies and their friends.

27. I am involved in the National TPS Alliance, a coalition of TPS holders throughout the country who have joined to defend our families and protect TPS. We have drawn strength and hope by working together with other families in similar situations to our own. We are desperate given the devastating new reality that confronts us.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __ day of August, 2018, in Washington, D.C.

                                                  _____

                                                  Elsy Yolanda Flores de Ayala



## Declaration of Bruce Taylor
## Re: Certified Translation

I, Bruce Taylor, declare as follows:

1. I am a certified Spanish-to-English language translator, and I am a Member of the American Translators Association ("ATA"). My ATA Certification Number is 503180. I am employed by Transperfect.

2. I read and write fluently in both English and Spanish.

3. I have a BA in Hispanic Studies from the University of Manchester and a PhD in Spanish history from the University of Oxford.

4. I am also certified by Transperfect to translate Legal and Financial material.

5. I have carried out hundreds of certified translations for this and other clients in the commercial and cultural sectors, among others, in the private and public sector as well as in litigation matters since becoming certified in May 2011.

6. On August 21, 2018, my employer, Transperfect, was retained by Sidley Austin LLP, on behalf of the Plaintiffs in the case entitled *Crista Ramos, et al., v. Kirstjen Nielsoen, et al.*, Case No. 3:18-cv-1554-EMC, to produce a certified translation of the declarations of Imara Ampie and Elsy Yolanda Flores de Ayala.

7. I have reviewed and translated into English, to the best of my ability, the declarations of Imara Ampie and Elsy Yolanda Flores de Ayala. I can affirm that the English translations of the two declarations are, to the best of my knowledge and ability, faithful, accurate, and complete translations of the source declarations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed this 23rd day of August, 2018, in Beverly Hills, California.

_____
Bruce Taylor

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

1 | Alycia A. Degen (SBN 211350)
adegen@sidley.com
2 | Sean A. Commons (SBN 217603)
scommons@sidley.com
3 | SIDLEY AUSTIN LLP
555 West Fifth Street
4 | Los Angeles, CA 90013
Telephone: +1 213 896 6010
5 | Facsimile: +1 213 896 6600

6 | Ahilan T. Arulanantham (SBN 237841)
aarulanantham@aclusocal.org
7 | ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
8 | 1313 West 8th Street
Los Angeles, CA 90017
9 | Telephone: +1 213 977 5211
Fax: +1 213 977 5297
10 |
Jessica Karp Bansal (SBN 277347)
11 | jbansal@ndlon.org
Emilou MacLean (SBN 319071)
12 | emi@ndlon.org
NATIONAL DAY LABORER
13 | ORGANIZING NETWORK
674 S. La Fayette Park Place
14 | Los Angeles, CA  90057
Telephone: +1 213 380 2214
15 | Fax: +1 213 380 2787

16 | Abogados de los Demandantes
[*Abogados Adicionales Enumerados en la Página
17 | Siguiente*]

TRIBUNAL DEL DISTRITO DE LOS ESTADOS UNIDOS

DISTRITO NORTE DE CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CRISTA RAMOS, *et al.*, | Caso No.  3:18-cv-1554-EMC |
| Demandantes, | **DECLARACIÓN DE ELSY YOLANDA FLORES DE AYALA EN APOYO DE LA MOCIÓN DE LOS DEMANDANTES PARA UN MANDAMIENTO PRELIMINAR** |
| vs. | |
| KIRSTJEN NIELSEN, *et al.*, | Fecha:   25 de Septiembre, 2018
Tiempo:  10:30 a.m. |
| Demandados. | Juez:  Hon. Edward M. Chen
Dept.:  Tribunal 5, 17th Piso |
| | Denuncia Presentada:    12 de Marzo, 2018
Fecha del Juicio:          Ninguno fijo |

