Alycia A. Degen (SBN 211350)
adegen@sidley.com
Sean A. Commons (SBN 217603)
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6010
Facsimile: +1 213 896 6600

Ahilan T. Arulanantham (SBN 237841)
aarulanantham@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: +1 213 977 5211
Fax: +1 213 977 5297

Jessica Karp Bansal (SBN 277347)
jbansal@ndlon.org
Emilou MacLean (SBN 319071)
emi@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
674 S. La Fayette Park Place
Los Angeles, CA 90057
Telephone: +1 213 380 2214
Fax: +1 213 380 2787

Attorneys for the Plaintiffs
[*Additional Attorneys Listed on the Next Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CRISTA RAMOS, *et al.*, <br><br> Plaintiff, <br><br> vs. <br><br> KIRSTJEN NIELSEN, *et al.*, <br><br> Defendant. | Case No. 3:18-cv-1554-EMC <br><br> **DECLARATION OF IMARA AMPIE IN SUPPORT OF THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** <br><br> Date: September 25, 2018 <br> Time: 10:30 a.m. <br> Judge: Hon. Edward M. Chen <br> Dept.: Court 5, 17th Floor <br><br> Complaint Filed: March 12, 2018 <br> Date of Trial: None set |

1    *Additional Attorneys of the Plaintiffs*

2    William S. Freeman (SBN 82002)
wfreeman@aclunc.org
3    ACLU FOUNDATION
OF NORTHERN CALIFORNIA
4    39 Drumm Street
San Francisco, California 94111
5    Telephone: +1 415 621 2493
Fax: +1 415 863 7832

6

Mark E. Haddad (SBN 205945)
7    markhadd@usc.edu
Part-time Lecturer in Law
8    USC Gould School of Law*
University of Southern California
9    699 Exposition Boulevard
Los Angeles, CA 90089-0071
10    Telephone: +1 213 675 5957

11    Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
12    Ryan M. Sandrock (SBN 251781)
rsandrock@sidley.com
13    SIDLEY AUSTIN LLP
555 California Street
14    Suite 2000
San Francisco, CA 94104
15    Telephone: +1 415 772 1219
Facsimile: +1 415 772 7400

16

Amanda Farfel (SBN 288126)
17    afarfel@sidley.com
Andrew B. Talai (SBN 300053)
18    atalai@sidley.com
Marisol Ramirez (SBN 307069)
19    marisol.ramirez@sidley.com
Mohindra Rupram (SBN 319478)
20    mrupram@sidley.com
21    SIDLEY AUSTIN LLP
555 West Fifth Street
22    Los Angeles, CA 90013
Telephone: +1 213 896 6000
23    Facsimile: +1 213 896 6600

24    Katelyn N. Rowe (SBN 318386)
krowe@sidley.com
25    SIDLEY AUSTIN LLP
26    1999 Avenue of the Stars, 17th Floor
Los Angeles, CA  90067
27    Telephone: +1 310 595 9598
Facsimile: +1 310 595 9501

28

Jessica Fishfeld (*Pro Hac Vice*)
jfishfeld@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Telephone: +1 312 853 2031
Facsimile: +1 312 853 7036

*\* Institution listed only for identification purposes*

**DECLARATION OF IMARA AMPIE**

1.      I have personal knowledge of the facts set forth in this declaration. If called upon to testify as a witness, I could do so and would testify to these facts.

2.      My husband and I have held Temporary Protected Status (TPS) since shortly after Nicaragua was designated for TPS in 1999. On November 6, 2017, the U.S. Government announced that TPS for El Salvador would formally end on January 6, 2019.

3.      I am submitting this declaration to describe the harm I have suffered since the announcement of the termination of TPS for Nicaragua and the damage I would suffer if TPS were ultimately canceled.

**<u>Background</u>**

4.      I was raised in Managua, the capital of Nicaragua. I am 46 years old.

5.      My husband is also from Nicaragua and has TPS. We were married in the United States in 2001. We are the parents of two children, aged eight and fifteen. Both of our children were born in the United States and are U.S. citizens.

6.      I am a homemaker. My children are autistic and have special needs that require significant care. My husband works in a private school in San Francisco as a maintenance technician during the day and is also self-employed with a janitorial business. He has worked at the same school for over ten years.

