# EXHIBIT 29

Pursuant to the relevant provisions of the Immigration and Nationality Act pertaining to Temporary Protected Status determination, I have reviewed information regarding the country conditions in El Salvador, Honduras, and Nicaragua. I have reviewed this information for determining whether the statutory criteria for the designation of Guatemala under 8 U.S.C. §1254a(b) continue to be met. At this time, despite receiving a reporting from a broad spectrum of sources, I do not have all the necessary information to make this determination in an appropriately deliberative manner prior to the time specified in 8 U.S.C. §1254a(b)(3)(A). I have concluded that additional time is necessary for me to gather further information and further evaluate it to make the determination whether the country conditions continue or have been restored to the extent they ability of the countries to adequately handle the return of their nationals. Based on this conclusion, and under operation of 8 U.S.C. §1254a(b)(3)(C), the period of designation for El Salvador and Honduras (*and maybe Nicaragua, or end Nicaragua since population is only 5,349, and the DoS memo states they can take their citizens back*) will be extended for an additional period of 6 months.

I will review the country conditions of these countries during the extension period and, if country conditions no longer warrant a continued designation, I will terminate the designation. I will approach this review and accompanying decision with the understanding that any terminations of country designations are to be accomplished in a manner designed to provide for (1) the best interests of the United States, considering TPS in the full array of immigration, transnational criminal organization, gang, and drug reduction (2) an orderly transition (3) the equities of the individuals and their home countries in preparing to return the TPS participants after such long periods of time.

The TPS program must end for these countries soon. It is still unclear what the appropriate timing for the termination is, and what the United States should do to help the countries and the TPS individuals prepare for the termination. We need to ensure the proper analysis and plan is in place with these countries before terminating to provide the best situation for our overall immigration, TCO, and drug enforcement agenda. This conclusion allows me to terminate in 18 months as recommended by Department of State, but also allows for the completion of analysis and planning for that decision.

This conclusion is the result of an America first view of the TPS decision. I received multiple inputs from various sources and I am unable to conclude if ending TPS at this time is appropriate, as the ability of the countries to continue to partner with USA on key initiatives, and their ability to assimilate the returning TPS individuals, could actually hinder our current immigration and drug enforcement agenda.

I received a report from the Department of State that the conditions of the country. That report stated that the original natural disaster conditions no longer exist. However, each

CONFIDENTIAL/NOFORN/LAW ENFORCEMENT SENSITIVE

country has discretionary factors that contribute to a termination decision. Most notably, the Department of State recommendation states that neither El Salvador or Honduras have the current capacity to accept and assimilate the TPS individuals back into the country without major disruption. (Expand this from DoS memo, and this is key to whether we also extend Nicaragua because it is different from the other two – it can accept).

I also received a recommendation from the National Security Council on November 3, 2017 to terminate with an effective date of January 5, 2019 and engage Congress to pass a comprehensive immigration reform to include merit based entry system. With the time of this memo and the requirement for a decision by November 6, I have not had the opportunity to discuss merit based immigration entry with the Congress, and get this key stakeholder's input on the feasibility of this proposal and the timeframe in which it would take to implement.

Additionally, I received a report from the DHS Office of Policy which raises important foreign policy considerations. It raises valid questions on the overall immigration and drug enforcement picture, and whether immediate action on TPS in these countries furthers the United States agenda on these key America first issues, or will impose further challenges in our immigration, transnational organized crime, and drug reduction initiatives
However, there are unique circumstances related to these TPS designations. Honduras and Nicaragua received TPS designation in 1999 as a result of Hurricane Mitch and El Salvador received its designation in 2001 and 2010, respectively after earthquakes. Additionally, El Salvador previously received TPS status in 1990 due to its civil war, which led into the second TPS designation. The United States government has allowed these TPS persons to stay under temporary status for 19 years in the case of Honduras and Nicaragua, 16 years for El Salvador. The extreme length that these persons have lawfully stayed in this country demand a well-planned path for their removal from TPS status. The size of population under TPS – 263,282 for El Salvador, 86,163 for Honduras, and 5,329 for Nicaragua make the repatriation process planning essential. One option is for Congress to pass legislation to provide a path for eligible persons, other than return to their country after establishing vital lives in the United States. Alternatively, the United States should work with these countries to plan for their citizens' return. If that planning is not done, there could be a surge in illegal immigration back to the United States.

This week I received multiple products prepared by experts that stated valid concerns related to the termination of TPS. I received Intelligence and Analysis reporting that the implications for TPS expiring for beneficiary from El Salvador, Honduras, Haiti and Nicaragua would have high rates of return illegal migration if TPS is ended. ████████████████

CONFIDENTIAL/NOFORN/LAW ENFORCEMENT SENSITIVE

██████████████████████████████████████ Additionally, a CBP Intelligence Note stated that the termination of TPS for Haiti, Honduras, or El Salvador will likely cause an increase in migrants crossing illegally from the United States to Canada and claiming refugee status. Another report from the Department of State stated that Central Americans still want to send their children north, and the the early 2017 drop in illicit migration was likely temporary. A second Department of State reports says that economic factors in these countries drive illegal immigration, and that connections with illegal immigrants already in the United States provide additional incentive. TPS however provides no additional incentive for people to migrate to the United States, since TPS persons are fully assimilated and have few home country ties. These products indicate that an end to TPS at this time may increase illegal immigration. With Congress working on a solution to close the many loopholes in our immigration system, it may be most advisable to end TPS in conjunction with those legislative fixes to avoid a surge in immigration with the current incomplete suite of immigration enforcement tools to address it.

CONFIDENTIAL/NOFORN/LAW ENFORCEMENT SENSITIVE

DPP_00003584