# EXHIBIT 85

JAMES D. NEALON - 08/22/2018

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN FRANCISCO
 4                         Case No. 3:18-cv-1554-EMC
 5   - - - - - - - - - - - - - - - - - - x
 6   CRISTA RAMOS, et al.,
 7            Plaintiffs,
 8   v.
 9   KIRSTJEN NIELSEN, et al.,
10            Defendants.
11   - - - - - - - - - - - - - - - - - - -x
12                      VOLUME II
13      VIDEOTAPED DEPOSITION OF JAMES D. NEALON
14         Wednesday, August 22, 2018 1:15 p.m.
15                   Sidley Austin LLP
16          60 State Street, Boston, MA 02109
17
18
19
20   Reported by:
21   Janet Sambataro, RMR, CRR, CLR
22   JOB NO. LA-189184
23
24
25
```

```
 1   little more specific?  Just restate the question          13:19:51
 2   another way?                                              13:19:53
 3        Q.   Yes.                                            13:19:54
 4        A.   It's easier to answer.                          13:19:55
 5        Q.   Yes.                                            13:19:56
 6             Are you aware that there were any               13:19:57
 7   conversations with anyone who worked at the White         13:19:58
 8   House in any capacity with anyone in the                  13:20:01
 9   Department of Homeland Security -- we'll start            13:20:05
10   there -- related to Temporary Protected Status?           13:20:07
11        A.   Yes.                                            13:20:09
12        Q.   And who were the people from the White          13:20:10
13   House who you know or have reason to believe were         13:20:12
14   involved in conversations related to Temporary            13:20:16
15   Protected Status?                                         13:20:18
16        A.   So I was told that Stephen Miller, from         13:20:20
17   the White House, was in touch with Chad Wolf, who         13:20:26
18   was the Secretary's Chief of Staff, regarding             13:20:29
19   TPS.                                                      13:20:36
20        Q.   And who told you that?                          13:20:37
21        A.   Chad Wolf.                                      13:20:38
22        Q.   And do you have an understanding of             13:20:40
23   approximately how many times Stephen Miller had           13:20:43
24   communications with Chad Wolf?                            13:20:48
25        A.   I don't.  I don't have a number.  Chad          13:20:50
```

| | | |
|---|---|---|
| 1 | Wolf told me that he was in frequent touch with | 13:20:53 |
| 2 | Stephen Miller. | 13:20:57 |
| 3 |     Q.   And -- | 13:20:59 |
| 4 |     A.   Or, better said, that Stephen Miller | 13:20:59 |
| 5 | was in frequent touch with him. | 13:21:01 |
| 6 |     Q.   So is it your understanding that Chad | 13:21:02 |
| 7 | Wolf reached out to Stephen Miller or that | 13:21:06 |
| 8 | Stephen Miller reached out to Chad Wolf? | 13:21:09 |
| 9 |     A.   My understanding, from a very brief | 13:21:11 |
| 10 | conversation with Chad Wolf, is that | 13:21:14 |
| 11 | Stephen Miller was reaching out to Chad Wolf. | 13:21:16 |
| 12 |     Q.   Okay.  And when Stephen Miller was | 13:21:19 |
| 13 | reaching out to Chad Wolf, from what you | 13:21:21 |
| 14 | understand from that conversation with Mr. Wolf, | 13:21:23 |
| 15 | was that conversation -- was the outreach | 13:21:27 |
| 16 | specifically related to Temporary Protected | 13:21:29 |
| 17 | Status? | 13:21:30 |
