# EXHIBIT 52

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC 20529-2000



**U.S. Citizenship and Immigration Services**

April 10, 2017

## DECISION

MEMORANDUM FOR THE SECRETARY

FROM:        James W. McCament
                 Acting Director

SUBJECT:   **Haiti's Designation for Temporary Protected Status**

---

**Purpose:** Haiti's existing designation for Temporary Protected Status (TPS) will expire on July 22, 2017.[1] At least 60 days before a TPS designation expires, the Secretary, after consultation with appropriate U.S. Government agencies, must review the conditions in the designated foreign country to determine whether the conditions for such designation continue to be met. If the Secretary determines that the foreign country no longer continues to meet the statutory conditions for designation, he shall terminate the designation and publish an appropriate notice in the *Federal Register*. If the Secretary finds, however, that the conditions for designation continue to be met, the TPS designation must be extended a minimum of six months, but may be extended, in the Secretary's discretion, for 12 or 18 months.[2] Accordingly, U.S. Citizenship and Immigration Services (USCIS) has completed a review of the conditions in Haiti for your consideration.

As a result of this review, USCIS has concluded that the conditions in Haiti no longer support its designation for TPS. USCIS recommends that you terminate Haiti's TPS designation, but delay the effective date until January 22, 2018, which will allow for the extension of TPS benefits for affected individuals for an additional 6 months and for a period of orderly transition before the TPS designation of Haiti would terminate.[3]
As part of the review process, USCIS consulted with the Department of State (DOS). DOS, under the previous Administration, recommended an extension of Haiti's TPS

---

[1] *See* 80 FR 5182 (Aug. 25, 2015).
[2] *See* Immigration and Nationality Act (INA) § 244(b)(3)(A-C), 8 U.S.C. § 1254a(b)(3)(A-C); *see also* Attachment A: Temporary Protected Status Legal Authority.
[3] *See* INA, §244(b)(3)(B); 244(d)(3)

www.uscis.gov

designation.[4] Despite recent outreach to discuss the matter, Secretary Tillerson has not provided any recommendation on Haiti's TPS extension.

Of further note, DHS only removed Haitians on a limited basis until 2016 when DHS decided to resume removals to Haiti, stating that "the situation in Haiti has improved sufficiently to permit the U.S. government to remove Haitian nationals on a more regular basis, consistent with the practice for nationals from other nations." Also, in March 2017, the United Nations announced it would be gradually ending its peacekeeping mission in Haiti, removing its personnel by October 2017.

This memorandum also discusses options to extend Haiti's TPS designation, or to redesignate Haiti for TPS, coupled with an extension of the existing designation, for a period up to 18 months if you determine conditions support either of those actions.

**Background:** Following the devastating magnitude 7.0 earthquake that struck Haiti on January 12, 2010, former Secretary Napolitano designated Haiti for TPS on January 21, 2010, due to extraordinary and temporary conditions resulting from the earthquake.[5] She then extended the existing designation and redesignated Haiti for TPS on May 19, 2011.[6] Haiti's designation has been extended three times since the 2011 redesignation, most recently on August 25, 2015.[7]

To be eligible for TPS under Haiti's designation, along with meeting the other eligibility requirements, individuals must have continuously resided in the United States since January 12, 2011, and have been continuously physically present in the United States since July 23, 2011. *Id.*[8] There are approximately 58,700 Haitian TPS beneficiaries.[9]

---

[4] In December 2016, per USCIS' request and the established TPS review process, DOS assessed the conditions in Haiti relevant to TPS. Based on the results of this assessment, former Secretary Kerry recommended that DHS extend Haiti's existing TPS designation. In February 2017, USCIS gave DOS the opportunity to provide an updated recommendation and assessment. DOS sent an updated assessment of country conditions, and is currently working to secure an updated Secretarial recommendation. See Attachment C for DOS's December 2016 recommendation and assessment and the February 2017 update.

[5] *See* Designation of Haiti for Temporary Protected Status, 75 Fed. Reg. 3476 (Jan. 21, 2010). The designation was based on extraordinary and temporary conditions (INA § 244(b)(1)(C)), rather than environmental disaster (INA § 244(b)(1)(B)), because the Haitian government had not requested designation for TPS—a statutory requirement for a designation based on an environmental disaster.

[6] *See* Extension and Redesignation of Haiti for Temporary Protected Status, 76 Fed. Reg. 29,000 (May 19, 2011).

[7] *See* Extension of the Designation of Haiti for Temporary Protected Status, 80 Fed. Reg. 51,582 (Aug. 25, 2015).

[8] *See also* INA, §244(c)(eligibility requirements for individuals seeking TPS).

