UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTA RAMOS, *et al.*, | ) |
| | ) Case No. 3:18-cv-01554-EMC-SK |
| Plaintiffs, | ) |
| | ) **DECLARATION OF** |
| v. | ) **DONALD W. NEUFELD** |
| | ) |
| KIRSTJEN NIELSEN, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

I, Donald W. Neufeld, hereby declare and say:

1.  I am the Associate Director for Service Center Operations (SCOPS) for U.S. Citizenship and Immigration Services (USCIS), a component within the U.S. Department of Homeland Security (DHS).  I have held this position since January 2010.  In this position, I oversee all policy, planning, management, and execution functions of SCOPS.  My current job duties include overseeing a workforce of more than 5,800 government and contract employees at the five USCIS Service Centers located in California, Nebraska, Texas, Vermont, and Virginia.  These five service centers adjudicate over six million immigration-related applications, petitions, and requests annually, including applications for work authorization.

2.  I was previously the Deputy/Acting Associate Director for USCIS Domestic Operations from June 2007 to January 2010, where I oversaw all immigration adjudication activities at USCIS's four Service Centers and 87 field offices throughout the United States, as well as 130 Application Support Centers, four Regional Offices, two Call Centers, the Card Production Facility, and the National Benefits Center (NBC).  From January 2006 to

DECLARATION OF DONALD W. NEUFELD – No. 3:18-cv-1554

June 2007, I was the Chief of USCIS Field Operations managing and overseeing the 87 field offices delivering immigration benefit services directly to applicants and petitioners in communities across the United States and the NBC, which performs centralized front-end processing of certain applications and petitions.  My career with USCIS and the legacy Immigration and Nationality Service (INS) spans more than 30 years, where I have held several leadership positions including Deputy Assistant District Director for the Los Angeles District, Assistant District Director, and later District Director of the Miami District, and Service Center Director for the California and Nebraska Service Centers.  I began my career in 1983, initially hired as a clerk in the Los Angeles District, then serving as an Information Officer, and then an Immigration Examiner who conducted interviews and adjudicated applications for immigration benefits.

3.    I make this declaration on the basis of my personal knowledge and information made available to me in the course of my official duties.

4.    I am aware that on October 3, 2018, this Court issued a preliminary injunction ordering that USCIS is "enjoined and restrained from engaging in, committing, or performing, directly or indirectly, by any means whatsoever, implementation and/or enforcement of the decisions to terminate Temporary Protected Status (TPS) for Sudan, Haiti, El Salvador, and Nicaragua pending resolution of this case on the merits."  The Court "further ordered that Defendants shall take all administrative actions needed to preserve the status quo pending completion of discovery and a ruling on the merits of the action, including all steps needed to ensure the continued validity of documents that prove lawful status and employment authorization for TPS holders" (hereinafter referred to as "Order").

5. To implement this Court's Order, USCIS is in the process of drafting for publication a *Federal Register* Notice ("FRN"), announcing that the TPS designations for Sudan, Haiti, El Salvador and Nicaragua remain in effect so long as the Court's order remains in effect. The FRN will describe what steps DHS is taking to comply with the Court's Order, including to continue the validity of: (1) TPS-related Employment Authorization Documents ("EADs"); (2) Forms I-94, *Arrival and Departure Records*; and (3) Forms I-797, Notices of Action ("Approval Notices"), collectively "TPS-Related Documentation," to demonstrate the lawful status and employment authorization of affected TPS beneficiaries.

6. The FRN will further announce that DHS is automatically extending the validity of specified TPS-related EADs. The FRN will automatically extend, through April 2, 2019, the validity of EADs with the category codes "A-12" or "C-19" and one of the expiration dates shown below that have been issued under the TPS designations of Sudan and Nicaragua:

| |
|---|
| 11/02/2017 |
| 01/05/2018 |
| 11/02/2018 |
| 01/05/2019 |

In addition, USCIS will issue EADs valid through April 2, 2019, to beneficiaries of TPS Sudan and TPS Nicaragua who apply for an EAD and who have been approved for re-registration following the most recent TPS registration period for their country *or* who have a pending re-registration application with USCIS, provided such pending re-registration and EAD applications are approved following publication of the FRN, or sooner, if this Court indicates that Defendant's proposed plan for compliance with its Order is acceptable.

