1   Ahilan T. Arulanantham, SBN 237841
    arulanantham@law.ucla.edu
2   UCLA CENTER FOR IMMIGRATION LAW
    AND POLICY
3   385 Charles E. Young Dr. East
    Los Angeles, CA 90095
4   Telephone: +1 310 825 1029

5   Jessica Karp Bansal (SBN 277347)
    jessica.b@uwunited.org
6   UNEMPLOYED WORKERS UNITED
    P.O. Box 142
7   Claremont, CA 91107
    Telephone: +818-570-6731
8
    Alycia A. Degen (SBN 211350)
9   adegen@sidley.com
    Sean A. Commons (SBN 217603)
10  scommons@sidley.com
    SIDLEY AUSTIN LLP
11  555 West Fifth Street
    Los Angeles, CA 90013
12  Telephone: +1 213 896 6010
    Facsimile: +1 213 896 6600
13

14  Attorneys for Plaintiffs
    [*Additional Counsel Listed on Next Page*]

15              UNITED STATES DISTRICT COURT

16           NORTHERN DISTRICT OF CALIFORNIA

17

18  CRISTA RAMOS, individually and on behalf    Case No. 3:18-cv-1554-EMC
    of others similarly situated; CRISTINA
19  MORALES, BENJAMIN ZEPEDA,                    **PLAINTIFFS' OPPOSITION TO**
    individually and on behalf of others similarly   **DEFENDANTS' MOTION TO DISMISS**
20  situated; ORLANDO ZEPEDA, JUAN
    EDUARDO AYALA FLORES, individually       The Honorable Edward M. Chen
21  and on behalf of others similarly situated;
    MARIA JOSE AYALA FLORES, ELSY            Date:  December 21, 2023
22  YOLANDA FLORES DE AYALA, HNAIDA          Time: 1:30 p.m.
    CENEMAT, individually and on behalf of    Place: Courtroom 5, 17th Floor
23  others similarly situated; WILNA DESTIN,
    RILYA SALARY, individually and on behalf
24  of others similarly situated; SHERIKA
    BLANC, IMARA AMPIE, MAZIN AHMED,
25  HIWAIDA ELARABI, and SALMA AHMED,

26          *Plaintiffs*,

27      v.

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS; CASE NO. 3:18-CV-1554-EMC

ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security;; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and UNITED STATES OF AMERICA,

 Defendants.

KESHAV BHATTARAI, SAJJAN PANDEY, SUMNIMA THAPA,  DONALDO POSADAS CACERES, SORAYDA RODRIGUEZ MOTIÑO, DENIS MOLINA CHAVEZ, S.S., individually and on behalf of others similarly situated; and G.D.P., individually and on behalf of others similarly situated,

 Plaintiffs,

  v.

ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and UNITED STATES OF AMERICA

 Defendants.

Case No.  3:19-cv-00731-EMC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

The Honorable Edward M. Chen

Additional Counsel for Plaintiffs

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
William S. Freeman (SBN 82002)
wfreeman@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: +1 415 621 2493
Fax: +1 415 863 7832

Michael Kaufman (SBN 254575)
mkaufman@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: +1 213 977 5236

Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1219
Facsimile: +1 415 772 7400

Marisol Ramirez (SBN 307069)
marisol.ramirez@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Winifred Kao (SBN 241473)
winifredk@advancingjustice-alc.org
ADVANCING JUSTICE – ASIAN LAW
CAUCUS
55 Columbus Avenue
San Francisco, California 94111
Telephone: +1 415 896 1701
Fax: +1 415 896 1702

Keally Cieslik (SBN 55413)
keally.c@uwunited.org
UNEMPLOYED WORKERS UNITED
100 N. Howard Street, Suite 4000
Spokane, WA 99201
Telephone:+508-250-0518
Admitted Pro Hac Vice

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ....................................................................2

FACTUAL BACKGROUND..................................................................................................3

STANDARD.............................................................................................................................4

ARGUMENT ...........................................................................................................................5

      I.       The Voluntary Cessation Exception Applies ...............................................5

      II.     Haitian and Sudanese TPS Holders Continue to Suffer Injury from Defendants' Unlawful Conduct. ................................................................11

      III.    This Court's Jurisdictional Rulings Are Law of the Case. ..........................14

      V.     Claim IV is Not Barred by *Lyons*. .............................................................16

      VI.    Plaintiffs Should Be Granted Leave to Conduct Jurisdictional Discovery.................18

CONCLUSION.......................................................................................................................19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Diabetes Ass'n v. United States Dep't of the Army*,
  938 F.3d 1147 (9th Cir. 2019) ......................................................................7, 10, 11

*Bell v. City of Boise*,
  709 F.3d 890 (9th Cir. 2013) ..............................................................................10, 11

*Brach v. Newsom*,
  38 F.4th 6 (9th Cir. 2022) (en banc) ............................................................... *passim*

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016), *as revised* (Feb. 9, 2016) ......................................................12

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
  254 F.3d 882 (9th Cir. 2001) ....................................................................................16

*City of Los Angeles v. Barr*,
  929 F.3d 1163 (9th Cir. 2019) ....................................................................................7

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982) ....................................................................................................9

*Cnty. of Riverside v. McLaughlin*,
  500 U.S. 44 (1991) ....................................................................................................17

*Dieffenbach v. Barnes & Noble, Inc.*,
  887 F.3d 826 (7th Cir. 2018) ....................................................................................13

*Does v. Trump*,
  328 F. Supp. 3d 1185 (W.D. Wash. 2018) ..........................................................18, 19

*Fikre v. Fed. Bureau of Investigation*,
  904 F.3d 1033 (9th Cir. 2018) ....................................................................................9

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs (TOC), Inc.*,
  528 U.S. 167 (2000) ............................................................................................4, 8, 9

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
  899 F.3d 785 (9th Cir. 2018) ................................................................................2, 12

*Gilbert v. Saddleback Golf Carts, Inc.*,
  No. CV 08–424 AHS, 2008 WL 11337321 (C.D. Cal. Aug. 11, 2008) ...................5

*Gonzalez v. United States Immigr. & Customs Enf't*,
   975 F.3D 788 (9th Cir. 2020)...........................................................................17, 18

*Industrial Customers of Northwest Utilities v. Bonneville Power Admin.*,
   388 F. App'x 586 (9th Cir. 2010) ...............................................................................18

*Laub v. U.S. Dep't of the Interior*,
   342 F.3d 1080 (9th Cir. 2003) ..................................................................5, 18, 19

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)......................................................................................17

*Lynch v. Leis*,
   382 F.3d 642 (6th Cir. 2004) ........................................................................17

