BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

ZACHARY A. AVALLONE (D.C. Bar No. 1023361)
CHRISTOPHER M. LYNCH (DC Bar No. 1049152)
Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel:    (202) 514-2705
Fax:   (202) 616-8470
Email: zachary.a.avallone@usdoj.gov

Counsel for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTA RAMOS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | Case Nos. 3:18-cv-1554-EMC<br>           3:19-cv-00731-EMC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Judge:   Hon. Edward M. Chen<br>Date: December 21, 2023<br>Time: 1:30 p.m.<br>Place: Courtroom 5, 17th Floor |

# **TABLE OF CONTENTS**

Introduction ................................................................................................................... 1

Argument  ...................................................................................................................... 2

I. This Court Lacks Jurisdiction Over Plaintiffs' Challenges to Now-Inoperable TPS Terminations. ..................................................................................... 2

    A. The Voluntary Cessation Doctrine Does Not Apply .................................. 2

    B. No Plaintiff Suffers Any Collateral Consequences ..................................... 8

    C. Secretarial Decisions Regarding TPS Are Not Subject to Judicial Review ................................................................................................ 10

II. Challenges to Potential, Future Terminations Are Not Ripe. ............................. 11

III. Jurisdictional Discovery Is Unnecessary ................................................................ 11

Conclusion  ................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
 938 F.3d 1147 (9th Cir. 2019) ............................................................................. 4, 5, 7

*Angeles v. U.S. Airways, Inc.*,
 No. C 12-05860 CRB, 2013 WL 622032 (N.D. Cal. Feb. 19, 2013) ................... 10, 11

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*,
 941 F.3d 1195 (9th Cir. 2019) ............................................................................. 4, 5, 7

*Brach v. Newsom*,
 38 F.4th 6 (9th Cir. 2022),
 *cert. denied*, 143 S. Ct. 854, 215 L. Ed. 2d 87 (2023) .............................................. 3, 8, 9

*City of Los Angeles v. Barr*,
 929 F.3d 1163 (9th Cir. 2019) ....................................................................................... 3

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
 254 F.3d 882 (9th Cir. 2001) ....................................................................................... 10

*Courthouse News Serv. v. Planet*,
 No. CV 11-08083 SJO (FFMx), 2016 WL 4157210 (C.D. Cal. May 26, 2016) ........... 6

*Espinosa v. Dzurenda*,
 775 F. App'x 362 (9th Cir. 2019) .................................................................................. 9

*Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*,
 326 F.3d 924 (7th Cir. 2003) ......................................................................................... 5

*Fikre v. FBI*,
    904 F.3d 1033 (9th Cir. 2018) .................................................................................................. 6

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................................................................. 3

*In re Burrell*,
    415 F.3d 994 (9th Cir. 2005) .................................................................................................. 10

*Karras v. Gore*,
    No. 14CV2564 BEN (KSC), 2015 WL 74143 (S.D. Cal. Jan. 6, 2015) ................... 5, 6

*Langer v. Kiser*,
    57 F.4th 1085 (9th Cir. 2023) ................................................................................................ 11

*Lansdown v. Bayview Loan Servicing, LLC*,
    No. 22-CV-00763-TSH, 2023 WL 2934932 (N.D. Cal. Apr. 12, 2023) .............. 10, 11

*Meland v. Weber*,
    2 F.4th 838 (9th Cir. 2021) .................................................................................................... 11

*M.W. by & Through Hope W. v. U.S. Dep't of Army*,
    No. 16-CV-04051-LHK, 2017 WL 10456732 (N.D. Cal. Dec. 15, 2017),
    *aff'd on appeal sub nom.*, *Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
    938 F.3d 1147 (9th Cir. 2019). ........................................................................................ 4, 5

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No.1*,
    551 U.S. 701 (2007) .................................................................................................................. 3

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ................................................................................................ 12

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*,
   946 F.3d 1100 (9th Cir. 2020) ................................................................................................ 3

*Ramos v. Wolf*,
   975 F.3d 872 (9th Cir. 2020),
   *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023) ............................... 10

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) ......................................................................................... 5, 6, 7

*S. Delta Water Agency v. U.S., Dep't of Interior, Bureau of Reclamation*,
   767 F.2d 531 (9th Cir. 1985) .................................................................................................. 9

*Seven Words LLC v. Network Sols.*,
   260 F.3d 1089 (9th Cir. 2001) ................................................................................................ 9

