BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

CHRISTOPHER M. LYNCH (DC Bar No. 1049152)
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel:  (202) 353-4537
Fax:  (202) 616-8470
Email: christopher.m.lynch@usdoj.gov

Counsel for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTA RAMOS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | Case Nos. 3:18-cv-1554-EMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>Judge:  Hon. Edward M. Chen<br>Date: August 14, 2024<br>Time: 9:00 a.m.<br>Place: Courtroom 5, 17th Floor |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 1

LEGAL STANDARD ................................................................................................ 3

ARGUMENT ............................................................................................................. 4

I.      Plaintiffs Are Not A "Prevailing Party," So They
Are Not Entitled To Attorneys' Fees ........................................................... 4

II.     To the Extent There is Any DOUBT Regarding Plaintiffs' Non-Prevailing-
Party Status, The Court Should Reserve Decision Pending The Supreme
Court's Resolution of *Lackey v. Stinnie* ..................................................... 7

III.    Because Defendants' Position Was Substantially Justified, Plaintiffs Are Not
Entitled to Fees ............................................................................................. 9

IV.    Plaintiffs' Fees Demand Is Unreasonable .................................................. 13

      A.      Plaintiffs Are Not Entitled To "Expert Rates" Under EAJA ................... 14

      B.      Plaintiffs' Claimed Hours Are Unreasonable ................................... 18

            i.      Plaintiffs Are Not Entitled to Fees or Costs for the *Bhattarai* Case
and for Any Work Related to the Terminations of TPS for Nepal
or Honduras ............................................................................ 18

            ii.     Plaintiffs' Attempt to Litigate This Case After June 2023 Was
Unreasonable .......................................................................... 20

            iii.   Plaintiffs' Claimed Hours Are Excessive and Unreasonable ........ 21

            iv.   The Billing Records for Attorneys Lopez-Franco and Langarica
are Unintelligible and Do Not Support an Award of Fees ............ 22

      C.      Any Fees Award Should Be No Greater than $818,682.94 ..................... 22

CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Atkins v. Apfel,*
   154 F.3d 986 (9th Cir. 1998) ................................................................ 20, 21

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum., Res.,*
   532 U.S. 598 (2001) .............................................................................. *passim*

*Budge v. Saul,*
   No. 2:19-CV-01804-NJK, 2021 WL 148993 (D. Nev. Jan. 15, 2021) ......................... 4

*Dep't of Com. v. New York,*
   139 S. Ct. 2551 (2019) ...................................................................................... 10

*Farrar v. Hobby,*
   506 U.S. 103 (1992) ............................................................................................ 6

*Gutierrez v. Barnhart,*
   274 F.3d 1255 (9th Cir. 2001) ................................................................. 9, 10, 12

*Higher Taste, Inc. v. City of Tacoma,*
   717 F.3d 712 (9th Cir. 2013) ........................................................................ *passim*

*Hill v. Comm'r of Soc. Sec.,*
   428 F. Supp. 3d 253 (E.D. Cal. 2019) ................................................................... 3

*Kali v. Bowen,*
   854 F.2d 329 (9th Cir. 1988) .............................................................................. 10

*Korab v. Wong,*
   No. CIV. 10-00483 JMS-KSC, 2015 WL 4394024 (D. Haw. July 15, 2015) ........... 5, 6

*Lewis v. Barnhart,*
   281 F.3d 1081 (9th Cir. 2002) ............................................................................ 12

*Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agency,*
   29 F.4th 509 (9th Cir. 2022) .............................................................................. 14

*Ocean Beauty Seafoods LLC v. Pac. Seafood Grp. Acquisition Co.*,
No. C14-1072RSM, 2015 WL 4600464 (W.D. Wash. July 29, 2015) ...................... 5, 6

*Pottgen v. Missouri State High Sch. Activities Ass'n*,
103 F.3d 720 (8th Cir. 1997) ................................................................. 5

*Ramos v. Nielsen*,
336 F. Supp. 3d 1075 (N.D. Cal. 2018) ................................................ 1, 11, 19

*Ramos v. Wolf*,
975 F.3d 872 (9th Cir. 2020) ......................................................... *passim*

*Saget v. Trump*,
375 F. Supp. 3d 280 (E.D.N.Y. 2019) ...................................................... 12

*Thangaraja v. Gonzales*,
428 F.3d 870 (9th Cir. 2005) .............................................................. 4

**Statutes**

Temporary Protected Status,
8 U.S.C. § 1254a ......................................................................... 10

Costs And Fees,
28 U.S.C. § 2412 .................................................................. 3, 4, 9, 14

Proceedings In Vindication Of Civil Rights,
42 U.S.C. § 1988 .......................................................................... 8

**Regulations**

Designation of Haiti for Temporary Protected Status,
86 Fed. Reg. 41863 (Aug. 3, 2021) ....................................................... 11

Designation of Sudan for Temporary Protected Status,
87 Fed. Reg. 23202 (Apr. 19, 2022) ...................................................... 12

Extension and Redesignation of Haiti for Temporary Protected Status,
88 Fed. Reg. 5022 (Jan. 26, 2023) ....................................................... 11

Extension and Redesignation of Sudan for Temporary Protected Status,
88 Fed. Reg. 56864 (Aug. 21, 2023) ...................................................... 12

Extension and Redesignation of Haiti for Temporary Protected Status,
89 Fed. Reg. 54484 (July 1, 2024). ....................................................................11

**Other Authorities**

Mot. for Extension of Time, *Lackey v. Stinnie*, No. 23-621 (Apr. 24, 2024),
https://perma.cc/P62T-GWK4. ....................................................................9

Pet. for Writ of Cert., *Lackey v. Stinnie*, No. 23-621 (Nov. 20, 2023),
https://perma.cc/TYH3-ALNR. ....................................................................8

U.S. Courts for the Ninth Circuit, Statutory Maximum Rates Under the Equal Access
to Justice Act, https://perma.cc/W79N-C4YV ............................................4

# INTRODUCTION

Plaintiffs seek more than $3.6 million in taxpayer money as attorneys' fees based on the contention that a preliminary injunction awarded in their favor merits that was subsequently reversed on appeal renders them "prevailing parties." Plaintiffs cite no case awarding fees in this posture, and the case law does not support it. Moreover, even if current Ninth Circuit law compelled such a conclusion (and it does not), the Supreme Court is currently considering whether a preliminary injunction alone is sufficient to convey "prevailing party" status, with argument expected in the Court's October 2024 term. *See Lackey v. Stinnie*, No. 23-621 (U.S.) (cert. granted Apr. 22, 2024). To the extent the Court has any question of whether Plaintiffs here qualify for fees, it should reserve decision on Plaintiffs' motion until the Supreme Court has rendered its decision in *Lackey*.

