1   Ahilan T. Arulanantham (SBN 237841)
    arulanantham@law.ucla.edu
2   CENTER FOR IMMIGRATION LAW AND
    POLICY, UCLA SCHOOL OF LAW
3   385 Charles E. Young Dr. East
    Los Angeles, CA 90095
4   Telephone: (310) 825-1029

5   Jessica Karp Bansal (SBN 277347)
    jessica.b@uwunited.org
6   UNEMPLOYED WORKERS UNITED
    P.O. Box 142
7   Claremont, CA 91107
    Telephone: (818) 570-6731

8
    Sean A. Commons (SBN 217603)
9   scommons@sidley.com
    SIDLEY AUSTIN LLP
10  350 South Grand Avenue
    Los Angeles, CA 90071
11  Telephone: (213) 896-6000

12  Attorneys for Plaintiffs

13  [*Additional Counsel Listed on Next Page*]

14              **UNITED STATES DISTRICT COURT**

15             **NORTHERN DISTRICT OF CALIFORNIA**

16  CRISTA RAMOS, individually and on behalf      Case No. 3:18-cv-01554-EMC
    of others similarly situated; CRISTINA
17  MORALES; BENJAMIN ZEPEDA,                     The Honorable Edward M. Chen
    individually and on behalf of others similarly
18  situated; ORLANDO ZEPEDA; JUAN                **PLAINTIFFS' REPLY IN SUPPORT OF**
    EDUARDO AYALA FLORES, individually            **MOTION FOR ATTORNEYS' FEES**
19  and on behalf of others similarly situated;
    MARIA JOSE AYALA FLORES; ELSY                 Date:   August 14, 2024
20  YOLANDA FLORES DE AYALA; HNAIDA               Time:   9:00 a.m.
    CENEMAT, individually and on behalf of        Place:  Courtroom 5, 17th Floor
21  others similarly situated; WILNA DESTIN;
    RILYA SALARY, individually and on behalf
22  of others similarly situated; SHERIKA
    BLANC; IMARA AMPIE; MAZIN AHMED;
23  HIWAIDA ELARABI; and SALMA AHMED,

24              *Plaintiffs*,

25        v.

26  ALEJANDRO MAYORKAS, in his official
    capacity as Secretary of Homeland Security;
27  UNITED STATES DEPARTMENT OF

28

HOMELAND SECURITY; and UNITED
STATES OF AMERICA,

*Defendants*.

KESHAV BHATTARAI; SAJJAN
PANDEY; SUMNIMA THAPA; DONALDO
POSADAS CACERES; SORAYDA
RODRIGUEZ MOTIÑO; DENIS MOLINA
CHAVEZ; S.S., individually and on behalf of
others similarly situated; and G.D.P.,
individually and on behalf of others similarly
situated,

*Plaintiffs*,

v.

ALEJANDRO MAYORKAS, in his official
capacity as Secretary of Homeland Security;
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; and UNITED
STATES OF AMERICA,

*Defendants*.

Case No. 3:19-cv-00731-EMC

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES**

The Honorable Edward M. Chen

*Additional Counsel for Plaintiffs*

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
William S. Freeman (SBN 82002)
wfreeman@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Eva Bitran (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1250
Facsimile: (415) 772-7400

Leslie A. Ridings (SBN 349465)
lridings@sidley.com
Amelia Mazzarella (SBN 35168)
amazzarella@sidley.com
Robert P. McMahon (SBN 351271)
rmcmahon@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Winifred Kao (SBN 241473)
winifredk@advancingjustice-alc.org
ADVANCING JUSTICE – ASIAN LAW
CAUCUS
55 Columbus Avenue
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

Keally Cieslik (SBN 55413)
keally.c@uwunited.org
UNEMPLOYED WORKERS UNITED
100 N. Howard Street, Suite 4000
Spokane, WA 99201
Telephone: (508) 250-0518
Admitted Pro Hac Vice

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.      THE PRELIMINARY INJUNCTION WAS NEVER DISSOLVED, AND PLAINTIFFS
        PREVAILED SO THOROUGHLY THE CASE BECAME MOOT. ...................................... 3

II.     SPECULATION ABOUT A POSSIBLE FUTURE SUPREME COURT DECISION WITH
        UNKNOWN EFFECT DOES NOT JUSTIFY A STAY. ..................................................... 4

III.    DEFENDANTS REFUSED TO ADMIT TO BASIC FACTS, AND THEN CONFESSED
        ERROR, CONFIRMING THEIR PRE-LITIGATION CONDUCT AND FACTUAL
        LITIGATION POSITION LACKED SUBSTANTIAL JUSTIFICATION. ................................ 5

IV.     THE FEES AND COSTS SOUGHT BY PLAINTIFFS ARE REASONABLE. ........................ 8

        A.      Plaintiffs' Counsel Are Entitled To Enhanced Rates. .................................... 9

        B.      Plaintiffs Are Entitled to Fees Incurred While Litigating *Bhattarai*. ......... 12

        C.      Plaintiffs Can Collect Fees After June 2023. ............................................... 13

        D.      The Claimed Hours Are Reasonable ............................................................. 14

        E.      Plaintiffs Have Support For The Less Than $4,000 In Specific Fees Disputed. ......... 15

V.      CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berardo v. INS*,
  CV No. 01796 2021 WL 228890 (D. Or. Jan. 22, 2021)..................................................11

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
  532 U.S. 598 (2001)...................................................................................................4, 12

*Carbonell v. I.N.S.*,
  429 F.3d 894 (9th Cir. 2005) .............................................................................................12

