YAAKOV M. ROTH
Acting Assistant Attorney General

ANDREW I. WARDEN
Assistant Director

CHRISTOPHER M. LYNCH (DC Bar No. 1049152)
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel:  (202) 353-4537
Fax:    (202) 616-8470
Email: christopher.m.lynch@usdoj.gov

Counsel for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTA RAMOS, individually and on behalf of others similarly situated; CRISTINA MORALES; BENJAMIN ZEPEDA, individually and on behalf of others similarly situated; ORLANDO ZEPEDA; JUAN EDUARDO AYALA FLORES, individually and on behalf of others similarly situated; MARIA JOSE AYALA FLORES; ELSY YOLANDA FLORES DE AYALA; HNAIDA CENEMAT, individually and on behalf of others similarly situated; WILNA DESTIN; RILYA SALARY, individually and on behalf of others similarly situated; SHERIKA BLANC; IMARA AMPIE; MAZIN AHMED; HIWAIDA ELARABI; and SALMA AHMED, <br><br>*Plaintiffs*, <br><br>v. <br><br>ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security;; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and UNITED STATES OF AMERICA, <br><br>*Defendants*. | Case No. 3:18-cv-1554-EMC <br><br>**JOINT STATUS REPORT RE: LACKEY V. STINNIE** |

| | |
|---|---|
| KESHAV BHATTARAI; SAJJAN PANDEY; SUMNIMA THAPA; DONALDO POSADAS CACERES; SORAYDA RODRIGUEZ MOTIÑO; DENIS MOLINA CHAVEZ; S.S., individually and on behalf of others similarly situated; and G.D.P., individually and on behalf of others similarly situated,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and UNITED STATES OF AMERICA<br><br>   *Defendants*. | Case No.  3:19-cv-00731-EMC<br><br>**JOINT STATUS REPORT RE: LACKEY V. STINNIE**<br><br>The Honorable Edward M. Chen |

The Parties file this joint status report pursuant to the Court's order of August 15, 2024, Dkt. 248, which requested that the Parties provide statements after the Supreme Court's decision in *Lackey v. Stinnie*, No. 23-621, 2025 WL 594737 (U.S. Feb. 25, 2025). A copy of the decision is attached for the Court's convenience. The Parties disagree about the effect of *Stinnie* on the pending fee motion before this Court. Defendants believe the Court should deny Plaintiffs' fee motion now. Plaintiffs believe they are entitled to fees under *Stinnie*, and believe supplemental briefing is warranted to demonstrate why. Plaintiffs request that the Parties be permitted to brief the question on an agreed-upon schedule. Defendants believe briefing is unnecessary, but in the event the Court orders supplemental briefing, they do not oppose the schedule Plaintiffs have proposed.

I.  **Plaintiffs' Statement**

    A.    **Plaintiffs' Summary of Why They Prevail Under *Stinnie***

Plaintiffs' position is that they should be allowed to file supplemental briefs on the question whether they are prevailing parties under *Stinnie* and the law that continues to govern their fee motion post-*Stinnie*. However, they sketch a portion of their position here because Defendants have asked the Court to resolve Plaintiffs' fee motion based on this Joint Status Report, without any further briefing. They provide this outline of their position on *Stinnie* only to demonstrate why supplemental briefing is warranted.[1]

*Stinnie* held that victory on a preliminary injunction alone does not render a plaintiff "prevailing" for purposes of fee awards under 42 U.S.C. 1988, and that where external events (such as the passage of legislation that adopts the plaintiff's position) render a case moot after the plaintiff wins a preliminary injunction, their victory on the preliminary injunction does not suffice to render plaintiffs prevailing. Because a preliminary injunction merely "preserve[s] the relative positions of the parties until a trial on the merits can be held," 2025 WL 594737, at *4 (internal quotation

---

[1] Plaintiffs maintain that *Stinnie's* rule may also be inapplicable to this case for the reasons they suggested in their prior briefing on this issue, including that its holding may not apply to EAJA, and that retroactive application of its rule to set compensation for work performed prior to the Court's decision may violate the Due Process Clause. *See* ECF Nos. 228, 245. They may further address those issues in any supplemental briefing as well.

1
JOINT STATUS REPORT RE: LACKEY V. STINNIE

omitted), the relief it affords is in that sense "transient," rather than "enduring." *Id.* at *6. *Stinnie* went on to hold that "for the purposes of §1988(b), a plaintiff 'prevails' when a court grants enduring judicial relief that constitutes a 'material alteration of the legal relationship of the parties,'" *id.* at *5. (internal quotation omitted), and furthermore that "the enduring nature of that change must itself be judicially sanctioned."

