United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CRISTA RAMOS, et al.,

Plaintiffs,

v.

KIRSTJEN NIELSEN, et al.,

Defendants.

Case No. 18-cv-01554-EMC

**ORDER DENYING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

Docket No. 228

The instant case relates to the first Trump administration's termination of Temporary Protected Status ("TPS") for a number of countries. Previously, the Court granted Plaintiffs' motion for a preliminary injunction, a decision that the government appealed to the Ninth Circuit. The Ninth Circuit panel (a majority) reversed, but that decision was subsequently vacated for en banc review. Ultimately, the en banc hearing never took place because the government granted new TPS designations or rescinded the previous TPS terminations. As a result, the Ninth Circuit dismissed the appeal. On remand, Plaintiffs amended their complaint, and the government moved to dismiss, largely on the basis of mootness. The Court agreed with the government and thus granted the motion to dismiss.

Now pending before the Court is Plaintiffs' motion for attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). The EAJA allows a party to seek fees and costs against the government where it is the prevailing party and the government's position was not substantially justified. Having considered the parties' briefs and accompanying submissions, the oral argument of counsel, and the supplemental briefs filed by the parties after the Supreme Court's decision in *Lackey v. Stinnie*, 145 S. Ct. 659 (2025), the Court hereby **DENIES** Plaintiffs'

motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

### A. History of Proceedings in *Ramos*

The *Ramos* suit was initiated in March 2018. The *Ramos* Plaintiffs challenged the TPS terminations of four countries: Haiti, El Salvador, Nicaragua, and Sudan. In August 2018, the Court denied the government's motion to dismiss, rejecting, *inter alia*, the government's contention that the TPS statute precluded the from conducting a judicial review of the agency actions. *See Ramos v. Nielsen*, 321 F. Supp. 3d 1083 (N.D. Cal. 2018) [hereinafter *Ramos I*]. In October 2018, the Court granted Plaintiffs' motion for a preliminary injunction. It found that the balance of hardships tipped sharply in Plaintiffs' favor and therefore Plaintiffs only had to show serious questions on the merits in order to obtain injunctive relief. The Court then held that Plaintiffs were likely to succeed on their APA claim (*i.e.*, that DHS changed its practices with respect to TPS designations and failed to acknowledge the change or provide an explanation). As for the equal protection claim, there were, at the very least, serious questions on the merits. *See Ramos v. Nielsen*, 336 F. Supp. 3d 1075 (N.D. Cal. 2018) [hereinafter *Ramos II*].

The government appealed the Court's preliminary injunction decision to the Ninth Circuit. In September 2020, a panel ruled in favor of the government (two to one) and thus vacated the preliminary injunction. On the APA claim, the panel agreed with the government that the TPS statute precluded judicial review of the decisions the DHS Secretary had made. On the equal protection claim, the panel held that there was, in particular, a lack of evidence tying President Trump's alleged animus to the TPS terminations. *See Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020) [hereinafter *Ramos III*]. Plaintiffs sought a rehearing en banc.

Subsequently, in January 2021, President Biden took office. The parties jointly moved to have the appeal referred to the Ninth Circuit's mediation program. *See* Docket No. 222 (Order at 4).

In August 2021, DHS published a Federal Register designating Haiti for TPS for 18 months. In April 2022, DHS did the same for Sudan. Both countries were later redesignated. *See* Docket No. 222 (Order at 4-5).

In October 2022, after settlement negotiations between the parties were not successful, the Ninth Circuit released the appeal from the mediation program. Several months later, in February 2023, the Ninth Circuit granted a rehearing en banc. *See* Docket No. 222 (Order at 5).

In June 2023, one week before the en banc hearing, DHS published Federal Register notices announcing the rescission of the TPS terminations and the extension of the TPS designations for El Salvador and Nicaragua – as well as two additional countries, Honduras and Nepal, which were the subject of the related *Bhattarai* case (see below). *See* Docket No. 222 (Order at 5).

About a week later, the Ninth Circuit granted the government's motion to voluntarily dismiss the appeal. *See* Docket No. 222 (Order at 6). The case was remanded to this Court.

In July 2023, the government argued before this Court that the then-operative complaint was moot. Plaintiffs, however, asserted that the case was not moot and further indicated that they wanted to amend the complaint and formally consolidate the case at bar with *Bhattarai*. *See* Docket No. 205 (minutes).