DECLARACIÓN DE ELSY YOLANDA FLORES DE AYALA – CASE NO. 3:18-cv-1554-EMC

*Abogados Adicionales de los Demandantes*

William S. Freeman (SBN 82002)
wfreeman@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: +1 415 621 2493
Fax: +1 415 863 7832

Mark E. Haddad (SBN 205945)
markhadd@usc.edu
Part-time Lecturer in Law
USC Gould School of Law*
University of Southern California
699 Exposition Boulevard
Los Angeles, CA 90089-0071
Telephone: +1 213 675 5957

Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
Ryan M. Sandrock (SBN 251781)
rsandrock@sidley.com
SIDLEY AUSTIN LLP
555 California Street
Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1219
Facsimile: +1 415 772 7400

Amanda Farfel (SBN 288126)
afarfel@sidley.com
Andrew B. Talai (SBN 300053)
atalai@sidley.com
Marisol Ramirez (SBN 307069)
marisol.ramirez@sidley.com
Mohindra Rupram (SBN 319478)
mrupram@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Katelyn N. Rowe (SBN 318386)
krowe@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA  90067
Telephone: +1 310 595 9598
Facsimile: +1 310 595 9501

DECLARACIÓN DE ELSY YOLANDA FLORES DE AYALA – CASE NO. 3:18-cv-1554-EMC

| | |
|---|---|
| 1 | Jessica Fishfeld (*Pro Hac Vice*) |
| 2 | jfishfeld@sidley.com<br>SIDLEY AUSTIN LLP |
| 3 | One South Dearborn<br>Chicago, IL  60603 |
| 4 | Telephone: +1 312 853 2031<br>Facsimile: +1 312 853 7036 |
| 5 | * *Institución enumerada solo con fines de identificación* |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**DECLARACIÓN DE ELSY YOLANDA FLORES DE AYALA**

1. Tengo conocimiento personal de los hechos establecidos en esta declaración. Si prestara juramento como testigo, podría y testificaría a estos hechos.

2. Mi esposo y yo solicitamos para el Estatus de Protección Temporal (TPS) para nosotros y nuestra hija bebé poco después de que El Salvador fue designado para TPS, y todos hemos tenido TPS desde 2001. En el 8 de Enero de 2018, el gobierno de EE. UU. anunció que el TPS para El Salvador terminaría formalmente el 9 de Septiembre de 2019.

3. Presento esta declaración para describir los daños que mi familia y yo hemos experimentado desde el anuncio de la terminación de TPS para El Salvador, y el daño que mi familia y yo sufriríamos si finalmente se cancela el TPS.

**Antecedentes**

4. Nací en El Salvador en 1979. Tengo 39 años y soy la madre de tres hijos. Mi familia y yo vivimos en Washington, D.C.

5. Mi padre y cuatro hermanos mayores huyeron de El Salvador durante la brutal guerra civil del país, emigraron a los Estado Unidos en gran parte en la década de 1980.

6. Porque era muy joven en ese tiempo, mis padres creían que no sería seguro para mi escapar con ellos. Por esta razón, mi hermana, el hermano mas joven, y yo nos quedamos en El Salvador con mi madre y abuela durante la guerra.

7. Toda mi familia está ahora en los Estados Unidos. Mi padre y cuatro de mis hermanos mayores ahora son ciudadanos de los EE. UU. Mi madre y uno de mis hermanos son residentes permanentes legales.

8. En El Salvador, me casé con Juan Amilcar Ayala Rovira y juntos tuvimos una bebé, Maria Jose Ayala Flores, en Julio de 1998.

9. He regresado a El Salvador solo una vez en los últimos 18 años. En 2009, mi familia y yo volvimos a El Salvador brevemente para visitar a mi suegra. Viajamos con permiso condicional por adelantado autorizando nuestro viaje.

**Impacto de Estado de Protección Temporal**

10. Cuando obtuve TPS, tenía 21 años. Cada 12 o 18 meses desde la designación de TPS para El Salvador, a fin de mantener nuestro estatus legal, hemos presentado nuevos documentos, hemos pagado una tarifa de cientos de dólares y hemos demostrado que no hemos cometido ningún delito.