7.      My family and I have lived in Northern California since we arrived in the United States, and we have owned our house in Richmond, California since 2010.

**<u>Impact of Temporary Protected Status</u>**

8.      I always knew that TPS was a temporary status, but with the continual extensions of Nicaragua's designation, I came to trust the fact that my family and I would not be forced to return to Nicaragua unless something changed there to make it a substantially safer place.

9.      While I continue to monitor conditions in Nicaragua, I invested in our life in this country, in our home, business and retirement savings account because I believed, based on the conditions in Nicaragua and the regular TPS extensions by the U.S. government that we would be living in the United States for a significant period of time.

1

**Impact of the Decision to Terminate TPS**

10.     The decision to terminate TPS has been surprising and overwhelming for me and my family. I am constantly worried about what will happen to us. It is unthinkable that I would have to move to Nicaragua or live in the United States without TPS. If TPS for Nicaragua is canceled, my husband and I will lose our job opportunities, our home and our assets, and the care our children desperately need. We cannot think of any acceptable option.

11.     Due to the U.S. government announcement that TPS for Nicaragua will be terminated, we now face the prospect of losing significant assets by having to liquidate everything in the near future. If my husband and I lose our status, we will probably have to withdraw the money my husband has saved for our retirement and we will lose a significant amount. My husband's business has required him to buy machinery he would probably be required to sell at a significant loss if TPS is canceled.

12.     We are homeowners but we believe we would lose our house if we lost TPS. We do not think we could put the house up for rent if we moved to Nicaragua because we could not handle the maintenance or supervise the needs of the tenants. However, it is also likely that we would lose a significant amount of equity in the house if we were forced to sell it quickly.

13.     My children find it extremely hard when my husband and I discuss selling the house or moving to Nicaragua, and we have been discussing this more often now that we have to make a decision as to what to do. Owing to their special needs, the discussions on moving to Nicaragua or selling the only house they have ever known makes our children feel very insecure. It is debilitating and destabilizing for them, and the effects of these conversations last for days. My children do not feel they are from Nicaragua or have any connection with it at all.

14.     We rely on social services, including Supplementary Security Income for our children. We also rely on local resources, including the Regional Center, therapists and schools that have specialized programs for children with special needs. We would lose those resources if we all moved to Nicaragua. Even if we remained in the United States without TPS, I understand we would not be eligible to continue receiving critical benefits and resources.

15.     The children do not understand the risks that will result from termination of TPS, or even what TPS is. As their mother, I know that moving to Nicaragua would be particularly difficult for them due to their educational and health needs. I am also worried that they would face discrimination in Nicaragua due to their disabilities.

16.     Neither my husband nor I have returned to Nicaragua since we obtained TPS. My children have never lived in or visited Nicaragua.

17.     I am already suffering increased anxiety since the announcement. From the day of the announcement I began experiencing severe psychological symptoms I never previously suffered. I felt sick to my stomach and nauseous. I could not sleep and I sometimes felt I could not breathe. I was very concerned for my health and went to the doctor. Finally, my physician sent me to a psychologist and the doctors prescribed antidepressants. I have never previously had to visit a psychologist. The symptoms have continued to the present time.

18.     My anxiety increases as the date on which TPS is due to terminate draws near. I fear I am going to be arrested and deported, and that my children will be left alone in the United States. I also fear that we will all be forced to go to Nicaragua and we will not have the financial, educational, health or security resources we need to survive.

19.     The situation in Nicaragua has become even more unstable since the decision was made to terminate TPS, and the huge protests have been met with violence by the country's security forces. I am afraid how we, and especially my children, would survive in that particularly violent context if we were forced to return.

20.     All the work my husband and I have done to establish ourselves, build stability and nourish our family would dissipate if we lost TPS. I cannot bear to think how this would affect our children since they are already unable to move easily through this world. It would be catastrophic.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __ day of August, 2018, in Richmond, California.

_____
Imara Ampie



**TRANSPERFECT**

## Declaration of Bruce Taylor
## Re: Certified Translation

I, Bruce Taylor, declare as follows:

1.      I am a certified Spanish-to-English language translator, and I am a Member of the American Translators Association ("ATA"). My ATA Certification Number is 503180. I am employed by Transperfect.