| 18 |     MR. KIRSCHNER:  Objection.  Calls for | 13:21:31 |
| 19 | hearsay testimony. | 13:21:33 |
| 20 |     A.   So I had one conversation, a very brief | 13:21:38 |
| 21 | conversation with Chad Wolf, in which he told me | 13:21:41 |
| 22 | that Stephen Miller had been reaching out to him | 13:21:43 |
| 23 | frequently regarding TPS. | 13:21:46 |
| 24 |     Q.   Do you remember approximately when that | 13:21:49 |
| 25 | conversation took place? | 13:21:50 |

| | | |
|---|---|---|
| 1 | aside for now. | 13:24:19 |
| 2 | A.  So maybe be more specific in your | 13:24:21 |
| 3 | question -- | 13:24:22 |
| 4 | Q.  Yes. | 13:24:22 |
| 5 | A.  -- it would just help me answer. | 13:24:22 |
| 6 | Q.  Yes.  Definitely. | 13:24:24 |
| 7 | So you shared that Mr. Wolf communicated to | 13:24:26 |
| 8 | you that he had frequent conversations with | 13:24:28 |
| 9 | Mr. Miller; that Mr. Miller reached out to him | 13:24:30 |
| 10 | frequently regarding TPS. | 13:24:34 |
| 11 | Do you know of anyone else who Mr. Miller | 13:24:36 |
| 12 | was reaching out to regarding TPS in the | 13:24:39 |
| 13 | Department of Homeland Security? | 13:24:43 |
| 14 | MR. KIRSCHNER:  Objection.  It calls | 13:24:44 |
| 15 | for speculation. | 13:24:47 |
| 16 | A.  So, yes, I know that, for example, | 13:24:51 |
| 17 | Gene Hamilton mentioned on a couple of occasions, | 13:24:55 |
| 18 | at least, that he had been in touch with | 13:25:01 |
| 19 | Mr. Miller regarding TPS. | 13:25:04 |
| 20 | Q.  Do you remember the context in which | 13:25:06 |
| 21 | Mr. Hamilton mentioned that he had been in touch | 13:25:09 |
| 22 | with Mr. Miller? | 13:25:12 |
| 23 | A.  I remember that coming up in meetings. | 13:25:12 |
| 24 | Q.  Were these meetings meetings | 13:25:16 |
| 25 | specifically related to TPS? | 13:25:19 |

1  A.  You know, I don't recall if the                13:25:21
2  meetings were specifically called to discuss TPS   13:25:24
3  or whether they were meetings where TPS came up.   13:25:27
4  Q.  Okay.  And what did Mr. Hamilton convey        13:25:30
5  regarding his communications with Mr. Miller?      13:25:36
6      MR. KIRSCHNER:  Objection.  Calls for          13:25:38
7  hearsay.                                           13:25:40
8  A.  I'm pausing, because I'm trying to             13:25:50
9  recall specific conversations, and I don't recall  13:25:52
10 specific conversations.  But what I do recall is   13:26:01
11 being in meetings where Mr. Hamilton was present   13:26:04
12 and where he stated that he had been in touch      13:26:07
13 with Mr. Miller about TPS.                         13:26:10
14 Q.  Did he convey that Mr. Miller had an           13:26:15
15 opinion with regard to TPS?                        13:26:17
16 A.  I believe he did, on a couple of               13:26:19
17 occasions.                                         13:26:21
18 Q.  And what did he convey about the               13:26:21
19 opinion that Mr. Miller had with regard to TPS?    13:26:25
20     MR. KIRSCHNER:  Objection.  Calls for          13:26:27
21 hearsay.                                           13:26:28
22 A.  So I recall Mr. Hamilton, on a couple          13:26:32
23 of occasions, saying that Mr. Miller favored the   13:26:34
24 termination of TPS.                                13:26:39
25 Q.  When he said that he favored the               13:26:41

| | | |
|---|---|---|
| 1 | else in the Department of Homeland Security about | 13:32:04 |