[9] This total represents all individuals who have been granted TPS since Haiti's designation in 2010, and who have not had their TPS withdrawn. Individuals may choose not to re-register for a variety of reasons, including adjustment to another valid immigration status, departure from the United States, or they are no longer eligible for TPS. As a result, the number of beneficiaries that USCIS expects to file for re-registration for TPS is lower than the total number of current beneficiaries. Based on statistics from the last re-registration period, USCIS estimates the filing of approximately 46,000 re-registration applications if Haiti's designation for TPS is extended.

*Country Conditions*
USCIS and DOS have each conducted an in-depth review of conditions in Haiti. The full reports, upon which this assessment is based, can be found in Attachments B and C. In summary, Haiti has made significant progress in recovering from the 2010 earthquake, and no longer continues to meet the conditions for designation. It is noted that Hurricane Matthew, which struck Haiti on October 4, 2016, has contributed to suffering in Haiti, but this suffering was confined to 3 of Haiti's 10 departments, and the the damage did not halt Haiti's overall recovery trajectory.

Haiti is the poorest country in the western hemisphere, and it had enormous problems long before the 2010 earthquake. Even before the earthquake, the Haitian government could not or would not deliver core functions to the majority of its people.

While lingering effects of the 2010 earthquake remain in housing, infrastructure, damage to the economy, health, sanitation services, security risks, and emergency response capacity, Haiti has made significant progress in addressing issues specific to the earthquake, as explained in Attachments B and C, as its economy continues to recover and grow (2 percent growth in 2015). For example, 96 percent of people displaced by the earthquake and living in internally displaced person (IDP) camps have left those camps. Over 98 percent of the IDP camps have closed. While those persons who have left have not necessarily moved into ideal housing, Haiti had a substantial housing deficit long before the 2010 earthquake. While gender-based violence in the handful of remaining camps continues to be a serious concern, and personal security is a serious and pervasive issue, security problems are not a post-earthquake phenomenon in Haiti, and fortunately the vast majority of displaced persons have moved out of the camps. In March 2017, the United Nations announced that the mandate of the United Nations peacekeeping mission in Haiti will end in October 2017. The withdrawal is meant to be gradual to allow time for the Haitian Government to resume control.

In September 2016, an estimated 3.2 million people (approximately 30 percent of the population) suffered from food insecurity. However, as explained in Attachment B, Haiti has historic food security challenges, and the international community has provided emergency food assistance and support for the agricultural sector to help avert a post-earthquake food crisis. Currently, Haiti's food insecurity problems seem related to tropical storms in 2012 and a drought rather than from lingering effects of the 2010 earthquake.

Haiti's weak public health system is further strained due to an ongoing cholera epidemic, whose inception was traced to U.N. peacekeepers assisting with earthquake recovery. Since October 2010, close to 800,000 Haitians have contracted cholera, and nearly 10,000 people have died from the disease. However, progress has been made in combatting cholera, and Haiti has made some progress in the health sector in recent years. Nevertheless, Haiti faces longstanding public health challenges, where 40 percent of the population lacked access to basic health services before the 2010 earthquake. As of 2016,

this figure remains the same – 40 percent of the population lacks access to fundamental health and nutrition services. While the lack of access to safe drinking water and Haiti's weak sanitation infrastructure remain significant concerns, these are not new problems. Again, while extreme poverty, corruption, and low levels of education in Haiti challenge its resilience and have contributed to the government's inability to provide for the security, health, and safety of its citizenry, these are problems that have plagued Haiti for decades.

Finally, while Hurricane Matthew made landfall in Haiti on October 4, 2016, causing extensive damage to crops, housing, livestock, and infrastructure across Haiti's southwest peninsula, circumstances in the country overall have continued on an upward trajectory since the 2010 earthquake. The most significant impact from the storm was concentrated in 3 of Haiti's 10 departments—Nippes, Grand'Anse, and Sud. Minimal damage was inflicted on the rest of the country, sparing the capital, Port-au-Prince, and the second largest city, Cap-Haïtien. The Government of Haiti confirmed 546 fatalities from the storm, and over 175,000 people have been left without housing. Significant losses of crops and livestock in the regions damaged by Hurricane Matthew have led to warnings of a potential food crisis throughout Haiti, an ongoing crisis that existed before and after the 2010 earthquake.

*Options*
Your options include the following actions:

1) *Extend Haiti's Designation for TPS*

As described above, USCIS has concluded that the specific extraordinary and temporary conditions stemming from the 2010 earthquake which caused Haiti to be initially designated for TPS and to be redesignated in 2011 have been largely ameliorated. Those myriad problems remaining in Haiti are longstanding problems which have existed for many years before the 2010 disaster. Haitian nationals may safely return to Haiti as evidenced by DHS's decision to resume removals to Haiti in 2016. While USCIS is unaware of any evidence or data to indicate that permitting Haitian nationals specifically to remain temporarily in the United States is contrary to the national interest of the United States, it is not in the national interest to extend a TPS designation when the specific extraordinary and temporary conditions giving rise to a TPS designation no longer exist. In addition, the law only permits an extension of Haiti's TPS designation if the extraordinary and temporary conditions that prompted designation continue to exist.[10] Therefore, USCIS assesses that Haiti's continued designation for TPS is not warranted as the statutory conditions for its temporary designation are no longer met.