7. The FRN will also automatically extend through April 2, 2019, the validity of specified Forms I-94 (*Arrival Departure Records*) and Forms I-797, Notices of Action (Approval Notices) for affected beneficiaries pursuant to the TPS designations for Sudan and Nicaragua. The Forms I-94 and Forms I-797 (Approval Notices) that are being extended are:

| Country | Beginning date of validity: | End date of validity: |
|---|---|---|
| Sudan | May 3, 2016 | Nov. 2, 2017 |
|  | Nov. 3, 2017 | Nov. 2, 2018 |
| Nicaragua | July 6, 2016 | Jan. 5, 2018 |
|  | Jan. 6, 2018 | Jan. 5, 2019 |

8. TPS beneficiaries from Haiti and El Salvador who have been approved for re-registration currently have TPS-Related Documentation that will remain in effect for more than six months (until July 22, 2019, and September 9, 2019, respectively). The six month auto-extension that DHS plans to announce in the upcoming FRN will therefore not apply to them. TPS beneficiaries from Haiti and El Salvador with currently pending re-registration and EAD applications that are later approved by USCIS will receive TPS-related EADS, Forms I-94, and/or Forms I-797, (Approval Notices), with the same validity dates as the beneficiaries from those countries whose applications have already been approved.

9. Should the Court's Order not be reversed or invalidated before the initial six month auto-extension of documentation for TPS beneficiaries from Sudan and Nicaragua, DHS will issue a subsequent FRN approximately 30 days before April 2, 2019 that automatically extends by nine months the appropriate TPS-Related Documentation for TPS beneficiaries from Sudan, Nicaragua, Haiti, and El Salvador. If issued, the subsequent FRN would automatically extend the TPS-Related Documentation for TPS beneficiaries from

Sudan and Nicaragua until January 2, 2020. The potential subsequent FRN would also auto-extend through January 2, 2020, the appropriate TPS-Related Documentation of TPS beneficiaries who filed for re-registration in accordance with either the TPS termination FRNs for El Salvador and Haiti (83 Fed. Reg. 2654 (Jan. 18, 2018) (El Salvador)); 83 Fed. Reg. 2648 (Jan. 18, 2018) (Haiti)); *or* the TPS extension FRNs for each country that recently preceded those termination FRNs (81 Fed. Reg. 44645 (July 8, 2016) (El Salvador)); (80 Fed. Reg. 51582 (Aug. 25, 2015) (Haiti); 82 Fed. Reg. 23830 (May 24, 2017) (Haiti)), unless such individuals' re-registration and EAD applications have been finally denied by USCIS for individual TPS ineligibility reasons under section 244(c) of the Immigration and Nationality Act (INA) and 8 C.F.R. Part 244. More specifically, the automatic EAD extension through January 2, 2020, would apply to a TPS beneficiary's EAD if the beneficiary successfully re-registered and possesses an EAD under any of those five FRNs, or if the beneficiary filed a re-registration application under those FRNs that is still pending *and* such applicant possesses an EAD that had been previously automatically extended under any of those five noted FRNs. DHS will continue to issue such FRNs at nine month intervals, subject to the orderly transition intervals described in paragraph 10, so long as the injunction remains in place and the mandate of any decision reversing the injunction has not yet issued to the district court. Notwithstanding any future automatic extension of TPS-Related Documentation described in this paragraph, no automatic extension will be provided to or maintained for any individual who fails to meet TPS eligibility requirements, including re-registration requirements, although an individual may file for re-registration late and provide his or her reasons for being late. USCIS will determine whether the individual has met the

"good cause" statutory exception for late re-registration as described in paragraphs 15 and 16.

10. All automatic extensions referred to in this declaration will remain in effect as long as the affected TPS beneficiaries remain otherwise individually eligible for TPS, unless any of the Secretary's termination decisions become effective at an earlier date as a result of a superseding judicial order and implementing Federal Register Notice. In the event of such a superseding order, however, DHS will allow for an orderly transition period of (a) 120 days from the date the mandate issues to the District Court; or (b) the Secretary's previously-announced effective date for the termination of TPS designations for each individual country (Nicaragua – January 5, 2019; Haiti – July 22, 2019; El Salvador – September 9, 2019). To the extent that a subsequent FRN has auto-extended TPS-Related Documentation beyond the 120-day orderly transition period DHS reserves the right to issue another FRN invalidating the documents at the end of the orderly transition period.