*M.W. by & Through Hope W. v. U.S. Dep't of Army*,
   No. 16-CV-04051-LHK, 2017 WL 10456732 (N.D. Cal. Dec. 15, 2017) ...........10

*McCormack v. Herzog*,
   788 F.3d 1017 (9th Cir. 2015) ...................................................................9, 11

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
   139 S. Ct. 1652 (2019).................................................................................2, 14

*Parents Involved in Community Schools v. Seattle School Dist. No. 1*,
   551 U.S. 701 (2007)................................................................................7, 9, 10

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*,
   946 F.3d 1100 (9th Cir. 2020) ................................................................................7

*Powell v. McCormack*,
   395 U.S. 486 (1969)..............................................................................2, 4, 12

*Ramos v. Mayorkas*,
   No. 18-16981, 2023 WL 4363667 (9th Cir. June 29, 2023) (*en banc*)...................15

*Ramos v. Wolf*,
   975 F.3d 872 (9th Cir. 2020) ...............................................................3, 13, 17

*Ramos v. Wolf*,
   No. 18-16981 ......................................................................................4, 15

*Richardson v. United States*,
   841 F.2d 993 (9th Cir. 1988) .........................................................................14

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) ....................................................................10, 11

*Safe Air for Everyone v. Meyer,*
  373 F.3d 1035 (9th Cir. 2004) ..................................................................4, 5

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,*
  402 F.3d 1198 (Fed. Cir. 2005)......................................................................17

*Sibron v. New York,*
  392 U.S. 40 (1968)............................................................................................4

*Southern Utah Wilderness Alliance v. Palma,*
  707 F.3d 1143 (10th Cir. 2013) .....................................................................17

*United States v. Alexander,*
  106 F.3d 874 (9th Cir. 1997) ..........................................................14, 15, 16

*United States v. Park Place Assocs., Ltd.,*
  563 F.3d 907 (9th Cir. 2009) ..........................................................................14

*United States v. Smith,*
  389 F.3d 944 (9th Cir. 2004) ..................................................................14, 16

*Van v. LLR, Inc.,*
  962 F.3d 1160 (9th Cir. 2020) ........................................................................13

*W. Dist. Council of Lumber Prod. & Indus. Workers v. Louisiana Pac. Corp.,*
  892 F.2d 1412 (9th Cir. 1989) ........................................................................13

*West Virginia v. EPA,*
  142 S. Ct. 2587 (2022)........................................................................... *passim*

**Statutes**

8 U.S.C. § 1254a(c)(1)(A)(iv)...............................................................................12

8 U.S.C. § 1254a(c)(1)(B).....................................................................................12

**Other Authorities**

8 C.F.R. § 244.17(a)..............................................................................................12

Fed. R. App. P. 4(a) ...............................................................................................15

Fed. R. Civ. P. 12(b)(1)............................................................................................4

1

**INTRODUCTION**

2          Defendants contend that the rights of hundreds of thousands of TPS holders, including

3    parents of more than one hundred thousand U.S. citizen children, can be disposed of on the

4    pleadings as "nothing more than a quibble about the level of explicitness in a public notice." *See*

5    Defendants' Motion to Dismiss, Dkt. 206, ("MTD") at 10. They are wrong. The voluntary cessation

6    exception to mootness applies here. Defendants rescinded the challenged actions years into the

7    litigation, still refuse to acknowledge their unlawfulness, and have not even admitted that the

8    underlying practice Plaintiffs challenged even exists. Moreover, certain Plaintiffs continue to suffer

9    ongoing injuries as a consequence of the original unlawful terminations.

10          Defendants' motion to dismiss ignores that Plaintiffs' complaint challenges not just the now-

11   rescinded TPS terminations, but also Defendants' underlying practice, first employed in late 2017, of

12   *refusing to consider any intervening conditions* when determining whether to extend TPS

13   designations. It was *that* flawed practice (the "Originating Conditions Rule") that Defendants relied

14   on to terminate TPS for countries that continued to remain unsafe and otherwise met the statutory

15   criteria for TPS. Because Defendants still deny that they ever employed such a practice and still

16   contend that courts lack jurisdiction to review its legality, this case is not moot. *See* First Amended

17   Complaint, Dkt. 204, ("FAC"), ¶¶ 57-115.

18          Defendants' most recent TPS decisions—enacted just days before the en banc argument

19   scheduled to take place in this case—do not rely on the Originating Conditions Rule, but they also

20   do not disclaim that prior practice or manifest any intention to permanently abandon it. Indeed, they

21   *still* refuse to acknowledge that it ever existed. MTD at 10. Therefore, this case presents a classic

22   example of "voluntary cessation," which "does not moot a case unless it is absolutely clear that the

23   allegedly wrongful behavior could not reasonably be expected to recur." *West Virginia v. EPA*, 142

24   S. Ct. 2587, 2607 (2022) (citing *Parents Involved in Community Schools v. Seattle School Dist. No.*

25   *1*, 551 U.S. 701, 719 (2007)). Defendants cannot carry their "heavy" burden to evade a ruling on the

26   merits where "the only conceivable basis for a finding of mootness in the case is [the defendant's]

27   voluntary conduct." *West Virginia*, 142 S. Ct. at 2607 (citing *Friends of the Earth, Inc. v. Laidlaw*

28

*Env't. Servs (TOC), Inc.*, 528 U.S. 167, 189 (2000)) (cleaned up).

This case is not moot as to Plaintiffs from Haiti and Sudan for the additional reason that TPS holders from these countries continue to suffer ongoing injury from the unlawful terminations. Defendants issued new TPS designations for both those countries in the last two years, but then charged individuals $50 to re-register under the new designations—charges they would not have incurred had Defendants not illegally terminated their TPS status in 2017 and 2018. Whether this improper fee is framed as an ongoing injury caused by the terminations, *see Powell v. McCormack*, 395 U.S. 486, 496 n. 8 (1969), or a collateral consequence of the terminations, *see Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 792 (9th Cir. 2018), it precludes any finding of mootness. "If there is any chance of money changing hands, [the] suit remains live." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). Defendants have now filed an affidavit expressing their intent to reimburse those costs, but they err in suggesting that this somehow shifts the burden onto Plaintiffs to prove they continue to suffer harm. Defendants' declaration describing their incomplete attempts to refund fees that TPS holders never should have been charged in the first place dues not moot this case. The loss of use of money is a concrete harm. At a minimum, the issue warrants discovery to determine if the refunds have in fact been completed. *See* Declaration of Sharon Orise, Dkt. 206-1, ("Orise Decl.") at 7-8.