*Smith v. Clark Cnty. Sch. Dist.*,
   727 F.3d 950 (9th Cir. 2013) ................................................................................................ 11

*West Virginia v. Environmental Protection Agency*, 597 U.S. ---, 142 S. Ct. 2587 (2022),
   *remanded sub nom.*, *Am. Lung Ass'n v. EPA*,
   No. 19-1140, 2022 WL 151630000 (Oct. 27, 2022) ............................................................... 3

*Williams v. Boeing Co.*,
   517 F.3d 1120 (9th Cir. 2008) .............................................................................................. 12

**STATUTES**

5 U.S.C. § 702 ................................................................................................................................ 9

8 U.S.C. § 1254a ......................................................................................................................... 10

# INTRODUCTION

Plaintiffs do not dispute that they face no current harm caused by Defendants' actions. After the Department of Homeland Security (DHS) designated Haiti and Sudan for Temporary Protected Status (TPS) and rescinded other TPS terminations, the challenged agency actions—termination of TPS designations for Sudan, Haiti, Nicaragua, El Salvador, Honduras, and Nepal—are no longer operative. The currently in-force agency decisions extend TPS designations for the maximum amount of time permitted under law, and there is no further relief for this Court to provide. This case is moot.

Plaintiffs retort that even if the challenged terminations are now inoperable, their claims are not moot because they also challenge a legal theory of how to interpret the TPS Statute— what Plaintiffs call the "Originating Conditions Rule"—that allegedly was used to justify those now-inoperable TPS terminations. But there is no dispute that the *current* agency decisions apply the TPS statute consistent with Plaintiffs' view, as Plaintiffs admit that the "most recent TPS decisions . . . do not rely on the Originating Conditions Rule." Pls.' Opp'n to Defs.' Mot. to Dismiss at 1, ECF No. 210 ("Opp'n"). By Plaintiffs' own admission, there is nothing in the existing policies for Plaintiffs to challenge.

Instead, Plaintiffs seek an advisory opinion about the alleged *reasoning motivating those no-longer operative policies* by rebranding that alleged reasoning a "policy." But plaintiffs cite no case in which a court issued such an advisory opinion (much less did so correctly), or where a court found that the voluntary cessation exception applied where the only remaining challenge was to the alleged motivations and rationales of policymakers who are no longer in office concerning policies that are no longer in effect.

No exception to mootness applies. Plaintiffs do not argue that the capable of repetition yet evading review exception to mootness applies in this case. And the voluntary cessation exception also does not apply because Defendants have issued new policies, rescinded the prior decisions, and extended TPS protections for the maximum duration permitted under the law, all under a legal framework that Plaintiffs agree is proper. When a government agency officially rescinds a law or policy, courts presume that the government is acting in good faith

and that the rescinded law or policy will not reasonably be reinstated. In these circumstances, the burden to show the likelihood of reenactment of the now-rescinded, challenged policies shifts to the plaintiff to demonstrate that there is a reasonable expectation of reenactment. Plaintiffs have failed to meet that burden.

Plaintiffs further argue that claims involving Haiti and Sudan are not moot because the Department of Homeland Security (DHS) previously charged $50 for TPS recipients from those countries to register again under the new TPS designations. Opp'n at 1. But no Plaintiff alleges that they actually paid $50, and in their opposition brief, Plaintiffs do not identify a single person who sustained this alleged injury—indeed, Plaintiffs admit the current parties lack standing to assert this claim and ask the court for leave to "add allegations" and "an additional plaintiff" who may have actually paid to re-register. Opp'n at 14, n.3. But no leave should be granted because it would be futile. No Plaintiff will have to pay a $50 registration fee because DHS is no longer charging such fees. And anyone covered by the preliminary injunction who already submitted $50 has been reimbursed (or soon will be). Since no Plaintiff will have to pay a registration fee, Plaintiffs have no standing to challenge this now-rescinded, refunded fee. No jurisdictional discovery is needed on that point either because Plaintiffs themselves can determine whether they paid the fee and, based on their own allegations, they have failed to support their burden to demonstrate standing as a matter of law.

## ARGUMENT

**I.  This Court Lacks Jurisdiction Over Plaintiffs' Challenges to Now-Inoperable TPS Terminations.**

There is no dispute that Plaintiffs' challenges to the now-inoperable TPS terminations are moot unless some exception applies. Plaintiffs argue two apply—voluntary cessation and collateral consequences—but neither overcome mootness in this case.