In addition, Plaintiffs' motion must be denied because Defendants' position is unquestionably "substantially justified," as a majority of the Ninth Circuit panel hearing the case found in Defendants' favor and vacated the preliminary injunction. Finally, Plaintiffs' extraordinary fee demand is unreasonable and Plaintiffs should not be awarded fees at rates above the "presumptive ceiling" of the Equal Access to Justice Act's statutory rate.

The Court should deny Plaintiff's Motion for Attorneys' Fees or, at a minimum, reserve decision pending the Supreme Court's decision of threshold questions that could be dispositive of this motion.

# FACTUAL BACKGROUND

Plaintiffs filed this case in March 2018, challenging the cancellation of TPS status for four countries. *See* Compl. ¶ 7, ECF No. 1. After ordering Defendants to produce a significant volume of extra-record discovery, this Court enjoined the terminations on October 3, 2018, almost six months later. *See Ramos v. Nielsen*, 336 F. Supp. 3d 1075 (N.D. Cal. 2018). The Court placed considerable weight on its assessment of the balance of hardships, such that it need not conclude that Plaintiffs were likely to succeed on the merits; instead, this Court found that

Plaintiffs "need only show serious questions on the merits have been raised in order to obtain preliminary injunctive relief." *Id.* at 1089. Consistent with that conclusion, the Court found Plaintiffs raised "serious questions going to the merits" of Plaintiffs' constitutional claims. *Id.* at 1098. Defendants appealed, and the parties agreed to stay the litigation in district court pending appellate proceedings on October 26, 2018. *See* Stipulation to Stay, ECF No. 138.

On appeal, the Ninth Circuit vacated the preliminary injunction on September 14, 2020. The Ninth Circuit concluded that the preliminary injunction was improperly granted because "Plaintiffs' APA claim is foreclosed from judicial review" and "Plaintiffs are unable to show a likelihood of success, or even serious questions going to the merits of their EPC claim." *Ramos v. Wolf*, 975 F.3d 872, 878 (9th Cir. 2020).

Plaintiffs filed a petition for rehearing *en banc* on November 30, 2020. After the government filed its response to the petition for rehearing *en banc*, the parties jointly requested that the case be stayed and, in June 2021, requested that the case be referred to mediation. The case remained stayed for an additional year pending mediation proceedings, until October 27, 2022, when the parties made a request to file supplemental briefing regarding the petition for rehearing. The request was rejected, and the Ninth Circuit vacated the panel decision and agreed to hear the case *en banc*. On June 16, 2023, the government moved to dismiss the appeal because none of the termination decisions at issue in the case was in effect any longer; the Ninth Circuit granted the government's motion to dismiss on June 29, 2023 and dismissed the appeal.

On August 24, 2023, Plaintiffs filed an amended complaint, largely reasserting their original challenges to the now-rescinded terminations. *See* Am. Compl., ECF No. 204. All other plaintiffs bringing similar challenges recognized the mootness of their claims and stipulated to dismissal. *See* Stipulation of Dismissal, *Saget v. Biden*, No. 1:18-cv-1599 (E.D.N.Y. Oct., 15, 2021), ECF No. 166 ("[O]n August 3, 2021, United States Citizenship and Immigration Services . . . published a Federal Register notice establishing that the new designation [of Haiti for Temporary Protected Status is effective through February 3, 2023. . . . The above-captioned action is therefore moot."); *see also* Joint Stipulation of Dismissal, *Casa,*

*Inc. v. Biden*, No. 8:18-cv-845 (D. Md. Dec. 1, 2023), ECF No. 116 (El Salvador); Stipulation of Dismissal Without Prejudice, *Centro Presente v. Biden*, No. 1:18-cv-10340 (D. Mass. June 29, 2023), ECF No. 178 (stipulating to dismissal of claims as to Haiti); Stipulation of Dismissal Without Prejudice, *Centro Presente v. Biden*, No. 1:18-cv-10340 (D. Mass. Sept. 7, 2023), ECF No. 181 (stipulating to dismissal of claims as "all remaining claims" other than Haiti, i.e. regarding El Salvador and Honduras); Stipulation of Dismissal, *NAACP v DHS*, 1:18-cv-239 (D. Md. Nov. 3, 2021), ECF No. 115 (Haiti). Standing entirely alone, Plaintiffs litigated the question of mootness.  The Court rejected their arguments and granted the Government's motion to dismiss. *See* Order Granting Defendants' Motion to Dismiss, ECF No. 222. Although the Court offered the Plaintiffs the opportunity to amend their complaint regarding Plaintiffs' one new claim, Plaintiffs declined to do so, and the Court then issued final judgment "judgment in favor of Defendants and against Plaintiffs" on February 27, 2024.

Plaintiffs now seek $3,654,132.56.

## LEGAL STANDARD

Under the Equal Access to Justice Act ("EAJA") only a "prevailing party" may receive . . . "fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A). Assuming it can establish that it is the "prevailing party" in the first place, "[t]he party seeking the award of EAJA fees has the burden of proof that fees requested are reasonable." *Hill v. Comm'r of Soc. Sec.*, 428 F. Supp. 3d 253, 259 (E.D. Cal. 2019).

No fees are permitted if "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). It is the government's burden to make this showing. *See, e.g.*, *Hill*, 428 F. Supp. 3d at 259.

"[A]ttorney fees [under EAJA] shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C.

§ 2412(d)(2)(A).[1] ). "The movant bears the burden of establishing a sufficient basis for . . . an enhancement [beyond the statutory rate]." *Budge v. Saul*, No. 2:19-CV-01804-NJK, 2021 WL 148993, at *3 (D. Nev. Jan. 15, 2021).

## ARGUMENT

## I. PLAINTIFFS ARE NOT A "PREVAILING PARTY," SO THEY ARE NOT ENTITLED TO ATTORNEYS' FEES

In order to have any entitlement to attorneys fees, Plaintiffs must establish that they were the "prevailing party" in this litigation. 28 U.S.C. § 2412(d)(1)(A) ("Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action . . . ."). The sole basis for Plaintiffs' contention that they are the "prevailing party" here is that Plaintiffs "secur[ed] a preliminary injunction that lasted for years." Pls.' Mot at 12, ECF No. 228; *see id.* at 4. Plaintiffs are mistaken.

To qualify as prevailing parties, plaintiffs must obtain a "material alteration of the legal relationship of the parties," such as a judgment on the merits or consent decree, which bears a "judicial *imprimatur*" and was not caused by Defendant's voluntary change in conduct. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604-05 (2001). Plaintiffs contend that under the Ninth Circuit's decision in *Higher Taste, Inc. v. City of*

---

[1] The Ninth Circuit has held that the statutory rate is to be adjusted upward for cost-of living increases. *See Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005). As relevant to the fees claimed by Plaintiffs', the Ninth Circuit has calculated the statutory maximum rate to be $196.79 for work performed in 2017, $201.60 for work performed in 2018, $205.25 for work performed in 2019, $207.78 for work performed in 2020, $217.54 for work performed in 2021, $234.95 for work performed in 2022, and $244.62 for work performed in 2023. *See* U.S. Courts for the Ninth Circuit, Statutory Maximum Rates Under the Equal Access to Justice Act, https://perma.cc/W79N-C4YV. The Ninth Circuit has not published a 2024 rate, so Defendants have used the 2023 rate for 2024 in their calculations for purposes of opposing this motion where relevant. *See generally* Exs. A-G.