*Centro Presente v. Trump*,
  Case No. 1:18-cv-10340-DJC (D. Mass) .........................................................................11

*Cisneros v. Vangilder*,
  No. 21-15363, 2022 WL 1500805 (9th Cir. May 12, 2022)..............................................10

*Equihua-Equihua v. Sessions*,
  719 F. App'x 580 (9th Cir. 2017) ......................................................................................12

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)..........................................................................................................14

*Higher Taste, Inc. v. City of Tacoma*,
  717 F.3d 712 (9th Cir. 2013) .........................................................................................3, 4

*Kane v. Zions Bancorporation, N.A.*,
  631 F. Supp. 3d 854 (N.D. Cal. 2022) ...............................................................................3

*Korab v. Wong*,
  No. CIV. 10-00483 JMS-KSC, 2015 WL 4394024 (D. Haw. July 15, 2015)..............3, 4

*Landgraf v. USI Film Prod.*,
  511 U.S. 244 (1994)............................................................................................................5

*Martin v. Hadix*,
  527 U.S. 343 (1999)............................................................................................................5

*Moreno v. City of Sacramento*,
  534 F. 3d 1106 (9th Cir. 2008) ........................................................................................14

*NAACP v. DHS*,
  No. CV DKC 18-0239, 2020 WL 1331998 (D. Md. Mar. 23, 2020) ...............................11

*Nadarajah v. Holder*,
  569 F.3d 906 (9th Cir. 2009) .......................................................................................9, 11

*Nat. Res. Def. Council, Inc. v. Winter*,
  543 F.3d 1152, 1164 (9th Cir. 2008) ...........................................................................5

*Ocean Beauty Seafoods LLC v. Pac. Seafood Grp. Acquisition Co.*,
  No. C14-1072RSM, 2015 WL 4600464 (W.D. Wash. July 29, 2015) ...........................3

*Orantes-Hernandez v. Holder*,
  713 F. Supp. 2d 929 (C.D. Cal. 2010) .......................................................................11

*Pottgen v. Mo. State High Sch. Activities Ass'n*,
  103 F.3d 720 (8th Cir. 1997) ........................................................................................3

*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010) ........................................................................................9

*Ramos v. Wolf*,
  975 F.3d 872, 897 (9th Cir. 2020) ......................................................................6, 11, 12

*Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Import/Export Corp.*,
  226 F. Supp. 3d 1141 (D. Or. 2016) .............................................................................3

*Saget v. Trump*,
  375 F. Supp. 3d 280 (E.D.N.Y. 2019) ..........................................................................8

*Spencer v. Boys*,
  No. CV 16-2129-MWF-RAO, 2020 WL 5845984 (C.D. Cal. July 24, 2020) ...............4

*W. Va. Univ. Hosps., Inc. v. Casey*,
  499 U.S. 83 (1991) .......................................................................................................5

**Statutes and Regulations**

42 U.S. Code § 1988 ...........................................................................................................4, 5

88 Fed. Reg. 40282 ...............................................................................................................7

# **INTRODUCTION**

Defendants' opposition is remarkable for its ambition. First, after assuring this Court that this case was moot because Plaintiffs had won all the relief they could possibly seek, Defendants now argue that Plaintiffs never prevailed at all. And after confessing "error"—in the Federal Register—by admitting their decisions to terminate TPS for more than 400,000 people ignored crucial country conditions information, they now say their pre-litigation conduct and factual positions were substantially justified. Finally, Defendants ask this Court to treat as dispositive the vacated 2-1 decision of a Ninth Circuit panel rather than this Court's preliminary injunction ruling, while simply ignoring that they *abandoned their appeal* of this Court's decision.

These arguments are meritless. A prevailing party does not abandon an appeal while under an injunction. When this Court later dissolved that injunction, it did so only because Defendants admitted error, rescinded the challenged decisions, and extended or expanded TPS protections for every country at issue. No court has bestowed prevailing party status on a defendant that lost a preliminary injunction and then abandoned the challenged practices years into litigation so completely and definitively as to render the case moot. The Ninth Circuit has rightly rejected the notion that a defendant can prevent a plaintiff from prevailing by giving up. Defendants nonetheless request a stay because a Supreme Court case could "inform" the prevailing party question at some point next year—perhaps as late as next summer. Opp. 8. If such speculation were sufficient to justify a stay, litigation would grind to a halt.

Defendants also ignore the core requirement that they show *both* that their pre-litigation conduct and litigation position as a whole—factually and legally—were substantially justified. Their entire defense of the former rests on one line of the vacated panel opinion taken out of context. Opp. 12. Beyond that, Defendants offer no justification for adopting a novel, incorrect standard to ensure denials of TPS extensions in violation of the APA. Not a shred of record evidence justifies their pre-litigation conduct. Their only defense of it rests on a jurisdiction-stripping argument they abandoned on appeal. That argument is wrong, but it is also irrelevant; pre-litigation conduct does not become justified just because the government has a procedural defense during litigation.

Defendants scarcely defend their primary litigation position on the facts. For years, they

1   wrongly denied that the terminations were based on an unexplained change in the standard for

2   weighing country conditions, but then confessed error and rescinded their decisions. Defendants

3   instead focus on their Equal Protection arguments. Opp. 11–13. While those misguided arguments

4   rest almost entirely on the vacated panel decision, this Court need not reach them if it finds

5   Defendants' pre-litigation conduct and factual positions during litigation were not substantially

6   justified.