Assuming the prevailing party definition announced in *Stinnie* applies to this case, Plaintiffs prevail under that test, albeit for different reasons than advanced when they briefed the question under the old rule. Plaintiffs have prevailed under *Stinnie* because they secured what was effectively a consent decree through an agreement reached between the Parties and signed by the Court after its ruling on the preliminary injunction motion. That agreement ensured certain minimal protections for all TPS holders, regardless of any litigated outcome. *See Ramos* ECF No. 138. In the agreement memorialized at ECF No. 138, reached after this Court granted Plaintiffs' motion for preliminary injunction, Defendants guaranteed that all TPS holders from the affected countries would be afforded continued TPS protections for a minimum of at least 120 days from the date of any adverse decision on appeal. The agreement was submitted and entered as an order of the Court. It provided:

> Following the conclusion of the appeal of the preliminary injunction, TPS will remain in effect for [the four countries] for a minimum of the later of a) 120 days following the issuance of any mandate to the district court or b) the Secretary's previously-announced effective date for the termination of TPS designations for [the four countries].

*Ramos*, ECF No. 138 ¶6(c). Given that it takes a minimum of 52 days for the mandate to issue from any appellate decision, this agreement guaranteed all TPS holders at least approximately six months to stay in the country beyond what the TPS statute would otherwise require—essentially the equivalent of one more TPS extension. *See* 8 U.S.C. 1254a(b)(3)(C). The parties initially reached that agreement for the four countries at issue in *Ramos* (El Salvador, Haiti, Nicaragua, and Sudan), and later agreed to essentially the same terms for the two countries at issue in *Bhattarai* (Honduras and Nepal). *See Bhattarai*, ECF No. 23 ¶11(c). The Court signed both orders. These consent orders provided a significant measure of stability for Plaintiffs and the wider TPS holder community during

a turbulent time, as reflected in the fact that legal service providers and community groups consistently assured TPS holders that their "[TPS] status and employment authorization will be valid for at least the next six months, even if the Ninth Circuit vacates the injunction."[2]

The relief provided in those orders makes Plaintiffs a prevailing party under *Stinnie*. It changed the legal relationship between the parties, because the statute contains no such 120-day minimum post-termination period of authorized stay. It was "enduring" as *Stinnie* uses that term, as it was not subject to later reversal on appeal or otherwise. And it was "judicially sanctioned" because this Court adopted and entered both stipulations containing the agreement as orders, thus rendering them enforceable by the Court (such as via contempt).

While that conclusion is clear from *Stinnie*'s holding concerning what is needed to establish prevailing party status, a passage at the end of the opinion discussing "consent decree[s]" confirms that Plaintiffs are entitled to fees, as it makes clear that awarding fees for such decrees is "fully consistent with the rule we announce today." 2025 WL 594737 at *8. As that passage explains, a consent decree is "approved and given force of law by the court," and therefore "like a final judgment in the relevant ways: [i]t conclusively resolves the claim, bears a judicial *imprimatur*, and may grant enduring relief that materially alters the legal relationship between the parties." *Id.* (emphasis in original); *see also Richard S. v. Dep't of Developmental Servs. of State of California*, 317 F.3d 1080, 1088 (9th Cir. 2003) (distinguishing between "purely private" and "legally enforceable" settlement agreements and holding the latter, like consent decrees, contain a "judicial imprimatur that alters the legal relationship of the parties") (quotation omitted). *Stinnie* also reaffirms that a plaintiff can prevail even if the only relief they win is not the most significant form of relief sought. 2025 WL 594737 at *5 ("a final victory on a material even if not predominant claim," can suffice); *see also id.* (noting that the Court had previously rejected "the 'central issue test,' which would have required a party to prevail on its central claim in order to be awarded

---

[2] CLINIC, Latest Developments in Ramos v. Nielsen and Impact on TPS Holders, *available at* https://www.cliniclegal.org/resources/humanitarian-relief/latest-developments-ramos-v-nielsen-and-impact-tps-holders (Nov. 1, 2018).

attorney's fees."); *Fisher v. SJB-P.D.*, 214 F.3d 1115, 1117–19 (9th Cir. 2000) (holding settlement agreement requiring defendants to print four-paragraph non-discrimination statement rendered plaintiff "prevailing party" entitled to attorney fees). And *Stinnie* reaffirms that a party can prevail even if the order that renders them prevailing does not come at the end of the case. *Id.* at *7 ("many final orders may issue in the course of the litigation.").