In August 2023, Plaintiffs filed their amended complaint which, *inter alia*, consolidated *Ramos* and *Bhattarai*. *See* Docket No. 204 (amended complaint). The government moved to dismiss, largely based on mootness. The Court granted the motion, agreeing with the government that the claims challenging the TPS terminations were moot. *See* Docket No. 222 Order at 17 (stating that "the government has met its burden of showing that the challenged conduct cannot reasonably be expected to recur").

Plaintiffs now move for their attorneys' fees and costs incurred for *Ramos*, as well as for *Bhattarai* which is briefly discussed below.

B. History of Proceedings in *Bhattarai*

*Bhattarai* was filed in February 2019, *i.e.*, several months after the Court issued the preliminary injunction in *Ramos*. *Bhattarai* challenged the TPS terminations of two countries: Nepal and Honduras. In March 2019, the Court granted the parties' stipulation to stay proceedings pending disposition of the *Ramos* appeal. *See Bhattarai*, Docket No. 23 (stipulation and order). There was no substantive litigation thereafter until August 2023, when the Court allowed Plaintiffs

to consolidate *Ramos* and *Bhattarai*. As noted above, at that time, the *Ramos* appeal had been dismissed.

C. Fees and Costs Motion

As stated above, Plaintiffs now move for fees and costs incurred in conjunction with both *Ramos* and *Bhattarai*. The motion is pursuant to the Equal Access to Justice Act ("EAJA"). In their opening motion, Plaintiffs requested (1) $3,507,052.12 in fees (representing approximately 7,903.47 hours) and (2) $147,080.44 in costs. *See* Commons Decl., Ex. F (chart). Plaintiffs subsequently increased the amount of fees sought, as reflected in their reply brief, noting that their counsel spent more time in working on the pending motion. Thus, now, Plaintiffs ask for $3,684,282.56 in fees.[1] *See* Reply at 15.

Fees were incurred by (1) seven different public interest organizations and (2) one law firm (Sidley Austin). Plaintiffs are asking for compensation for work done by about a dozen attorneys from the public interest organizations and thirty attorneys from Sidley Austin (about three partners and the rest mostly associates). Thus, altogether, there are more than forty attorneys for whom Plaintiffs are seeking fees. For some, but not all attorneys, Plaintiffs ask for more than the EAJA statutory rate – *i.e.*, they seek enhanced rates.

## II. DISCUSSION

A. Legal Standard

Plaintiff seeks fees and costs for *Ramos* and *Bhattarai* pursuant to the EAJA. *See* 28 U.S.C. § 2412. "'The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority.' Congress specifically intended the EAJA to deter unreasonable agency conduct." *Ibrahim v. United States Dep't of Homeland Sec.*, 912 F.3d 1147, 1166-1167 (9th Cir. 2019).

The relevant provision from the EAJA states as follows:

/ / /

[1] These fees do not include time spent on supplemental briefing ordered by the Court post-hearing.

> (d)
>
> (1)
>
> (A) Except as otherwise specifically provided by statute, a court shall award to a *prevailing party* other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust.
>
> . . . .
>
> (C) The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.

*Id.* § 2412(d)(1) (emphasis added).

As indicated by the italicized language above, there are two critical elements for a plaintiff to be awarded fees and costs under the EAJA: (1) the plaintiff must be the prevailing party in the case and (2) the government's position must not have been substantially justified. In the case at bar, the government argues that Plaintiffs should not be awarded fees and costs because neither element has been satisfied. The government also argues that, even if Plaintiffs are entitled to some fees and costs, the amount sought by Plaintiffs is excessive and unreasonable.

B. Prevailing Party

1. *Lackey*

In the instant case, the critical issue is whether Plaintiffs are the prevailing party. In *Sole v. Wyner*, 551 U.S. 74 (2007), the Supreme Court held that a plaintiff who *obtains* a "preliminary injunction after an abbreviated hearing, but *denied* a permanent injunction after a dispositive adjudication on the merits" is not a prevailing party. *See id.* at 77 (emphasis added). "[P]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved,

United States District Court
Northern District of California

or otherwise undone by the final decision in the same case." *Id.* at 83; *see also id.* at 86 (stating that "[a] plaintiff who 'secur[es] a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against [her],' has '[won] a battle but los[t] the war'"). The Court, however, "express[ed] no view on whether, *in the absence of a final decision on the merits* of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id.* (emphasis added).