11. Durante los últimos 18 años, confiamos en TPS y esperábamos que nuestro estatus legal permaneciera. Creíamos que esta situación se mantendría mientras las condiciones en El Salvador no mejoraran. La situación en El Salvador continúa siendo difícil, y las decisiones de los EE. UU. fueron muy regulares y receptivas a las condiciones que parecían estar en El Salvador. Esto me hizo sentirme más cómoda construyendo una vida con mi familia aquí.

12. Mi esposo y yo hemos criado a nuestros tres hijos en los Estados Unidos. Nuestros dos hijos menores nacieron en los Estados Unidos y son ciudadanos de EE. UU. Mi hijo Juan tiene 13 años y está comenzando su último año de escuela intermedia; él también es demandante en este caso. Joanna tiene 17 años y está comenzando su último año de bachillerato. Quiere ser doctora o ingeniera. Maria, mi hija mayor quien tiene TPS y es demandante en este caso, ahora tiene 20 años y está en la universidad.

13. Desde 2004, he trabajado como cuidadora profesional con diferentes familias. Mi esposo trabaja como un técnico de mantenimiento, y ha trabajado con la misma compañía durante los últimos 16 años.

14. Debido a la constancia del gobierno de los EE. UU. en la renovación del TPS cada período de renovación, no creía que fuera realmente posible que se cancelara tan abruptamente, al menos cuando entiendo que las condiciones en El Salvador no han mejorado en el último año o en años recientes.

**Impacto de la Decisión de Terminar el TPS**

15. Mi familia y yo hemos quedado abrumados por la decisión del gobierno de los EE. UU. de terminar el TPS para El Salvador. He vivido en los Estados Unidos la mitad de mi vida, y mi hija que tiene TPS ha vivido aquí efectivamente toda su vida. Mis dos hijos menores son ciudadanos de los EE. UU. y solamente han estado brevemente en El Salvador una vez cuando eran muy

2

jóvenes.

16. Mi esposo y yo dependemos de TPS para trabajar legalmente en los Estados Unidos y vivir juntos con nuestros hijos. Nos preocupa que no podamos trabajar o permanecer unidos como familia si es que mi esposo, mi hija mayor y yo perdemos nuestro estado. Dependemos de nuestros ingresos estables para pagar el alquiler, comprar alimentos, y cuidar de nosotros y nuestros hijos.

17. Mi hermana, quien es ciudadana de los EE. UU., fue recientemente diagnosticada con cáncer y se ha estado quedando en nuestra casa para que mi esposo y yo podamos cuidarla mientras se somete a un tratamiento extenso. Nos preocupa cómo ella recibiría atención y apoyo si se cancela el TPS y ya no tenemos ingresos estables o tenemos que regresar a El Salvador.

18. Nos pusimos muy deprimidos cuando descubrimos que TPS terminaría para El Salvador. Nuestras rutinas han cambiado debido a la decisión del gobierno. Por ejemplo, mi esposo y yo gozamos viajar con nuestros hijos cada verano. Este verano, tanto por TPS como por mis responsabilidades de cuidar a mi hermana, por la mayor parte nos hemos mantenido en casa. Debido al anuncio de la terminación de TPS, hemos estado nerviosos de gastar demasiado y hemos estado demasiado ansiosos sobre nuestro futuro para hacer planes. Mi esposo y yo también hemos estado trabajando más de lo que solíamos hacer——y pasamos menos tiempo con nuestros hijos——porque necesitamos ahorrar dinero para enfrentar las incertidumbres.

19. Si perdemos TPS, no hay buenas opciones para nosotros. Me preocupa que no será seguro para mí y mi familia movernos a El Salvador. Mi hijo Juan no habla español con fluidez, y mis hijos no conocen realmente a El Salvador. Mis hijos sufrirían si nos mudamos a El Salvador; sus vidas y educación están aquí. Me preocupa Juan, en particular, porque sé que existe un gran reclutamiento forzado de niños y jóvenes por parte de las pandillas.