2.      I read and write fluently in both English and Spanish.

3.      I have a BA in Hispanic Studies from the University of Manchester and a PhD in Spanish history from the University of Oxford.

4.      I am also certified by Transperfect to translate Legal and Financial material.

5.      I have carried out hundreds of certified translations for this and other clients in the commercial and cultural sectors, among others, in the private and public sector as well as in litigation matters since becoming certified in May 2011.

6.      On August 21, 2018, my employer, Transperfect, was retained by Sidley Austin LLP, on behalf of the Plaintiffs in the case entitled *Crista Ramos, et al., v. Kirstjen Nielsoen, et al.*, Case No. 3:18-cv-1554-EMC, to produce a certified translation of the declarations of Imara Ampie and Elsy Yolanda Flores de Ayala.

7.      I have reviewed and translated into English, to the best of my ability, the declarations of Imara Ampie and Elsy Yolanda Flores de Ayala. I can affirm that the English translations of the two declarations are, to the best of my knowledge and ability, faithful, accurate, and complete translations of the source declarations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed this 23rd day of August, 2018, in Beverly Hills, California.

_____
Bruce Taylor

1   Alycia A. Degen (SBN 211350)
    adegen@sidley.com
2   Sean A. Commons (SBN 217603)
    scommons@sidley.com
3   SIDLEY AUSTIN LLP
    555 West Fifth Street
4   Los Angeles, CA 90013
    Telephone: +1 213 896 6010
5   Facsimile: +1 213 896 6600

6   Ahilan T. Arulanantham (SBN 237841)
    aarulanantham@aclusocal.org
7   ACLU FOUNDATION
    OF SOUTHERN CALIFORNIA
8   1313 West 8th Street
    Los Angeles, CA 90017
9   Telephone: +1 213 977 5211
    Fax: +1 213 977 5297

10

11  Jessica Karp Bansal (SBN 277347)
    jbansal@ndlon.org
12  Emilou MacLean (SBN 319071)
    emi@ndlon.org
13  NATIONAL DAY LABORER
    ORGANIZING NETWORK
14  674 S. La Fayette Park Place
    Los Angeles, CA 90057
15  Telephone: +1 213 380 2214
    Fax: +1 213 380 2787

16  Abogados de los Demandantes
    [*Abogados Adicionales Enumerados en la Página*
17  *Siguiente*]

18              TRIBUNAL DEL DISTRITO DE LOS ESTADOS UNIDOS

19                     DISTRITO NORTE DE CALIFORNIA

20                            SAN FRANCISCO

21  CRISTA RAMOS, *et al.*,                    Caso No. 3:18-cv-1554-EMC

22              Demandantes,                   **DECLARACIÓN DE IMARA AMPIE EN
                                               APOYO DE LA MOCIÓN DE LOS
23      vs.                                    DEMANDANTES PARA UN
                                               MANDAMIENTO PRELIMINAR**
24  KIRSTJEN NIELSEN, *et al.*,
                                               Fecha:  25 de Septiembre, 2018
25              Demandados.                    Tiempo:  10:30 a.m.
                                               Juez:  Hon. Edward M. Chen
26                                             Dept.:  Tribunal 5, 17th Piso

27                                             Denuncia Presentada:    12 de Marzo, 2018
                                               Fecha del Juicio:       Ninguno fijo
28

─────────────────────────────────────────────────────────────

            DECLARACIÓN DE IMARA AMPIE – CASE NO. 3:18-cv-1554-EMC

1   *Abogados Adicionales de los Demandantes*

2   William S. Freeman (SBN 82002)
    wfreeman@aclunc.org
3   ACLU FOUNDATION
    OF NORTHERN CALIFORNIA
4   39 Drumm Street
    San Francisco, California 94111
5   Telephone: +1 415 621 2493
    Fax: +1 415 863 7832
6
    Mark E. Haddad (SBN 205945)
7   markhadd@usc.edu
    Part-time Lecturer in Law
8   USC Gould School of Law*
    University of Southern California
9   699 Exposition Boulevard
    Los Angeles, CA 90089-0071
10  Telephone: +1 213 675 5957