| 2 | the fact that Mr. Miller had communications | 13:32:06 |
| 3 | regarding TPS? | 13:32:10 |
| 4 |     A.   So I don't have a specific memory but | 13:32:12 |
| 5 | it wouldn't be unusual for me to -- to give a | 13:32:14 |
| 6 | very small selective group of staff a readout of | 13:32:19 |
| 7 | an important meeting. | 13:32:22 |
| 8 |     Q.   From -- so before I go there, was there | 13:32:24 |
| 9 | anyone else that you recall communicating that | 13:32:28 |
| 10 | they were having -- that they had had | 13:32:31 |
| 11 | conversations with Mr. Miller regarding TPS? | 13:32:34 |
| 12 |     A.   No.  I don't have a specific memory of | 13:32:48 |
| 13 | anyone else telling me that they had had a | 13:32:50 |
| 14 | conversation with Stephen Miller about TPS. | 13:32:52 |
| 15 |     Q.   Did it have any significance to you | 13:32:59 |
| 16 | when you heard that Mr. Miller was communicating | 13:33:02 |
| 17 | with Mr. Wolf and Mr. Hamilton about TPS? | 13:33:05 |
| 18 |     A.   Did it have any significance for me? | 13:33:11 |
| 19 |     Q.   Yes. | 13:33:13 |
| 20 |     A.   Yes.  You know, that's important | 13:33:14 |
| 21 | information that an important adviser to the | 13:33:16 |
| 22 | President and the White House has an opinion | 13:33:19 |
| 23 | about an important policy decision. | 13:33:21 |
| 24 |     Q.   And in what way was that significant to | 13:33:25 |
| 25 | you that an important adviser to the President | 13:33:27 |

| | | |
|---|---|---|
| 1 | had an opinion about TPS? | 13:33:29 |
| 2 | MR. KIRSCHNER: Objection. Vague. The | 13:33:31 |
| 3 | word "significant" is vague. | 13:33:35 |
| 4 | A.   You know, as government employees, we | 13:33:46 |
| 5 | all ultimately work for the President.  And so | 13:33:49 |
| 6 | having policy input from people from the White | 13:33:53 |
| 7 | House is a -- is a normal and important thing. | 13:33:56 |
| 8 | And so -- so, yes, it's significant. | 13:34:03 |
| 9 | Q.   Was it your sense that Mr. Miller was | 13:34:11 |
| 10 | conveying a position from the White House when | 13:34:13 |
| 11 | you heard that? | 13:34:15 |
| 12 | A.   So I'm not quite sure how to answer | 13:34:21 |
| 13 | that question.  I don't know if Mr. Miller was | 13:34:26 |
| 14 | conveying someone else's opinion or his own | 13:34:29 |
| 15 | opinion, if that's -- if that's what you're | 13:34:32 |
| 16 | asking. | 13:34:34 |
| 17 | Q.   Was it your sense at the time that | 13:34:35 |
| 18 | Mr. Miller was conveying an opinion of the White | 13:34:37 |
| 19 | House? | 13:34:41 |
| 20 | MR. KIRSCHNER: Objection. Calls for | 13:34:43 |
| 21 | speculation. | 13:34:44 |
| 22 | A.   If I could ask for a clarification. | 13:34:46 |
| 23 | Q.   Yes. | 13:34:48 |
| 24 | A.   I'm not sure what you mean by "the | 13:34:48 |
| 25 | White House."  Stephen Miller works in the White | 13:34:50 |

| | | |
|---|---|---|
| 1 | House.  So I suppose, by definition, an opinion | 13:34:52 |
| 2 | of Mr. Miller's is an opinion of someone who | 13:34:54 |
| 3 | works in the White House. | 13:34:57 |
| 4 |     Q.   Did you believe that Mr. Miller was | 13:34:59 |
| 5 | conveying a position that was a position that was | 13:35:01 |
| 6 | not just Mr. Miller's personal opinion? | 13:35:06 |
| 7 |         MR. KIRSCHNER:  Objection.  Calls for | 13:35:10 |
| 8 | speculation. | 13:35:10 |
| 9 |     A.   You know, I don't know.  I really don't | 13:35:16 |
| 10 | know how to answer that question. | 13:35:18 |
| 11 |     Q.   Okay.  We may come back to that. | 13:35:20 |