Nevertheless, under the TPS statute, if you determine that those extraordinary and temporary conditions caused by the 2010 earthquake and that supported the redesignation

---

[10] *See* INA § 244(b)(1)(C), (3)(C).

in 2011 continue to exist you must choose to extend Haiti's TPS designation for an additional period of 6, 12, or 18 months. From an operational perspective, extension periods of less than 18 months are challenging given the significant workload and timeframes involved in receiving and adjudicating re-registration applications and issuing new employment authorization documents. Additionally, the deliberative review process to support TPS decision making, including consultation with DOS, typically begins ten months before the expiration date of a country's current designation. In light of these USCIS operational considerations, if you determine an extension is warranted, USCIS prefers the longest extension possible.

2) *Terminate Haiti's Designation for TPS*

If you determine that Haiti no longer continues to meet the statutory requirements for its TPS designation, you must terminate TPS for Haiti. Termination would end TPS benefits for existing Haitian TPS beneficiaries unless you provide for these benefits during a period for orderly transition. Upon the termination of TPS benefits, former beneficiaries without another immigration status or authorization to remain would no longer have permission to work and remain in the United States.

If you decide to terminate Haiti's designation, you may determine the appropriate effective date of the termination and related TPS documentation issued to beneficiaries. In doing so, you also have the option to provide for an orderly transition period after which TPS documentation will end.[11] Delaying the effective date for at least 6 to 12 months following the current expiration date of July 22, 2017, will provide those beneficiaries without any other immigration status a reasonable amount of time following the announcement of termination of the designation to plan and prepare for their departure from the United States.

3) *Redesignate Haiti for TPS, Coupled with Extension of Current Designation*

You may, in your discretion, decide to redesignate Haiti for TPS if you determine conditions in Haiti meet the statutory requirements for an initial designation. Redesignation is typically undertaken when country conditions have significantly changed or deteriorated since the last designation and there is a demonstrated need to afford temporary protection to additional nationals of the designated country.[12] Redesignation is

---

[11] *See* INA § 244(b)(3)(B), (d)(3) and 8 CFR § 244.19. Note: the effective date of termination may not be earlier than 60 days after the date the Federal Register notice announcing the termination is published or, if later, the expiration of the most recent previous extension. For Haiti, this expiration date is July 22, 2017.

[12] Redesignation would allow the expansion of TPS eligibility to individuals who entered the United States after the current continuous residence date of January 12, 2011, and the current continuous physical presence date of July 23, 2011, as under a redesignation, you could re-establish the date by which Haitian TPS applicants must have continuously resided in the United States and the continuous physical presence date would also change to the effective date of the redesignation or such later date as you may decide. *See* INA, § 244(b)(2)(A), (c)(1)(A)(i-ii).

also generally coupled with an extension of the existing TPS designation that permits existing TPS beneficiaries to follow procedures for re-registration rather than initial registration.

Although Hurricane Matthew recently caused a deterioration of conditions in Haiti's southwest peninsula, overall, circumstances in the country have continued on an upward trajectory since the 2010 earthquake. The institutional capacity of the Haitian Government to respond to the lingering effects of the earthquake remains weak; however, the U.S. Government is actively working to strengthen the Haitian civil service and government service delivery, with improvements being seen in some areas.

**Timeliness:** You are required to provide timely notice of whether existing TPS designations will be extended or terminated through publication in the *Federal Register*.[13] Your earliest decision will facilitate publication of notice in the *Federal Register* sufficiently in advance of the July 22, 2017 expiration of Haiti's designation, providing predictability and clarity to beneficiaries and their employers. If you do not make a decision at least 60 days before the expiration of the current designation (*i.e.*, by May 23, 2017), then Haiti's designation will automatically be extended for a minimum of 6 months.[14]

**Recommendation:** Following interagency consultation with DOS and a thorough review of the conditions in Haiti, USCIS concludes that termination of Haiti's TPS designation is warranted and recommends that you terminate the designation with an effective date of January 22, 2018, which is 6 months after the current expiration date.

Approve/date _____    Disapprove/date _____

Modify/date _____    Needs discussion/date _____

**Attachments:**
Attachment A: Temporary Protected Status Legal Authority
Attachment B: December 2016 USCIS RAIO Research Unit Report (with February 2017 Addendum) on Conditions in Haiti
Attachment C: December 12, 2016 Department of State Recommendation Regarding Temporary Protected Status for Haiti (with February 15, 2017 Update)
Attachment D: Map of Haiti

---

[13] *See* INA § 244(b)(3)(A).
[14] *See* INA § 244(b)(3)(A), (C).