11. USCIS is auto-extending the TPS-Related Documentation as noted above, in response to the Court's directive that Defendants "ensure the continued validity of documents that prove lawful status and employment authorization for TPS holders." TPS beneficiaries who have a valid EAD are able to use that document as evidence of lawful status and employment authorization. *See* 8 C.F.R. § 264.1(b) (listing alien registration document types). When USCIS approves either an initial application for TPS or a re-registration application for an existing TPS beneficiary, the agency issues a Form I-797 (*Notice of Action*) approval notice that gives the validity dates for the person's next period of TPS. A TPS beneficiary can use as an alien registration document either his or her EAD,

if one was issued, or the "tear off" Form I-94 (*Arrival Departure Record*) located at the bottom of a Form I-797 approval. *Id.*

12. TPS beneficiaries who have not applied for or not received an EAD can use Forms I-94 or Forms I-797 as proof that they are TPS-recipients and in lawful status. The specified Forms I-94 and Forms I-797 for TPS beneficiaries from Sudan and Nicaragua will therefore be automatically extended through April 2, 2019. If further automatic extension of Forms I-94 or Forms I-797 becomes necessary to comply with the Court's Order, DHS will provide for such extension in the subsequent nine-month FRNs described above in paragraph 9 for beneficiaries of TPS Sudan, TPS Nicaragua, TPS Haiti, and TPS El Salvador, as appropriate.

13. In order for a beneficiary under TPS Sudan or TPS Nicaragua to establish his or her continued employment authorization, the forthcoming FRN, together with the specified auto-extended TPS-related EADs, can be shown to employers for employment eligibility verification purposes through April 2, 2019. Similarly, if a subsequent FRN extending EADs for eligible beneficiaries of TPS Sudan, Nicaragua, Haiti, and El Salvador is issued, that subsequent FRN, together with the specified auto-extended TPS-related EADs, can be shown to employers to establish continued employment authorization.

14. DHS is also automatically extending through April 2, 2019, the Forms I-94 and Forms I-797 described above in paragraph 7 for individuals with TPS status granted under the designations for Sudan and Nicaragua that has not been finally withdrawn, if the individuals' TPS re-registration applications (Forms I-821) remain pending or have been granted. The FRN will not, however, extend the validity date of any TPS-Related Documentation issued to a TPS beneficiary if the individual has failed to file for TPS re-

registration as required under the applicable re-registration procedures for his or her country, or if his or her re-registration request has been finally denied. However, an individual may file for re-registration late and provide his or her reasons for being late. USCIS will determine whether the individual has met the "good cause" statutory exception for late re-registration as described in paragraphs 15 and 16.

15. In order to remain in lawful TPS status, beneficiaries must have re-registered as required by the INA. Beneficiaries who failed to re-register during the designated period listed in the termination FRNs for Sudan, Nicaragua, El Salvador, and Haiti, should file an application for late re-registration and demonstrate "good cause" for filing late as required by the INA.

16. Officers will be given guidance on adjudicating any late re-registration applications for the affected populations and will take into account the circumstances related to the termination notices. While any TPS beneficiary filing a late re-registration notice must show "good cause" under the TPS law, USCIS adjudicators will give presumptive weight to whether the delay in filing for re-registration was due in whole or in part to the termination notices or the May 24, 2017 extension of the designation of Haiti when determining whether good cause has been met. If the individual's claim to have delayed filing for this reason is credible, it will be considered a presumptive factor in favor of a "good cause" finding, but all relevant factors must be considered by the adjudicator.

17. Should an FRN granting a subsequent nine month auto-extension be issued to include Haiti and El Salvador, USCIS will not extend the validity date of any TPS-Related Documentation to TPS beneficiaries from Sudan, Nicaragua, Haiti, and El Salvador who either failed to file for TPS registration or whose re-registration request has been finally

denied. However, an individual may file for re-registration late and provide his or her reasons for being late. USCIS will determine whether the individual has met the "good cause" statutory exception for late re-registration as described in paragraphs 15 and 16.

18. Defendants will provide Plaintiffs a near final copy of the Federal Register Notice in advance of publication to ensure that it is implementing the Court's Order in a manner consistent with this declaration and to allow for good faith cooperation between the parties to resolve any ambiguities in the Federal Register Notice.

19. DHS has reached an agreement with Plaintiffs to take the steps outlined in this declaration as part of a negotiation to stay district court proceedings pending appellate review of the preliminary injunction. Should for any reason the district court proceedings not be stayed, DHS reserves the right to revisit any future actions described herein in a way that ensures compliance with the preliminary injunction.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

10/23/2018
DATE

Donald W. Neufeld
Associate Director, SCOPS
Washington, DC