The Court should reject Defendants' Motion. The basic protections at issue in this case involve far more than mere quibbles. Governing mootness doctrine does not permit Defendants to escape a ruling on the legality of the practice they defended for the last five years on so thin a showing.

## STATEMENT OF ISSUES TO BE DECIDED

1. Does Defendants' rescission of the challenged TPS terminations render this case moot where it occurred after five years of litigation, less than a week before en banc argument, and where it did not acknowledge the unlawfulness of the prior rescissions or disavow the Originating Conditions Rule?

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS; CASE NO. 3:18-CV-1554-EMC

2.      Does Defendants' declaration stating an intention to refund an improperly imposed $50 fee suffice to shift the burden to Plaintiffs to prove on-going harm for purposes of mootness doctrine?

3.      If the Court finds that Plaintiffs are required to submit additional evidence to avoid dismissal, should Plaintiffs be allowed to conduct jurisdictional discovery?

## FACTUAL BACKGROUND

Defendants' account of the procedural history omits important facts bearing on this motion.

*First,* after extensive factual review, this Court found "a wealth of record evidence to support Plaintiffs' position that DHS changed its practices with regard to TPS designations" in late 2017 and 2018. Order Granting Preliminary Injunction Motion, Dkt. 128, ("PI Order") at 19. Based on that extensive review, the Court concluded that "[t]his departure was a substantial and consequential change in practice." *Id.* at 26. As the Court explained, "[p]rior to October 2017 . . . DHS consistently considered, at the very least, whether intervening events had frustrated or impeded recovery efforts from the originating conditions in Sudan, Haiti, Nicaragua, and El Salvador." Order Denying Motion to Dismiss, Dkt. 55, ("MTD Order") at 27. "In sharp contrast . . . 'the termination notices for Sudan, Haiti, Nicaragua, and El Salvador [under the Trump administration] [we]re curt and fail[ed] to address numerous conditions that justified extensions of TPS status in the most recent notices issued by prior administrations.'" *Id.* at 30. That finding was undisturbed by the Ninth Circuit panel whose decision was vacated after this case went en banc (and Defendants withdrew their appeal). *Compare Ramos v. Wolf*, 975 F.3d 872, 895 (9th Cir. 2020) (declining to address the APA claim on the merits); *with id.* at 920 (Christen, J., dissenting) ("There is no real room for debate that the agency changed its practice"), *vacated upon rehearing en banc*, 59 F.4th 1010 (9th Cir. 2023).

*Second,* Defendants do not fully describe the timing of their decisions to "rescind" the terminations. *See generally* Declaration of Ahilan Arulanantham, ("Arulanantham Decl."), ECF No. 186-2 (9th Cir.).[1] Multiple DHS Secretaries declined to rescind these terminations for more than four

---

[1] "ECF" citations refer to the docket for the *Ramos v. Wolf*, No. 18-16981, appeal.

years after this Court's October 2018 preliminary injunction order, including for 30 months after the change in presidential administrations and 16 months during which the Parties engaged in mediation. *Id.* ¶ 8. Then, ten days before the en banc argument (and on the same day that the en banc panel was announced), news leaked that Defendants intended to rescind the termination decisions challenged in this case. They made the announcement the next day. *Id.* ¶¶ 12-13. Nothing in Defendants' recent rescission notices recognized the unlawfulness of the Originating Conditions Rule upon which the 2017 and 2018 terminations depended. Nonetheless it is those decisions Defendants rely on here to argue that this case is moot.

## STANDARD

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice . . . . If it did, the courts would be compelled to leave 'the defendant … free to return to his old ways.'" *Friends of the Earth, Inc. v. Laidlaw Env't. Servs (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.10 (1982)) (cleaned up). Therefore, such voluntary conduct only moots a case where Defendants satisfy the "heavy burden" to show it is "absolutely clear" that the challenged conduct "could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. In addition, a case cannot be moot where "several forms of relief are requested" and any one remains viable, *Powell*, 395 U.S. at 496 n.8 (1969), or a "possibility of consequences collateral to the" challenged conduct persists. *Sibron v. New York*, 392 U.S. 40, 55 (1968).

A factual challenge under Rule 12(b)(1) can shift the burden onto Plaintiffs to submit evidence, but only as to matters on which Defendants submit competent evidence. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (explaining that factual challenges to subject matter jurisdiction may shift the burden to the nonmoving party when the movant affidavits or other evidence **properly brought before the court**) (emphasis added). As to all other factual matters, the Court must accept Plaintiffs' allegations as true, drawing inferences in their favor, just as in a facial challenge to jurisdiction. *See id*; *see also Gilbert v. Saddleback Golf Carts, Inc.*, No.

4

1    CV 08–424 AHS, 2008 WL 11337321, at *3 (C.D. Cal. Aug. 11, 2008) (denying motion to dismiss

2    for lack of subject matter jurisdiction because allegations in the complaint were not controverted by

3    undisputed facts). . In addition, the Court should grant jurisdictional discovery "where pertinent facts

4    bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the

5    facts is necessary." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)

6    (quotation omitted).

7                                             **ARGUMENT**

8    **I.      The Voluntary Cessation Exception Applies.**

9           This case presents a classic example of voluntary cessation. Defendants appear to have

10   departed from a past practice—the Originating Conditions Rule—for the time being, but have never

11   acknowledged using it, let alone disavowed it. And Defendants still maintain that this Court has no

12   jurisdiction to review the lawfulness of the Originating Conditions Rule. As matters stand,

13   absolutely nothing stops Defendants from declining to consider intervening conditions in the next

14   round of TPS decision-making. Those decisions will start in the March 2025, and will affect these

15   same Plaintiffs. Voluntary cessation that leaves Plaintiffs to live in the shadow of such ongoing

16   uncertainty cannot support dismissal.

17          It is hornbook mootness doctrine that voluntary cessation of conduct challenged in a

18   complaint does not necessarily render a case moot. Where defendants seek to win dismissal before a

19   final ruling on the merits, they bear a "heavy" burden to show it is "absolutely clear that the

20   allegedly wrongful behavior could not reasonably be expected to recur." *West Virginia*, 142 S. Ct. at

21   2607 (citing *Parents Involved*, 551 U.S. at 719, and *Friends of the Earth*, 528 U.S. at 189-92). *See*

22   *also Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (en banc) ("a defendant cannot automatically

23   moot a case simply by ending its unlawful conduct once sued").