A.  <u>The Voluntary Cessation Doctrine Does Not Apply.</u>

The "voluntary cessation" exception to the mootness doctrine does not apply where a federal agency has formally rescinded a challenged policy and there is no evidence that it has plans to reinstate the rescinded policy and no evidence that it is likely to do so.

2

In their brief, Plaintiffs cite no case where a court found the voluntary cessation exception applicable after the federal government rescinded a challenged policy. DHS's new decisions rescinded and replaced the challenged TPS terminations, and, as plaintiffs concede, adopted an approach that comports with plaintiffs' understanding of the law and their view of longstanding agency practice. Those facts make this case very different than the cases cited by Plaintiffs, such as *West Virginia v. Environmental Protection Agency*, where the Supreme Court found that an agency's mere promise not to enforce an existing, in-force policy was not enough to moot a case challenging that policy. 597 U.S. ---, 142 S. Ct. 2587, 2607 (2022), *remanded sub nom.*, *Am. Lung Ass'n v. EPA*, No. 19-1140, 2022 WL 151630000 (Oct. 27, 2022); *see also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007) (holding that case was not moot when there was no change in policy, just a statement that Defendant no longer used the challenged practice); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (mootness turned on factual question of whether private party was complying with a permit); *cf. Brach v. Newsom*, 38 F.4th 6, 13 (9th Cir. 2022), *cert. denied,* 143 S. Ct. 854, 215 L. Ed. 2d 87 (2023) (holding that case was moot and voluntary cessation exception did not apply to challenges to restrictions on in-school learning during COVID-19 pandemic).[1]

Plaintiffs' opposition brief also misstates the relevant burdens of proof for the voluntary cessation exception after a government rescinds a challenged policy. Courts in the Ninth Circuit apply a burden-shifting approach when legislative and regulatory changes moot a case. The Ninth Circuit has explained that "legislative actions should not be treated the same as voluntary cessation of challenged acts by a private party, and that [courts] should assume that a legislative body is acting in good faith in repealing or amending a challenged legislative provision, or in allowing it to expire." *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019). Courts "should presume that the repeal, amendment, or

---

[1] In two of Plaintiffs' cited cases, *City of Los Angeles v. Barr*, 929 F.3d 1163, 1173 (9th Cir. 2019), and *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020), the court does not apply the voluntary cessation exception at all, and plaintiffs cite discussion relating to a different exception to the mootness doctrine—the "capable of repetition, yet evading review" exception—which Plaintiffs do not contend applies here.

expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id.* In such cases, the burden shifts to the plaintiff to show "that there is a reasonable expectation of reenactment" of the challenged policy and "a determination that such a reasonable expectation exists must be founded in the record . . . rather than on speculation alone." *Id.*

Courts in this Circuit have applied that same standard to regulatory changes, explaining that although the party asserting mootness bears "the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again," the "government satisfies this burden when it changes or repeals the regulation at issue." *M.W. by & Through Hope W. v. U.S. Dep't of Army*, No. 16-CV-04051-LHK, 2017 WL 10456732, at *5 (N.D. Cal. Dec. 15, 2017) (citation omitted), *aff'd on appeal sub nom.*, *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147 (9th Cir. 2019). Under the *M.W.*/*Glazing Health* framework, rescinding and replacing the prior terminations through published decisions in the Federal Register is enough, standing alone, to show this case is truly moot.

Plaintiffs argue that "*M.W.* is not good law . . . because the decision was appealed." Opp'n at 10. This is incorrect. The Court of Appeals *affirmed* the district court's conclusion that voluntary cessation did not apply and did not overturn the district court's application of the burden-shifting approach. *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019). Instead, the Court of Appeals explained that the case would still be moot even under the Ninth Circuit's *Rosebrock* standard which applies to more informal changes in policy. *M.W.*, 2017 WL 10456732, at *6 (holding that the "*Rosebrock* test does not apply" to changes in regulation) *aff'd on appeal sub nom., Am. Diabetes Ass'n*, 938 F.3d at 1152 (reserving decision on whether change in regulation alone is enough to show mootness and instead finding that the case was moot even under the factors set out in *Rosebrock*). *M.W.* is good law, and the approach taken by Judge Koh in that case is consistent with how the Ninth Circuit approaches legislative and regulatory rescissions. When a government officially changes its policy—in this case, by publishing its rescission in the Federal Register—the burden shifts to *Plaintiffs* to show

4

a reasonable expectation that the now-rescinded, challenged policy will be reenacted. *Id.* Plaintiffs must provide something more than just speculation that the rescinded *could* be re-implemented. *Glazing Health*, 941 F.3d at 1199.