*Tacoma*, 717 F.3d 712, 717 (9th Cir. 2013), the injunction they obtained from this Court, coupled with the case becoming moot prior to a final judgment in the case, qualifies them as prevailing parties. Plaintiffs are wrong.

In their single-paragraph analysis of the "prevailing party" standard, Plaintiffs omit a key, material detail: The preliminary injunction that affords the sole basis for their claim to be the prevailing party was reversed on appeal. Tellingly, Plaintiffs cite no case that upholds a fee award where a plaintiff's claim to have prevailed is based solely on an interlocutory award that was reversed on appeal. For good reason—the caselaw establishes that parties are not entitled to attorneys' fees in these circumstances.

*Korab v. Wong*, No. CIV. 10-00483 JMS-KSC, 2015 WL 4394024 (D. Haw. July 15, 2015), is instructive. There, like here, Plaintiffs asserted that they were entitled to fees because "they obtained a preliminary injunction . . . and . . . the preliminary injunction, which remained in place for approximately three and a half years, afforded substantial relief to the class." *Id.* at *3. Although the preliminary injunction was subsequently reversed, the *Korab* plaintiffs, citing *Higher Taste*, contended that "the Ninth Circuit's ruling vacating the injunction did not strip them of their prevailing party status because this action became moot prior to a final decision on the merits." *Id.* The court rejected this argument, explaining that *Higher Taste* did not involve "the vacation of the preliminary injunctions relied upon by the plaintiffs in those cases to satisfy the judicial imprimatur requirement." *Id.* at *4. The court concluded that in that case, "although Plaintiffs obtained a preliminary injunction in district court, they cannot be deemed the 'prevailing party' given that the Ninth Circuit vacated the preliminary injunction." *Id.* Other cases, both in and out of the Ninth Circuit, have reached the same conclusion. *See, e.g., Pottgen v. Missouri State High Sch. Activities Ass'n*, 103 F.3d 720, 723–24 (8th Cir. 1997) ("A plaintiff cannot qualify as a prevailing party if the only basis for his claim of success on the merits is a judgment that has been reversed on appeal . . . . Here, the only judgment upon which Pottgen can base a claim of prevailing party status has been reversed, and hence nullified. That judgment therefore does not constitute success on the merits for purposes of awarding attorney's fees, and Pottgen is consequently not a prevailing party."); *Ocean Beauty Seafoods LLC*

*v. Pac. Seafood Grp. Acquisition Co.*, No. C14-1072RSM, 2015 WL 4600464, at *3 (W.D. Wash. July 29, 2015) ("Much like the plaintiffs in *Pottgen* and *Korab*, any success enjoyed by Plaintiffs in this action has been due solely to this Court's multiple denials of a preliminary injunction, which have been and are now currently the subject of a Petition and appeal in the Ninth Circuit Court of Appeals. . . . Given . . . the potential that this Court may once again be reversed, . . . the Court finds that Plaintiffs are not prevailing parties at this stage of the litigation . . . .").[2]

Here, there was ultimately no definitive ruling providing Plaintiffs "actual relief on the merits" required to establish them as the prevailing party. *See Higher Taste*, 717 F.3d at 715 ("A plaintiff 'prevails' for purposes of [obtaining attorneys fees] 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–12 (1992)). The district court's preliminary injunction was vacated by the Ninth Circuit panel decision, which was in turn vacated by the order granting Plaintiffs' petition for rehearing *en banc*, and the *en banc* court never issued a decision on the merits.

Indeed, *Higher Taste* already stretches *Buckhannon*'s requirements to the breaking point, and this case demonstrates why it should be stretched no further. *Buckhannon* requires a party to have been "awarded some relief by the court" "on the merits" to be a prevailing party. 532 U.S. at 603. *Higher Taste* allows interlocutory relief to qualify in some cases, even if there is never a final award issued, because of a Defendant's voluntary conduct mooting the case. *See Higher Taste*, 717 F.3d at 717; *cf. Buckhannon*, 532 U.S. at 605 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."). But Plaintiffs here would rely solely on such an interlocutory award that subsequently was vacated, in combination with Defendant's

---

[2] Notably, both *Korab* and *Ocean Beauty Seafoods* post-date and expressly distinguish *Higher Taste*, which does not itself purport to establish a categorical rule that a preliminary injunction coupled with Defendant's voluntary conduct mooting a case is sufficient to qualify a Plaintiff for attorney fees. *See Korab*, 2015 WL 4394024, at *4; *Ocean Beauty Seafoods*, 2015 WL 4600464, at *2; *see also Higher Taste*, 717 F. 3d at 716 ("We begin with the first question, to which the answer, *at least on the facts of this case*, is clear.") (emphasis added).

voluntary conduct, in order to claim prevailing party status. That simply stretches *Buckhannon* too far.

Further, the preliminary injunction award here was decided on a particularly low threshold. Specifically, the Court concluded that "[b]ecause Plaintiffs have established that the balance of hardships tips sharply in their favor, they need only show serious questions on the merits have been raised in order to obtain preliminary injunctive relief." *Ramos*, 336 F. Supp. 3d at 1089; *see id.* at 1080 (explaining that Plaintiffs have made only a "substantial showing on the merits"); *id.* at 1087 ("[A]t this stage, the merits cannot be definitively resolved, as evident in this Court's order denying the motion to dismiss[ and] its assessment of the merits below . . . ."); *cf. Higher Taste*, 717 F.3d at 716 ("The court's *likelihood-of-success finding* ensures that the preliminary relief Higher Taste obtained was the product of more than merely a 'nonfrivolous but nonetheless potentially meritless lawsuit.'") (emphasis added) (citations omitted). Thus, the preliminary relief afforded here—at least as to Plaintiffs' constitutional claim—was awarded at an even lower standard than "likely success on the merits," let alone the type of definitive ruling on the merits that is normally and properly thought of as "prevailing." *See, e.g., Buckhannon*, 532 U.S. at 603-04 (explaining that "enforceable judgment on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorneys fees"). This vacated, tentative award is simply far too slim a reed to bear the weight of an award of more than $3.6 million in taxpayer money, and Plaintiffs' motion should be denied at the threshold.