7       Defendants also attack the fees sought, but under binding Ninth Circuit authority the Court

8   should award fees at the market rates sought because Plaintiffs have substantiated their qualifications

9   and rates, and Defendants offer no contrary evidence. Defendants contend market rates are

10   unwarranted because attorneys in other TPS cases did not move for fees. In reality, only one other

11   TPS case (*Saget*, limited to Haiti) secured injunctive relief, and those plaintiffs sought and received

12   EAJA fees (including enhanced rates) via settlement. Defendants also argue that fees are

13   unwarranted because Sidley Austin LLP ("Sidley") and other firms fulfilled their ethical obligation

14   to take on matters pro bono, but they did so against the backdrop of EAJA (i.e., knowing they might

15   obtain fees). In any event, no authority permits denying market rates based on whether attorneys in

16   other cases seek fees.

17       Defendants also complain about the number of attorneys who worked on this case and their

18   total hours. The Ninth Circuit has cautioned against such second-guessing, but it is particularly

19   inappropriate here, where 17 lawyers appeared on behalf of Defendants during the litigation, and 18

20   reviewers worked on discovery. ECF No. 231 ¶¶ 13–14 (Commons Decl.). Nor do they provide *their*

21   total hours, let alone offer expert evidence to dispute the efficiency of Plaintiffs' counsel. Defendants

22   also ignore that Plaintiffs voluntarily eliminated thousands of hours actually worked and thousands

23   of dollars' worth of hard costs actually incurred. *Id.* ¶¶ 8–9.

24       Ultimately, Defendants' positions disregard the real-world impact of this litigation and this

25   Court's undisturbed order protecting hundreds of thousands of people who would have been

26   separated from family, friends, and communities due to Defendants' arbitrary and capricious

27   decisions to terminate their TPS status. This was a difficult, hard-fought case, and Plaintiffs won

28   extraordinarily important relief. The Court should grant the motion.

## ARGUMENT

**I.     THE PRELIMINARY INJUNCTION WAS NEVER DISSOLVED, AND PLAINTIFFS PREVAILED SO THOROUGHLY THE CASE BECAME MOOT.**

Defendants argue that Plaintiffs are not the "prevailing party" in this litigation—as if Defendants prevailed or, equally untenable, that no one prevailed. But the preliminary injunction remained in force throughout the appeal. Indeed, the core relief Plaintiffs secured through the preliminary injunction became final and insulated from review only because Defendants reversed course and granted TPS protections to all individuals affected by the challenged terminations, and on that basis won the order dismissing this case as moot. Defendants themselves argued that Plaintiffs had won all the relief they could seek. *See* Mot. 11 (citing Defendants' statement that "there is no further relief for this Court to provide").

Defendants acknowledge the Ninth Circuit's rule that plaintiffs can establish prevailing party status by winning a preliminary injunction, *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013), but contend that it does not apply because this preliminary injunction "was reversed on appeal." Opp. 5. But, of course, it was not. The Ninth Circuit panel initially ruled that way, but that decision was vacated by the en banc court, after which Defendants withdrew their appeal. The vacated panel decision Defendants rely upon is not citable even as law of the case. *Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Import/Export Corp.*, 226 F. Supp. 3d 1141, 1157 (D. Or. 2016) ("[I]f the previous decision or judgment has been vacated on appeal, it can no longer be part of the law of the case."); *Kane v. Zions Bancorporation, N.A.*, 631 F. Supp. 3d 854, 867 (N.D. Cal. 2022) (vacated case has "no precedential value authority whatsoever"). It is a nullity.

Unsurprisingly, Defendants cite no authority denying plaintiffs' prevailing party status in this posture. In one case they cite the preliminary injunction remained subject to reversal on appeal. *Ocean Beauty Seafoods LLC v. Pac. Seafood Grp. Acquisition Co.,* No. C14-1072RSM, 2015 WL 4600464, at *3 (W.D. Wash. July 29, 2015). In the other two, the preliminary injunctions were dissolved on appeal and, thus, did not remain in place when the cases were dismissed as moot. *Korab v. Wong*, No. CIV. 10-00483 JMS-KSC, 2015 WL 4394024, at *3 (D. Haw. July 15, 2015); *Pottgen v. Mo. State High Sch. Activities Ass'n*, 103 F.3d 720, 723-24 (8th Cir. 1997). *Korab*

1    actually confirms the rule Plaintiffs describe here, stating that, so long as a preliminary injunction

2    remained in effect up until an action was dismissed as moot, the preliminary injunction granted

3    "relief [that] was no longer subject to being reversed, dissolved, or otherwise undone by the final

4    decision in the same case," rendering Plaintiffs the prevailing party. *Korab*, 2015 WL 4394024, at *4

5    (quoting *Higher Taste*, 717 F.3d at 717) (internal quotations omitted).

6         Defendants next suggest that Plaintiffs did not prevail because the Court granted the

7    preliminary injunction "on a particularly low threshold." Opp. 7. That is inaccurate. As to the APA

8    claim, this Court ruled Plaintiffs not only had "at the very least" raised serious questions, but also

9    "demonstrated a likelihood of success on the merits." ECF No. 128 at 15:6–7, 26:19–20. In any

10   event, the Ninth Circuit has never denied prevailing party status based on the distinction between

11   preliminary injunctions predicated on "serious questions" rather than a "likelihood of success."

12   Regardless of the standard adopted, the preliminary injunction here changed the legal relationship

13   between the parties, which is all that *Buckhannon* and *Higher Taste* require.