In their statement below, Defendants suggest the Parties' agreement does not render Plaintiffs prevailing parties because it was a "housekeeping" agreement that merely "preserved the status quo," did not resolve any claim on the merits, and provided only temporary benefits. Each of these claims is wrong. Plaintiffs respectfully request the opportunity to explain why, but offer here just a brief summary of their positions: *Stinnie* contains no exception for "housekeeping" agreements, and in any event that label does not reflect the agreement's significance to Plaintiffs and other TPS holders.

The agreement did not preserve the status quo; the preliminary injunction preserved the status quo. The agreement granted a substantial additional benefit that the law does not provide.³ It was on the merits insofar as the entire litigation was about securing TPS protection. The agreement granted Plaintiffs the equivalent of an additional TPS extension, effectively ensuring the challenged termination decisions would be reversed regardless of the outcome of the litigation.

Moreover, under longstanding doctrine, a consent agreement does not need to resolve the entirety of a claim or convey relief for more than a limited period of time to render Plaintiffs prevailing. Conditioning prevailing party status on proof that a stipulated order applies to the entirety of a claim also make no sense; consent agreements between parties often do not say what claims, if any, underly the agreed-upon relief. Under *Stinnie*, so long as an agreed-upon order

---

³ Defendants suggest below, n.5, that the 120 days was simply the "outgrowth" of administrative steps they planned to take to comply with the Court's preliminary injunction, but fail to acknowledge that those steps were actually "based on an agreement reached with Plaintiffs 'as part of a negotiation to stay district court proceedings pending appellate review of the preliminary injunction.'" ECF No. 138 ¶3 (quoting Declaration of Donald Neufeld [ECF No. 135-1]).

materially alters the legal relationship between the parties in a manner that is both judicially-sanctioned and will take effect even after pending proceedings, they establish prevailing status.

Finally, under *Stinnie* what renders relief "enduring" is not its length of time it remains in effect, but rather whether it is subject to later reversal. Were it otherwise, *Stinnie* would not have pointed to temporary consent orders entered mid-litigation as examples of enduring relief that render litigants prevailing parties. 2025 WL 594737 at *7-*8.

### B.   This Report Is Not a Proper Vehicle to Resolve Substantive Disputes.

Defendants disagree with Plaintiffs' view of *Stinnie*. For that reason, the Court should allow the Parties to file supplemental briefs before resolving the issue, rather than deciding it based only on the summary discussion here. In its order deferring ruling on Plaintiffs' motion for attorneys' fees, the Court directed that "[t]he parties shall file a status report within two weeks after the Supreme Court issues its decision in *Stinnie*." It did not ask the Parties to analyze and then brief all of *Stinnie's* implications in that narrow window of time. ECF No. 248 at 2:9–10.

Denying Plaintiffs the opportunity to file supplemental briefs would be particularly unfair here, because until the morning of this filing Plaintiffs were under the misimpression that Defendants had agreed that supplemental briefing is warranted, only to realize a few hours ago that Defendants intended to ask the Court to rule on the fee motion based on this status report.[4]

This is not a setting where condensed briefing on a truncated schedule is appropriate. Plaintiffs' counsel, collectively, devoted more than 7,900 hours to this matter and have applied for more than $3.6 million in fees, ECF No. 231-6 at 2. This Court and other courts regularly order supplemental briefing when Supreme Court precedent comes down after the parties' original briefing has been submitted. *See, e.g.*, *The Pandolfi v. AviaGames, Inc.*, No. 23-cv-05971-EMC, 2024 WL 4051754, at *3 (N.D. Cal. Sept. 4, 2024) (directing parties "to file further supplemental briefing because of a recently issued California Supreme Court decision" bearing on motion);

---

[4] To be clear, Plaintiffs in no way intend to suggest that Defendants sought to mislead Plaintiffs. A genuine miscommunication occurred. But whatever the source of the misunderstanding, the fact remains that Defendants' approach would require Plaintiffs to brief all of the potential implications of *Stinnie* within what is effectively less than a day.