While the *Sole* Court did not address the issue above, circuit courts, including the Ninth Circuit, subsequently expressed some views on the subject. For example, in *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013), the Ninth Circuit noted as follows:

> We have previously held that when a plaintiff wins a preliminary injunction and the case is rendered moot before final judgment, either by the passage of time or other circumstances beyond the parties' control, the plaintiff *is* a prevailing party eligible for a fee award. In those cases, although the plaintiff never secured a final judgment granting permanent injunctive relief, the preliminary injunction ended up affording all the relief that proved necessary. The plaintiff therefore received relief that was as enduring as a permanent injunction would have been and, by virtue of the case's mootness, that relief was no longer subject to being "reversed, dissolved, or otherwise undone by the final decision in the same case."
>
> *Other circuits have applied the same reasoning when the plaintiff wins a preliminary injunction and the case is subsequently rendered moot by the defendant's own actions. (A typical scenario: The plaintiff wins a preliminary injunction prohibiting enforcement of a particular statute, and the defendant renders the case moot by repealing the statute before final judgment is entered.)* In that circumstance, too, courts have held that the plaintiff is a prevailing party under § 1988. There is again no concern that the relief the plaintiff won at the preliminary-injunction stage will prove to be ephemeral. The defendant's action in rendering the case moot ensures that the injunction's alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation.

*Id.* at 717 (emphasis added).

At the time of the August 2024 hearing on Plaintiffs' motion, *Higher Taste* was binding precedent on this Court. Nevertheless, the Court exercised its discretion to stay proceedings because the Supreme Court had recently taken up the issue of whether a party is a prevailing party if it wins a preliminary injunction but does not secure a final judgment – *i.e.*, the issue left open in

United States District Court
Northern District of California

*Sole*. *See generally Lackey*, 145 S. Ct. at 659.

In February 2025, the Supreme Court issued its decision in *Lackey*. The plaintiffs in *Lackey* initiated suit to challenge a Virginia statute under which a person's driver's license would be suspended if she failed to pay a fine or cost lawfully assessed against her for a violation of a federal, state, or local law. The suspension would continue until the amount was paid in full or the driver entered into a court-approved payment plan. The plaintiffs filed suit because they could not afford to pay the fines assessed against them or keep up with their payment plans. They argued that the Virginia statute violated their right to due process and equal protection. *See Lackey*, 145 S. Ct. at 664-65.

The district court granted the plaintiffs' motion for a preliminary injunction, holding that they were likely to succeed on one of their due process claims. *See id.* at 665. Subsequently, about four months before the trial was to begin, the defendant (the Commissioner of the Virginia Department of Motor Vehicles) moved to dismiss the case on the basis of mootness, or at least to stay the case, because (1) the Virginia legislature had recently adopted a budget amendment eliminating the suspension of drivers' licenses for failure to pay court fines and costs through a certain date and (2) the defendant expected the legislature would likely repeal the challenged statute in the next legislative session. *See id.* The district court granted the request for a stay. Thereafter, the legislature did repeal the statute and required the permanent reinstatement of licenses suspended under the law. The parties thus agreed that the lawsuit had become moot and stipulated to a dismissal. *See id.*

The issue for the Supreme Court was, as noted above, whether the plaintiffs were entitled to attorneys' fees because they had successfully obtained a preliminary injunction even though no final judgment on the merits was rendered in their favor (specifically, because the Virginia legislature had taken action that rendered the lawsuit moot). *See id.* at 666 ("We granted certiorari to determine whether the term 'prevailing party' in [42 U.S.C.] §1988(b) encompasses a party who is awarded a preliminary injunction, if the case becomes moot before the court reaches a final judgment."). The Court held that the plaintiffs were *not* the prevailing party.