20. Si mi esposo y yo somos obligados a regresar a El Salvador, mi hija Joanna ya ha dicho que comenzará la universidad, conseguira un trabajo y cuidara a su hermano menor. Solamente tendrá 18 años en ese momento, y sería perjudicial a su futuro y privaría a nuestro hijo Juan de la oportunidad de crecer en un ambiente estable con sus padres. En el momento en que el TPS expira, Juan estará entrando al bachillerato.

21. Si nos viéramos obligados a regresar a El Salvador, me temo que también

3

DECLARACIÓN DE ELSY YOLANDA FLORES DE AYALA – CASE NO. 3:18-cv-1554-EMC

1 perderíamos dinero. Mi esposo ha trabajado para la misma compañía durante 16 años, y ha ahorrado

2 algún dinero para la jubilación. Creo que sería difícil o imposible para él reclamar todo el dinero que

3 ha ganado y ahorrado.

4     22. Hemos gastado recursos tratando de identificar si hay soluciones legales para nuestros

5 problemas de inmigración, incluido un abogado que investiga mi caso y el de mi esposo y mi hija.

### Impacto de la Terminación de TPS en mi Hija con TPS

7     23. Mi hija Maria, quien ha tenido TPS desde que era bebé, actualmente estudia

8 matemáticas en Montgomery College en Maryland. Le encanta trabajar con niños y espera

9 convertirse en maestra de matemáticas. Sin embargo, debido a la decisión del gobierno de terminar

10 TPS, ella no sabe si podrá terminar sus estudios. En la fecha que expira el TPS para El Salvador, ella

11 solamente habrá terminado su tercer año de universidad.

12     24. María se deprimió mucho cuando descubrió que el gobierno planeaba terminar el TPS

13 para El Salvador. Llamó a su hermana menor, llorando, a la mitad del diá escolar, inconsolable. Le

14 resultaba muy difícil levantarse de la cama o concentrarse en sus tareas escolares. Ella me ha

15 expresado que ahora se siente insegura de toda su vida. Ella ha expresado que es incomprensible

16 para ella que en un año, ella podría perder el derecho legal de vivir en el país en el que ha vivido

17 legalmente durante prácticamente toda su vida.

### Impacto de la Terminación en Hijos Ciudadanos de los EE. UU

19     25. Hasta recientemente, ni siquiera habíamos discutido TPS con nuestro hijo, Juan,

20 porque no queríamos distraerlo de sus estudios y quería que tuviera un sentido de seguridad y

21 estabilidad. Cuando descubrimos que TPS terminaría, sabíamos que teníamos que discutir esto con

22 toda la familia. Sigue siendo muy difícil para mi hijo Juan comprenderlo.

23     26. Mi hija Joanna se sintió sola y aislada en la escuela; nadie a su alrededor sabía lo que

24 es TPS y no sabía cómo apoyar a su hermana mayor y a sus padres. Ahora mis hijos están

25 discutiendo TPS constantemente, y nuestro futuro, cuando deberían estar enfocados en sus estudios y

26 sus amigos.

27     27. Estoy involucrada en la Alianca Nacional TPS, una coalición de titulares de TPS en

28 todo el país unidos a defender a nuestras familias y proteger TPS. Hemos ganado fuerza y esperanza

4

DECLARACIÓN DE ELSY YOLANDA FLORES DE AYALA – CASE NO. 3:18-cv-1554-EMC

trabajando junto a otras familias en situaciones similares a la nuestra. Pero estamos desesperados dada la nueva realidad devastadora que enfrentamos.

Declaro bajo pena de perjurio que lo anterior es verdadero y correcto.

Firmado este 22 dia de Agosto, 2018 en Washington, D.C.

_____
Elsy Yolanda Flores de Ayala