11  Nicole M. Ryan (SBN 175980)
    nicole.ryan@sidley.com
12  Ryan M. Sandrock (SBN 251781)
    rsandrock@sidley.com
13  SIDLEY AUSTIN LLP
    555 California Street
14  Suite 2000
    San Francisco, CA 94104
15  Telephone: +1 415 772 1219
    Facsimile: +1 415 772 7400
16
    Amanda Farfel (SBN 288126)
17  afarfel@sidley.com
    Andrew B. Talai (SBN 300053)
18  atalai@sidley.com
    Marisol Ramirez (SBN 307069)
19  marisol.ramirez@sidley.com
    Mohindra Rupram (SBN 319478)
20  mrupram@sidley.com
21  SIDLEY AUSTIN LLP
    555 West Fifth Street
22  Los Angeles, CA 90013
    Telephone: +1 213 896 6000
23  Facsimile: +1 213 896 6600

24  Katelyn N. Rowe (SBN 318386)
    krowe@sidley.com
25  SIDLEY AUSTIN LLP
26  1999 Avenue of the Stars, 17th Floor
    Los Angeles, CA  90067
27  Telephone: +1 310 595 9598
    Facsimile: +1 310 595 9501
28

Jessica Fishfeld (*Pro Hac Vice*)
jfishfeld@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Telephone: +1 312 853 2031
Facsimile: +1 312 853 7036

* *Institución enumerada solo con fines de identificación*

**DECLARACIÓN DE IMARA AMPIE**

1.        Tengo conocimiento personal de los hechos establecidos en esta declaración. Si prestara juramento como testigo, podría y testificaría a estos hechos.

2.        Mi esposo y yo hemos tenido Estatus de Protección Temporal (TPS) desde poco después de que Nicaragua fuera designada para TPS en 1999. El 6 de Noviembre de 2017, el gobierno de los EE. UU. anunció que el TPS para Nicaragua sería formalmente cancelado el 6 de Enero de 2019.

3.        Presento esta declaración para describir los daños que he experimentado desde el anuncio de la terminación del TPS para Nicaragua, y los daños que sufriría si el TPS finalmente se terminara.

### Antecedentes

4.        Crecí en Managua, la capital de Nicaragua. Tengo 46 años.

5.        Mi esposo también es de Nicaragua y es titular de TPS. Nos casamos en los Estados Unidos en 2001. Somos padres de dos hijos, de ocho y quince años.  Ambos de nuestros hijos nacieron en los Estados Unidos y son ciudadanos de los EE. UU.

6.        Soy un ama de casa. Mis niños son autistas y tienen necesidades especiales que requieren una atención significativa. Mi esposo trabaja en una escuela privada en San Francisco como técnico de mantenimiento durante el día y también trabaja por cuenta propia en una empresa de servicios de limpieza. Ha trabajado en la misma escuela durante más de diez años.

7.        Mi familia y yo hemos vivido en el Norte de California desde que llegamos a los Estados Unidos, y hemos sido dueños de nuestra casa en Richmond, California desde 2010.

### Impacto de Estatus de Protección Temporal

8.        Siempre supe que TPS era un estatus temporal, pero con las continuas extensiones de la designación de Nicaragua, llegué a confiar en el hecho de que, a menos que algo cambiara en Nicaragua para convertirlo en un lugar sustancialmente más seguro, mi familia y yo no seriamos forzados a regresar allí.

9.        Mientras seguí monitoreando las condiciones en Nicaragua, invertí en nuestra vida en este país, en nuestro hogar, negocio, y cuenta de ahorros de jubilación, porque creí basado en las

1   condiciones en Nicaragua y las continuas extensiones de TPS por parte del gobierno de EE. UU.

2   estaríamos viviendo en los Estados Unidos por un período de tiempo significativo.

3   **Impacto de la Decisión de Terminar el TPS**

4       10.      La decisión de terminar TPS ha sido sorprendente y abrumadora para mí y mi familia.

5   Siempre estoy preocupado por lo que nos sucederá. Es impensable que tenga que mudarme a

6   Nicaragua o vivir en los Estados Unidos sin TPS. Si se cancela TPS para Nicaragua, mi esposo y yo

7   perderíamos nuestras oportunidades de empleo, nuestro hogar y otros activos, y la atención que

8   nuestros hijos necesitan desesperadamente. No podemos pensar en ninguna opción decente.