| 12 | Did you believe that Mr. Miller was speaking | 13:35:27 |
| 13 | on behalf of the White House when you heard that? | 13:35:29 |
| 14 |         MR. KIRSCHNER:  Objection.  Asked and | 13:35:31 |
| 15 | answered.  Calls for speculation. | 13:35:32 |
| 16 |     A.   Yeah.  Again, I don't know how to | 13:35:38 |
| 17 | answer that, because, you know, I worked for the | 13:35:40 |
| 18 | government for 34 years and sometimes you would | 13:35:42 |
| 19 | hear from someone from the Department of Defense | 13:35:45 |
| 20 | and someone from the Department of Justice and | 13:35:46 |
| 21 | someone from the White House, and sometimes | 13:35:48 |
| 22 | they're giving you their opinion; sometimes | 13:35:57 |
| 23 | they're speaking in a broader sense on -- on the | 13:36:00 |
| 24 | part of the Administration.  But, you know, at | 13:36:02 |
| 25 | the end of the day, Stephen Miller is an | 13:36:05 |

| | | |
|---|---|---|
| 1 | important actor in the White House, so what he | 13:36:07 |
| 2 | says about an important policy matter is | 13:36:12 |
| 3 | significant, whether he is speaking for himself | 13:36:16 |
| 4 | or speaking for -- in the name of the | 13:36:20 |
| 5 | Administration. | 13:36:24 |
| 6 |     Q.  And what made you think that Mr. Miller | 13:36:25 |
| 7 | was an important actor in the White House? | 13:36:26 |
| 8 |     MR. KIRSCHNER:  Objection.  Calls for | 13:36:30 |
| 9 | speculation. | 13:36:32 |
| 10 |     A.  You know, I can't point to anything | 13:36:39 |
| 11 | specific.  It was well known, was and is well | 13:36:40 |
| 12 | known that he was and is. | 13:36:43 |
| 13 |     Q.  Is it -- was it well known at the time | 13:36:46 |
| 14 | that you were working in the Department of | 13:36:49 |
| 15 | Homeland Security that he was very close to the | 13:36:50 |
| 16 | President? | 13:36:53 |
| 17 |     MR. KIRSCHNER:  Objection.  Assumes | 13:36:53 |
| 18 | facts not in evidence.  Calls for speculation. | 13:36:55 |
| 19 |     A.  So I don't know for a fact that he's | 13:37:00 |
| 20 | very close to the President, but I certainly know | 13:37:01 |
| 21 | that -- that people believe he's close to the | 13:37:03 |
| 22 | President. | 13:37:08 |
| 23 |     Q.  You communicated in the previous | 13:37:17 |
| 24 | deposition that you were in a couple of meetings | 13:37:20 |
| 25 | with Mr. Miller and a gentleman named John | 13:37:22 |

| | | |
|---|---|---|
| 1 | A. So a PC is different from a PCC. A PC | 14:38:03 |
| 2 | is a principals committee meeting. And a | 14:38:07 |
| 3 | principals committee meeting is a -- generally a | 14:38:10 |
| 4 | cabinet-level meeting. It's not -- it's not a | 14:38:15 |
| 5 | cabinet meeting. It's a meeting of people at the | 14:38:21 |
| 6 | cabinet level to coordinate policy. | 14:38:23 |
| 7 | Q. So who -- and -- | 14:38:26 |
| 8 | A. And, sorry, just to finish. | 14:38:29 |
| 9 | A paper PC would be a virtual meeting that | 14:38:31 |
| 10 | takes place on paper rather than convening those | 14:38:36 |
| 11 | people in a meeting. | 14:38:41 |
| 12 | Q. Okay. And then two e-mails up, | 14:38:48 |
| 13 | Mr. Hamilton is speaking about three different | 14:38:52 |
| 14 | types of convenings, either convenings on paper, | 14:38:56 |
| 15 | I imagine, or convenings in person, that PCC and | 14:39:00 |
| 16 | the PC which we spoke about, and then also a DC. | 14:39:04 |
| 17 | Do you see that? | 14:39:06 |
| 18 | A. I do. | 14:39:07 |
| 19 | Q. What does a DC refer to? | 14:39:08 |