24          Whether the voluntary cessation exception to the mootness doctrine applies requires

25   consideration of two questions: (1) whether defendant ceased the conduct voluntarily (rather than it

26   ending of its own force), and (2) whether defendant can satisfy the demanding standard that

27   recurrence is not likely to recur. *Brach*, 38 F.4th at 12-13. Here Defendants fail on both counts.

28

1

As to the first prong, the parties agree that Defendants have voluntarily considered at least

2

some intervening conditions for the six countries at issue here in their most recent TPS decisions. In

3

this respect, the most recent decisions appear to follow Defendants' practices as they existed prior to

4

the challenged decisions in 2017 and 2018. But no court order or statutory enactment compelled

5

those recent rescissions; and the prior, disputed termination decisions did not "expire[] by their own

6

terms." *Brach*, 38 F.4th at 12 (internal quotation omitted).

7

As to the second prong, Defendants cannot meet their heavy burden for two reasons. To start,

8

Defendants refuse to admit the existence of a prior policy or practice adopting the Originating

9

Conditions Rule, despite abandoning their appeal of this Court's detailed factual findings

10

establishing its existence. *See supra* at 1, 3. Instead, to this day, Defendants describe the Originating

11

Conditions Rule as a "supposed" or "alleged" practice, MTD at 17, which explains why the

12

rescissions merely criticize the challenged TPS terminations as if those terminations "either

13

insufficiently considered or [did] not consider[]" a subset of intervening conditions by accident,

14

rather than as a result of a particular reading of the governing statute. MTD at 9.

15

Courts have repeatedly found that comparable failures to repudiate a challenged practice

16

preclude dismissal for voluntary cessation. For example, in the most recent Supreme Court case

17

concerning voluntary cessation, the federal government had stopped enforcing an environmental rule

18

(known as the "Clean Power Plan") and announced its intention to adopt a different plan while

19

litigation against the rule was pending. *West Virginia*, 142 S. Ct. at 2604-06. Based on that action,

20

the government contended the litigation was moot. The Supreme Court disagreed. The Court found

21

crucial that the government never abandoned the interpretation of the statute underlying the Clean

22

Power Plan, and instead "vigorously defend[ed]" the legality of that rationale. Because it "nowhere

23

suggest[ed] that if this litigation [were] resolved in its favor it [would] not" reimpose a comparable

24

rule, the voluntary cessation exception applied. *Id.* at 2607. This case is materially indistinguishable.

25

*See also Parents Involved*, 551 U.S. at 719 (finding voluntary cessation exception applied where

26

defendants "vigorously defend[ed]" the legality of its program and never suggested it would cease

27

the practice if it won in court). *Cf. City of Los Angeles v. Barr*, 929 F.3d 1163, 1173 (9th Cir. 2019)

28

1    (holding plaintiffs established "reasonable expectation" they would again be subject to challenged

2    practice because defendant "has not agreed to stop"); *Planned Parenthood of Greater Washington &*

3    *N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020) (holding that

4    defendant's "declination to renounce a practice" is sufficient to establish reasonable expectation of

5    recurrence for purposes of capable of repetition exception to mootness).

6           The Ninth Circuit's recent en banc decision in *Brach* is also instructive as to defendants who

7    seek dismissal before a final ruling on the merits based on post-litigation conduct. *Brach* was a suit

8    by parents against California's COVID school closure policies. Unlike *West Virginia* and *Parents*

9    *Involved*, *Brach* found the defendant (the State of California) had satisfied its heavy burden to show

10   the challenged conduct would not recur, but on facts that stand in stark contrast to those here.

11   "California has presented a strong case that the current order opening schools is not a temporary

12   move to sidestep the litigation. Most importantly, the State has 'unequivocally renounce[d]' the use

13   of school closure orders in the future." *Brach*, 38 F.4th at 13; *see also Am. Diabetes Ass'n v. United*

14   *States Dep't of the Army*, 938 F.3d 1147, 1153 (9th Cir. 2019) (voluntary cessation exception did not

15   apply because the government's "New Policy unequivocally renounces the previously challenged

16   prohibition" and "'addresses all of the objectionable measures that [the Government] officials took

17   against the plaintiffs' under the Old Policy.'(Citation omitted)").

18          Here, no such renunciation has occurred. Nor could it, because Defendants refuse even to

19   acknowledge that the challenged terminations occurred because of the Originating Conditions Rule,

20   let alone disclaim reliance on that practice. Despite years of litigation, hundreds of pages of briefing,

21   and this Court's detailed rulings to the contrary, Defendants still stand firm by their twin defenses

22   that there was no such rule and, even if there were, no court would have jurisdiction to review its

23   legality. Defendants still refuse to acknowledge either that the Originating Conditions Rule ever

24   existed or that it *was in fact* a departure from the agency's longstanding past practice. They can only

25   bring themselves to say "*plaintiffs characterize*" it as such. MTD at 12 (emphasis added). Simply

26   put, Defendants have said and done nothing that in any way prevents DHS from invoking the

27   Originating Conditions Rule when it next decides whether to extend TPS for these Plaintiffs.

28

1  Defendants' staunch refusal to budge on the central factual and legal issues in this case underscores

2  the existence of a live controversy.

3      Defendants' arguments to the contrary fail. *First*, Defendants rely on a misinterpretation of

4  mootness doctrine to suggest that the mere fact that Plaintiffs are "no longer injured by the now-

5  inoperable TPS terminations" entitles Defendants to dismissal, repeating the old saw that mootness

6  is "standing set in a time frame." *See* MTD at 8. While some lower courts continue to repeat that

7  phrase, the Supreme Court has made clear that it is misleading. *Friends of the Earth*, 528 U.S. at 190

8  (criticizing "standing set in a time frame" characterization as "not comprehensive"). At the outset of

9  a case, Plaintiffs must prove standing by showing extant or imminent injury. But once they have

10  made that showing, Defendants can only obtain dismissal through voluntary cessation of the

11  challenged conduct if *they* satisfy the heavy burden to show, with absolute clarity, that the harm

12  cannot reasonably be expected to recur. *Id.* at 189 ("A case might become moot if subsequent events

13  made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to

14  recur." (quotation marks and citation omitted)); *West Virginia*, 142 S. Ct. at 2607. As a result, "there

15  are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct

16  may be too speculative to support standing, but not too speculative to overcome mootness." *Friends

17  of the Earth*, 528 U.S. at 190.

18      *Second*, Defendants ignore the applicable burdens of proof at this stage of the litigation.