Defendants have satisfied their burden under the *M.W./Glazing Health* framework by rescinding the challenged policies. The burden then shifts to Plaintiffs, and they have not met it: They provide no evidence that the challenged policies are likely to be reinstated. Indeed, Plaintiffs' claims are premised on the assertion that the relevant TPS terminations were the product of an unprecedented and idiosyncratic departure from longstanding agency practice (to which the agency has now returned). Under these circumstances, the voluntary cessation exception does not apply, and the Court should dismiss this case as moot.[2]

But the voluntary cessation exception would not apply even under the lower standard set forth in *Rosebrock v. Mathis,* 745 F.3d 963 (9th Cir. 2014), even assuming that standard applied here (which it does not). In *Rosebrock*, the Ninth Circuit set out factors to consider whether the voluntary cessation exception applies when (unlike here) the "policy change" rendering a case moot is "not reflected in statutory changes or even in changes in ordinances or regulations." *Id.* at 971. The *Rosebrock* factors are used to review changes in government policy based on informal actions, like an internal email, not "changes in ordinances or regulations" like the ones at issue in this case. *See id.* at 971; *see also Karras v. Gore*, No. 14CV2564 BEN (KSC), 2015 WL 74143, at *1 (S.D. Cal. Jan. 6, 2015) (applying *Rosebrock* factors to a Sheriff's department's closure of a Facebook page); *Fikre v. FBI*, 904 F.3d 1033, 1040 (9th Cir.

---

[2] "The only exception" to the burden-shifting under the *M.W./Glazing Health* framework "is when evidence of bad faith indicates that the challenged conduct will, in fact, occur again." *M.W.*, 2017 WL 10456732, at *6 (citing *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) ("Only in cases where there is evidence that the repeal was not genuine has the [United Sates Supreme] Court refused to hold the case moot.")). Courts presume that agencies work in good faith when rescinding policies. *See Glazing Health*, 941 F.3d at 1199. Plaintiffs' argument that the timing of some of the TPS termination rescissions shows bad faith to avoid judicial review is an unfounded accusation. Moreover, Plaintiffs misstate the relevant question—the relevant inquiry is whether there is bad faith indicating "that the challenged conduct will, in fact, occur again." *M.W.*, 2017 WL 10456732, at *6. And on that score, there is no evidence of bad faith or any evidence DHS plans to terminate TPS designations under the challenged legal framework—indeed, DHS has extended the TPS designation for each country for the maximum time period allowed under the statute.

5

2018) (applying *Rosebrock* factors to an individual's removal from a no-fly list); *Courthouse News Serv. v. Planet*, No. CV 11-08083 SJO (FFMx), 2016 WL 4157210, at *14–15 (C.D. Cal. May 26, 2016) (applying *Rosebrock* factors to the document scanning policy of the Ventura County Superior Court). The *Rosebrock* factors do not apply here because the rescissions of prior policies were published decisions in the Federal Register, not something informal like an internal email or closing a Facebook page. *Cf. Rosebrock*, 745 F.3d at 966; *Karras*, 2015 WL 74143, at *1. The burden shifting described in *M.W./Glazing Health* applies to a case like this.