## II.   TO THE EXTENT THERE IS ANY DOUBT REGARDING PLAINTIFFS' NON-PREVAILING-PARTY STATUS, THE COURT SHOULD RESERVE DECISION PENDING THE SUPREME COURT'S RESOLUTION OF *LACKEY V. STINNIE*

As set forth above, Plaintiffs are not a "prevailing party" entitled to attorneys' fees even under current Ninth Circuit law. But to the extent the Court is inclined to entertain the argument that Plaintiffs are prevailing parties here, it should reserve decision pending the Supreme Court's decision in *Lackey v. Stinnie*, No. 23-621 (U.S.). *Lackey* is expected to be heard

in the Court's upcoming October 2024 session for the purposes of expressly deciding whether a preliminary injunction, followed by circumstances mooting a case, are sufficient to qualify a party as a "prevailing party" under fee-shifting statutes.

Specifically, the Supreme Court has granted certiorari on the following questions: (1) "Whether a party must obtain a ruling that conclusively decides the merits in its favor, as opposed to merely predicting a likelihood of later success" to qualify as a prevailing party for purposes of attorneys fee-shifting statutes; and (2) "Whether a party must obtain an enduring change in the parties' legal relationship from a judicial act, as opposed to a non-judicial event that moots the case" to qualify as a prevailing party for purposes of attorneys fee-shifting statutes.[3] Questions Presented, Pet. for Writ of Cert., *Lackey v. Stinnie*, No. 23-621 (Nov. 20, 2023) ("Petition").[4]

While this Court need not reach these issues to deny Plaintiffs' motion for the reasons set forth above, *supra* Part I, should the Court believe that Plaintiffs may qualify as prevailing parties under Plaintiffs' misreading of *Higher Taste*, the Supreme Court's answers to the questions presented in *Lackey* could be dispositive of this motion. Indeed, if the Supreme Court answers either question in the affirmative, as advocated by the petitioners, Plaintiffs will not be entitled to fees and the instant motion must be denied.

Even if the Supreme Court does not decide either question in the precise manner advocated by the *Lackey* petitioners, its opinion could inform the decision in this case. As but

---

[3] Although the fees at issue in *Lackey v. Stinnie* were awarded pursuant to 42 U.S.C. § 1988, the "prevailing party" analysis is the same under numerous fee-shifting regimes, including that under EAJA, and the precedent addressed in the Petition are identical to those relied on by Plaintiffs in the instant motion. *Compare* Petition at 2 ("Prevailing party" is a term of art used in numerous fee-shifting statutes.") *with* Pls.' Mot at 12-13 (relying on *Buckhannon* and *Higher Taste*); *see also Buckhannon*, 532 U.S. at 600 ("Numerous federal statutes allow courts to award attorney's fees and costs to the 'prevailing party.'"); *Higher Taste*, 717 F.3d at 715 (addressing 42 U.S.C. § 1988).

[4] Pet. for Writ of Cert., *Lackey v. Stinnie*, No. 23-621 (Nov. 20, 2023), https://perma.cc/TYH3-ALNR.

8

one example, the Supreme Court could provide additional guidance concerning the particular circumstances in which an interlocutory ruling may be sufficient to qualify a party to obtain fee-shifting. *See, e.g.*, Petition at 16-19, *Lackey v. Stinnie*, No. 23-621 (explaining that even courts permitting a preliminary injunction to qualify a party for fee-shifting "differ on the degree of 'likelihood' of success needed."); *id.* at 30-31.

Briefing in *Lackey* is currently scheduled to be complete by September 4, 2024, in time for the case to be argued in the Supreme Court's October 2024 sitting. *See, e.g.*, Mot. for Extension of Time, *Lackey v. Stinnie*, No. 23-621 (Apr. 24, 2024).[5] Accordingly, the delay occasioned by waiting for the Court's guidance will be relatively brief, and it would be a more efficient use of judicial resources to consider the motion in light of potentially dispositive Supreme Court guidance rather than undertaking a complete review of Plaintiffs' more-than-900-page filing and extensive billing records now.

## III. BECAUSE DEFENDANTS' POSITION WAS SUBSTANTIALLY JUSTIFIED, PLAINTIFFS ARE NOT ENTITLED TO FEES

The highest court to issue a substantive decision in this case (or any of the related TPS cases), the Ninth Circuit panel, concluded that Plaintiffs' APA claim was barred by statute— in other words, that Congress had entrusted the analysis and weight to give the statutory factors to the sole discretion of the Secretary. It also found, despite an extraordinary amount of discovery, Plaintiffs failed even to raise serious questions as to the merits of their constitutional claim. *See Ramos*, 975 F.3d at 897. Although the panel's decision was ultimately vacated, these conclusions are more than sufficient to establish that Defendants' position was "justified in substance or in the main." *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001). Defendants' position is thus "substantially justified," and Plaintiffs are not entitled to fees. *See* 28 U.S.C. § 2412(d)(1)(A).

---

[5] Mot. for Extension of Time, *Lackey v. Stinnie,* No. 23-621 (Apr. 24, 2024), https://perma.cc/P62T-GWK4. Petitioners filed their opening brief on June 20, 2024 and Respondents' brief is due on August 5, 2024.

Plaintiffs make a variety of arguments, divided into attacks on Defendants' "litigation position" and "pre-litigation conduct," to deflect from this straightforward conclusion. Pls.' Mot at 13. These arguments have no merit. With respect to Defendants' litigation conduct, Plaintiffs cherry-pick certain unsuccessful collateral arguments made by Defendants to suggest that Defendants' litigation position was unjustified. But they offer no support for the contention that unsuccessful *arguments* render a defendant's position not substantially justified, nor is any such contention supported by the caselaw, which requires only reasonableness of a defendant's overall position—and does not require any success on a defendant's part whatsoever—for its position to be substantially justified. *See, e.g., Gutierrez*, 274 F.3d at 1258 (9th Cir. 2001) ("'Substantially justified' means 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person."); *Kali v. Bowen*, 854 F.2d 329, 334 (9th Cir. 1988) ("[T]he government's failure to prevail does not raise a presumption that its position was not substantially justified.").[6] And contra Plaintiffs' contentions regarding the purported "change in practice" in making TPS determinations, there is certainly no requirement that Defendants accept Plaintiffs' theory of the case and characterizations of their conduct—particularly when Defendants do not agree with those theories or characterizations—in order for their position to be substantially justified.[7]

---

[6] Plaintiffs' argument that Defendants' overall litigation position is unjustified because Defendants attempted to support their privilege claims in discovery not only fails for this reason, but also because, as explained by Judge Nelson in his concurrence to the Ninth Circuit panel's decision, it was error to order discovery beyond the administrative record prior to the production of the record in the first place. *See Ramos v. Wolf*, 975 F.3d at 900-902 (Nelson, J., concurring) (explaining that "any [ ] extra-record discovery should only be ordered *after* the government produces the administrative record," *citing Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019)).