14   **II.   SPECULATION ABOUT A POSSIBLE FUTURE SUPREME COURT DECISION**

15   **WITH UNKNOWN EFFECT DOES NOT JUSTIFY A STAY.**

16        In the alternative, Defendants ask the Court to reserve decision pending the Supreme Court's

17   resolution of *Lackey v. Stinnie*, No. 23-621 in hopes that it could "inform" the outcome. Opp. 8:19.

18   Defendants do not suggest courts regularly stay proceedings on such grounds without, at a minimum,

19   a showing of a significant possibility of reversal in a manner that would prove dispositive, combined

20   with a likelihood of irreparable harm. *Spencer v. Boys*, No. CV 16-2129-MWF-RAO, 2020 WL

21   5845984, at *3–4 (C.D. Cal. July 24, 2020). Defendants have made neither showing. Most

22   important, as a matter of law, Defendants cannot establish irreparable harm from proceeding with a

23   motion about fees. This Court can deny the stay request on that basis alone.

24        In addition, Defendants have not shown *Lackey* will dictate the outcome of Plaintiffs'

25   motion. *Lackey* addresses attorneys' fees under Section 1988, not EAJA. While fee shifting statues

26   are often interpreted consistently, Section 1988 and EAJA have been interpreted differently before.

27   

28

*See Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1164 (9th Cir. 2008) (district court may award attorney fees for appellate litigation under EAJA but not Section 1988); *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 100 (1991) (expert fees payable under 1988 but not EAJA) (superseded by statute as described in *Landgraf v. USI Film Prod.*, 511 U.S. 244, 251 (1994)). Whether they will be interpreted differently again can only be resolved in post-*Lackey* litigation at some unknown future time. Moreover, even the Petitioner in *Lackey* describes various ways the Court could parse whether and when a preliminary injunction renders a party "prevailing." *See, e.g.*, Brief of Petitioner, *Lackey v. Stinnie*, No. 23-621, at 37–46 (describing different tests currently imposed by Circuit Courts, under most of which Plaintiffs here would prevail).

Finally, Defendants cannot establish that *Lackey* will dictate the outcome here because the briefing in *Lackey* understandably says nothing about retroactivity, and changing rules regarding attorneys' fees can give rise to anti-retroactivity considerations. *Cf. Martin v. Hadix*, 527 U.S. 343 (1999) (holding change in availability of fees under the Prison Litigation Reform Act did not apply retroactively to work completed before effective date). If Plaintiffs prevailed under the old rule, but not under the new one, the law may not permit the new rule to apply to pre-announcement conduct.

For all these reasons, it is entirely speculative whether, how, and when any distinctions the Court may draw in *Lackey* will or will not affect this case. The Court should deny Defendants' stay request.

## III.   DEFENDANTS REFUSED TO ADMIT TO BASIC FACTS, AND THEN CONFESSED ERROR, CONFIRMING THEIR PRE-LITIGATION CONDUCT AND FACTUAL LITIGATION POSITION LACKED SUBSTANTIAL JUSTIFICATION.

Defendants never dispute that they must establish both that their pre-litigation conduct and their litigation position as a whole—both factually and legally—were substantially justified. Mot. 12 (citing *Meza-Vazquez v. Garland*, 993 F.3d 726, 729 (9th Cir. 2021)). Yet, they say almost nothing to defend their decisions to strip 400,000 people of TPS status based on a novel, unexplained

1    departure from past practice they later abandoned. Defendants primarily attempt to justify their pre-

2    litigation conduct through the lens of the vacated panel decision, but that decision never assessed the

3    merits of their pre-litigation conduct. The Court can find Defendants' position was not substantially

4    justified based on their pre-litigation conduct alone. Mot. 16–17 (citing, *inter alia*, *Marolf*, 277 F.3d

5    at 1163–64). If it proceeds further, it can also find their litigation position unjustified based on the

6    factual positions they took.

7         Defendants do not meaningfully address Plaintiffs' arguments that the TPS terminations were

8    the product of numerous errors that render them substantially unjustified, perhaps because they told

9    this Court that "DHS has specifically rescinded the prior determinations and *explained why they*

10   *were incorrect.*" ECF No. 212 at 6 (emphasis added). Defendants make no attempt to distinguish the

11   case law finding that acknowledged errors—and jettisoning challenged decisions post-litigation—

12   can establish a lack of substantial justification, regardless of whether a defendant can defeat such

13   claims during litigation on procedural or jurisdictional grounds. *Compare* Mot. 13–17 (citing, *inter*

14   *alia*, *United States v. Marolf*, 277 F.3d 1156 (9th Cir. 2002) and *Meier v. Colvin*, 727 F.3d 867 (9th

15   Cir. 2013)) *with* Opp. 9–13 (ignoring these cases).

16        Instead, Defendants cite the vacated panel opinion's statement that it is "neither unusual nor

17   improper" for "executive officials to confirm their decisions to the administration's policies" to

18   argue that "[d]ifferent individuals can make different assessments of the same evidence, and

19   different administrations are permitted to make different assessments in light of different policy

20   priorities." (Opp. 12:9–11 (citing *Ramos v. Wolf*, 975 F.3d 872, 897 (9th Cir. 2020)). But that

21   passage of the vacated opinion appears in its discussion of the *Equal Protection claim*. The vacated

22   majority opinion made that point to explain why, in its view, the existence of White House pressure

23   on the TPS decisions was not relevant to the discrimination claims. The majority opinion never

24   suggested—either in that passage or elsewhere—that Defendants' unexplained adoption of an

25   entirely new reading of the TPS statute was somehow consistent with the APA or otherwise justified.