5
JOINT STATUS REPORT RE: LACKEY V. STINNIE

1  *Ramos v. Nielsen*, 321 F.Supp.3d 1083, 1123 (N.D. Cal. Aug. 6, 2018) ("invit[ing] supplemental briefing" in light of Supreme Court decision issued after briefing); *United States v. Flores-Ayar*, No. 15-cr-00122-EMC-1, 2018 WL 9439767, at *1 (N.D. Cal. June 19, 2018) (same); *D.light Design, Inc. v. Boxin Solar Co., Ltd.*, No. 13-cv-05988-EMC, 2015 WL 7731781, at *2 (N.D. Cal. Dec. 1, 2015) (same). This case should be no exception, especially given the nature and number of disagreements among the parties, the significant stakes, and the lack of any prejudice to Defendants of permitting supplemental briefing. *Cf. In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 22-md-03047-YGR (PHK), 2024 WL 1808607, at *4 (N.D. Cal. April 25, 2024) (finding "relative legal or factual complexity of the issue," "extent to which [a] dispute concerns substantive as opposed to administrative or procedural issues," and anticipated page length needed as factors favoring resolving matters via briefing rather than a joint statement report).

\*       \*       \*

For all these reasons, Plaintiffs respectfully request that the Court permit the Parties to brief the effect of *Stinnie* on Plaintiffs' fee motion. Plaintiffs propose that they be allowed to file their supplemental brief on April 25, 2025; that Defendants' response be due on May 9, 2025; and that Plaintiffs' reply be due on May 23, 2025. Plaintiffs propose that the opening briefs be no more than 15 pages, and their reply be no more than 10 pages. Defendants have stated that, in the event that the Court orders briefing, they would not oppose the schedule and page specifications set forth above.

## II. Defendants' Statement

In their motion for attorneys' fees (ECF No. 228), Plaintiffs contended that they were "prevailing parties" eligible for attorneys' fees because they "secur[ed] a preliminary injunction that lasted for years," even though the Court ultimately dismissed this case as moot. *Id.* at 12:25-26; *see id.* at 12:21-13:9. The Court stayed consideration of the motion because the Supreme Court's then-forthcoming decision in *Lackey v. Stinnie*, 23-621, "has the potential to be dispositive of the pending

1    motion." Order re Plaintiffs' Motion for Attorneys' Fees at 2:4, ECF No. 248. It is. The Supreme

2    Court's holdings in *Stinnie* that "[b]ecause preliminary injunctions do not conclusively resolve the

3    rights of parties on the merits, they do not confer prevailing party status" and that "external events

4    that render a dispute moot do not convert a temporary order designed to preserve the status of the

5    parties into a conclusive adjudication of their rights" are completely dispositive of Plaintiff's fees

6    motion. *Stinnie* at 7 (slip op.); *see also id.* at 13 ("A preliminary injunction . . . does not render a

7    plaintiff a 'prevailing party.' Nor do external events that moot the action and prevent the court from

8    conclusively adjudicating the claim."). Accordingly, the Court should deny Plaintiff's motion in

9    full, without further briefing.

10        Plaintiffs now suggest a wholly new theory not raised in their motion—that the parties'

11   purely procedural stipulation entered to stay proceedings on the merits while the preliminary

12   injunction was pending appeal (ECF No. 138) instead makes them "prevailing parties," even though

13   the preliminary injunction itself cannot. This is of course incorrect. As the Supreme Court explained

14   in *Stinnie*, "[a] prevailing party . . . is [t]he party ultimately prevailing when the matter is finally at

15   rest" and that "[b]ecause preliminary injunctions do not conclusively resolve the rights of parties on

16   the merits, they do not confer prevailing party status." *Stinnie* at 6-7 (slip op.). Nothing in the

17   stipulation "conclusively resolved" any "rights" or "claim" "on the merits," so it cannot provide the

18   basis for prevailing party status. *Id.* at 7, 13. The operative portion of the stipulation itself makes

19   clear that it contemplates "[f]urther proceedings on the merits of the case" whether or not "the

20   preliminary injunction is affirmed in whole or in part" or "the preliminary injunction is vacated on

21   appeal." Stipulation at 3:16-22, ECF No. 138. Far from being a "final judgment" or analogous to a

22   "consent decree" as Plaintiffs suggest, this stipulation was just a housekeeping agreement to

23   maintain the status quo temporarily while the preliminary injunction order (which could not itself

24   establish prevailing party status) was on appeal, subsequent to which there would be "[f]urther

25   proceedings on the merits of this case." *Id.* at 3:16. Nor was the 120-day period on which Plaintiffs

26   rely for their argument "final" in any respect; it was temporary. Indeed, the case continued to be

27
28

litigated after it the stipulation ceased being effective. Ultimately, despite a wide variety of relief Plaintiffs sought in both the original and amended complaint (neither of which includes the 120-day period), there is no final order on the merits granting any of it, and the case was dismissed as moot.[5]

While they do not press the below arguments here, Plaintiffs have also suggested to Defendants that *Stinnie* may not apply to their fee request under EAJA because that case involved § 1988, but such a contention is both inconsistent with *Stinnie* and foreclosed by Ninth Circuit precedent. *See, e.g., Stinnie* at 5 (slip op.) ("As we have previously recognized, the phrase 'prevailing party' in § 1988(b) is a 'legal term of art.'"); *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002) ("[W]e discern no reason to interpret the EAJA inconsistently with the Supreme Court's interpretation of "prevailing party" in the FHAA [*i.e.* § 1988] and the ADA as explained in *Buckhannon*.").