It began by noting that "[a] prevailing party . . . is '[t]he party ultimately prevailing when

United States District Court
Northern District of California

the matter is finally set at rest.'" *Id.* at 667. But a preliminary injunction "do[es] not conclusively resolve [a] legal dispute" because it may be issued based on simply a likelihood of success on the merits (and other factors besides likelihood of success on the merits are considered). *Id.*

> Because preliminary injunctions do not conclusively resolve the rights of parties on the merits, they do not confer prevailing party status. A plaintiff who secures a preliminary injunction has achieved only *temporary* success at an *intermediary* "stage[ ] of the suit." It cannot yet be said that he will "*ultimately* prevail[ ] when the matter is *finally set at rest*" or that he will have "successfully maintained" his claim "*at the end*." And external events that render a dispute moot do not convert a temporary order designed to preserve the status of the parties into a conclusive adjudication of their rights.

*Id.* at 667-68 (emphasis added).

The *Lackey* Court added that its holding flowed "naturally" from its precedents:

> In *Sole*, we established that the change in the legal relationship between the parties must be "enduring." In *Buckhannon*, we established that the change must be "judicially sanctioned." Today, we establish that the enduring nature of that change must itself be judicially sanctioned. A plaintiff who wins a transient victory on a preliminary injunction does not become a "prevailing party" simply because external events convert the transient victory into a lasting one. Rather, a plaintiff "prevails" under the statute when a court conclusively resolves a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties.

*Id.* at 669; *see also id.* at 671 (stating that "both the change in relationship and its permanence must result from a judicial order").

Finally, the *Lackey* Court stated that its ruling served the interests of judicial economy, *i.e.*, by providing a bright-line rule. It added that any concern a defendant who "lost at the preliminary injunction stage [would] strategically moot litigation rather than risk a fee award where [it] to ultimately lose on the merits" was too speculative. *Id.* at 669 (stating that "such risk could arise in only a small number of contexts" because, "if a plaintiff 'has a cause of action for damages, a defendant's change in conduct will not moot the case,'" and, "even if the plaintiff seeks only injunctive relief, voluntary cessation of the challenged conduct does not moot an action 'unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur"'").

2. Stipulated Order in Case at Bar

Following the Supreme Court's decision in *Lackey*, the Court permitted supplemental briefing on whether Plaintiffs were entitled to fees and costs in light of the ruling. In their supplemental brief, Plaintiffs no longer argue – as they did in their opening brief – that they are entitled to fees and costs because they obtained a preliminary injunction. Instead they argue that they are the prevailing party in the case at bar based on a stipulation between the parties that was approved by the Court and entered as an order. *See* Docket No. 138 (stipulation and order).

The stipulated order at issue is captioned as one "stay[ing] district court proceedings pending appellate review of [the] preliminary injunction." Docket No. 138. The stipulated order notes that, in October 2018, the Court issued a preliminary injunction in Plaintiffs favor; that the Court asked the government to report back on the administrative steps taken to comply with the preliminary injunction; and that the government subsequently appealed the preliminary injunction to the Ninth Circuit. *See* Docket No. 138 (Stip. & Order ¶¶ 1-2). Paragraph 3 of the stipulated order then stated as follows:

> [O]n October 23, 2018, pursuant to this Court's Order, Defendants reported on the administrative steps they are undertaking in response to the preliminary injunction. In the Declaration of Donald Neufeld [ECF No. 135-1] attached to that filing, Defendants represented that, *in the event the preliminary injunction was reversed on appeal, any termination of TPS for Sudan, Haiti, El Salvador, and Nicaragua would go into effect no sooner than 120 days from the issuance of any appellate mandate to this Court*. *See* Declaration of Donald Neufeld [ECF No. 135-1] ¶ 10. Defendants further represented in the Neufeld Declaration that the planned administrative steps described therein were based on an agreement reached with Plaintiffs "as part of a negotiation *to stay district court proceedings pending appellate review of the preliminary injunction*."

Docket No. 138 (Order ¶ 3) (emphasis added).

Consistent with ¶ 3, the stipulated order stated, at ¶ 6 that,

> [f]ollowing the conclusion of the appeal of the preliminary injunction, TPS will remain in effect for Sudan, Haiti, El Salvador, and Nicaragua for a minimum of the later of a) 120 days following the issuance of any mandate to the district court or b) the Secretary's previously-announced effective date for the termination of TPS designations for each individual country . . . .

Docket No. 138 (Order ¶ 6).[2]

As noted above, Plaintiffs contend that this stipulated order makes them a prevailing party for purposes of awarding fees and costs under *Lackey*. The government disagrees.