9       11.      Debido al anuncio del gobierno de los EE. UU. de que se terminará el TPS para

10  Nicaragua, ahora nos enfrentamos a la perspectiva de perder activos significativos al tener que

11  liquidar todo de manera inminente. Si mi esposo y yo perdemos nuestro estatus, probablemente

12  tendremos que retirar el dinero que mi esposo ha ahorrado para nuestro retiro y perdería una cantidad

13  significativa. El negocio de mi esposo le ha requerido comprar maquinaria, que probablemente se

14  vería obligado a vender con una pérdida significativa si se cancela el TPS.

15      12.      Somos dueños de una casa pero creemos que perderíamos la casa si perdiéramos TPS.

16  No pensamos que podríamos ofrecer la casa en alquiler si nos mudamos a Nicaragua porque no

17  podríamos manejar el mantenimiento o supervisar las necesidades de los inquilinos. Sin embargo,

18  también es probable que perdamos una equidad significativa en la casa si nos viéramos obligados a

19  vender rápidamente.

20      13.      Mis hijos luchan con cada vez que mi esposo o yo hablamos de vender la casa o

21  mudarnos a Nicaragua, y hemos estado hablando de eso más ahora que tenemos que tomar una

22  decisión sobre qué hacer. Debido a sus necesidades especiales, las discusiones sobre mudarse a

23  Nicaragua o vender el único hogar que han conocido hacen que nuestros hijos se sientan muy

24  ansiosos. Es debilitante y desestabilizador para ellos, y los efectos de estas conversaciones duran

25  días. Mis hijos no sienten que son de Nicaragua o están conectados a él en absoluto.

26      14.      Dependemos de los servicios sociales, incluido el Ingreso Suplementario de

27  Seguridad para nuestros hijos. También dependemos de los recursos locales, incluido el Centro

28  Regional, los terapeutas y las escuelas que tienen programas especializados para niños con

necesidades especiales. Perderíamos estos recursos si nos mudamos juntos a Nicaragua. Incluso si permanecemos en los Estados Unidos, sin el estado de TPS, entiendo que no seríamos elegibles para seguir recibiendo beneficios y recursos críticos.

15.     Los niños no entienden los riesgos que surgirán de la terminación de TPS, o incluso lo que es TPS. Como madre de ellos, sé que mudarse a Nicaragua sería particularmente difícil para ellos debido a sus necesidades educativas y de salud. También me preocupa que enfrentarían discriminación en Nicaragua debido a sus discapacidades.

16.     Ni mi esposo ni yo hemos regresado a Nicaragua desde que tuvimos TPS.  Mis hijos nunca han vivido en o visitado Nicaragua.

17.     Ya estoy sufriendo de mayor ansiedad debido al anuncio. Desde el día del anuncio, comencé a experimentar síntomas psicológicos severos que nunca había experimentado antes. Tenía dolor de estómago y náuseas. No podía dormir y algunas veces sentía que no podía respirar. Estaba muy preocupado por mi salud y fui al médico. Finalmente, mi doctor me envió a un psicólogo y los médicos prescribieron antidepresivos. Nunca antes había tenido que ver a un psicólogo. Los síntomas han continuado hasta el presente.

18.     Mi ansiedad aumenta a medida que se acerca la fecha en que finalizará el TPS. Me temo que voy a ser arrestada y deportada, y mis hijos serán dejados solos en los Estados Unidos. También temo que todos nos veamos obligados a ir a Nicaragua y no tendremos los recursos económicos, educativos, de salud o de seguridad que necesitamos para sobrevivir.

19.     La situación en Nicaragua se ha vuelto aún más inestable desde que se tomó la decisión de poner fin al TPS, y los disturbios masivos se enfrentaron con violencia por parte de las fuerzas de seguridad del país. Tengo miedo de cómo nosotros—y especialmente mis hijos— sobreviviríamos en ese contexto particularmente turbulento si nos viéramos obligados a regresar.

20.     Todo el trabajo que mi esposo y yo hemos hecho para establecernos, construir estabilidad y nutrir a nuestra familia se disiparía si perdiéramos el TPS. No puedo soportar pensar cómo afectará a nuestros hijos, que ya no pueden moverse fácilmente por este mundo. Sería catastrófico.

1     Declaro bajo pena de perjurio que lo anterior es verdadero y correcto.

2     Firmado este 21 dia de Agosto, 2018 en Richmond, California

Imara Ampie