| 20 | A. A DC is a deputies committee meeting. | 14:39:11 |
| 21 | Q. And what is that? | 14:39:15 |
| 22 | A. So there's a -- there's an order to | 14:39:18 |
| 23 | these things. A PCC is the lowest level of the | 14:39:20 |
| 24 | three. As I say, it takes place at the -- sort | 14:39:25 |
| 25 | of high-working level. A deputies committee | 14:39:28 |

| | | |
|---|---|---|
| 1 | just don't have a vivid memory of it. | 14:49:57 |
| 2 | Q.   You don't -- do you know either from | 14:49:59 |
| 3 | your recollection of recognizing that it is | 14:50:02 |
| 4 | incomplete or from your understanding of how | 14:50:05 |
| 5 | principals committee work -- how principals | 14:50:08 |
| 6 | committees work who would have been the author of | 14:50:12 |
| 7 | this document, which does not have an author? | 14:50:14 |
| 8 | MR. KIRSCHNER:  Objection.  Calls for | 14:50:17 |
| 9 | speculation. | 14:50:17 |
| 10 | A.   Right.  So I don't know who would have | 14:50:21 |
| 11 | been the author of this document.  My assumption, | 14:50:24 |
| 12 | and it's -- it is an assumption, is that the | 14:50:28 |
| 13 | document would -- would have been produced by the | 14:50:32 |
| 14 | White House for discussion by the principals. | 14:50:35 |
| 15 | Q.   What gives you that suspicion? | 14:50:38 |
| 16 | A.   That would be a -- a normal procedure. | 14:50:42 |
| 17 | Q.   Is that a normal procedure for | 14:50:47 |
| 18 | principals committees? | 14:50:49 |
| 19 | A.   That's a normal procedure for meetings | 14:50:51 |
| 20 | convened by the White House for discussion with | 14:50:54 |
| 21 | the inner agency. | 14:50:56 |
| 22 | Q.   So the document has two pages that have | 14:51:00 |
| 23 | text on them.  I think you don't need to go over | 14:51:03 |
| 24 | the first page and a half, which I think probably | 14:51:08 |
| 25 | generally will be familiar with you from all the | 14:51:10 |

| | | |
|---|---|---|
| 1 | whoever. | 15:59:53 |
| 2 | But I do recall having conversations with | 15:59:54 |
| 3 | people at State Department about the fact that | 15:59:57 |
| 4 | the paperwork seemed to be stuck in the policy | 16:00:02 |
| 5 | planning office and wondering if that was because | 16:00:06 |
| 6 | they didn't like the recommendation that had come | 16:00:18 |
| 7 | forward or -- or if they were putting their own | 16:00:20 |
| 8 | political stamp on it or what.  But it seemed | 16:00:25 |
| 9 | unusual to me that the paperwork seemed to be | 16:00:28 |
| 10 | stuck in that office for such a long time. | 16:00:34 |
| 11 | Q.   And did you get any response from | 16:00:37 |
| 12 | anyone in the State Department about whether your | 16:00:40 |
| 13 | presumption that that was strange was a shared | 16:00:43 |
| 14 | assumption or was accurate? | 16:00:47 |
| 15 | A.   Again, you know, these are | 16:00:50 |
| 16 | conversations between old friends and colleagues. | 16:00:51 |
| 17 | And, you know, I recall talking about this -- | 16:00:54 |
| 18 | Q.   Mm-hmm. | 16:00:59 |
| 19 | A.   -- I -- I don't recall either of the | 16:01:00 |
| 20 | two gentlemen we've discussed saying, yeah, this | 16:01:02 |
| 21 | is how it is there.  I remember us postulating, | 16:01:05 |
| 22 | wondering, you know, thinking out loud.  But I | 16:01:09 |
| 23 | don't recall anyone saying, yes, the -- this is | 16:01:12 |
| 24 | now a political process and that office is | 16:01:17 |
| 25 | politicized. | 16:01:22 |

| | | |
|---|---|---|