19  Defendants argue "hypothetical future agency actions" are too speculative to avoid mootness, and

20  that Plaintiffs need to prove by a preponderance of the evidence "that a future Administration is

21  likely to again depart from what plaintiffs characterize as a long-established and uniform agency

22  approach to TPS determinations." MTD. at 11-12. But, for purposes of mootness based on voluntary

23  cessation (as opposed to standing at the outset of a case), *Defendants* must remove any basis for

24  concern by establishing that it is now "absolutely clear" that the harm "could not reasonably be

25  expected to recur." *West Virginia*, 142 S. Ct. 2607. Thus, if the question whether harm could recur

26  remains open to dispute or reasonable speculation, then *Plaintiffs win*, and this case must be allowed

27  to proceed. Here Defendants have not submitted *any* evidence establishing that DHS will not re-

28

adopt the Originating Conditions Rule and use it to terminate TPS just as they did in 2017 and 2018. Their repeated, pointed failure to disclaim the very practice that gave rise to this lawsuit is fatal to their attempt to avoid a ruling on its legality.

*Third*, Defendants cannot satisfy their burden under *Friends of the Earth* to show with absolute clarity, that the harm cannot reasonably be expected to recur, 528 U.S. at 189, because the conditions they have created now are materially indistinguishable from those that existed in 2016— just before the terminations at issue in this case occurred. Now, as then, Defendants have issued a series of TPS extensions that considered intervening events. *See supra* 3-4. And now, as then, Defendants had no formal legal rule requiring (or even permitting) that such events be considered. Yet shortly after it issued those extensions in 2016, the agency adopted the Originating Conditions Rule and issued the terminations that are the subject of this case. Under these circumstances, there is no reason to believe that the same pattern of events could not recur again, leaving these same Plaintiffs to face the same exact conduct they challenged in this complaint as soon as March 2025.

Defendants also suggest that they need not satisfy their heavy burden, asserting that this standard "does not usually apply to government actions" because a change in government policy is presumed to arise from good faith. MTD at 14. Both the premise and the conclusion are wrong. Defendants cite no authority relieving government parties of the normal burden, and that assertion cannot be squared with numerous Supreme Court and Ninth Circuit cases that strictly apply the voluntary cessation doctrine against governments, including the federal government. *See, e.g.*, *West Virginia*, 142 S. Ct. at 2607; *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1041 (9th Cir. 2018) (against federal government). *See also Parents Involved*, *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 719 (2007); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288-89 (1982) (against local government); *McCormack v. Herzog*, 788 F.3d 1017, 1026 (9th Cir. 2015) (against state official), *abrogated on other grounds by Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022); *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013) (against local government).

Similarly, Defendants contend the voluntary cessation burden should be lighter here because

1   it implicitly entails a finding of bad faith. None of the Supreme Court or Ninth Circuit decisions

2   cited by either party required indicia of bad faith to defeat a voluntary cessation argument.

3   Defendants cite the district court decision in *M.W.* for this proposition, MTD at 15 (citing *M.W. by &*

4   *Through Hope W. v. U.S. Dep't of Army*, No. 16-CV-04051-LHK, 2017 WL 10456732, at *6 (N.D.

5   Cal. Dec. 15, 2017). *M.W.* is not good law on this point because the decision was appealed and the

6   Ninth Circuit declined to endorse that rule. *See Am. Diabetes Ass'n v. United States Dep't of the*

7   *Army*, 938 F.3d 1147, 1152 (9th Cir. 2019). In any event, *M.W.* is distinguishable because Defendants

8   there acknowledged the existence of an "old" policy and adopted a "new" policy that constrained

9   future decisions. Here, in contrast, Defendants cannot point to any policy constraining future

10  decisions, and maintain that challenges to such policies would be unreviewable. Plaintiffs continue

11  to press their claims precisely because Defendants still refuse to admit they adopted the Originating

12  Conditions Rule and still refuse to adopt a new policy rejecting it.[2]

13          Relatedly, Defendants argue the Court must treat the recent rescission decisions here as

14  "changes or repeals" that automatically moot disputes (or at least shift the burden onto Plaintiffs to

15  prove otherwise). MTD at 14. But, again, Defendants *have not repealed* the Originating Conditions

16  Rule. No formal pronouncement of any kind has disavowed it—not even an email. *Compare*

17  *Rosebrock v. Mathis*, 745 F.3d 963, 970-72 (9th Cir. 2014). Absent some such pronouncement, these

18  cases provide Defendants no support. In any event, courts *always* place the burden to prove

19  mootness based on voluntary cessation on the movant; there is no automatic rule that repealing a

20  regulation shifts that burden or otherwise establishes mootness. And the Ninth Circuit has held that

21  mootness requires a searching analysis and actual proof from the government "'that the change in its

_____

23  [2] While the Ninth Circuit occasionally makes reference to good faith in this context, *e.g.*, *Rosebrock
v. Mathis*, 745 F.3d 963, 974 (9th Cir. 2014); *Brach*, 38 F.4th at 12-13, it has *never* adopted a rule
holding that a showing of bad faith is *necessary* for the voluntary cessation exception to apply in a
case involving governmental action. Likewise, the Supreme Court has never held that a showing of
bad faith is *necessary* in its cases applying the voluntary cessation doctrine to governmental action.
*See West Virginia*, 142 S. Ct. 2587 (never mentioning good or bad faith); *Parents Involved*, 551 U.S.
701 (same). In any event, the intent at issue in this context would simply be the intent to avoid
judicial review. Even if this Court concludes it must find such intent and accord Defendants a
presumption against having that intent, that presumption is overcome by the extraordinary timing of
Defendants' rescission decisions. *See* Arulanantham Decl. at ¶¶ 8-13.

behavior is entrenched' or 'permanent.'" *See Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019) (citing *Fikre*, 904 F.3d at 1037); *see also McCormack*, 788 F.3d at 1025 (same); *Brach,* 38 F.4th at 12-13 ("[W]e probe the record to determine whether the government has met its burden, even as we grant it a presumption of good faith.").

The cases involving actual repeals of challenged policies are inapposite for the reasons set forth above; instead, the relevant Ninth Circuit mootness precedent concerns disputes about "executive action [] not governed by any clear or codified procedures." *McCormack*, 788 F. 3d at 1025. In such settings, the "ease with which" the government can "alter or abandon" a practice "counsels against a finding of mootness" because "a case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact" or reengage in challenged conduct. *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013); *see also Rosebrock*, 745 F.3d at 971-72 (identifying several other factors for assessing claims of voluntary cessation by government actors).