DHS's rescission and replacement of the prior TPS terminations would not fall within the voluntary cessation exception even applying the (inapplicable) *Rosebrock* factors. First, "the policy change is evidenced by language that is 'broad in scope and unequivocal in tone'" since DHS has specifically rescinded the prior determinations and explained why they were incorrect. *Rosebrock*, 745 F.3d at 972 (citation omitted). Second, the New Policy "addresses all of the objectionable measures that [the Government] officials took against the plaintiffs" under the Old Policy because TPS designations for all six countries have been renewed or newly designated. *Id.* (citation omitted). Plaintiffs and their family members are now covered by their respective TPS designations. The third factor is whether "the case in question was the catalyst for the agency's adoption of the new policy," and if so, the factor supports finding the case moot and the exception does not apply. *Id.* (citation omitted). Although this case was not "the catalyst for the [government's] adoption of the new policy," the Federal Register notices explicitly reference this case and the impacts it has had on TPS policy. *Id.* (citation omitted). The fourth factor is whether the New "[P]olicy has been in place for a [relatively] long time." *Id.* (citation omitted) (finding two years sufficient). Here, Haiti was designated in November 2021 (nearly two years), Sudan was designated in April 2022, and the remaining countries were extended in June 2023. Since TPS designations can at most be 18 months long, these particular policies have been in place for a relatively long time in these specific circumstances. Moreover, the recent decisions show that the new policy will be in place for as long as the statute allows—DHS has committed to the statutory maximum duration. The fifth and final factor is whether, since the New Policy's implementation, defendants "have not engaged in conduct similar to

that challenged by the plaintiff." *Id.* (citation omitted). That factor is satisfied here. In short, even if the *Rosebrock* factors apply in this situation, they support a finding that the Defendants' challenged conduct cannot reasonably be expected to start up again.

Plaintiffs' other arguments against mootness fall short. There is no reasonable expectation the challenged conduct will recur. Plaintiffs argue that there was some "new rule" that allegedly prohibited the Secretary from considering intervening country conditions when TPS was previously terminated. But the recent TPS decisions show that even if there was such a policy, no such policy exists today. By plaintiffs' account, the prior Administration's allegedly unlawful interpretation of the TPS statute was "new," "novel," and at odds with DHS's "long-established practice," a practice that was used by "Republican and Democratic Administrations alike." Class Action Am. Compl. ¶¶ 61-63, ECF No. 204 ("Am. Compl."). Plaintiffs themselves assert that the prior Administration's alleged "legally erroneous interpretation" of the TPS statute is not consistent with the way DHS has applied the TPS statute in the most recent notices, but something that was "previously adopted." *Id.* ¶ 243. Plaintiffs concede that the current Administration has, in their view, returned to the alleged "longstanding interpretation of the TPS statute," *id.* ¶ 11, from which the prior Administration purportedly departed. Under Plaintiffs' own allegations, there is no reasonable expectation that the challenged conduct will recur. Couple these facts with the presumption of good faith, and Defendants certainly satisfy any burden to show that the challenged conduct will not reasonably occur again.[3]

Plaintiffs also argue that this case is not moot because the Secretary of Homeland Security retains the discretion to terminate TPS designations in the future, and without a court order, nothing prevents the Secretary from relying on the same legal theory as the challenged

---

[3] Plaintiffs argue that the *only* way this case can be moot is if the government "unequivocally renounce[s]" the prior policy. Opp'n at 7 (citation omitted). But no case requires the government to make such a statement after changing a regulation or law. *Glazing Health*, 941 F.3d at 1199 (courts presume rescinded law or policy will not be reinstated "unless there is a reasonable expectation" that it will actually be reenacted). While some courts have *considered* whether a policy was renounced, those courts considered it as one of many factors. *See Am. Diabetes Ass'n*, 938 F.3d at 1152. Moreover, Plaintiffs' proposed mootness standard would put Defendants in an impossible catch-22—forcing it to renounce a policy that it does not agree ever existed. The law does not require such a statement for this case to be moot.

7

TPS terminations. Opp'n at 10. But this same type of argument was squarely rejected by the Ninth Circuit, sitting *en banc* in *Brach*, explaining that "the fact the Governor has the power to issue executive orders cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot." *Brach*, 38 F.4th at 14 (citation omitted). In short, unfounded speculation about the basic possibility of future harm cannot defeat mootness because "[r]easonable expectation means something more than a mere physical or theoretical possibility." *Id.* (citation omitted). The presumption of good faith, Defendants' clear rescission of the challenged policies, and Plaintiffs' admissions that the operative TPS decisions do not rely on the challenged legal theory—means that this case does not fall within the voluntary cessation exception.

      B.  <u>No Plaintiff Suffers Any Collateral Consequences.</u>

Plaintiffs also argue that collateral consequences exception to mootness applies, but there are no allegations that any Plaintiff in this case suffers any collateral legal consequences.