[7] Indeed, Defendants' core position with respect to Plaintiffs' APA claim is that 8 U.S.C. § 1254a(b)(5)(A), a duly-enacted statute providing that "[t]here is no judicial review of any determination of the Attorney General with respect to the designation, or termination or extension of a designation" of TPS means what it said and precluded review of Plaintiffs challenges to those determinations. Whether or not one agrees that there may be exceptions in which review is permitted and if so, whether Plaintiffs styled their claim in such a way as to

As to their attack on Defendants' prelitigation conduct, Plaintiffs' argument amounts to nothing more than the contention that Defendants were not justified in the challenged TPS determinations. But the Ninth Circuit panel disagreed. Indeed, the Court noted that "Plaintiffs fail to present even 'serious questions' on the merits of their claim that the Secretaries' TPS terminations were improperly influenced by the President's 'animus against non-white, non-European immigrants,'" and the "glaring lack of evidence . . . that any administration officials involved in the TPS decision-making process were themselves motivated by animus against 'non-white, non-European' countries." *Ramos*, 975 F.3d at 897. The panel made this finding of a "glaring lack of evidence" notwithstanding what Plaintiffs aver was "over 92,000 pages of evidence" that they obtained in an attempt to support their claim. Commons Decl. ¶ 7, ECF No. 231. And while Plaintiffs argue that the panel did not reach the question of whether there was a change in practice in evaluating TPS determinations, that was because the question was irrelevant under the panel's analysis of the claim: By finding such questions barred by statute, the panel effectively held that Congress placed such practices wholly within the discretion of the Secretary, making the question as reframed by Plaintiffs irrelevant.

Plaintiffs also point to the reconsideration of certain of the TPS decisions at issue by a subsequent Secretary of Homeland Security. But those reconsiderations do not undermine the reasonableness of the initial determinations. As an initial matter, only two of the four terminations considered by the Court in its preliminary injunction decision, regarding Nicaragua and El Salvador, were rescinded. *See Ramos*, 336 F. Supp. 3d at 1080 ("The federal government seeks to terminate the Temporary Protected Status ("TPS") designations for four countries: Haiti, Sudan, Nicaragua, and El Salvador."). For the other two countries at issue, Haiti and Sudan, the Secretary issued new designations based on extraordinary new circumstances that post-dated the challenged determinations. Specifically, Haiti was newly designated on August 3, 2021, following the deteriorating political situation in the country, culminating in the July 7, 2021 assassination of Haiti's President; the 2021 new designation

---

fall within such an exception, it is unquestionably substantially justified to argue the contrary in the face of this statutory text.

was subsequently extended in January 2023 and July 2024. *See* 86 Fed. Reg. 41863 (Aug. 3, 2021); 88 Fed. Reg. 5022 (Jan. 26, 2023); 89 Fed. Reg. 54484 (July 1, 2024). And Sudan was newly designated on April 19, 2022, following the October 25, 2021 military takeover of the country's civilian-led transitional government; that new designation was extended again in 2023. *See* 87 Fed. Reg. 23202 (Apr. 19, 2022); 88 Fed. Reg. 56864 (Aug. 21, 2023).  These subsequent decisions based on new events have no bearing on the validity of the prior terminations.

But even the two rescinded decisions do not make the initial decisions improper. Different individuals can make different assessments of the same evidence, and different administrations are permitted to make different assessments in light of different policy priorities. As the Ninth Circuit panel explained, that "Secretaries sought and acted to conform their TPS decisions to the president's immigration policy" is "neither unusual nor improper" because "[i]t is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies." *Ramos*, 975 F.3d at 897. And the Ninth Circuit's determination that notwithstanding the expansive record Plaintiffs obtained that they did not raise "even serious questions" on the merits of their constitutional claims and presented a "glaring lack of evidence" in support of those claims further demonstrates that Plaintiff's contentions regarding Defendant's prelitigation conduct are without merit. *Id.* at 897, 899. Ultimately, different decisionmakers evaluated the evidence and weighted the statutory factors differently and came to different determinations as to certain of the factors.

In the end, although many people may have strong feelings about the decisions in these cases, "reasonable person[s]"—here, two judges on the Ninth Circuit, 50% of the only four judges to consider the record in this case and a majority of the appellate judges who did so— were satisfied after a careful review of the record that Defendants' position, in the main, was

correct.[8] *Gutierrez*, 274 F.3d at 1258 ("'Substantially justified' means 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person."). Other reasonable people may disagree. But unanimity is not required to establish that Defendants' position is substantially justified. Defendants have established that their position was substantially justified, and Plaintiffs are not entitled to attorneys' fees.

## IV.   PLAINTIFFS' FEES DEMAND IS UNREASONABLE

For the reasons set forth above, Plaintiffs' motion for fees should be denied in its entirety, because Plaintiffs do not qualify as prevailing parties and because Defendants' position is substantially justified. Should the Court conclude that Plaintiffs are entitled to some fees, however, they are not entitled to the more than $3.6 million that they claim, for numerous reasons.

First, Plaintiffs' claim that four of their attorneys are entitled to recover at enhanced rates of as much as $1675 an hour—nearly *seven times* the presumptive statutory cap under EAJA (already adjusted by the Ninth Circuit for inflation)—is unsupported and unreasonable. In inflating the rates of just these four attorneys, Plaintiffs pad their fee request by nearly $1.9 million, accounting for more than half the total fees request. *See* Ex. A.

Second, the number of hours Plaintiffs claim to have spent on this action is unreasonable and unjustified in multiple ways. First, Plaintiffs appear to claim fees for the work of over 40 lawyers, approximately 10 of whom cannot claim to have represented

---

[8] To be sure, that Defendants prevailed with the Ninth Circuit panel does not *per se* establish that their position was substantially justified, but it is a significant factor. *See, e.g., Lewis v. Barnhart*, 281 F.3d 1081, 1084 (9th Cir. 2002). Here, only four judges made merits-related rulings on the four TPS terminations before this Court, and two found that it was an abuse of discretion, while one found it was not, and the last (i.e., this Court) issued the injunction. Only one other judge made a determination on the merits in related cases, and that judge considered only the termination of TPS for Haiti. *See Saget v. Trump*, 375 F. Supp. 3d 280, 295 (E.D.N.Y. 2019). Thus, even looking more broadly to cases that brought similar challenges, the support for and against enjoining any of the relevant terminations was roughly evenly split, supporting the conclusion that reasonable minds could differ on the substance of the case.