26   Even before it was vacated, that opinion in no way established that reasonable individuals would

27   have engaged in the challenged conduct here—deviating from decades of past practice with respect

28   to whether to even consider certain country conditions when making TPS determinations.

1    Defendants also have no coherent answer to the fact that in their reversals of the challenged

2    decisions regarding four countries, they acknowledged "error"—not merely a difference of

3    assessment, opinion, or policy. *See* Mot. 9. Defendants contend that rescission of the TPS decisions

4    at issue "do not make the initial decisions improper" (Opp. 12) and that new designations have "no

5    bearing on the validity of the prior terminations" (*id.* 11–12). But the text of the rescissions

6    themselves foreclose that argument, as they do not purport to apply different administrative policies

7    or "assessments," but instead to correct for the fact that the initial decisions "*failed* to adequately

8    assess conditions," including because Defendants refused to consider certain evidence at all. 88 Fed.

9    Reg. 40282, 40286 (emphasis added). Indeed, Defendants explicitly labeled the El Salvador

10   decision, which by itself affected nearly 200,000 people, an "error." *Id.* All of the terminations were

11   made around the same time by the same administration, and the evidence shows that the same

12   flawed reasoning infected each of them. Mot. 4–5, 14–15. Flawed decisions based on flawed

13   reasoning are not substantially justified. *Id.* 13–14.

14   As predicted, Defendants also contend their conduct was substantially justified in light of the

15   2-1 vacated panel decision. Again, the Court need not assess the significance of the vacated decision

16   if it finds that Defendants' pre-litigation conduct was not substantially justified. But should it

17   proceed to separately assess Defendants' litigation conduct, it should find that it was not

18   substantially justified primarily because of the factual positions Defendants embraced. As explained

19   previously, the vacated majority decision never defended, let alone adopted, Defendants' factual

20   position as to the APA claim. For years throughout this litigation, until they abruptly reversed

21   course, Defendants' position was that no departure from past practice ever occurred, even though the

22   record overwhelmingly established the opposite. Mot. 17–18. That two judges agreed with

23   Defendants' jurisdictional argument does not overcome these and other unreasonable factual

24   positions they took, particularly given that the legal position of those two judges was not accepted by

25   any other judge in any TPS case, and was then vacated by the en banc Ninth Circuit. Most important,

26   the existence of such procedural defenses cannot immunize Defendants' pre-litigation conduct and

27   factual position from scrutiny for EAJA purposes. *See* Mot. 16–17.

28   At best, the vacated majority decision would suggest that some of Defendants' Equal

7

1    Protection arguments were substantially justified—a point Plaintiffs have never disputed. But to

2    escape fees Defendants must establish that their litigation position "as a whole" was substantially

3    justified. Defendants never explain why the fact that two judges accepted one portion of their factual

4    position (concerning Presidential influence on TPS decision-making) as to their Equal Protection

5    argument can render their factual position "as a whole" substantially justified when they refused to

6    acknowledge the most important fact in this case—that the terminations occurred because

7    Defendants refused to consider then-current country conditions based on a new and arbitrary

8    interpretation of the TPS statute, and that they did so to reach a predetermined outcome. Mot. 17–18;

9    *see also Saget v. Trump*, 375 F. Supp. 3d 280, 359 (E.D.N.Y. 2019) ("In her testimony to Congress,

10   Secretary Nielsen argued the DHS Secretary does not have the discretion to consider conditions

11   unrelated to the originating event. Such an absurd interpretation of the TPS statute violated past

12   practice and undermines Defendants' position that attenuation to the originating event is merely one

13   factor for the Secretary to consider as part of the discretionary TPS review process."). No matter

14   how one counts (or discounts) the number of jurists to consider that factual question, no judge ever

15   found that Defendants maintained a consistent practice as they asserted, and no judge ever found a

16   valid justification for Defendants' decision to disregard country conditions based on an arbitrary

17   reading of the TPS statute that deviated from decades of past practice. Mot. 14–15.[1]

18   **IV.    THE FEES AND COSTS SOUGHT BY PLAINTIFFS ARE REASONABLE.**

19        Plaintiffs present substantial documentation establishing the hours they spent and the rates

20   they seek. In response, Defendants offer no evidence of their own, but instead second-guess how

21   Plaintiffs litigated the case they won and invite this Court to slash their award by almost 80 percent

22   based on entirely unsupported arguments. But Plaintiffs' request is reasonable. They already have

23   written off thousands of hours actually worked and thousands in costs actually incurred, and have

24

25   _____
     [1] Defendants also suggest that they should be excused for taking indefensible positions on privilege
26   because discovery should have been limited or staged differently. Opp. 10 n.6. This is novel. A
     legally meritless position is legally meritless, regardless of the procedural posture of a case. In all
27   events, Plaintiffs pointed to the privilege fights (Mot. 18-19) because they reflected the lengths to
     which Defendants sought to protect from disclosure the true motives that drove the terminations,
28   which, in the end, Defendants rescinded as erroneous. In short, the privilege disputes properly
     constitute one more factor the Court can consider when determining whether Defendants satisfied
     their burden on substantial justification, which they did not.

provided robust, unrebutted evidence justifying their rates. The Court should decline to impose such an extraordinary discount, especially in light of the successful, transformative outcome of the litigation and the sizable reductions already reflected in the Motion.