Similarly, Plaintiffs' argument previously proffered to Defendants that *Stinnie* does not apply retroactively is unfounded. "When th[e Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether

---

[5] Plaintiffs' strained attempt to transform a limited stipulation into a "consent decree" is neither supported by the facts nor any plausible construction of *Stinnie*. The 120-day period that Plaintiffs claim affords them "prevailing party" status and entitles them to millions of dollars in attorneys' fees itself arose directly from the Court's order granting the preliminary injunction that "Defendants shall report to the Court within fifteen (15) days of this Order on the administrative steps taken to comply with this paragraph and otherwise preserve the status quo," Order Granting Plaintiffs ' Mot. for Preliminary Injunction at 43, ECF No 128, as the Stipulation itself makes clear. *See* Stipulation to Stay Proceedings at 1:22-27 ("[O]n October 23, 2018, pursuant to this Court's Order, Defendants reported on the administrative steps they are undertaking in response to the preliminary injunction. In the Declaration of Donald Neufeld [ECF No. 135-1] attached to that filing, Defendants represented that, in the event the preliminary injunction was reversed on appeal, any termination of TPS for Sudan, Haiti, El Salvador, and Nicaragua would go into effect no sooner than 120 days from the issuance of any appellate mandate to this Court."). If the preliminary injunction could not afford prevailing party status itself, it is hard to see how this outgrowth thereof could plausibly do so. And despite Plaintiffs' claims that this 120-day period provided "essentially the equivalent of one more TPS extension," *supra*, it did nothing of the sort: By the time of the Ninth Circuit's mandate (which was effective the date of its order dismissing the appeal), all affected countries *already* had their TPS extended or redesignated, so it did not provide meaningful relief beyond that already afforded by the preliminary injunction. Plaintiffs knew *Stinnie* was pending when they briefed their motion for attorneys' fees and imperiled the theory of "prevailing party" status at the time; if this new theory were colorable enough to warrant briefing, they would have seen fit to include it then. They should not be afforded another bite at the apple now.

such events predate or postdate our announcement of the rule." *Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86, 97 (1993); *see also Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1099 (9th Cir. 2016) ("When the Supreme Court announces a new rule and retroactively applies it to the case before it, all courts must apply the rule retroactively."). As the Supreme Court applied the rule announced in *Stinnie* to the circumstances there, and as this case "is still open on direct review" in the context of attorneys' fees, *Stinnie* "is the controlling interpretation of federal law" that must be "given full retroactive effect" here. Plaintiffs cannot escape this rule by citing caselaw addressing the alternate circumstance of the retroactive application of statutes, in which a different analysis applies. *See, e.g., Martin v. Hadix*, 527 U.S. 343, 353 (1999) ("When should a new federal statute be applied to pending cases? To answer the question, we ask first whether Congress has expressly prescribed the statute's proper reach. . . . [If not, and] the application of the statute to the conduct at issue would result in a retroactive effect . . . then in keeping with our traditional presumption against retroactivity, we presume that the statute does not apply to that conduct." (citations and internal quotation marks omitted)).

For the foregoing reasons, Defendants maintain that Plaintiffs' motion for fees should be denied without further briefing. If, however, the Court disagrees and would prefer further briefing, Defendants do not oppose the schedule and page limitations proposed by Plaintiffs herein.

Date: March 11, 2025                                      Respectfully submitted,

                                                          YAAKOV M. ROTH
                                                          Acting Assistant Attorney General

                                                          ANDREW I. WARDEN
                                                          Assistant Director

                                                          */s/ Christopher M. Lynch\**
                                                          CHRISTOPHER M. LYNCH
                                                          (D.C. Bar No. 1049152)
                                                          Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St., N.W.
Washington, D.C. 20005
Telephone: (202) 353-4537
Facsimile: (202) 616-8470
Email: Christopher.M.Lynch@usdoj.gov

Attorney for Defendants

NATIONAL DAY LABORER
ORGANIZING NETWORK

*/s/ Jessica Karp Bansal*
Jessica Karp Bansal

Attorney for Plaintiffs

\* Filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.