As an initial matter, the government asserts that the Court should not entertain Plaintiffs' argument because, in its original opposition brief, the government had made note of the *Lackey* case then-pending before the Supreme Court, *see* Docket No. 244 (opposition), but Plaintiffs never argued that they should be awarded relief based on anything but the preliminary injunction. The government essentially argues that Plaintiffs have waived the position that they now take in their supplemental brief – *i.e.*, that there is another order issued by the Court that makes them a prevailing party. While the government's position is not entirely without basis, the Court nevertheless entertains the merits of Plaintiffs' argument. For Plaintiffs to make an informed argument on *Lackey*, the actual Supreme Court decision on *Lackey* had to be issued.

That being said, the Court ultimately agrees with the government on the merits – *i.e.*, under *Lackey*,[3] the stipulated order is not enough to make Plaintiffs the prevailing party in the instant action. The relief provided for in the stipulated order was not enduring as contemplated by *Lackey*. It was only temporary, as indicated by the fact that the purpose of the stipulated order was simply to stay proceedings before this Court pending the appeal and to provide a mechanism (and some limited temporary protection for TPS holders) for moving forward once the appeal was resolved. The stipulated order contemplated that litigation on the merits would continue following resolution of the appeal. That Plaintiffs obtained some relief under the stipulated order does not

---

[2] A similar stipulation and order was entered in *Bhattarai*. *See Bhattarai*, No. C-10-0731 EMC (N.D. Cal.) (Docket No. 23) (Order ¶ 11(c)) ("Following the conclusion of the appeal of the preliminary injunction, TPS will remain in effect for Honduras and Nepal for a minimum of the [later] of a) 120 days following the issuance of any mandate to the district court, or b) the Secretary's previously announced effective date for the termination of TPS designations for each individual country . . . .").

[3] To the extent Plaintiffs have suggested that *Lackey* has no relevance or application to the instant case because this case involves the EAJA and not § 1988 (as in *Lackey*), the Court disagrees. *See, e.g.*, *Holman v. Vilsack*, 117 F.4th 906, 911 (6th Cir. 2024) ("[I]nterpretations of the phrase 'prevailing party' in cases involving 42 U.S.C. § 1988 and the EAJA are equally applicable to both statutes."); *Animal Lovers Volunteer Asso. v. Carlucci*, 867 F.2d 1224, 1225 n.1 (9th Cir. 1989) ("*Hensley* involved a fee award under 42 U.S.C. § 1988, but we define 'prevailing party' under EAJA just as that term is defined under § 1988.").

mean that they had a degree of success "'at the end of the suit'" or "'when the matter [was] finally set at rest.'" *Lackey*, 145 S. Ct. at 667 (quoting Black's Law Dictionary in assessing what is meant by "prevailing party"). As the Supreme Court underscored in *Lackey*, "the favorable resolution of a *dispute* is [not] tantamount to success on a *claim* in a legal *action*." *Id.* at 670 (emphasis in original).

Plaintiffs point out that, under *Lackey*, it is still possible for an interim order to make a party a prevailing party, *see* Pls.' Supp. Br. at 3, but this is true only in limited circumstances. The Supreme Court stated that its "decisions simply indicate that attorney's fees may be awarded when *conclusive*, *enduring* judicial relief is meted out on an incremental basis." *Lackey*, 145 S. Ct. at 670 (noting as an example school desegregation cases, where "'many final orders may issue in the course of the litigation' because injunctive relief 'must prove its efficacy . . . over a period of time and often with frequent modifications'"). The relief in the instant case is not comparable to that in the school desegregation cases to which the *Lackey* Court pointed. This is not a situation where the plaintiff prevailed ultimately on the merits and the relief had to be implemented in stages.

Plaintiffs suggest still that the stipulated order in the case at bar is similar to a consent decree, but the Court is not persuaded. In *Lackey*, the Supreme Court did find that a consent decree could be a basis for deeming a party the prevailing party because

> a consent decree is like a final judgment in the relevant ways: It *conclusively* resolves the claim, bears a judicial *imprimatur*, and may grant *enduring* relief that materially alters the legal relationship between the parties. That is why "[w]e have only awarded attorney's fees where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree."