| 1 | Q.   Do you recall that they -- that any one | 16:01:22 |
| 2 | of the people that you were in touch with at the | 16:01:25 |
| 3 | State Department had a feeling, suspicion that | 16:01:27 |
| 4 | the process had become politicized in some way? | 16:01:32 |
| 5 | MR. KIRSCHNER:  Objection.  Calls for | 16:01:35 |
| 6 | speculation. | 16:01:35 |
| 7 | A.   Yeah.  Again, I don't recall anyone | 16:01:36 |
| 8 | saying that to me.  I recall discussing the | 16:01:39 |
| 9 | issue. | 16:01:42 |
| 10 | Q.   Do you recall what others at the State | 16:01:44 |
| 11 | Department were saying about the issue? | 16:01:45 |
| 12 | MR. KIRSCHNER:  Objection.  Calls for | 16:01:47 |
| 13 | speculation. | 16:01:48 |
| 14 | A.   You mean other people? | 16:01:49 |
| 15 | Q.   Yeah.  I mean, the people -- either the | 16:01:50 |
| 16 | people that you have mentioned already or other | 16:01:52 |
| 17 | people.  But whether -- I mean, you expressed | 16:01:53 |
| 18 | your feelings about this.  And, obviously, as we | 16:01:56 |
| 19 | talked about in the previous deposition, there | 16:01:59 |
| 20 | were extraordinary delays even though there were | 16:02:01 |
| 21 | records that, you know, the recommendation had | 16:02:03 |
| 22 | been sitting at a very high level in the | 16:02:05 |
| 23 | Secretary's office or the Office of Policy | 16:02:08 |
| 24 | Planning for an extended period of time.  So, you | 16:02:09 |
| 25 | know, did you have an understanding from any of | 16:02:14 |

| | | |
|---|---|---|
| 1 | these people what their suspicions were? | 16:02:17 |
| 2 | MR. KIRSCHNER: Objection. Calls for | 16:02:20 |
| 3 | speculation. | 16:02:21 |
| 4 | A.  No.  I mean, I think I understand the | 16:02:24 |
| 5 | question.  And, again, there -- there was a lot | 16:02:26 |
| 6 | of frustration expressed all around. | 16:02:33 |
| 7 | Q.  Mm-hmm. | 16:02:35 |
| 8 | A.  Because I kept calling and they kept | 16:02:36 |
| 9 | having to take my calls because we're friends, | 16:02:40 |
| 10 | and they had to keep giving me the same answer, | 16:02:42 |
| 11 | which was that they didn't know when the memo was | 16:02:45 |
| 12 | going to pop out and they didn't know what it was | 16:02:48 |
| 13 | going to say. | 16:02:51 |
| 14 | And so there was frustration all around. | 16:02:52 |
| 15 | And that sort of became the tenor of the | 16:02:55 |
| 16 | discussions as time went on, as the deadline | 16:02:57 |
| 17 | loomed. | 16:03:01 |
| 18 | Q.  What gave you the suspicion that there | 16:03:01 |
| 19 | had been some politicalization or political stamp | 16:03:02 |
| 20 | that was put on the decision-making process at | 16:03:07 |
| 21 | the State Department? | 16:03:09 |
| 22 | MR. KIRSCHNER: Objection. | 16:03:10 |
| 23 | Mischaracterizes testimony.  Assumes facts not in | 16:03:10 |
| 24 | evidence. | 16:03:13 |
| 25 | A.  So I thought that this wasn't the most | 16:03:22 |

| | | |
|---|---|---|
| 1 | consequential decision that Secretary Tillerson | 16:03:33 |
| 2 | would ever make and that, you know, if you look | 16:03:36 |
| 3 | at the range of things that are on his plate | 16:03:39 |
| 4 | every day, this isn't one that should take a | 16:03:41 |
| 5 | really long time to -- for him to sign. | 16:03:45 |
| 6 |     And so what that told me, rightly or | 16:03:49 |
| 7 | wrongly, is that -- is that politics had entered | 16:03:53 |
| 8 | the game and that the thing had gotten stuck. | 16:03:59 |
| 9 |     Q.  Thank you.  I understand that's not, | 16:04:12 |