## II.    Haitian and Sudanese TPS Holders Continue to Suffer Injury from Defendants' Unlawful Conduct.

In addition to the voluntary cessation exception, Plaintiffs' complaint alleges Haitian and Sudanese TPS holders continue to suffer injury from the unlawful terminations they challenged: they were required to register as "initial applicants" due to the challenged TPS terminations, and therefore charged $50 fees to re-register under the new TPS designations for Haiti and Sudan. *See* FAC ¶¶ 56, 172-73 & Prayer for Relief ¶¶ 5-6. Defendants respond with evidence describing efforts to avoid double-charging Haitian and Sudanese TPS holders a $50 registration fee and to refund persons charged the $50 registration fee due to the rescinded determinations. MTD at 10-11; *see also* Orise Decl. These attempts are laudable, but the evidence presented does not establish mootness.

The TPS statute provides that DHS may require payment of a "reasonable fee," not to exceed $50, for the registration of new applicants subject to new TPS designations. 8 U.S.C. § 1254a(c)(1)(B), 8 U.S.C. § 1254a(c)(1)(A)(iv). USCIS may not charge the initial registration fee for the renewal of TPS for existing TPS holders. 8 C.F.R. § 244.17(a). Nonetheless, Defendants

1    admit that they charged thousands of Haitian and Sudanese TPS holders who held TPS prior to the

2    challenged terminations a $50 "initial registrant" fee to register under the 2021 and 2022 new TPS

3    designations for Haiti and Sudan. *See* Orise Decl. ¶ 15 ("Everyone who applied for Haiti TPS under

4    th[e August 2021] designation had to file as an initial registrant and pay the $50 registration fee,

5    regardless of whether an individual had TPS prior to the January 18, 2018 termination."); *id.* ¶ 18

6    ("Everyone who applied for Sudan TPS under th[e April 2022] designation had to file as an initial

7    registrant and pay the $50 registration fee, regardless of whether an individual had TPS prior to the

8    October 2017 termination.").

9           Defendants frame the improper fee as a collateral consequence of the challenged

10   terminations. MTD at 10-11. *See also Fritsch*, 899 F.3d at 792 (applying collateral consequences

11   exception to hold case not moot where court's ruling could make plaintiff less vulnerable to

12   timeliness bars in other litigation). It can also be seen as an ongoing injury. *See Powell*, 395 U.S. at

13   496 n.8 (holding petitioner's challenge to exclusion from the 90th Congress was not mooted by being

14   seated in the 91st Congress where he had ongoing interest in backpay). Either way, the improper fee

15   demonstrates that Haitian and Sudanese TPS holders maintain a concrete interest in the resolution of

16   this lawsuit. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016), *as revised* (Feb. 9, 2016)

17   ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the

18   case is not moot."). Plaintiffs' Amended Complaint seeks an order enjoining Defendants from

19   charging the $50 fee and requiring Defendants to take all steps necessary to return the fee to TPS

20   holders who were improperly charged. FAC ¶¶ 56, 172-73 & Prayer for Relief ¶¶ 5-6.

21          Defendants do not defend the fee, but claim the issue has been resolved because the most

22   recent Federal Register Notices redesignating Haiti and Sudan for TPS no longer require individuals

23   who retain their TPS under the *Ramos* injunction to pay a new registration fee and because DHS has

24   refunded more than 24,000 individuals who were improperly charged (and intends to issue refunds

25   for others). MTD at 10-11; Orise Decl. ¶ 20. Plaintiffs appreciate the steps Defendants have taken to

26   begin to address this issue. However, Defendants actions are insufficient to moot Plaintiffs' claims

27   for two reasons.

28

*First*, Defendants have not yet refunded all of the improper payments made by TPS holders. *See* MTD at 11 (stating that "any individual who is covered by the existing *Ramos* injunction and who paid another $50 registration fee either is among the more than 24,000 individuals who has already received a refund *or will be receiving a refund shortly*.") (emphasis added); Orise Decl. ¶ 20 ("USCIS efforts to identify and refund applicable payments continue."). Defendants' ongoing possession of TPS holders' money constitutes a continuing injury in fact. *Mission Prod. Holdings, Inc.*, 139 S. Ct. at 1660. Notably, Defendants do not disclose the number of TPS holders still owed a refund, do not explain what steps they will take to ensure that everyone harmed by the improper charge will in fact receive a refund, and admit that they require "a certified refund request" to issue a refund. Orise Decl. ¶ 20.

Second, Defendants admit they wrongfully deprived thousands of TPS holders of monies for years before beginning any refunds. Even "the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III." *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020). *See also Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) (holding "unauthorized withdrawals from [plaintiffs' bank] accounts cause a loss (the time value of money) even when banks later restore the principal"). Plaintiffs' request for an order directing Defendants "to take all steps necessary to return" the $50 encompasses a request for interest, but even if it did not, the possibility the court could issue an order requiring Defendants to refund the improper fee with interest is sufficient to keep this case from being moot. *See W. Dist. Council of Lumber Prod. & Indus. Workers v. Louisiana Pac. Corp.*, 892 F.2d 1412, 1416 (9th Cir. 1989) (holding appeal "not moot simply because [plaintiff] failed to ask for" one possible form of relief because "'every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in the party's pleadings*.'") (quoting Fed. R. Civ. P. 54(c)); *Mission Prod. Holdings, Inc.*, 139 S. Ct. at 1660 ("we may dismiss the case [as moot] only if it is impossible for a court to grant any effectual relief whatever") (internal quotation marks and citations removed).

"For better or worse, nothing so shows a continuing stake in a dispute's outcome as a

13

1    demand for dollars and cents. . . . If there is any chance of money changing hands, [the] suit remains

2    live." *Mission Prod. Holdings, Inc.*, 139 S. Ct. at 1660. Because Defendants, by their own

3    admission, still owe refunds to TPS holders who were improperly charged, and because Defendants

4    have not paid interest on long-delayed refunds, Plaintiffs' claim for reimbursement remains live.[3]

5    **III.    This Court's Jurisdictional Rulings Are Law of the Case.**

6           In a single sentence and accompanying footnote, Defendants purport to revive and preserve

7    for appeal their already-rejected argument that this Court lacks jurisdiction over Plaintiffs'

8    challenges. *See* MTD at 15 n.8. Defendants' attempt fails. By previously appealing from this Court's

9    jurisdictional rulings and then voluntarily withdrawing their appeal on the eve of en banc review,

10   Defendants fully exercised their right to challenge this Court's jurisdictional holdings and may not

11   do so again. This Court's jurisdictional ruling is now law of the case. *See, e.g.*, *United States v.*

12   *Alexander,* 106 F.3d 874 (9th Cir. 1997) (applying law of the case doctrine to case involving

13   withdrawn appeal).