Plaintiffs do not dispute that, pursuant to the Secretary's new decisions, all Plaintiffs currently receive all the benefits and protections that a TPS designation provides and will continue to do so for the maximum amount of time permitted by law. Plaintiffs argue instead that TPS recipients from two of the relevant countries that were covered by the prior TPS designation (Sudan and Haiti) continue to suffer consequences from the prior terminations because they allege that DHS charged $50 to register under the TPS designations for those countries for some period of time after the designations. Am. Compl. ¶¶ 7, 14, 172–173. Plaintiffs acknowledge, however, that in the most recent Federal Register Notices, DHS no longer requires TPS recipients from Haiti and Sudan who are covered by this Court's preliminary injunction to pay a registration fee and that those who previously paid have been refunded or will be soon. Opp'n at 12. Plaintiffs argue that despite the change in policy and the ongoing refunds, TPS recipients from Haiti and Sudan still suffer collateral consequences because not all payments have been refunded and those who received refunds might also be entitled to interest. *Id.* at 13–14. But Plaintiffs lack standing to bring those claims because no

party in *this lawsuit* alleges that they ever paid the $50 fee at issue.[4] Whether cast as a continuing harm or collateral legal consequence, *id.* at 12, Plaintiffs do not allege that they are affected by the now-rescinded and already refunded $50 re-registration fee and thus have no standing to challenge it.

Moreover, the latest amended complaint seeks only declaratory and injunctive relief, not damages or payment of interest. A general prayer for relief is not "an implicit prayer for damages." *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1097 (9th Cir. 2001). "The Supreme Court has admonished [courts] to be wary of late-in-the-day damages claims," and nearly every circuit, including the Ninth, have held that a moot case seeking injunctive and declaratory relief cannot be revived by a damages claim raised for the first time in briefing challenging mootness. *Id.* 1097–98. Even if Plaintiff had sought damages in its amended complaint, those claims would be barred by sovereign immunity because the United States, including its officials acting in an official capacity, "is immune from suit except in instances where it consents to being sued." *See S. Delta Water Agency v. U.S., Dep't of Interior, Bureau of Reclamation*, 767 F.2d 531, 536 (9th Cir. 1985); *Espinosa v. Dzurenda*, 775 F. App'x 362, 363 n.2 (9th Cir. 2019) (rejecting claim that a complaint seeking nominal damages was enough to overcome mootness in claim against a government official because "failing on appeal to name any of the Defendants in their personal capacities, Plaintiffs have waived this issue").

The only waiver of sovereign immunity identified by Plaintiffs is the Administrative Procedure Act, which provides a limited waiver for claims "seeking relief other than money damages." 5 U.S.C. § 702. Thus, the only relief plaintiffs could even theoretically obtain regarding registration fees is an injunction requiring DHS to refrain from collecting the fee in the future and perhaps an order to refund any fees that have been paid. DHS has already

---

[4] No Plaintiff from Sudan alleges that they paid a $50 registration fee. *See* Am. Compl. ¶¶ 32–34 (Plaintiffs Mazin Ahmed and Hiwaida Elarabi from Sudan are now lawful permanent residents, Plaintiff Salma Ahmed alleges to still be TPS recipient; none allege that they paid a $50 re-registration fee). No Plaintiff from Haiti alleges that they paid a $50 registration fee. Am. Compl. ¶ 27–30 (Plaintiff Wilna Destin, a TPS holder from Haiti, does not allege she paid a $50 fee, Plaintiff Sherika Blanc, a TPS holder from Haiti, does not allege that she paid a $50 fee, Plaintiff Hnaida Cenemat is a U.S. citizen with relatives who are TPS holders from Haiti, and Plaintiff Rilya Salary is a U.S. citizen with relatives who are TPS holders from Haiti).

taken those actions, underscoring that there is no further meaningful relief that this Court could grant. In short, the no-longer charged—and since refunded—fee cannot overcome mootness.

Plaintiffs also argued in their complaint that they faced collateral legal consequences in the form of potential "future illegal terminations." Am. Compl. ¶ 185. In their motion to dismiss, Defendants explained that "[t]he speculative contingency that such issues might arise afford[s] no basis for our passing on the substantive issues" under a theory of continuing legal harm. Defs.' Notice of Mot. & Mot. to Dismiss; Mem. in Supp. of Their Mot. to Dismiss at 11, ECF No. 206 ("Mot. to Dismiss") (quoting *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005)). Plaintiffs did not respond to that argument in their opposition brief, and thus concede the point. *Lansdown v. Bayview Loan Servicing, LLC*, No. 22-CV-00763-TSH, 2023 WL 2934932, at *4 (N.D. Cal. Apr. 12, 2023); *Angeles v. U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) (collecting cases).