"prevailing parties," having either *never* worked on *this* case at all, or having done so only after it was consolidated in August 2023 with another TPS case on which they worked, by which time both cases were already moot. And even those attorneys who did appear in this case seek to recover for work on another case in which there is not even a colorable argument that they were prevailing parties entitled to fees. Second, Plaintiffs seek to recoup fees for unreasonably continuing to litigate this case after the Ninth Circuit appeal was dismissed, even though the matter was clearly moot by that time. Third, Plaintiffs claim numerous hours for their aggressive and unjustified discovery practices and for hours unsuccessfully defending the preliminary injunction on appeal.  Finally, Plaintiffs seek fees for two attorneys on whose behalf they have submitted unintelligible billing records that do not explain their purported work or support any award.

Taken together, if the Court does award fees to Plaintiffs (although it should not for the reasons explained supra Parts I-III), it should award no more than $818,682.94.  *See* Ex. G.

## A.    Plaintiffs Are Not Entitled To "Expert Rates" Under EAJA

Plaintiffs seek rates above EAJA's statutory "presumptive[] cap[]" of approximately $197-$245, depending on the year. *Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agen*cy, 29 F.4th 509, 511 (9th Cir. 2022); *see* 28 U.S.C. § 2412(d)(2)(A); *supra* note 1. But Plaintiffs do not establish either their eligibility for such rates or that the rates they seek are appropriate for this case.

To obtain a higher rate, Plaintiffs must establish that "'some distinctive knowledge or specialized skill' is needed for the litigation in question, and [that] *such knowledge or skill is not available elsewhere at the statutory rate.*" *Nat'l Fam. Farm Coal.,* 29 F.4th at 511 (emphasis added) (internal quotation and citation omitted). Plaintiffs to not do so.

First, as Plaintiffs note, other counsel across the country have brought similar challenges to the same TPS terminations at issue here. There were no shortage of counsel willing to take these matters pro bono, and in most cases, counsel did not even seek fees. See *Casa, Inc. v. Biden*, No. 8:18-cv-845 (D. Md.) (Akin Gump Straus Hauer & Feld, LLP and Washington

Lawyers' Committee for Civil Rights and Urban Affairs, counsel for the plaintiffs); *Centro Presente v. Biden*, No. 1:18-cv-10340 (D. Mass.) (Lawyers Committee for Civil Rights and Economic Justice and Choate, Hall & Stewart LLP, for the plaintiffs); *NAACP v DHS*, 1:18-cv-239 (D. Md.). Even Sidley Austin, one of Plaintiffs' counsel in this case, touts that it will donate its portion of any attorneys' fees award in this case to non-profit organizations. *See* Pls.' Mot at 21; Commons Decl. ¶ 6.[9] In short, far from having no competent attorneys available at the statutory rate, numerous highly-skilled attorneys have been willing to take this case *for free*. Plaintiffs' counsel thus plainly fail to meet the requisite criteria for the enhanced rate that they seek.

Second, for all their arguments in the section of their brief attempting to justify enhanced rates, Plaintiffs arguments in this case were not especially complex. Plaintiffs' core allegations were that (a) the terminations at issue are racially discriminatory and (b) that the analysis used to terminate TPS used in this case was different from prior versions and that the change was not adequately explained, in violation of the Administrative Procedure Act. *See* Compl. ¶¶ 4, 7, 9, ECF No. 1. Indeed, Plaintiffs contention that the case required "complexity and specialization" and involved "highly technical substantive and procedural issues," Pls.' Mot. at 22, is belied by their arguments that Defendants' position is not even substantially justified. *See* Pls.' Mot. at 13-19. If the questions at issue are so straightforward and Defendants' position so unreasonable and unsupportable as Plaintiffs suggest when arguing that Defendants' position is not substantially justified, there is simply no need for expert attorneys to rebut them. Plaintiffs cannot have it both ways; to the extent the Court concludes that Defendants' position is not substantially justified, Plaintiffs cannot be found, on the basis they have presented here, to be entitled to rates above EAJA's presumptive ceiling.

Finally, it is not clear why even if one "expert" counsel were needed in this matter why numerous "experts" would be. It is hard to imagine that Mr. Arulanantham—who notes in his

---

[9] Mr. Commons claims that this establishes that Sidley did not "have an incentive to perform unnecessary work" in these cases. Commons Decl. ¶ 6, ECF No. 231. Although it does not do so, it does illustrate one of many reasons why there was no incentive for Sidley to provide reasonable billing oversight for the work performed in this matter.

declaration that he obtained a MacArthur Foundation "genius" grant in 2016 for his "litigation and advocacy in the immigrants' rights field," Arunalantham Decl. ¶ 10, ECF No. 229, would be unable to manage to formulate the arguments and strategy in this case on his own given his experience and the fairly straightforward nature of Plaintiffs' claims in this case. Indeed, it is hard to conceive of what possible expertise that Mr. Commons—a career private lawyer specializing in commercial litigation who avers that he is entitled to expert rates because he has previously done some "pro bono work on behalf of immigrants," Commons Decl. ¶ 5, *see id.* Ex. A—could possibly add to the mix that would justify a rate of as much as $1675 per hour, more than half as much again as the highest rate Mr. Arunalantham seeks here. *See* Sobel Decl. ¶ 18, ECF 236; *see also* Ex A. While Mr. Arulanantham may not have been able to perform all the labor in the case, such as reviewing documents, on his own, it is not clear why numerous attorneys at rates far above the statutory cap presumed appropriate by Congress would be necessary or appropriate here.

Nor do Plaintiffs' declarations meet their burden to establish that the specific rates they seek are reasonable in the context of this case. Mr. Commons seeks recovery at his standard hourly rates as a partner at Sidley.  Commons Decl. ¶ 12. Mr. Commons provides no evidence supporting his assertion that his regular rates charged in his practice area—commercial litigation, *see* ECF No. 231-1—are reasonable market rates for his work on this case.  They are merely "customary fees" in other contexts that should be disregarded. *See Pierce v. Underwood*, 487 U.S. 552, 573 (1988) ("The factor of 'customary fees and awards in other cases,' [as a basis for an enhanced rate] is . . . not even a routine reason for market rates, but rather a description of market rates. It was an abuse of discretion for the District Court to rely on these factors.").

Nor do Plaintiffs establish that the rates charged for work by Mr. Arunalantham, Ms. Bansal, or Ms. Maclean are justified. Plaintiffs in each case contend that the rates that they seek are "market rates," with little or no explanation or evidentiary support about how they were derived. *See* Arunalantham Decl. ¶ 38, ECF No. 229 (referring to "market rates for they year[s] in which the work was performed" without explaining how those rates were established); Maclean Decl. ¶ 34, ECF No. 235 (same); Bansal Decl. ¶ 21, ECF No. 230 ("In

my opinion . . . out hourly rates are fair and reasonable for current market rates in Los Angeles for federal court litigators of comparable skill and experience."); *see also* Kaufman Decl. ¶ 9 (claiming the ACLU has "historically polled attorneys working in the Los Angeles area" to determine their rates, but he does not identify the attorneys polled or provide the data collected). These putative "market rates," as with Mr. Commons' rates, do not say anything about what rates are appropriate for the work performed in *this* case or provide any specificity with regard to practice area or skill set and lack any underlying support beyond the claimants' own *ipse dixit*.