### A.    Plaintiffs' Counsel Are Entitled To Enhanced Rates.

Plaintiffs' lead counsel have sufficient expertise, distinctive knowledge, and specialized skill to warrant enhanced rates under EAJA. Defendants critique the evidence submitted as support for enhanced fees for four lawyers, Opp. 15–16, but offer no evidence to the contrary. Sworn declarations from attorneys' fees experts detailing the market rates of other attorneys of similar expertise and experience, coupled with declarations of experienced litigators in the field describing market conditions, are acceptable ways of establishing market rates. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (relying upon declaration from "attorneys' fee expert" compiling hourly rates charged by attorneys in the relevant market); *see also Nadarajah v. Holder*, 569 F.3d 906, 912, 917 (9th Cir. 2009) (relying upon declaration from attorney Carol Sobel (one of the declarants here) in describing her methodology "to obtain relevant comparisons for billing rates"). If the rates were excessive, Defendants could offer their own rebuttal expert testimony, or at least point the Court to fee awards in other matters for lawyers with comparable experience and backgrounds. They do neither.

The four counsel seeking enhanced rates possess specialized skill and knowledge acquired over lengthy careers that support the enhanced rates requested. ECF No. 229 ¶¶ 7–11 (Arulanantham Decl.); ECF No. 230 ¶¶ 6–13 (Bansal Decl.); ECF No. 231 ¶¶ 4–5 (Commons Decl.). Indeed, the Ninth Circuit approved enhanced rates for Mr. Arulanantham—one of the four counsel in this matter for another complex immigrants' rights case—at a time when he had less experience than the other three attorneys seeking market rates here. *See Nadarajah*, 569 F.3d at 912 (granting market rates for work done when Mr. Arulanantham had approximately six years' experience).

Defendants nonetheless contend that none of these attorneys warrant market rates based on a newfangled argument: they claim there was "no shortage of counsel willing to take these matters pro bono." Opp. 14. This argument is fundamentally flawed. To start, the other attorneys who brought TPS cases also did so against the backdrop of EAJA, just as Plaintiffs did here. They presumably had an expectation that if they prevailed and the government's positions were not substantially justified, they too could seek fees under EAJA's rules (including market rates if they could show their expertise was needed to litigate the cases). While they no doubt brought the cases "pro bono" in the sense that they did not charge their clients, that those attorneys undertook that litigation with the expectation that they could receive fees under EAJA if they prevailed does not show that they would have taken them in the absence of EAJA.[2]

Perhaps in part for that reason, Defendants cite no authority for their contention that a court should deny market rates under EAJA based on the willingness of attorneys in other cases to represent clients pro bono. It would perversely reward the type of high-profile misconduct at issue—which is part of what encouraged these attorneys to step forward in the first place. It would also punish private firms that voluntarily undertake the considerable burden of taking on massive pro bono efforts to fulfill their ethical obligation of public service. *See, e.g.*, *Cisneros v. Vangilder*, No. 21-15363, 2022 WL 1500805, at *2 (9th Cir. May 12, 2022) (finding district court abused discretion by denying fees based on retention of pro bono counsel and size of firm).

Defendants next contend enhanced fees should not be awarded because "counsel did not even seek fees" in other TPS cases. Opp. 14. But that representation is at best incomplete. As Defendants surely know, in three of the cases plaintiffs never sought any preliminary relief; rather, they moved slowly because of this Court's preliminary injunction order, and ultimately did not proceed beyond

---

[2] In addition, it bears mention that this case was the first TPS challenge to seek a preliminary injunction, and the only one to seek relief for all TPS holders whom Defendants targeted with their illegal terminations. The other cases no doubt modeled their arguments in part on those made here, and both counsel and judges in other cases relied on the record developed here. As a result, the argument for enhanced rates would have been stronger here than in other cases.

1   the motion to dismiss and discovery stages. *See NAACP v. DHS*, No. CV DKC 18-0239, 2020 WL

2   1331998 (D. Md. Mar. 23, 2020) (staying case due to *Ramos* and other factors); *Centro Presente v.*

3   *Trump*, Case No. 1:18-cv-10340-DJC (D. Mass), Dkt. No. 80 (joint motion to stay discovery

4   pending decision on appeal in *Ramos*); *Casa de Maryland v. Biden*, Case No. GJH-18-00845 (D.

5   Md.), Dkt. No. 79 (Consent Motion to Stay) (discussing *Ramos*). However, one other TPS case

6   concerning just Haiti did move forward, and it did result in injunctive relief. There, Plaintiffs *did*

7   seek attorneys' fees under EAJA, including at market rates for some attorneys, and Defendants

8   ultimately awarded them fees through a settlement. *Saget, et al. v. Biden, et al*, No-cv-18-1599

9   (E.D.N.Y), Dkt. Nos. 167, 174.  As a result, Defendants offer no legal authority for their view that

10  the fee-seeking behavior of attorneys in other cases is relevant, but if it is, it supports Plaintiffs.

11          Defendants next contend that if Defendants' positions were so flawed as to lack substantial

12  justification, then defeating them could not have required the skill needed to warrant market rates.

13  This upside-down argument would eliminate enhanced fees under EAJA entirely. By definition, in

14  all cases where EAJA enhanced fees are awarded, the court must find both that defendants lacked

15  substantial justification *and* that the case was complex enough to warrant market rates. This

16  argument is therefore foreclosed by the countless cases where courts have awarded enhanced rates

17  and simultaneously found decisions made, and positions taken, by the government lacked substantial

18  justification. *E.g.*, *Nadarajah*, 569 F.3d at 912; *Berardo v. INS*, CV No. 01796 2021 WL 228890, at

19  *4, *6 (D. Or. Jan. 22, 2021); *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929, 958, 964 (C.D.