*Id.* at 671 (emphasis added). But here, the stipulated order is not comparable to a consent decree as it did not conclusively resolve Plaintiffs' claims nor did it give them enduring relief.

Finally, Plaintiffs suggest that the Court should deem the stipulated order enduring in nature because it was

> "final" in the relevant sense: [it was] not reversible. And even though [it] happened in an interim phase of the case, [it] "conclusively resolved" Plaintiffs' right to (at least) approximately

> six months of TPS status.[4] The agreement between the parties coupled with this Court's order memorializing it ensured that no appeal or later act by Defendants could modify, alter, or otherwise infringe upon Plaintiffs' right to that period of status.

Pls.' Supp. Br. at 3. The problem for Plaintiffs is that the *Lackey* Court did not define "enduring" as being "not reversible." Indeed, any stipulation between parties in a litigation (and subsequently approved by a court) could be deemed not reversible. That does not make any stipulation and order enduring relief for purposes of prevailing party status and attorneys' fees and costs.

3. Retroactivity

Plaintiffs contend that, even if the Court agrees with the government on the merits, they should still be awarded their fees and costs because *Lackey* should not be retroactively applied to the case at bar. The Court rejects Plaintiffs' position.

The case law is clear that, "[w]hen [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review . . . ." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 971 (1993); *see also Nunez-Reyes v. Holder*, 646 F.3d 684, 691 (9th Cir. 2011) (recognizing *Harper*); *Holt v. Shalala*, 35 F.3d 376, 380 n.3 (9th Cir. 1994) (also citing *Harper* but noting that, "[b]ecause the Supreme Court in *Schaefer* did *not* apply the new rule it announced to the case at bar, we apply traditional *Chevron* [*Oil Co. v. Huson*, 404 U.S. 97 (1971)] analysis here") (emphasis added).

Here, the government contends that the *Lackey* Court *did* retroactively apply the rule it announced to the parties before it. The government is correct. The *Lackey* Court reversed the ruling of the Fourth Circuit which had held that fees and costs could be awarded in the situation in which a plaintiff is awarded a preliminary injunction but the case becomes moot before final judgment. Thus, the rule announced in *Lackey* was applied to the parties before the Supreme Court. *See Melton v. Moore*, 964 F.2d 880, 882 (9th Cir. 1992) ("Although *Grogan* did not expressly address the question of retroactivity, the effect of the Court's reversal of the court of

[4] Although the stipulated order provided for a wind down period of 120 days, Plaintiffs note that it would take about 60 days for a mandate to issue from the Ninth Circuit after resolution of the appeal. Thus, Plaintiffs argue that the stipulated order essentially provided for 6 months of TPS.



United States District Court
Northern District of California

appeals' judgment was to give the parties the benefit of the rule that the preponderance of the evidence standard applied. Thus, the Court in *Grogan* did apply the rule retroactively to the litigants before it."); *see also Hajro v. United States Citizenship & Immigration Servs.*, 811 F.3d 1086, 1099 (9th Cir. 2016) ("When the Supreme Court announces a new rule and retroactively applies it to the case before it, all courts must apply the rule retroactively. *Silence on the issue indicates that the decision is to be given retroactive effect.* Otherwise, the retroactivity depends on the three-prong test from *Huson*.") (emphasis added); *accord Harper*, 509 U.S. at 97-98 ("When this Court does not 'reserve the question whether its holding should be applied to the parties before it,' . . . an opinion announcing a rule of federal law 'is properly understood to have followed the normal rule of retroactive application' and must be 'read to hold . . . that its rule should apply retroactively to the litigants then before the Court.'"). Plaintiffs have not explained how the *Lackey* rule was not retroactively applied, particularly in light of the authorities cited above. Accordingly, *Lackey* is retroactive to pending cases confronting the same issue, including the case at bar. *See, e.g.*, *Maryville Baptist Church v. Beshear*, 132 F.4th 453, 464 (6th Cir. 2025) (in a decision issued about a month after *Lackey*, applying *Lackey* to the case under consideration).

## III. CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' motion for fees and costs pursuant to the EAJA.

This order disposes of Docket No. 228.

**IT IS SO ORDERED**.

Dated: July 16, 2025

EDWARD M. CHEN
United States District Judge