| 10 | you know, definite, but it's obviously informed | 16:04:14 |
| 11 | understanding. | 16:04:18 |
| 12 |     MR. KIRSCHNER:  Objection.  Counsel is | 16:04:18 |
| 13 | testifying. | 16:04:19 |
| 14 | BY MS. MacLEAN: | 16:04:25 |
| 15 |     Q.  So you testified previously that | 16:04:43 |
| 16 | Secretary Tillerson -- or that you were aware | 16:04:45 |
| 17 | that then Secretary Tillerson had communicated | 16:04:48 |
| 18 | with both Chad Wolf and Secretary Duke regarding | 16:04:55 |
| 19 | TPS as had been publicly reported? | 16:05:01 |
| 20 |     MR. KIRSCHNER:  Objection.  I'm -- I'm | 16:05:04 |
| 21 | not sure that -- I -- | 16:05:07 |
| 22 |     MS. MacLEAN:  I don't want to | 16:05:09 |
| 23 | mischaracterize. | 16:05:10 |
| 24 |     MR. KIRSCHNER:  -- don't want you to | 16:05:10 |
| 25 | mischaracterize evidence, so I just -- if you | 16:05:11 |

| | | |
|---|---|---|
| 1 | have a perfect -- a cite to the testimony | 16:05:12 |
| 2 | previously, that Ambassador Nealon said, I would | 16:05:16 |
| 3 | prefer to do that. | 16:05:19 |
| 4 | BY MS. MacLEAN: | 16:05:21 |
| 5 |     Q.   So on Page 158, Line 5, and it was in | 16:05:25 |
| 6 | reference to the exhibit that is marked | 16:05:40 |
| 7 | Exhibit 35, which you have in front of you as | 16:05:43 |
| 8 | well. | 16:05:45 |
| 9 |     "Tillerson told Homeland Security's Acting | 16:05:49 |
| 10 | Secretary Elaine Duke that conditions in Central | 16:05:53 |
| 11 | America and Haiti had improved." | 16:05:54 |
| 12 |     That was a direct quote from the article. | 16:05:56 |
| 13 | And I asked: | 16:05:59 |
| 14 |     "QUESTION:  Are you aware" -- | 16:06:03 |
| 15 |     The direct quote is, in quotes from the | 16:06:04 |
| 16 | article, "Tillerson told Homeland Security's | 16:06:06 |
| 17 | Acting Secretary Elaine Duke that conditions in | 16:06:08 |
| 18 | Central America and Haiti had improved and that | 16:06:11 |
| 19 | TPS protections were no longer warranted.  When | 16:06:13 |
| 20 | the two spoke by phone, Tillerson told Duke | 16:06:16 |
| 21 | ending TPS 'was just something she had to do.'" | 16:06:19 |
| 22 |     And I asked: | 16:06:21 |
| 23 |     "QUESTION:  Are you aware of conversation | 16:06:22 |
| 24 | like the conversation that's described in this | 16:06:23 |
| 25 | paragraph?" | 16:06:26 |

1                C E R T I F I C A T E

2     COMMONWEALTH OF MASSACHUSETTS

3     SUFFOLK, SS.

4         I, Janet M. Sambataro, a Registered Merit

5     Reporter and a Notary Public within and for the

6     Commonwealth of Massachusetts do hereby certify:

7         THAT JAMES NEALON, the witness whose testimony

8     is hereinbefore set forth, was duly sworn by me and

9     that such testimony is a true and accurate record of

10    my stenotype notes taken in the foregoing matter, to

11    the best of my knowledge, skill and ability; that

12    before completion of the deposition review of the

13    transcript was requested.

14        I further certify that I am not related to any

15    parties to this action by blood or marriage; and that

16    I am in no way interested in the outcome of this

17    matter.

18        IN WITNESS WHEREOF, I have hereunto set my hand

19    this 23rd day of August, 2018.

20                              *Janet Sambataro*

21                              _____

                                JANET M. SAMBATARO
22                              Notary Public
      My Commission Expires:
23    July 16, 2021

24

25