14          "The law of the case doctrine . . . posits that 'when a court decides upon a rule of law, that

15   decision should continue to govern the same issues in subsequent stages in the same case.'" *United*

16   *States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 925 (9th Cir. 2009) (quoting *Arizona v. California*,

17   460 U.S. 605, 618 (1983)). Under the doctrine, "a court is ordinarily precluded from reexamining an

18   issue previously decided by the same court, or a higher court, in the same case." *Richardson v.*

19   *United States,* 841 F.2d 993, 996 (9th Cir. 1988). "[T]he doctrine serves to advance the 'principle

20   that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal

21   questions previously decided should be avoided.'" *United States v. Smith*, 389 F.3d 944, 948 (9th

22   Cir. 2004) (internal citation omitted).

23          That doctrine plainly precludes Defendants' attempt to resurrect their abandoned

24   jurisdictional arguments. Defendants moved to dismiss this action for lack of jurisdiction. Dkt. 20 at

25

26   _____

27   [3] If the Court believes Plaintiffs' allegations with respect to their payment of fees insufficient to
     defeat mootness based on this argument, they would respectfully request leave to amend the FAC to
     add allegations and, if necessary, an additional plaintiff to assert this claim.

28
                                                     14

20-27. After this Court rejected their argument, MTD Order at 15-24, and then granted the preliminary injunction, Defendants noticed an appeal that "incorporated therein" an appeal of the jurisdictional ruling. Notice of Appeal of Preliminary Injunction, Dkt. 129 at 2; Fed. R. App. P. 4(a). Defendants' opening brief before the Ninth Circuit then squarely challenged this Court's jurisdictional ruling. *See Ramos v. Wolf*, No. 18-16981 (9th Cir.), ECF No. 11 at 21-23. They won a split ruling on that issue before the Ninth Circuit panel, but the Panel majority's decision was vacated by the full court. Defendants then voluntarily withdrew their appeal. *Ramos v. Mayorkas*, No. 18-16981, 2023 WL 4363667 (9th Cir. June 29, 2023) (*en banc*). That history renders this Court's original jurisdictional ruling law of the case. Unless this Court were to revisit the question (which Defendants have not asked it to do), its ruling will remain law of the case.

Defendants may argue the doctrine does not apply because they withdrew their appeal, but in *United States v. Alexander,* the Ninth Circuit confirmed that the law-of-case doctrine applies to a situation where, as here, a party appeals from a ruling of the district court and then voluntarily withdraws its appeal. 106 F.3d at 875-76. There, the district court granted a defendant's motion to suppress his confession. *Id.* at 875. The "government filed a [n]otice of [a]ppeal from. . . [the] suppression order," and, thereafter, "withdrew its appeal." *Id.* Like here, the Ninth Circuit granted the government's motion for voluntary dismissal of the appeal. *Id.* When the case was returned to the district court, the government, recognizing that the law of the case doctrine applied, filed multiple motions requesting that the district court reconsider its suppression order, arguing that a recognized exception to the law of the case doctrine permitted the district court to depart from its previous order. *Id.* at 876. The district court granted the government's third motion for reconsideration of the suppression order, on the basis of "changed conditions," including a mistrial and evidence that called into the question the credibility of relevant witnesses, finding that it would be a "miscarriage of justice" to refuse to revisit the issue. *Id.* at 876-77.

But the Ninth Circuit reversed the district court's order, confirming that the district court's grant of the suppression order constituted law of the case, and concluding that none of the recognized exceptions to depart from the doctrine were satisfied. "Because there was no substantial

change of evidence, intervening change of law, other change of circumstances, showing of clear

error, or showing that a manifest injustice would otherwise result at the time the prosecution

submitted its third motion to reconsider the suppression order, the trial court abused its discretion in

granting the motion. . . [t]he district court's departure from the law of the case requires reversal." *Id.*

at 878.

*Alexander* is on point and controls here. Just as the government there was bound by the

district court's suppression order as law of the case after it noticed and voluntarily withdrew its

appeal from the order, *id.* at 876-78, so too are Defendants here bound by this Court's jurisdictional

rulings from which the government noticed and withdrew its appeal. As *Alexander* and subsequent

Ninth Circuit authority confirm, under the law of the case doctrine the government is free to move

*this* Court to reconsider its jurisdictional rulings, but it may not "preserve" an issue on which it

withdrew its appeal. *See id.*; *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d

882, 888 (9th Cir. 2001) ("[Law of the case] doctrine simply does not impinge upon a district court's

power to reconsider its own interlocutory order provided that the district court has not been divested

of jurisdiction over the order." (citation omitted)); *United States v. Smith*, 389 F.3d 944, 950 (9th

Cir. 2004) ("Because the district court retained jurisdiction when it reconsidered its prior grant of

Smith's motion to suppress, that reconsideration did not violate the law of the case doctrine").

Because Defendants have not moved for reconsideration (and there would be no basis for doing so),

no authority supports Defendants' assertion of a freestanding right to repeatedly appeal this Court's

jurisdictional rulings to the Ninth Circuit. To the contrary, this Court's rulings are law of the case.[4]

## V.   Claim IV is Not Barred by *Lyons*.

Defendants appear to argue Plaintiffs lack standing to challenge Defendants' interpretation of

the TPS statute to preclude considering intervening events (Claim IV) because, as of today, any

future TPS termination is "speculative." MTD at 16. This argument fails because standing is

---

[4] This is not the first time Defendants have pursued a procedurally dubious vehicle to attempt to resurrect their jurisdictional objections. *See* PI Order at 17 (rejecting the government's "implicit suggestion" for reconsideration).

1    assessed based on the facts as they existed "as of the commencement of suit." *Lujan v. Defs. of*

2    *Wildlife*, 504 U.S. 555, 570 n.5 (1992). Amending the complaint does not reset the clock for standing

3    purposes.[5] *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202 n.3 (Fed. Cir. 2005)

4    ("The initial standing of the original plaintiff is assessed at the time of the original complaint, even if

5    the complaint is later amended."); *Southern Utah Wilderness Alliance v. Palma*, 707 F.3d 1143,

6    1152-53 (10th Cir. 2013) (same); *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004) (same).

7         There can be no dispute that when the suit commenced in 2018 Plaintiffs faced a "strong

8    likelihood" of "irreparable injury" from imminent TPS terminations pursuant to which the

9    government conceded hundreds of thousands of TPS holders "[we]re likely to be subject to

10   removal." PI Order at 8, 14-15. The presence of imminent injury at the time this lawsuit was filed

11   distinguishes this case from *Lyons*, "in which the constitutionally objectionable practice ceased

12   altogether before the plaintiff filed his complaint." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51

13   (1991) (holding that plaintiffs who faced ongoing injury at the time their complaint was filed were

14   not required to "show that they are likely to be subjected again to the unconstitutional conduct"); *see*

15   *also Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3D 788, 804 (9th Cir. 2020) (holding

16   that plaintiff had standing where he "faced an ongoing and a prospective detention injury when he

17   commenced suit" despite post-filing action by Defendants that removed the risk of detention).