### C. Secretarial Decisions Regarding TPS Are Not Subject to Judicial Review.

For the reasons set forth previously and in the Court of Appeals' decision in this case, *Ramos v. Wolf*, 975 F.3d 872, 899 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023), Defendants urge the Court reconsider its prior interim jurisdictional holding, and instead conclude that this Court lacks jurisdiction because statute precludes "judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). Plaintiffs concede that Defendants may request reconsideration and concede that this Court may reconsider its ruling. Opp'n at 16 ("[T]he government is free to move *this* court to reconsider its jurisdictional rulings."); *see City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind,* or modify an interlocutory order for cause seen by it to be sufficient." (citation omitted)); *see also Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). Moreover, the fact that Defendants withdrew their appeal of the preliminary injunction does not waive any argument.

1  "Appeals of interlocutory orders are permissive, not mandatory . . . [and the Ninth Circuit]
2  ha[s] never held that failure to appeal an interlocutory order barred raising the decided issue
3  after entry of a final judgment." *Langer v. Kiser*, 57 F.4th 1085, 1105 (9th Cir. 2023) (citations
4  omitted). The Court remains free to reconsider its jurisdictional rulings in this case, although
5  this case is now moot regardless of whether it does so, *see supra*, I.

## II. Challenges to Potential, Future Terminations Are Not Ripe.

Plaintiffs lack standing to challenge any allegedly illegal future termination of a TPS designation, and any claim challenging such an imagined termination is not ripe. Plaintiffs do not contest that point. *Lansdown*, 2023 WL 2934932, at *4 (failure to respond is concession); *Angeles*, 2013 WL 622032, at *4 (collecting cases re same). Plaintiffs instead argue that the court should analyze their claims under the mootness standard. Opp'n at 16–18. Whether reviewed in the context of standing to challenge hypothetical future terminations, or reviewed for whether the challenge to now-rescinded terminations are moot, *supra*, I, this Court lacks jurisdiction.

## III. Jurisdictional Discovery Is Unnecessary

Finally, Plaintiffs claim that they are entitled to jurisdictional discovery regarding the scope of Defendants' efforts to refund the $50 registration fee to TPS holders from Haiti and Sudan to avoid dismissal. There is no dispute that Plaintiffs are not required to pay the challenged fee. As a result, no Plaintiff has met his or her burden to demonstrate standing to assert any claim seeking declaratory or injunctive relief from the now-rescinded fee. *See supra* I.B.; *see, e.g.*, *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021) ("The party invoking federal jurisdiction bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.") (citation omitted). Moreover, as explained above, no Plaintiff alleges that they *ever* paid the $50 registration under the designations about which Plaintiffs complain: Only three Plaintiffs from Haiti and Sudan even allege that they are current TPS recipients (the others having adjusted their status), and none alleges that they paid the fee in the first place or that

they paid the fee but have not been refunded. *See* Am. Compl. ¶¶ 27-30, 32-34; *supra* 9, n.4.

In these circumstances, the discovery identified by Plaintiffs cannot cure the jurisdictional defects regarding Plaintiffs' claims. Where no named plaintiff has established the requisite injury, the putative injury of unnamed putative class members cannot support federal jurisdiction. *See Williams v. Boeing Co.*, 517 F.3d 1120, 1127 (9th Cir. 2008) ("At least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class." (citation omitted)). There is thus no basis for jurisdictional discovery here. *See, e.g., Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("additional [jurisdictional] discovery . . . would not be helpful" and was properly denied where no court had jurisdiction "[a]s a matter of law," regardless of the outcome of that discovery).

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Amended Complaint.

DATED: October 19, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM BOWEN
Assistant Branch Directors

*/s/ Zachary A. Avallone*
ZACHARY A. AVALLONE
    (DC Bar No. 1023361)
CHRISTOPHER M. LYNCH
    (DC Bar No. 1049152)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel:   (202) 514-2705
Fax:   (202) 616-8470
Email: zachary.a.avallone@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On October 19, 2023, I served the foregoing document on all other parties using the Court's ECF system.

*/s/ Zachary A. Avallone*
Zachary A. Avallone
Counsel for Defendants