Plaintiffs' putative expert declarations do not support their claimed rates, either. Plaintiffs submit a declaration from another California attorney, Jayashri Srikantiah, whose opinion provides no more than the same unsupported *ipse dixit* offered by the claimants themselves. *See* Srikantiah Decl. ¶ 16. And the Declaration of Carol Sobel simply catalogues the same improper factors the identified by the Supreme Court in *Pierce*, attempting to justify Plaintiffs' claimed rates by the precise forbidden factors of "customary fees and awards in other cases." *Pierce*, 487 U.S. at 573 (1988); *see, e.g.*, Sobel Decl. ¶ 7 ("I look to rates for attorneys in previous cases . . ."); *id.* ¶ 21 (citing a declaration that "sets out the customary billing rates for attorneys in 2019 and 2020"). These declarations should be disregarded.

In sum, even if this court determines that Plaintiffs counsel, or some of them, are eligible for an award of enhanced rates, because Plaintiffs have failed to meet their burden of establishing the reasonableness of the specific rates they are requesting, they should be denied enhanced rates.

For all these reasons, should the Court conclude that Plaintiffs are entitled to attorneys' fees at all, it should at a minimum reduce Plaintiffs' fee requests to conform to the statutory rates, reducing their request by approximately $1.87 million.[10] *See* Ex. A.

---

[10] Defendants provide calculations demonstrating the exact amounts by which any award should be reduced based on each argument herein, individually and in combination, in Exhibits A-G to this Opposition.

**B.     Plaintiffs' Claimed Hours Are Unreasonable**

    **i.     Plaintiffs Are Not Entitled to Fees or Costs for the *Bhattarai* Case and for Any Work Related to the Terminations of TPS for Nepal or Honduras**

Included in the more than $3.6 million in fees and costs sought by Plaintiffs in this action is approximately $252,000 incurred in on behalf of Plaintiffs for whom there is no colorable argument that they are "prevailing parties" entitled to fees under EAJA. *See* Ex. B. Of that amount, Plaintiffs concede that approximately $169,000 of their demand is attributable to related litigation over the terminations of TPS for Nepal and Honduras, which are not recoverable. *See* Ex. B.

Plaintiffs initially brought these challenges in a separate case, *Bhattarai v. Nielsen*, No. 3:19-cv-731 (N.D. Cal.), filed in February 2019. But no court ever issued a substantive ruling in the *Bhattarai* action or assessed the terminations for Nepal and Honduras on the merits. Instead, just one month after its filing, the *Bhattarai* case was stayed upon the parties' stipulation through the duration of the appeal of the *Ramos* case. In July 2023, after the Ninth Circuit dismissed the appeal in *Ramos*, the parties stipulated that the *Bhattarai* case would be consolidated with the instant case.  *See* Joint Stipulation to Consolidate Cases, ECF No. 201. Plaintiffs accordingly filed an Amended Complaint, and Defendants moved to dismiss, which the Court granted over Plaintiffs' opposition in December 2023. *See generally* Order Granting Defs.' Mot. to Dismiss, ECF No. 222.

As this history demonstrates, even if the Court disagrees with Defendants that Plaintiffs do not qualify as prevailing parties with respect to the challenges to the termination of TPS for Haiti, Sudan, Nicaragua, and El Salvador—the only countries addressed in the Court's preliminary injunction in this case—there is no basis of any kind for a finding that Plaintiffs are prevailing parties in the *Bhattarai* action or with respect to the terminations of TPS for Nepal and Honduras, because Plaintiffs never obtained the requisite relief "on the merits" that

18

was "awarded . . . by the court" with the "necessary judicial imprimatur."[11] *Buckhannon*, 532 U.S. at 603-05. Thus, Plaintiffs are not entitled to any of the fees they concede were attributable to the *Bhattarai* case nor are they entitled to recover any fees by counsel employed by Asian Americans Advancing Justice Southern California or Asian Americans Advancing Justice Asian Law Caucus, who were not counsel in the *Ramos* action prior to consolidation with *Bhattarai* in 2023. *See* Compl., ECF No.1, *cf.* Am. Compl., ECF No. 204; *see also* Compl., *Bhattarai v. Nielsen*, No. 3:19-cv-731 (N.D. Cal.), ECF No. 1.

In addition, beyond the amounts that Plaintiffs concede is directly attributable to *Bhattarai*, Plaintiffs' fees demand should be further reduced by an additional approximately $83,000 to reflect the work counsel who worked on both *Bhattarai* and *Ramos* performed on behalf of both sets of plaintiffs from July 2023 on. *See* Ex B.  Thus, to the extent the Court awards any fees for the period after July 2023 (*but see infra* Part IV.B.ii), any award to counsel who jointly appeared in *Ramos* and *Bhattarai* should be reduced by 1/3 to account for the portion of work related to the two of the six TPS terminations as to which Plaintiffs did not even secure a preliminary injunction.

---

[11] Plaintiffs' contention that "only this lawsuit challenged all of the terminations" of TPS by the prior administration, including "Honduras" and "Nepal" is, at best, extraordinarily misleading. Pls.' Mot. at 4 & 5 n.2. "This lawsuit," which was filed in March 2018, in fact challenged only four terminations—that of "Haiti, Sudan, Nicaragua, and El Salvador." *Ramos*, 336 F. Supp. 3d at 1080—until *August 2023*, after the Ninth Circuit dismissed Defendants' appeal and nearly five years after this Court issued the preliminary injunction, when the court granted the parties stipulation to consolidate it with the *Bhattarai* case, which challenged the determinations of TPS for Nepal and Honduras. *See* Joint Stip. to Consolidate Cases at 1, ECF No. 201 ("Plaintiffs in *Ramos* are TPS holders from El Salvador, Haiti, Nicaragua, and Sudan and their U.S. citizen children. Plaintiffs in *Bhattarai* are TPS holders from Honduras and Nepal and their U.S. citizen children."); *see also* Compl. ¶ 7, ECF No. 1 (March 2018) ("Since President Trump took office, DHS has applied its new rule for making TPS determinations to terminate the TPS designations of El Salvador, Haiti, Nicaragua, and Sudan. Through this lawsuit, Plaintiffs challenge the legality of that change on several bases."); *cf.* Am. Compl. ¶ 9, ECF No. 204 (Aug. 2023). The only issue the Court decided after that consolidation was that the case had been mooted prior to the consolidation. *See* Order Granting Defs.' Mot. to Dismiss, ECF No. 222.