20  Cal. 2010). Defendants' contention also ignores that Plaintiffs had no way to know at the outset of

21  this case that Defendants would confess error, or that discovery would reveal their extensive

22  attempts to manufacture a rationale for the terminations they decided in advance to justify. In

23  hindsight at the end of litigation, their lack of substantial justification is clear, but Plaintiffs

24  nonetheless had to fight tooth and nail and utilize their collective expertise to uncover the lack of

25  substantial justification in the first place.

26          Relatedly, Defendants suggest the legal issues were "not especially complex." Opp. 15. The

27  length of the briefs, the breadth of the issues they cover, and this Court's detailed and complex

28  orders on both the motion to dismiss and the preliminary injunction in this case prove otherwise.

1  Indeed, Defendants asked for nearly double the default page length for their unsuccessful motion to

2  dismiss, ECF No. 20, which surely would have been unnecessary if this case presented simple legal

3  questions on a standard-size record. Likewise, the Ninth Circuit's decision to take the matter en banc

4  reflects that this case raised weighty questions. The Court should reject Defendants' request to limit

5  the recovery of four lawyers with decades of specialized experience critical to the success of this

6  litigation to EAJA's statutory rate.

7  **B.      Plaintiffs Are Entitled to Fees Incurred While Litigating *Bhattarai*.**

8  Defendants accuse Plaintiffs of "at best, extraordinarily misleading," arguments for seeking

9  fees for a related action eventually consolidated with the lead case, but their objection is meritless.

10  Opp. 19, n.11. Defendants fail to mention that *Bhattarai v. Nielsen*, No. 3:19-cv-731 (N.D. Cal.) was

11  filed on February 26, 2019 (ECF No. 142)—after this Court had already granted the preliminary

12  injunction in *Ramos*, and that Defendants first chose to litigate *Bhattarai*, but then (after they lost a

13  discovery motion) changed course and agreed to be bound—by stipulation signed by this Court—to

14  treat the *Bhattarai* Plaintiffs in accordance with the terms of the preliminary injunction in *Ramos*

15  (ECF No. 23). This Court's signature on that order constitutes the "judicial imprimatur" sufficient to

16  render the *Bhattarai* Plaintiffs prevailing under *Buckhannon*. *See Carbonell v. I.N.S.*, 429 F.3d 894,

17  901 (9th Cir. 2005) ("[W]hen a court incorporates the terms of a voluntary agreement into an order,

18  that order is stamped with sufficient 'judicial imprimatur' for the litigant to qualify as a prevailing

19  party for the purpose of awarding attorney's fees.") (internal quotation omitted); *see also, e.g.*,

20  *Equihua-Equihua v. Sessions*, 719 F. App'x 580, 582 (9th Cir. 2017) (ruling plaintiff was prevailing

21  party where district court had "held the case in abeyance 'pursuant to the stipulation of the parties'").

22  Via that stipulation, the *Bhattarai* plaintiffs received the exact same benefits as those in *Ramos*—

23  they prevailed to the same extent by virtue of an order of this Court. Defendants also later stipulated

24  to the formal consolidation of *Bhattarai* with *Ramos*. ECF No. 201 (Order Granting Stip. Consol.

25  Cases, *Ramos*, No. 18-16981).

1    To the extent Defendants' objection is to the hours counsel spent litigating *Bhattarai*, it

2    ignores that Plaintiffs had no way of knowing whether Defendants would agree to treat *Bhattarai* as

3    subject to the preliminary injunction ex ante—indeed, they initially refused to do so. The Court

4    should not discount essential work to protect the interests of the *Bhattarai* plaintiffs, and the

5    additional approximately 100,000 TPS holders from Honduras and Nepal who were protected by this

6    Court's order in that case.

7    **C.      Plaintiffs Can Collect Fees After June 2023.**

8    Defendants argue that Plaintiffs should not receive fees for work performed after June 2023,

9    when Defendants "reconsidered" the TPS terminations. Opp. 20. Defendants contend that "it was

10   unreasonable to litigate further." *Id*. To be sure, the Court has discretion on such matters, but

11   Plaintiffs submit that good cause supports this aspect of their fee motion. Plaintiffs already have

12   discounted or entirely cut other pre- and post-June 2023 time, including for this fee motion. ECF No.

13   ¶¶ 8–9 (Commons Decl.). Moreover, the work Plaintiffs performed after June 2023 resulted in

14   significant benefits for Plaintiffs. First, as described in Plaintiffs' Amended Complaint, the June

15   2023 TPS extensions established confusing and unreasonable deadlines that required TPS holders to

16   re-register well before their TPS expired. ECF No. 204 ¶¶ 180–84, 245–46 (Amended Compl.). As a

17   result, TPS holders who waited to re-register until shortly before their status expired in June 2024

18   would have found it was too late; tens of thousands would undoubtedly have lost status. *Id*. ¶ 181

19   (re-registration deadlines falling moths before June 2024). Defendants extended the registration

20   periods only after Plaintiffs filed their Amended complaint raising the issue. ECF No. 206 at 3 (Mot.

21   to Dismiss) (asserting Plaintiffs' "challenges to the new TPS designations are moot because DHS

22   recently extended the registration period").

23   Second, Plaintiffs' motion forced Defendants to make ever clearer statements representing

24   that the challenged practice had ended and that "the rescinded … policy will not reasonably be

25   reinstated," ECF No. 212 at 2—assurances never previously provided despite multiple inquiries by

26   Plaintiffs, and on which this Court relied in finding the case moot. *See* ECF No. 222 at 12 (Order

27   Granting Mot. to Dismiss) ("the government has sufficiently established there is no reasonable

28   expectation that the government will reverse course on the TPS designations"). Those statements

1    could prove crucial should a future administration attempt to reverse course. It was not unreasonable

2    for Plaintiffs to pursue this litigation further in hopes of obtaining them.