18   Defendants cite *Industrial Customers of Northwest Utilities v. Bonneville Power Admin.*, 388 F.

19   App'x 586, 588 (9th Cir. 2010), but that unpublished opinion is similarly distinguishable because the

20   plaintiffs did not face imminent injury at the time the lawsuit was filed. MTD at 17. *Industrial*

21   *Customers* also turned on statutory definitions of final agency action specific to the utility

22

23   [5] Even if amending to add a new claim did reset the clock (which it did not under *Schreiber Foods*
and similar cases), Claim IV is not a new claim. Plaintiffs' original complaint challenged

24   Defendants' "new, novel interpretation of the TPS statute that eschews consideration of any
intervening country conditions" as "contrary to law in violation of the APA." Dkt. 1 ¶¶ 4, 122. Claim

25   IV simply restates and clarifies that claim in light of disagreement in the now-vacated Ninth Circuit
panel opinion about whether Plaintiffs' original complaint clearly alleged a challenge to Defendants'

26   statutory interpretation. *Compare Ramos*, 975 F.3d at 895 (holding that Plaintiffs "d[id] not squarely
raise" a challenge to DHS's interpretation of the TPS statute) with *id*. at 913 (Christen, J, dissenting)

27   ("[The majority's] characterization of plaintiffs' APA claim cannot be squared with the complaint's
actual allegations, nor with the arguments plaintiffs advanced in the district court").

28

regulations at issue there. *See Industrial Customers*, 388 F. App'x at 588 (holding that challenge to rates was not ripe because rates had not yet been set or approved as required by statute).

Post-commencement factual developments, including the government's reconsideration of the TPS terminations challenged in this lawsuit, raise questions of mootness, not standing. *See Gonzalez*, 975 F.3d at 806 (explaining that "[p]ost-[c]ommencement" factual developments are subject to "a mootness inquiry"). For the reasons explained above, *supra*, Pt. I-III, this case is not moot. [6]

## VI.   Plaintiffs Should Be Granted Leave to Conduct Jurisdictional Discovery.

If this Court finds that Plaintiffs are required to submit additional evidence to avoid dismissal, the Court should exercise its broad discretion to allow Plaintiffs to conduct jurisdictional discovery. When a party requests discovery to respond to a motion to dismiss on jurisdictional grounds, the court ordinarily should grant discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation omitted). *See also Does v. Trump*, 328 F. Supp. 3d 1185, 1196 (W.D. Wash. 2018) (granting jurisdictional discovery in case involving motion to dismiss for mootness). A party seeking to conduct additional discovery needs to put forth sufficient facts to show that the evidence sought exists, but is not required to first make a prima facie showing that jurisdiction actually exists. *Does*, 328 F. Supp. 3d  at 1196. It would be counter intuitive to require a plaintiff, prior to conducting discovery, to meet the same burden that would be required to defeat a motion to dismiss *after* discovery. *Id.*

Here, jurisdictional discovery is warranted because additional facts regarding the challenged actions in this matter bear on this Court's consideration of mootness, and there is a reasonable probability that the outcome would be different if jurisdictional discovery were allowed. The parties obviously have a dispute as to whether the evidence Defendants have offered describing efforts to

---

[6] Plaintiffs do not object to dismissal of Claims V and VI in light of the fact that, subsequent to the filing of the Amended Complaint in this case, Defendants established new registration periods, have taken steps to publicize them, and plan to take further steps in that respect.

avoid double-charging Haitian and Sudanese TPS holders a $50 registration fee and to refund persons charged the $50 registration fee due to the rescinded determinations is sufficient to establish mootness. *See* MTD at 10-11. At a minimum, that dispute gives rise to controverted pertinent facts that should be discovered.

Plaintiffs have put forth sufficient facts to show that the evidence sought exists. Plaintiffs have alleged that, pursuant to DHS's instructions, TPS holders protected by this Court's preliminary injunction were required to pay a $50 fee to register for TPS under the new designations. FAC ¶ 173. These individuals would not have had to pay any fee if TPS for Haiti and Sudan had not been terminated during the Trump Administration, because they would have been able to apply for TPS as re-registrants, rather than initial applicants. *Id.* Defendants have only offered an affidavit describing efforts to avoid double-charging Haitian and Sudanese TPS holders a $50 registration fee and their intention to refund persons charged the $50 registration fee due to the rescinded determinations. However, additional discovery may further demonstrate that such efforts are insufficient, thus showing that Defendants' have not met their heavy burden to show it is absolutely clear that the challenged conduct could not reasonably be expected to recur.

If Plaintiffs are not allowed to obtain additional discovery bearing on the question of jurisdiction to address Defendants' motion to dismiss this matter as moot, Plaintiffs could face actual and substantial prejudice. Plaintiffs make two other arguments—concerning voluntary cessation and Defendants' failure to pay interest—that do not appear to involve contested facts. But if the Court rejects those, there is a reasonable probability that the outcome of Defendants' motion to dismiss would be different if Plaintiffs could put forth additional evidence regarding the unnecessary $50 fee TPS recipients from Haiti and Sudan had to pay. Without jurisdictional discovery, this matter may be dismissed as moot when, in fact, the additional evidence could have more clearly demonstrated that Plaintiff's claims remain live.

## CONCLUSION

For these reasons, the Court should deny Defendants' motion to dismiss.

Date:  October 5, 2023

Respectfully submitted,

SIDLEY AUSTIN LLP

*/s/ Sean A. Commons\**
Sean A. Commons
Alycia A. Degen
Nicole Ryan
Marisol Ramirez

UCLA CENTER FOR IMMIGRATION
LAW AND POLICY

*/s/ Ahilan T. Arulanantham*
Ahilan T. Arulanantham

ACLU OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean
William S. Freeman

UNEMPLOYED WORKERS UNITED

*/s/ Jessica Karp Bansal*
Jessica Karp Bansal

Keally Cieslik
ADVANCING JUSTICE – ASIAN LAW
CAUCUS

*/s/  Winifred Kao*
Winifred Kao

ACLU OF SOUTHERN CALIFORNIA

*/s/ Michael Kaufman*
Michael Kaufman

*Attorneys for Plaintiffs*

\* Filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.