### ii.   Plaintiffs' Attempt to Litigate This Case After June 2023 Was Unreasonable

Plaintiffs also seek nearly $264,000 for over 375 hours of work purportedly performed after June 2023, when the Secretary of Homeland Security reconsidered all of the remaining challenged determinations and determined to extend TPS for those determinations. *See* Ex. C; *see generally* Order Granting Defs.' Mot. to Dismiss at 5, ECF No. 222. Plaintiffs' request for all fees during this period should be denied, because at that point the case was clearly moot and it was unreasonable to litigate further. Indeed, in *every other case* challenging the prior Administration's TPS terminations, Plaintiffs either stipulated to dismissal or declined to oppose motions to dismiss on the ground that the cases were moot once TPS for the country or countries at issue in the case was extended or granted. This is because there was no reasonable argument that the case was not moot. *See* Stipulation of Dismissal, *Saget v. Biden*, No. 1:18-cv-1599 (E.D.N.Y. Oct., 15, 2021), ECF No. 166 ("[O]n August 3, 2021, United States Citizenship and Immigration Services . . . published a Federal Register notice establishing that the new designation [of Haiti for Temporary Protected Status] is effective through February 3, 2023. . . . The above-captioned action is therefore moot."); *see also* Joint Stipulation of Dismissal, *Casa, Inc. v. Biden*, No. 8:18-cv-845 (D. Md. Dec. 1, 2023), ECF No. 116 (El Salvador); Stipulation of Dismissal Without Prejudice, *Centro Presente v. Biden*, No. 1:18-cv-10340 (D. Mass. June 29, 2023), ECF No. 178 (stipulating to dismissal of claims as to Haiti); Stipulation of Dismissal Without Prejudice, *Centro Presente v. Biden*, No. 1:18-cv-10340 (D. Mass. Sept. 7, 2023), ECF No. 181 (stipulating to dismissal of claims as "all remaining claims" other than Haiti, *i.e.*, regarding El Salvador and Honduras); Stipulation of Dismissal, *NAACP v DHS*, 1:18-cv-239 (D. Md. Nov. 3, 2021), ECF No. 115 (Haiti). Only Plaintiffs sought to litigate this case through to a court order on a contested motion. This was unreasonable and exemplary of Plaintiffs' unreasonable and excessively litigious approach to this case. They should not be rewarded for it. *See, e.g., Atkins v. Apfel*, 154 F.3d 986, 987 (9th Cir. 1998) (noting that EAJA "explicitly permits the court . . . to reduce the amount awarded to the prevailing party to the extent that the party 'unduly and unreasonably protracted' the final resolution of the case").

### iii.    Plaintiffs' Claimed Hours Are Excessive and Unreasonable

Plaintiffs' extraordinary demand for over $3.6 million in fees and costs, representing nearly 8,000 hours from eight different entities, for a case that was primarily litigated over a period of six months and then largely stagnant is patently unreasonable. *See* ECF No. 231-6. Indeed, the scope of Plaintiffs fees motion and accompanying papers—over 900 pages—demonstrates the unreasonable excess and lack of reasonable billing discretion Plaintiffs have exercised in prosecuting this case.

Almost half of Plaintiffs' claimed hours—approximately 3700, *see* Exhibit E—appear to be for work attributed to over 20 lawyers from the law firm of Sidley Austin in 2018. Plaintiffs attempt to justify this by asserting the need "to move or oppose . . . discovery-related motions" which produced "[t]he vast majority of evidence," ultimately resulting in "over 92,000 pages." Commons Decl. ¶ 7.  But Plaintiffs overstate the benefits and propriety of their discovery assertions.  As the Ninth Circuit panel noted, despite the *size* of the record, far from "essential" and "truly impactful" evidence, *id.*, the Plaintiffs' record was notable for the "glaring lack of evidence . . . that any administration officials involved in the TPS decision making process were themselves motivated by animus." *Ramos*, 975 F.3d at 897.  Further, as explained in Judge Nelson's concurrence, the discovery sought by Plaintiffs was likely improper, and was certainly premature. *See id.* at 900-902 (Nelson, J., concurring).  Plaintiffs' discovery practices are evidence of their excessively aggressive litigation practices, not of reasonable, essential work that is compensable under EAJA.  Plaintiffs' fees requested for 2018 should be reduced by half to reflect this overlitigation.

In addition, Plaintiffs' seek to recoup over 1000 hours for opposing Defendants' appeal in 2019. *See* Exs. D, E, & F.  This appeal was unsuccessful, and the court should consider that lack of success and reduce any fee award accordingly. *See, e.g., Atkins*, 154 F.3d at 989 (explaining that district courts are "required to consider the results achieved on appeal when determining whether [the fees sought by Plaintiff for work on that appeal are] reasonable").  Defendants submit that, considering Plaintiffs' lack of success before the Ninth Circuit panel,

the Court should not award any fees or costs for 2019, during which the only proceedings in this case related to the unsuccessful appeal.

### iv.   The Billing Records for Attorneys Lopez-Franco and Langarica are Unintelligible and Do Not Support an Award of Fees

Finally, Plaintiffs submit unintelligible and undescriptive billing records in support of claimed fees on behalf of two attorneys, Monika Langaracia and Sofia Lopez Franco. *See* Arulanantham Decl., ECF Nos. 229-6 and 229-7. These records, wholly devoid of meaningful or intelligible description of the work performed cannot support the $3,877.29 claimed fees they purport to establish, and that amount should be deducted in full from any fee award. *See* ECF No. 229-8 (claiming $1,127.76 for Langaracia and 2,749.53 for Lopez Franco).

### C.   Any Fees Award Should Be No Greater than $818,682.94

As explained in Parts I-III above, Plaintiffs are not entitled to fees and costs in this case.  However, should the Court disagree and award Plaintiffs any fees, for the reasons set forth above in Parts IV.A and IV.B, that award should be no greater than $818,682.94.  *See* Ex. G.

### **CONCLUSION**

For the reasons set forth above, Plaintiffs Motion for Attorneys Fees (ECF No. 228) should be denied.


DATED: July 18, 2024                              Respectfully submitted,

                                                  BRIAN M. BOYNTON
                                                  Principal Deputy Assistant Attorney General

                                                  BRIGHAM J. BOWEN
                                                  Assistant Branch Directors

                                                  */s/ Christopher M. Lynch*
                                                  CHRISTOPHER M. LYNCH
                                                       (DC Bar No. 1049152)
                                                  Trial Attorneys
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  1100 L Street, N.W.

Washington, DC 20005
Tel:     (202) 353-4537
Fax:    (202) 616-8470
Email: christopher.m.lynch@usdoj.gov

*Counsel for Defendants*

23

1

## CERTIFICATE OF SERVICE

2    On July 18, 2024, I served the foregoing document on all other parties using the

3   Court's ECF system.

4                                    */s/ Christopher M. Lynch*
                                     Christopher M. Lynch
5                                    Counsel for Defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28