3        **D.    The Claimed Hours Are Reasonable.**

4        Aside from complaining about the total amounts sought, Defendants do not identify any

5    entries that suggest unreasonable or excessive work by Plaintiffs' counsel in general or the lawyers

6    at Sidley in particular. Their inability to do so is not surprising. Plaintiffs painstakingly reviewed

7    time entries and exercised discretion to write off or write down thousands of hours of time and

8    thousands of dollars in expenses. ECF No. 231 ¶ 9. These significant reductions were undertaken

9    precisely to "exclude from a fee request hours that are excessive, redundant, or otherwise

10   unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  Moreover, the Ninth Circuit has

11   cautioned against second-guessing the work allocation decisions of successful lawyers. *Moreno v.*

12   *City of Sacramento*, 534 F. 3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to

13   the winning lawyer's professional judgment as to how much time he was required to spend on the

14   case.") The Court should decline Defendants' invitation to engage in that exercise here.

15       In any event, their specific objections are unavailing. They rely on the vacated Ninth Circuit

16   decision to discount the discovery upon which the injunction ordered in this case relied. Opp. 21.

17   Defendants may not see the value of the discovery undertaken by Plaintiffs, but their argument is

18   myopic. The discovery revealed the lack of any basis for adopting a novel interpretation of the TPS

19   statute for the purpose of ensuring that TPS relief would be denied. Evidence does not need to be

20   dispositive of every claim in a case to be "essential" and "truly impactful." *Id.*[3]

21       Defendants also challenge the hours expended by Plaintiffs "opposing Defendants' appeal"

22   as it was "unsuccessful." *Id.* This would be insulting were it not so comical. Is Defendants' position

23   really that Plaintiffs would have obtained the same results for their clients had they declined to

24   defend this Court's preliminary injunction on appeal in 2019? Defendants' baseless argument

25   ignores that the time and resources Plaintiffs' spent litigating that appeal over several years

26   ultimately resulted in the en banc Ninth Circuit vacating the panel majority's decision, and no doubt

27

28   [3] Indeed, the discovery in this case had impacts far beyond the courtroom. *See, e.g.,* This American Life Episode 656: Let me Count the Ways, *available at* https://www.thisamericanlife.org/656/let-me-count-the-ways (addressing emails obtained via this litigation).

14

1   played a major role in Defendants' decision to abandon their appeal days before the en banc

2   argument, at which point they rescinded the challenged terminations as erroneous and issued new

3   decisions to protect all of the TPS holders covered by the injunction they had initially appealed. That

4   is the definition of successful work properly undertaken; it undoubtedly merits compensation.

5        The Court should not reduce the fees requested based on Defendants' conclusory arguments

6   about the total amount requested.

7        **E.        Plaintiffs Have Support For The Less Than $4,000 In Specific Fees Disputed.**

8        Defendants dispute $3,877.29 of specific time entries, i.e., approximately 0.1% of the total

9   amount sought, as incomprehensible. The objection to Ms. Lopez Franco's entries are meritless.

10  Defendants never explain why those entries lack sufficient clarity. *See* ECF No. 229-7.[4] Plaintiffs

11  understand the questions about Ms. Langarica's entries and have submitted with this reply a further

12  explanation of that work. *See* Decl. of Monika Langarcia ¶¶ 2–3.

13  **V.     CONCLUSION**

14       The Court should grant the motion and award Plaintiffs fees and costs incurred, now in the

15  amount of $3,684,282.56,[5] to secure landmark protections for hundreds of thousands of TPS holders

16  and their U.S. citizen children.

17   Date:  August 1, 2024                     Respectfully submitted,

18                                             SIDLEY AUSTIN LLP

19                                             By:  */s/ Sean A. Commons*
20                                                  Sean A. Commons
                                                    Nicole M. Ryan
21                                                  Leslie A. Ridings
                                                    Amelia Mazzarella
22                                                  Robert P. McMahon

23                                             CENTER FOR IMMIGRATION LAW AND
                                               POLICY, UCLA SCHOOL OF LAW

24                                             By:  */s/ Ahilan T. Arulanantham*
                                                    Ahilan T. Arulanantham
25

26

27  [4] The "notice" Ms. Lopez Franco refers to is the notice Plaintiffs filed shortly after these entries were made, concerning the current Trump campaign's TPS positions.

28  [5] Plaintiffs also submit additional declarations and exhibits for the time spent preparing this brief. *See* Suppl. Decl. of Ahilan Arulanantham ¶¶ 4-6; Suppl. Decl. of Emi MacLean ¶¶ 3-5; Suppl. Decl. of Jessica Bansal ¶¶ 2-3.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

By: */s/ Emilou MacLean*
    Emilou MacLean
    William S. Freeman

ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

By: */s/ Eva Bitran*
    Eva Bitran

UNEMPLOYED WORKERS UNITED

By: */s/ Jessica Karp Bansal*
    Jessica Karp Bansal
    Keally Cieslik

ADVANCING JUSTICE – ASIAN LAW
CAUCUS

By: */s/ Winifred Kao*
    Winifred Kao

 Attorneys for Plaintiffs

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)</u>

I am the ECF User whose identification and password are being used to file the foregoing Plaintiffs' Reply in Support of Motion For Attorneys' Fees. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.

Dated: August 1, 2024                    By: *<u>/s/ Sean A. Commons</u>*
                                              Sean A. Commons